# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION, | Case No. 3:21-md-3004-NJR |
| | MDL No. 3004 |
| This Document Relates to All Cases | |

## DEFENDANTS' OBJECTIONS TO PRODUCTION OF *HOFFMANN* EXPERT MATERIALS

On August 12, 2021, the Court issued Case Management Order No. 6, directing Defendants to produce "agreed upon" materials from the *Hoffmann* case and to meet-and-confer if Plaintiffs sought "additional discovery" from the *Hoffmann* litigation. ECF No. 232. Defendants complied with that order by providing to Plaintiffs all of the company non-privileged Bates-stamped documents that they produced in *Hoffmann*. Plaintiffs, however, have also demanded that Defendants provide them all of the *expert materials*—expert reports, reliance materials, and expert depositions—and other confidential information from the *Hoffmann* case. On numerous grounds, Defendants object to doing so, and now submit those objections as directed by the Court at the August 27, 2021 case management conference.

At the threshold, the *Hoffmann* court's protective order bars the disclosure of confidential information produced in that case, including the expert materials, and the *Hoffmann* plaintiffs strenuously object to disclosure of the requested material, which would unfairly convert their proprietary work product to benefit others. Defendants therefore ***cannot*** produce these materials without the authorization of the *Hoffmann* court or *Hoffmann* plaintiffs. Even if that hurdle were somehow overcome, the Federal Rules independently embrace the principle that it is unfair for a party to obtain, by court order, expert analysis it has not paid for. Finally, providing any expert materials at this early stage—before Defendants have even decided whom to retain and disclose

as testifying experts in the MDL, and before Plaintiffs identify their own experts—would facilitate an end-run around the Federal Rules, which delineate the scope and timing of expert discovery, and yield Plaintiffs an unfair procedural advantage out of the gate.

To be clear, Defendants' production of millions of non-privileged company documents in this MDL—before responsive pleadings have been filed, before any Rule 26 initial disclosures, and before any Rule 34 document requests have been served—already puts this litigation months, if not years, ahead of where it would be if the parties were "reinventing the wheel" in discovery. The *Hoffmann* document productions that Defendants have made available to MDL Plaintiffs are the product of costly and exhaustive document collection efforts by Defendants and numerous litigated discovery motions—to say nothing of the innumerable discovery compromises reached short of motions practice. It is ludicrous for Plaintiffs to contend that, even with that head start, they cannot prosecute cases unless they obtain expert materials from a prior state-court case.

For all of those reasons, the Court should reject Plaintiffs' request to override the *Hoffmann* court's protective order and subvert the Federal Rules by compelling Defendants to produce expert reports and depositions from another, still-pending litigation at the very outset of this MDL. The Court should instead direct Plaintiffs to address their request for the protected materials to the Illinois state court in the *Hoffmann* case, and in all events, with respect to expert materials, to await the expert-disclosure process contemplated by the Federal Rules.

## ARGUMENT

**I.  DEFENDANTS CANNOT PRODUCE DOCUMENTS THAT ARE SUBJECT TO A PROTECTIVE ORDER IN *HOFFMANN*.**

The threshold problem with Plaintiffs' request is that the Illinois court presiding over the still-unresolved *Hoffmann* case entered a protective order in September 2018 that prohibits the parties there, including Defendants, from disclosing materials produced in that case and designated

2

as confidential by other parties—including, as most relevant here, the *Hoffmann* plaintiffs' expert reports and depositions.[1] As courts have uniformly recognized, principles of fairness, comity, and federalism preclude this Court from countermanding the state court's order.

The *Hoffmann* court issued a protective order governing information disclosed or produced in that case. *See* Decl. of Joseph Orlet ("Orlet Decl.") Ex. 1 ("PO"). Specifically, the order permitted a producing party to designate as "Confidential Information" any materials "not in the public domain" and "so proprietary or competitively sensitive that their public disclosure would likely cause competitive injury." PO ¶2. The receiving parties may disclose such Confidential Information *only* to certain other parties involved in the action, or with consent. PO ¶¶6–7. Moreover, unless otherwise authorized by the state court, the "Confidential Information shall not be used or disclosed for any purpose other than the preparation and trial of this case [*Hoffmann*] and/or any appeal thereof." PO ¶9.

Regardless of whether the *Hoffmann* court could or should modify its order to allow for disclosure in this MDL—which it has not done, nor even been asked to do—*this Court* cannot do so. Courts are "without authority" to alter a protective order "entered by another court." *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 384 (D. Del. 2009); *see also Entrust Datacard Corp. v. Atl. Zeiser GmbH*, 2018 WL 3599216, at *2 (M.D. Fla. Jan. 16, 2018) (questioning jurisdiction "to modify or terminate" other court's protective order); *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 947 (N.D. Tex. 2017) (refusing to take "extraordinary step" of overriding protective order); *Navajo Nation v. Urban Outfitters, Inc.*, 2015

---

[1] As noted in the simultaneously-filed status update, the *Hoffmann* plaintiffs have objected to Defendants producing any of the remaining *Hoffmann* discovery materials. Defendants respectfully request that the dispute be resolved in the *Hoffmann* case before any production order in this case.

WL 11109396, at *3 (D.N.M. May 15, 2015). That approach is dictated "by principles of comity, courtesy, and," where the protective order was issued by a state court, "federalism." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499 (D. Md. 2000).

Here, many of the documents at issue were produced and designated as confidential by the *Hoffmann* plaintiffs, not by Defendants, who therefore **cannot** disclose those materials to the MDL parties without the consent of the *Hoffmann* plaintiffs. *See* PO ¶¶7, 9. But the *Hoffmann* plaintiffs vigorously object to production of their Confidential Information. As their counsel explained in a letter to defense counsel, the designated materials include confidential personal information about the *Hoffmann* plaintiffs' health and finances. *See* Orlet Decl. Ex. 2 ("Tillery Letter") at 1, 3. As the *Hoffmann* plaintiffs' counsel explained, the expert reports in that case were the result of very substantial investment of time and money and incorporate their theories of the case, work product, and trade secrets. *Id.* at 3. The *Hoffmann* plaintiffs have taken the position that allowing the MDL Plaintiffs to access that material—particularly while the *Hoffmann* litigation remains pending— would be unfair and prejudicial. *Id.* at 4.

The fact that the *Hoffmann* case remains pending makes it particularly inappropriate for the MDL Plaintiffs to ask this Court—rather than the *Hoffmann* court—to modify the *Hoffmann* protective order. *See Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*, 2007 WL 2229568, at *1 (E.D. Tex. June 15, 2007) ("[W]hen the other matter is ongoing, courts have held that any request necessitating the modification of the protective order be directed to the issuing court."). Conversely, it is only when "the case in which the order was issued is no longer pending"—which is not true here—that courts sometimes have no choice but to step in. *Ohio Willow Wood Co. v. ALPS S., LLC*, 2010 WL 3470687, at *2 (S.D. Ohio Aug. 31, 2010).

4

In short, because the *Hoffmann* protective order forbids Defendants to disclose the *Hoffmann* plaintiffs' Confidential Information (including the expert material Plaintiffs request here) without their consent—and that consent has been forcefully withheld—this Court should not require production of that information to Plaintiffs. Any request by Plaintiffs here to modify the *Hoffmann* court's protective order must be addressed in the first instance to the state court for consideration. That course—directing the Plaintiffs to seek relief from the *Hoffmann* court—is the appropriate process for resolution of this aspect of the parties' dispute.

## II. THE FEDERAL RULES ALSO SHIELD THE OPINIONS OF EXPERTS WHO HAVE NOT BEEN RETAINED FOR THIS LITIGATION.

Even if the *Hoffmann* protective order did not exist, forcing Defendants to disclose expert materials from a prior unrelated case, including materials prepared by Defendants' opponent and the analyses of experts who have not been retained to serve as experts *in this case*, would abrogate the Federal Rules of Civil Procedure. The Rules provide that such unretained experts—*i.e.*, those not governed by the expert discovery framework of Rule 26—cannot be forced to provide expert opinions *gratis*. That principle unquestionably applies to the *Hoffmann* plaintiffs' experts; it also extends to Defendants' experts, since Defendants are not prepared at this point to disclose their MDL experts and their opinions, as that effort remains underway. For these reasons too, the Court should reject Plaintiffs' demand that it order Defendants to provide them with expert reports and depositions from the *Hoffmann* case.

The Federal Rules provide that a court may quash a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). The purpose of this provision is "to prevent the uncompensated taking of intellectual property" by curbing the "'use of subpoenas to compel the giving of evidence and

information by unretained experts.'" *Klay v. All Defendants*, 425 F.3d 977, 984 (11th Cir. 2005) (quoting Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note). "In a society where knowledge is so valuable, there is something unfair about the courts permitting their processes, such as the issuance of a subpoena, to destroy that market in order to take for free the product of an individual's diligence, research, and expertise." *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326 (D.D.C. 2003). *Accord* Tillery Letter at 2–4; s*ee also* Fed. R. Civ. Proc. 45(d)(3)(B)(i) (similarly allowing court to quash subpoena that seeks "trade secret or other confidential research").

Here, Rule 45(d)(3)(B)(ii) would clearly preclude Plaintiffs in this MDL from seeking to subpoena the opinions and analysis of any *Hoffmann* experts who are not designated experts in this matter. Start with the *Hoffmann* plaintiffs' experts. Their analysis was not "requested by a party" to the MDL. Nor do they describe "specific occurrences in dispute." *See MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2794390, at *2 (N.D. Cal. July 15, 2010) (explaining that caveat as carving out an expert who is a "percipient witness[]" and is asked to provide his or her "knowledge of facts relevant to the case rather than ... opinion testimony"). Rather, compelling disclosure of the *Hoffmann* plaintiffs' expert opinions would strike at the heart of the Rule by allowing the MDL litigants to gain the benefit of "an extraordinarily valuable asset" without paying for it. *Statutory Comm.*, 218 F.R.D. at 326. The MDL litigants must secure this information with a "checkbook"—not a "subpoena" or other court "processes." *Id.*; *see also Pichardo v. C.R. Bard, Inc.*, 563 F. App'x 58, 60 (2d Cir. 2014) (holding that plaintiff could not "proffer the evidence contained in" four expert reports prepared for similar products liability case involving same alleged defect because plaintiff had not "secure[d] their agreement to testify").

The same is true for experts who were retained to testify for the defendants in *Hoffmann* but have not been disclosed as testifying experts for Defendants in the MDL. Courts have consistently applied Rule 45(d)(3)(B)(ii) to block parties from seeking a litigation advantage by obtaining through subpoena the opinions of experts who had been retained by their adversary in *another* case (and so were not subject to discovery under Rule 26). *See, e.g.*, *Mylan Inc. v. Analysis Grp., Inc.*, 2018 WL 5043157, at *4 (D. Kan. Oct. 17, 2018) (quashing subpoena to expert when "a party to the current litigation previously had engaged the expert to provide opinions about another matter"); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2015 WL 12843187, at *1 (S.D. Cal. Oct. 5, 2015) (quashing subpoena where "a retained testifying expert for [a party] in a prior litigation" had not been "retained" to testify "in the present action"); *MedImmune*, 2010 WL 2794390, at *2 (same).

The basic principle of Rule 45(d)(3)(B)(ii), thus, is that unless an expert has been disclosed by a party to the case to serve as a testifying expert in that case—and is governed by Rule 26, *see infra* Part III—courts should not compel disclosure of that expert's opinions or analysis. Yet Plaintiffs' demand would do just that, and "subvert the intention" of the Federal Rules by denying the *Hoffmann* experts the "right to bargain for the value of the services [they] previously performed." *Friedland v. TIC - The Indus. Co.*, 2006 WL 2583113, at *2 (D. Colo. Sept. 5, 2006). For this reason too, the Court should reject Plaintiffs' request and decline to order production of material that Rule 45 would put beyond the subpoena power.

III. **ALLOWING PLAINTIFFS IMMEDIATE, WHOLESALE ACCESS TO THE *HOFFMANN* DEFENSE EXPERT MATERIALS WOULD IMPROPERLY CIRCUMVENT RULE 26.**

While Rule 45 makes it improper to give Plaintiffs access to the analysis of experts who will *not* ultimately work on the MDL cases, Rule 26 makes it improper to give them immediate,

7

wholesale access even to materials of experts who *may* ultimately work on these cases, some of whom may serve only in a consulting (*i.e.*, non-testifying) capacity in this litigation.

Rule 26 provides an established and orderly framework for expert discovery. Testifying experts—those "retained or specially employed to provide expert testimony in the case"—must prepare a "written report" stating their opinions. Fed. R. Civ. P. 26(a)(2)(B). They cannot be deposed until "after the report is provided." Fed. R. Civ. P. 26(4)(A). By contrast, Rule 26 typically does not permit any discovery of *consulting* experts. "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(2)(4)(D). "[A] party may do so only … as provided in Rule 35(b)," the provision governing physical and mental examinations, or "on showing exceptional circumstances." *Id.* The exceptional circumstances requirement is "a heavy burden" to satisfy. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001). To do so, a party must show either (1) "the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it," or (2) "there are no other available experts in the same field or subject area." *Id.* at 1152.

Allowing Plaintiffs to discover the entire *Hoffmann* expert file now would be allowing them to end run Rule 26's carefully calibrated scope and timing requirements as to defense experts who may ultimately be retained for the MDL cases. It would improperly give Plaintiffs *more* materials than they are entitled to under Rule 26—and would do so far *earlier* than Rule 26 requires. Courts have refused to allow analogous maneuvers to evade Rule 26's limitations. *See, e.g., Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., P'ship*, 154 F.R.D. 202, 212 (N.D. Ind. 1993) (refusing to permit party to circumvent Rule 26 through subpoena to adversary's consulting

expert); *Friedland*, 2006 WL 2583113, at *2 (quashing subpoena seeking expert materials that would not be discoverable under Rule 26(b)(4)); *In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holder, Derivative Litig.*, 2019 WL 11499333, at *2 (S.D. Fla. Apr. 4, 2019) ("Plaintiffs are seeking to compel the production of expert reports generated … in other MDL member cases — cases which have not been consolidated for discovery or trial with [Plaintiffs'] cases. Thus, … Plaintiffs are effectively seeking to compel the production of reports generated by 'non-testifying experts' — materials which generally fall under the protective ambit of Fed. R. Civ. P. 26(b)(4)(D)."); *cf. Presidio*, 2015 WL 12843187, at *2.

More specifically, as to the *Hoffmann* defendants' experts who may be retained only in a consulting role for this case, Plaintiffs' demand exceeds the scope of the very narrow discovery permitted for consulting experts. And it is far too early for any final decisions to be made about which, if any, *Hoffmann* experts will be engaged by Defendants in the MDL, let alone whether they will be engaged to consult or testify. For any such experts who are ultimately engaged as consulting experts, the Rules afford Plaintiffs no access even to their identity, let alone their work product. And Plaintiffs plainly cannot meet the "heavy burden" under Rule 26 to discover their information.

Even as to experts who will ultimately be designated to testify in this case, allowing Plaintiffs to discover the entire *Hoffmann* file now would circumvent Rule 26's schedule and give them a one-sided and early advantage. The Federal Rules contemplate that the party with the burden of proof—here, Plaintiffs—is to submit their expert reports first, with responsive expert reports to follow. *See* FRCP Advisory Committee Notes ("[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue."); Manual for Complex Litigation

9

(4th Ed.), p. 98 ("Rule 26's committee note states that the party with the burden of proof on an issue should normally be required to disclose its expert testimony on that issue before the other parties."). Thus, Plaintiffs seek to access responsive expert reports—meaning reports that were prepared to rebut the expert opinions offered by the *Hoffmann* plaintiffs' experts—long before Plaintiffs produce a single document or any information on their claims, and even longer before Plaintiffs *identify* their own experts, let alone commit to an expert position on their own claims. Fed. R. Civ. P. 26(a)(2)(D). Notably, the Court has not yet even set a schedule for expert discovery in this MDL. This would improperly and prejudicially reverse the normative process contemplated by the Federal Rules, by giving Plaintiffs *rebuttal* materials before they take even the initial steps to identify and develop their own theories.

Numerous courts have recognized that allowing Plaintiffs to evade Rule 26's strictures and sequencing as to experts would be unfairly prejudicial to Defendants and subvert the normal adversarial process. *See Natixis Fin. Prods. LLC v. Bank of Am., N.A.*, 2016 WL 7165981, at *4 (S.D.N.Y. Dec. 7, 2016) (rejecting plaintiff's request to "obtain advance copies of [defendant's] expert reports before committing to an expert position on its own claims"); *USCO S.p.A. v. Valuepart, Inc.*, 2015 WL 1898013, at *6–7 (W.D. Tenn. Apr. 27, 2015) ("allowing one party's expert to view the expert report of another party before submittal of [its opening report] is an unfair advantage"); *Queen v. Int'l Paper Co.*, 2006 WL 1229010, at *3–4 (N.D.N.Y. May 5, 2006) (allowing plaintiff to review defense expert reports before preparing her own "would afford [plaintiff] an unintended and unfair tactical advantage and would operate to the material prejudice of [defendant]"). For this reason too, the Court should reject Plaintiffs' request. *See also In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020) (court cannot "disregard the [Federal] Rules' requirements ... in favor of enhancing the efficiency of the MDL").

Finally, there is no legitimate reason to accelerate Defendants' unilateral expert disclosures. "The purpose of Rule 26(a)(2) is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009) ("The purpose of an expert report is to eliminate 'unfair surprise to the opposing party.'"). Plaintiffs' interest in receiving adequate notice before deposing and examining defense experts will be more than adequately protected by a conventional expert-disclosure schedule. There is no legitimate reason to prematurely require defense expert disclosures without imposing a similar requirement on plaintiffs. The only consequence would be to unfairly advantage Plaintiffs and unfairly prejudice Defendants by forgoing the protections that Rule 26 affords.

## **CONCLUSION**

For the reasons above, Defendants object to Plaintiffs' demand that they produce the expert materials (reports and depositions) from the *Hoffmann* case. Any request to modify the *Hoffmann* protective order should be directed in the first instance to the *Hoffmann* court. And any disclosure of experts' identities and opinions should await the expert discovery deadlines that this Court will set in due course as part of a comprehensive case schedule.

Dated: August 30, 2021

Steven N. Geise
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Fax: (844) 345-3178
sngeise@jonesday.com

Respectfully submitted,

*/s/Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.
Traci L. Lovitt
Sharyl A. Reisman
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com

| | |
|---|---|
| Joseph C. Orlet<br>Bryan Hopkins<br>Megan Ann Scheiderer<br>HUSCH BLACKWELL LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>Telephone: (314) 480-1500<br>Fax: (314) 480-1505<br>Joseph.Orlet@huschblackwell.com<br>Bryan.Hopkins@huschblackwell.com<br>Megan.Scheiderer@huschblackwell.com | tlovitt@jonesday.com<br>sareisman@jonesday.com<br><br>Jihan E. Walker<br>JONES DAY<br>77 West Wacker Drive, Suite 3500<br>Chicago, IL 60601<br>Telephone: (312) 782-3939<br>Fax: (312) 782-8585<br>jihanwalker@jonesday.com |

*Counsel for Chevron U.S.A. Inc.*

| | |
|---|---|
| Leslie M. Smith, P.C., #6196244<br>Bradley H. Weidenhammer, P.C., #6284229<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br><br>Ragan Naresh, P. C.<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Ave., NW<br>Washington, DC 20004<br>(202) 389-5000 | <u>*/s/Michael J. Nester (with consent)*</u><br>Michael J. Nester, #02037211<br>DONOVAN ROSE NESTER P.C.<br>15 North 1st Street, Suite A<br>Belleville, IL 62220<br>(618) 212-6500 (Tel.)<br>(618) 212-6501 (Fax)<br>mnester@drnpc.com |

*Counsel for Syngenta Defendants*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 30, 2021, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.

*Counsel for Chevron U.S.A. Inc.*