IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: PARAQUAT PRODUCTS ) <br> LIABILITY LITIGATION ) <br> ) <br> ) | Case No.: 3:21-md-3004-NJR |
| ) | |
| ) | MDL No. 3004 |
| ) | |
| **This Document Relates to All Cases** ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS
TO PRODUCTION OF *HOFFMANN* EXPERT MATERIALS**

MDL Plaintiffs file this response to Defendants' Status Report submitted on August 30, 2021, as well as Defendants' Objections to Production of *Hoffmann* Expert Materials filed on August 30, 2021 (Doc. 319). For the following reasons, Defendants' objections should be overruled.

### BACKGROUND

During the initial status conference after being assigned this matter by the Judicial Panel on Multidistrict Litigation, this Court described the goal in this litigation as "work[ing] in a coordinated and expeditious fashion that ensures the rights of all parties and respects state and federal comity." Case no. 3:21-md-3004-NJR, Transcript of Status Conference (S.D. Ill. June 23, 2021) at 2:24 through 3:2 (attached hereto as Exhibit A).[1] With respect to the currently disputed issue surrounding production of discovery already produced in related state court litigation, the Court stated:

> Now, with respect to the Illinois litigation. I do not expect any party in the case to reinvent the wheel or spend needless time, trees, or money litigating the case. This case appears to be in a different posture than most MDL cases; it is

---

[1] Because the transcript is not yet publicly available, in an abundance of caution, Plaintiffs are filing it separately as a sealed exhibit.

> several years in the making and I'm picking up what Judges Hoerner and Weil have been working on for some time.
>
> Now, Judge Hoerner has shared stacks and stacks of orders with me, and I have started forging through those and see that the parties have been litigating for years and it's been a hard-fought battle.
>
> Now, I am aware of the number of depositions that have been taken and the documents that have been produced by defendants. So, I expect the discovery in the prior litigation to be adapted and employed here.
>
> And in the interest of effectively managing this litigation in accordance with my duties as an MDL judge, we will not be starting from scratch. I know this is a very important litigation and my attention will be focused on getting to trial or resolution just as expeditiously as we can.

Id. at 3:4-24.

On July 23, 2021, the Court issued Case Management Order (CMO) No. 5, setting various deadlines. Among them, the Court ordered the parties to agree on a proposed protective order, or submit a joint statement regarding areas of disagreement, on or before July 30, 2021. Doc. 203. The Court further ordered that, upon entry of the protective order, "Defendants shall have **7 days** to submit the *Hoffmann* document production, including all discovery, deposition transcripts, expert reports, and pleadings, to a document depository." Id. On July 30, 2021, the parties submitted a negotiated joint proposed protective order to the Court; the Court entered the parties' proposed Protective Order on August 11, 2021. See Doc. 218.

Meanwhile, by letter dated July 28, 2021, Stephen M. Tillery, counsel for the *Hoffmann* plaintiffs in the Illinois state court litigation, notified defense counsel of his clients' objection to CMO 5's "apparent requirement" that Defendants submit to a document repository documents that the *Hoffmann* plaintiffs designated as confidential under the protective order entered in *Hoffmann*.

See Doc. 320, p. 17.[2] Mr. Tillery stated: "We have not had time to prepare a list of every document we designated confidential on behalf of our clients in *Hoffmann*, but at the very least, that list includes the plaintiffs' deposition testimony, medical records and bills, and financial information, which are personal, private, and of no relevance to the litigation in the MDL." Id. To be clear, MDL Plaintiffs do not seek personal and private information specifically related to the *Hoffmann* plaintiffs. Nonetheless, it is worth noting that some *Hoffmann* plaintiff specific information is available on the state court's public docket. For example, in *Hoffmann*, Defendant Chevron U.S.A. Inc. attached to its motion *in limine* to exclude certain evidence lightly redacted interrogatory responses and deposition excerpts of four *Hoffmann* plaintiffs. See Exhibit B, Defendant Chevron U.S.A. Inc.'s Motion *In Limine* to Exclude Evidence Regarding Pre-1973 Illinois Consumer Fraud and Deceptive Business Practices Act Violations, *Hoffmann v. Syngenta Crop Protection*, LLC, No 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir. May 3, 2021).[3]

The *Hoffmann* plaintiffs further object to disclosure of their experts' reports and related deposition testimony as being proprietary to Mr. Tillery's law firm, incorporating attorney work product and his firm's trade secrets, and being protected by common-law copyright. Doc. 320 at pp. 17-18. The *Hoffmann* plaintiffs likewise object to disclosure of Defendants' own experts' reports and reliance materials "to the extent they include [Mr. Tillery's firm's] specific work product in terms of material summarized from thousands of pages of depositions. Id. at p. 20. In his letter to Defendants, Mr. Tillery advises: "Should you need more specific references we are happy to go through those defense reports and identify specific testimony and documents." Id.

---

[2] Defense counsel shared Mr. Tillery's letter with MDL Plaintiffs' Co-Lead Counsel and Special Master Randi Ellis via email on August 4, 2021.
[3] A declaration of Sarah Shoemake Doles in support of this response attesting to the true and complete nature of any and all Illinois state court materials is attached hereto as Exhibit C.

Despite Mr. Tillery's offer to do so in order for Defendants to produce certain parts of the defense experts' reports and related deposition testimony, Defendants refuse to produce any of the expert materials.

## ARGUMENT

I.  **Defendants' Failed to Properly Raise Their Objections**

Defendants' reliance on the protective order entered in *Hoffmann* is misplaced, and their suggestion that MDL Plaintiffs seek relief from the state court is contrary to the *Hoffman* protective order. The *Hoffman* protective order, entered on September 11, 2018, governs the use and dissemination of information and documents disclosed or produced in the *Hoffman* action and designated as Confidential Information defined as

> (a) any document or information that contains a Trade Secret, (b) any document or information whose publication or release to the public is barred or prohibited by any state or federal law, (c) personal tax and medical records, or (d) any other documents that are not in the public domain and are so proprietary or competitively sensitive that their public disclosure would likely cause competitive injury. This latter category includes business plans, pricing plans, customer lists, marketing strategies, regulatory strategies, supply chains, manufacturing strategies, budgets, and account balances which have been kept confidential.

See Doc. 320 at p. 1 and para. 2. The *Hoffmann* protective order protects unwanted disclosure by the *non*-designating party, specifically providing: "Nothing in this Order shall be deemed to restrict in any manner the use by any Designating Party of any of its own information and documents." Id. at p. 10, para. 14. Paragraphs 15 and 16 of the *Hofmann* protective order specifically addresses the procedure that Defendants should have followed when CMO 5 was entered.

> 15. If counsel for any party receives notices of any subpoena or other compulsory process commanding production of Confidential Information that a party has obtained under the terms of this Order, counsel for such party shall within two (2) days if compliance is due in less than ten (10) days … notify the Designating Party

in writing, and shall not produce the Confidential Information until the Designating Party has had reasonable time to take appropriate steps to protect it. **It shall be the responsibility of the Designating Party to obtain relief from the subpoena or order prior to the due date for compliance**, and to give the Designating Party an opportunity to obtain such relief, the party from whom the Confidential Information is sought shall not make the disclosure before the actual due date of compliance set forth in the subpoena or order.

16. This Order shall not prevent any of the parties from moving this Court for an order that Confidential Information may be disclosed other than in accordance with this Order. This Order is without prejudice to the right of any party to seek modification of it from the Court….[4]

Id. at pp. 10-11, paras. 15-16 (emphasis added).

Defendants could have sought relief in this Court under Federal Rule of Civil Procedure 26(c), which specifically provides the avenue for relief contemplated by Paragraph 15 of the *Hoffmann* protective order, or they could have sought relief from the *Hoffmann* Court. Counsel for the *Hoffmann* plaintiffs sent a letter to counsel for Defendants, who then shared it with MDL Plaintiffs' Co-Lead Counsel and Special Master Ellis. The letter was not part of the record in either case until it was attached to counsel's affidavit filed in the MDL on August 30, 2021. Even after the Court raised the issue in Case Management Order No. 6 on August 12, 2021, Defendants sought no avenue for resolution of the issue. To be certain, MDL Plaintiffs are not *parties* to the *Hoffmann* case or the protective order entered therein; there is *no* provision in the *Hoffmann* protective order that allows a non-party to seek relief from it. Rather, the obligation to do so falls on the *parties*. Defendants failed to seek the relief available to them under the *Hoffmann* protective order and/or

---

[4] Paragraph 18 provides that the *Hoffmann* Court "shall have continuing jurisdiction to modify, enforce, interpret or rescind this Order, notwithstanding the termination of this action." Doc. 320 at p. 11, para. 18. Therefore, any suggestion that these materials will be available after the *Hoffmann* case is resolved or dismissed is misplaced.

Page 5 of 17

the Federal Rules of Civil Procedure. Therefore, Defendants' objections to the production of any materials for which they are the Designating Party should be overruled as waived.

The procedure set forth in Paragraph 16 of the *Hoffmann* protective order is straight forward and, in fact, was employed by Mr. Tillery in order to share the materials with international law firms. Plaintiffs' Motion to Modify Protective Order, *Hoffmann et al. v. Syngenta Crop Protection, LLC et al.*, No. 17-L-527 (Ill. Cir. Ct., 20th Jud. Cir. Jan. 4, 2021), attached as Exhibit D. Not unlike one of the arguments made here, Syngenta Defendants objected, in part, on the basis that "[d]isclosing their confidential information to foreign counsel pursuing unfiled cases is an end-run around foreign discovery rules." Opposition to Plaintiffs' Motion to Modify Protective Order by Defendants Syngenta Crop Protection, LLC, and Syngenta AG, *Hoffmann et al. v. Syngenta Crop Protection, LLC et al.*, No. 17-L-527 (Ill. Cir. Ct., 20th Jud. Cir. Jan. 11, 2021), attached as Exhibit E. The *Hoffmann* Court amended in part the protective order to allow the disclosure with certain restrictions. Amendment to Protective Order, *Hoffmann et al. v. Syngenta Crop Protection, LLC et al.*, No. 17-L-527 (Ill. Cir. Ct., 20th Jud. Cir. Feb. 18, 2021), attached as Exhibit F. That relief could have been accomplished under these circumstances, especially with respect to concluded depositions that may be designated as confidential and/or state court filings under seal based on references to and reliance on Confidential Information but are covered as such under the Protective Order entered in this MDL (Doc. 218).

**II.     The *Hoffmann* Materials Are of Public Nature**

"[T]he tradition that litigation is open to the public is of very long standing." *Union Oil Co. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2002); *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978). "Even disputes about claims of national security are litigated in the open." *Id.* at 567; *see In re United States*, 872 F.2d 472 (D.C. Cir. 1989) (a national security case

with public briefs and opinions, although parts of one opinion were redacted to protect confidences). "When [individuals] call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property." *Id.* at 568, *citing U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27-29 (1994). "Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court. But most portions of discovery that are filed and form the basis of judicial action must eventually be released." *Id.*, *citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36-37 (1984). Courts "employ[] a presumption of disclosure and non-secrecy, consistent with Supreme Court and Seventh Circuit precedent, because openness fosters public confidence in its judicial system and tends to negate the perception that decisions are made in secret, smoke-filled back rooms." *Hal Wagner Studios, Inc. v. Elliott*, 2009 U.S. Dist. LEXIS 25773, at *8 (S.D. Ill. Mar. 30, 2009).

Defendants' contention that *Hoffmann* expert materials are proprietary work product ignores the incredibly public nature of the *Hoffmann* proceedings. As discussed *supra*, the documents can hardly be claimed work product when they are already being used "across the country". And, many are in the public domain. Indeed, notices of hearing were filed on the *Hoffmann* court's docket with the notation of proceeding "via Zoom teleconference." See Exhibit G, Notice of Hearing for April 12, 2021 and Notice of Hearing for April 22, 2021. Importantly, the hearing noticed for April 22, 2021 centered on arguments concerning a number of pending motions *in limine* regarding the parties' experts. See id. Pursuant to the Twentieth Judicial Circuit's virtual courtroom guidelines, Judge Hoerner would serve as the host of these Zoom hearings, including the hearing conducted on April 22nd regarding the parties' experts, in order to "keep the courtroom secure while still allowing *the public to view the proceedings*." See Guidelines for

Virtual Courtroom Proceedings of the Twentieth Judicial Circuit, County of St. Clair, State of Illinois, May 2020 (https://www.co.stclair.il.us/webdocuments/departments/circuitclerk/additionalResources/Guidelines%20For%20Virtual%20Courtroom%20Proceedings.pdf) (last visited Aug. 31, 2021) (emphasis added). In order to provide the public access to judicial proceedings, Judge Hoerner's Zoom information is published on the St. Clair County website. See Judges' Zoom Meeting Information (https://www.co.st-clair.il.us/departments/circuit-clerk/additional-resources/judges-zoom-meeting-information) (last visited Aug. 31, 2021).

Thus, the contents of the *Hoffmann* plaintiffs and Defendants' expert reports and depositions were discussed in open court during a public proceeding in accordance with the established practice of United States courts and, more specifically, the Twentieth Judicial Circuit's own policy. See id; *see also Nixon*, 435 U.S. at 597 ("[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") Defendants cannot assert that an unprecedented theory of privilege prevents them from producing expert materials which have been argued at length in a public court proceeding.

Notably, prior to its continuance, the *Hoffmann* trial was set to be broadcast live via Courtroom View Network. See Exhibit H, Order and Request for Appointment of Media Coordinator and Extended Media Coverage, *Hoffmann v. Syngenta Crop Protection*, LLC, No 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir. May 6, 2021). In its order, the *Hoffmann* court noted that **none** of the parties objected to the media coverage nor the live broadcast of the "otherwise public judicial proceedings." Id. at p. 1-2 (emphasis added). Defendants took no issue with expert-related documents being broadcast live for an untold number of individuals across the country and,

perhaps the world; instead, Defendants object to Plaintiffs in this MDL – who are subject to the Protective Order entered by this Court on August 11, 2021 (Doc. 218) – receiving expert materials previously discussed in open court in Illinois state court and expected to be widely viewed via an internet broadcast. Defendants' novel argument should be ignored.

Similarly, Defense expert report and depositions transcripts, were docketed in the *Hoffmann* litigation and are thus already publicly available. See Exhibit I, Growmark, Inc.'s Response to Plaintiffs' Motion to Exclude the Testimony of William Jordan, *Hoffmann v. Syngenta Crop Protection*, LLC, No 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir. Apr. 26, 2021) (attaching the deposition and expert report of William Jordan); see also Exhibit J, Growmark, Inc.'s Reply in Support of its Motion for Summary Judgement, *Hoffmann v. Syngenta Crop Protection*, LLC, No 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir. Mar. 26, 2021) (attaching deposition of David Powell, PhD). The fact that these expert materials were previously filed as supporting attachments to publicly available court filings underscores the absurdity of Defendants' position: litigation as a general principle of the American court system is open to the public and "judicial proceedings are public rather than private property." *Leavell*, 220 F.3d at 568.

### III. The *Hoffman* Materials Are Discoverable Under Rule 26

While numerous *Hoffman* materials were already made public (and indeed have been made available in other litigations to members of the PEC here), the most-ready source of the complete *Hoffman* materials is Defendants. The *Hoffman* materials, including the deposition transcript and exhibits and the expert reports, are discoverable from Defendants under Federal Rule of Civil Procedure 26. Unless limited by a court order, parties in civil litigation enjoy broad discovery as detailed in Rule 26, which states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of

> the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[T]he discovery rules are to be accorded 'a broad and liberal treatment'" as the "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Spano v. The Boeing Co.*, No. 306CV-00743-DRH-DGW, 2007 WL 4390366, at *1 (S.D. Ill. Dec. 14, 2007), *quoting* Hickman v. Taylor, 329 U.S. 495, 507 (1947). The discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1). To be relevant, the information sought must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Hickman*, 329 U.S. at 501. "Relevancy" for the purposes of Rule 26(b)(1) is construed broadly. *Stephenson v. Florilli Transportation, LLC*, No. 318CV0103NJRDGW, 2018 WL 4699863, at *1 (S.D. Ill. Oct. 1, 2018).

The materials sought are unquestionably relevant. Defendants do not claim otherwise, nor could they.

Production of the *Hoffman* expert materials is also undoubtedly proportional to the needs of the Plaintiffs in this case. The Court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." *Stubbs v. Cunningham*, No. 18-CV-408-RJD, 2020 WL 5237141, at *2 (S.D. Ill. Sept. 2, 2020), *citing Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). "[A] party seeking an order limiting discovery has the burden of showing 'good cause' for such an order, and the requisite showing of good cause entails 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Dyjak v. Piephoff*, No. 18-CV-02003-

NJR, 2020 WL 2735706, at *3 (S.D. Ill. May 26, 2020), *citing Cima v. WellPoint Health Networks, Inc.*, No. 05-cv-4127-JPG, 2008 WL 746916 at *3 (S.D. Ill. Mar. 18, 2008) (citations omitted).

A party seeking to resist discovery on Rule 26(b)(1) grounds bears the burden of showing that the discovery sought fails the proportionality calculation by coming forward with specific information to address: (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information, (iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See, e.g., Garner v. St. Clair Cty., Illinois*, No. 15-CV-535 JPG-DGW, 2016 WL 146691, at *2 (S.D. Ill. Jan. 13, 2016).

Defendants have not met their burden of showing "good cause" as to why the relevant discovery Plaintiffs seek should not be produced under the relevant proportionality factors, and such expert materials should be produced.

The first factor is the "importance of the issues at stake in the action." Plaintiffs have alleged that they have developed a horrible degenerative brain condition (Parkinson's disease) from Defendants' product Paraquat. The discovery sought is critical and necessary in order for Plaintiffs to prove their claims against Defendants. Defendants do not claim otherwise, nor could they. Therefore, the first factor favors Plaintiffs.

Under the second factor, "the amount in controversy," Plaintiffs' expected damages from Paraquat will be in the billions. There is no argument here that the damages are too minimal to warrant the materials Plaintiffs seek. Given Plaintiffs' injuries here, Defendants cannot now claim that the injuries and damages here are so minimal that they do not have to search for and produce relevant discovery. As such, the second factor favors Plaintiffs.

Under the third factor, "the parties' relative access to relevant information," Defendants have exclusive control of such expert materials, which is readily available to them, and Plaintiffs cannot obtain such critical discovery without Court intervention. Simply put, Defendants' burden to produce relevant discovery here does not outweigh the needs and value of this case. Moreover, Defendants assisted in the authoring of the Protective Order in this case, and Plaintiffs negotiated these issues in good faith. Even though Defendants co-authored the Protective Order, they remained silent on critical issues they likely foresaw, which in turned wasted the parties' and the Court's time and resources such that it is now September, and the pertinent *Hoffman* discovery – i.e., what is necessary to allow Plaintiffs to focus on the general causation and liability theories in advance of a November 2022 trial - remains undisclosed. Defendants more than likely knew that this issue would occur and sat back and remained unforthcoming with respect to this issue despite Plaintiffs negotiating in good faith. All told, the third factor favors Plaintiffs.

Under the fourth factor, "the parties' resources," Defendants are large, multinational billion-dollar corporations who have made considerable profit from Paraquat. By contrast, Plaintiffs resources pale in comparison, yet Plaintiffs will have to expend considerable resources reinventing the wheel to duplicate the expert and corporate liability discovery that was already done in *Hoffman*. Thus, the fourth favors Plaintiffs.

Under the fifth factor, "the importance of the discovery in resolving the issues," Plaintiffs are required to produce expert opinions to substantiate their general causation requirements. The expert materials are necessary and required in order for Plaintiffs to meet their burden in this regard. Without such discovery, Plaintiff will be unable to fairly challenge any experts on previous, inconsistent testimony. That is why an expert's prior testimony is sought and produced in virtually every litigation. While no one can predict altered testimony, the need to alleviate the

concern is strong enough to meet any relevancy burden. The production and subsequent alleviation would eliminate the Plaintiffs' concerns that there may be potential material differences in testimony on matters of public interest. The transcripts and exhibits will also assist in greatly narrowing the population of relevant documents so that the parties can focus on what discovery has not been done rather than rehashing depositions taken and exhibits inquired about. Accordingly, the fifth factor favors Plaintiffs.

The sixth factor is "whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, the expert reports and testimony that Plaintiffs are seeking are stored electronically and thus easily accessible to Defendants. As such, Defendants' burden to produce this electronically stored discovery is not overly burdensome or expensive. By contrast, Plaintiffs can only get such relevant and critical documents from Defendants. The *Hoffmann* litigation, as well as the California Consolidated Action, *Paraquat Cases*, JCCP No. 5031 (Contra Costa Cty. Sup. Ct.), share uniquely similar general causation issues and negligence allegations. Thus, it only benefits each party to promptly produce such discovery rather than drawing out years more in litigation over potentially the same expert. Simply put, the sixth factor favors Plaintiffs.

Defendants have not laid out any case, provision, or argument to show they would suffer prejudice or harm as a result of its production to the MDL. As discussed *infra*, Plaintiffs are not seeking knowledge of opinions of consulting experts for example, but rather discovery of already disclosed experts which are no longer protected by Rule 26 or a work-product privilege. The burden remains minimal on the Defendants as they have ready access to the *Hoffman* discovery materials.

Finally, to the extent Attorney Stephen Tillery (per his letter attached to Defendants' Objections as Exhibit 2), believes that any prior expert materials reveal his proprietary thoughts

and work product, Plaintiffs are seeking completed reports and depositions, not any notes created and used by Mr. Tillery in preparation for those depositions. To be clear, Plaintiffs are not seeking any documents revealing medical, financial, or private documents for individual plaintiffs from the *Hoffmann* litigation. Plaintiffs are only seeking general causation and liability materials which are critical to Plaintiffs exact claims here. Again, such requests to produce expert discovery from prior related litigations is routine and not uncommon, as it fundamentally conserves both the parties' and the Court's time and resources. *See, e,g., Giordano et al. v. Wright Medical Technologies, et al.* 2014 WL 1234139 (S.D.N.Y. 2014) (ordering defendants to produce deposition transcripts, sworn testimony, and expert reports from prior related litigation).[5]

For the reasons stated above, Defendants have not met their burden under the proportionality requirements; Defendants' objections should be overruled.

### IV. The Court Has Authority to Order Production of the *Hoffmann* Materials

Defendants argue that the *Hoffman* protective order prevents them from producing the *Hoffman* depositions, exhibits and expert reports, and further argue that principles of comity, courtesy, and federalism prevent this Court from ordering production of the materials. See Doc. No. 319, p. 4. Defendants' arguments are meritless.

First, Defendants can hardly claim they cannot produce the *Hoffmann* materials as they <u>already</u> produced the *Hoffmann* document production here and in California, and they produced all of the materials they continue to refuse to produce here <u>including the deposition transcripts and expert reports.</u> See *Paraquat Cases,* JCCP No. 5031 (Contra Costa Cty. Sup. Ct.). Indeed, as noted above, they have either been required to or consented to production of *Hoffmann* discovery in

---

[5] Whether Mr. Tillery's pursuit of the *Hoffmann* case on behalf of the *Hoffman* plaintiffs ultimately benefits all MDL plaintiffs under the common benefit doctrine is a question for another day.

courts across the country and internationally. If the *Hoffman* protective order actually prevented Defendants from producing discovery here, it would have prevented any production here or in California, among other places. The inconsistency in their position highlights its erroneous nature.

Second, this Court has the authority to direct production of the *Hoffmann* expert materials without requiring Plaintiffs to seek relief in the state forum. Indeed, this issue routinely arises in MDLs where other cases in other courts were litigated (either during or before the MDL) involving the same product. Under similar circumstances, MDL courts routinely order production of such discovery, as avoiding duplicative discovery prevents each side wasting time and resources and promotes efficient litigation. *See, e.g., In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) (ordering production of transcripts from other pending related actions); *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 12-MD-2325, 2012 WL 2601880, at *9-10 (S.D.W. Va. July 5, 2012) (ordering production of documents, depositions, and other written discovery from related actions for reasons, *inter alia*, that the MDL depositions would be unreasonably prolonged, and to alleviate Plaintiffs' fears of altered testimony); *Giordano et al. v. Wright Medical Technologies, et al.* 2014 WL 1234139 (S.D.N.Y. 2014) (ordering production of expert reports and deposition transcripts from related action involving the same products to prevent duplicative discovery, despite defendants accusing plaintiffs of "piggy-backing" another litigation); *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499–500 (D. Md. 2000) (holding that principles of comity, courtesy, and federalism, while important are not absolute and courts asked to issue discovery orders in litigations pending before them have not shied away from doing so, even if it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified).

Notably, Defendants fail to site a single MDL court who has denied similar discovery requests, and, frankly, it is not surprising, as avoiding duplicative discovery saves both sides considerable time and expense in discovery and trials.

Moreover, and importantly, <u>Plaintiffs are not seeking knowledge of opinions of consulting experts in this case</u> but, rather, are only seeking discovery of already disclosed experts reports and materials in another litigation. While such reports may have been work-product at some point in time, they are no longer privileged in any way because they have already been disclosed to other parties. *See e.g., Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 477 (N.D. Ill. 2002) (where the voluntary disclosure of attorney work product to an adversary waives work product protection). As such, any claim that the expert materials Plaintiffs seek are still subject to any work-product privilege is unavailing. Defendants, perhaps intentionally, conflate confidentiality with privilege/work product, and neither provides a shield from disclosure of the expert materials in *Hoffmann*.

Because this Court has the authority to order production of such non-privileged, highly relevant materials, which are proportional to the needs of this case, Defendants should be ordered to produce such materials as originally ordered in CMO 5.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that this Court deny Defendants' Objections and order the production of all corporate liability and expert materials from the *Hoffmann* litigation within seven (7) days of its Order.

Dated: September 1, 2021

Respectfully submitted,

**PLAINTIFFS' CO-LEAD COUNSEL**

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles
CAREY, DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
Saint Louis, MO 63105
Telephone: (314) 725-7700
Facsimile: (314) 721-0905
sdoles@careydanis.com

Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY & SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
415-981-7210
kbaghdadi@walkuplawoffice.com

Peter Flowers
MEYERS & FLOWERS, LLC
225 West Wacker Drive, Suite 1515
Chicago, IL 60606
630-232-6333
pjf@meyers-flowers.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, I electronically filed Plaintiffs' Response to Defendants' Objections to Production of *Hoffmann* Expert Materials with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record.

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles
CAREY, DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
Saint Louis, MO 63105
Telephone: (314) 725-7700
Facsimile: (314) 721-0905
sdoles@careydanis.com