**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION, | Case No. 3:21-md-03004-NJR |
|  | MDL No. 3004 |
| This Document Relates to Cases Identified in Notice of Motion and Proposed Order | Memorandum in Support of Motion to Dismiss |

<u>**DEFENDANT CHEVRON U.S.A. INC.'S MEMORANDUM IN SUPPORT OF ITS CONSOLIDATED PARTIAL MOTION TO DISMISS CURRENT ACTIONS**</u>

Steven N. Geise
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Fax: (844) 345-3178
sngeise@jonesday.com

Joseph C. Orlet
Bryan Hopkins
Megan Ann Scheiderer
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Fax: (314) 480-1505
Joseph.Orlet@huschblackwell.com
Bryan.Hopkins@huschblackwell.com
Megan.Scheiderer@huschblackwell.com

Leon F. DeJulius, Jr.
Traci L. Lovitt
Sharyl A. Reisman
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
tlovitt@jonesday.com
sareisman@jonesday.com

Jihan E. Walker
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Fax: (312) 782-8585
jihanwalker@jonesday.com

*Counsel for Chevron U.S.A. Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ....................................................................................................................... 2

I.  MANY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED ............................................. 2

    A.  Many Claims Are Barred by State Statutes of Repose ................................. 4

    B.  Many Claims Are Barred by Applicable Statutes of Limitations ............... 8

    C.  Most Warranty Claims Are Also Time-Barred ........................................... 11

II.  PLAINTIFFS CANNOT REPACKAGE PRODUCTS LIABILITY CLAIMS AS
    NUISANCE CLAIMS ................................................................................................ 13

    A.  Courts Do Not Allow Public Nuisance Claims To Be Based Solely on the
        Sale of Lawful Products, Absent Additional Allegations of Wrongdoing ............... 13

    B.  Plaintiffs Have Not Alleged Interference with a "Public Right" .............. 15

    C.  In Some States, the Nuisance Claims Also Fail Because Plaintiffs Have
        Not and Cannot Allege That Defendants "Controlled" the Paraquat ........................ 17

III.  CHEVRON MUST BE DISMISSED FROM ALL CLAIMS BASED ON
     POST-1990 EXPOSURES .......................................................................................... 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albrecht v. Gen. Motors Corp.*,
 648 N.W.2d 87 (Iowa 2002) ........................................................................................6

*Allison v. McGhan Med. Corp.*,
 184 F.3d 1300 (11th Cir. 1999) ...................................................................................7

*Angle v. Koppers, Inc.*,
 42 So. 3d 1 (Miss. 2010) .............................................................................................10

*Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*,
 815 F. Supp. 1266 (D. Minn. 1993) ............................................................................17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................2, 18, 19

*Bagby v. Gen. Motors, LLC*,
 No. 17-cv-00147, 2018 WL 2388595 (S.D. Ind. May 25, 2018)...............................5

*Bagnell v. Ford Motor Co.*,
 678 S.E.2d 489 (Ga. Ct. App. 2009) ..........................................................................7

*Bd. of Comm'rs v. Tenn. Gas Pipeline Co., LLC*,
 29 F. Supp. 3d 808 (E.D. La. 2014) ...........................................................................15

*Bd. of Water Works Trs. of Des Moines v. SAC Cnty. Bd. of Supervisors*,
 890 N.W.2d 50 (Iowa 2017) .......................................................................................17

*Blazek v. Nicolet, Inc.*,
 527 N.E.2d 568 (Ill. App. Ct. 1988) ...........................................................................5

*Boyce v. Cassese*,
 941 So.2d 932 (Ala. 2006) ..........................................................................................8

*Boyle v. Gen. Motors Corp.*,
 468 Mich. 226 (2003) ..................................................................................................9

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
 505 F.3d 1013 (10th Cir. 2007) ..................................................................................18

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
 137 S. Ct. 2042 (2017).................................................................................................8

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
 273 F.3d 536 (3d Cir. 2001).........................................................................................14

*Campbell v. Machias Sav. Bank*,
 865 F. Supp. 26 (D. Me. 1994) ....................................................................................9

*Capitol Props. Grp., LLC v. 1247 Ctr. St., LLC*,
 770 N.W.2d 105 (Mich. Ct. App. 2009) .....................................................................16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Cavender v. Medtronic, Inc.*,
  No. 16-cv-232, 2017 WL 1365354 (N.D. Ind. Apr. 14, 2017) ................................. 5

*Cherokee Nation v. McKesson Corp.*,
  No. 18-cv-056, 2021 WL 1181176 (E.D. Okla. Mar. 29, 2021) ............................ 16

*Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ........................................................................ 15

*City of Bloomington v. Westinghouse Elec. Corp.*,
  891 F.2d 611 (7th Cir. 1989) ......................................................................... 17

*City of Chi. v. Am. Cyanamid Co.*,
  823 N.E.2d 126 (Ill. App. Ct. 2005) .............................................................. 16

*City of Chi. v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ........................................................................... 15

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
  801 N.E.2d 1222 (Ind. 2003) ......................................................................... 15

*City of Phila. v. Beretta U.S.A., Corp.*,
  126 F. Supp. 2d 882 (E.D. Pa. 2000) ...................................................13, 14, 17

*City of Phila. v. Beretta U.S.A. Corp.*,
  277 F.3d 415 (3d Cir. 2002) ....................................................................16, 18

*City of Princeton v. Transamerica Delaval, Inc.*,
  No. 83 C 3155, 1985 WL 8052 (N.D. Ill. May 30, 1985) ................................. 12

*City of St. Louis v. Benjamin Moore & Co.*,
  226 S.W.3d 110 (Mo. 2007) (en banc) .......................................................... 16

*City of St. Louis v. Cernicek*,
  No. 02CC-1299, 2003 WL 22533578 (Mo. Cir. Ct. Oct. 15, 2003) .................... 14

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
  40 Cal. Rptr. 3d 313 (Ct. App. 2006) ............................................................. 15

*Cobbley v. City of Challis*,
  139 P.3d 732 (Idaho 2006) ............................................................................ 17

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020) .................................................................................. 18

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
  521 So.2d 857 (Miss. 1988) ........................................................................... 16

*Crabtree ex rel. Kemp v. Est. of Crabtree*,
  837 N.E.2d 135 (Ind. 2005) ........................................................................... 20

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cramer v. Ethicon, Inc.*,
No. 20-cv-95, 2021 WL 243872 (W.D.N.C. Jan. 25, 2021)....................................7

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014)....................................................................................................4

*Cutter v. Biomet, Inc.*,
244 F. Supp. 3d 793 (N.D. Ind. 2017) ...................................................................3

*Damron v. Media Gen., Inc.*,
3 S.W.3d 510 (Tenn. Ct. App. 1999) ......................................................................6

*Descoteau v. Analogic Corp.*,
696 F. Supp. 2d 138 (D. Me. 2010) ........................................................................9

*Det. Bd. of Educ. v. Celotex Corp.*,
493 N.W.2d 513 (Mich. Ct. App. 1992) ...............................................................14

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) .................................................................................6

*Drayton v. City of Lincoln City*,
260 P.3d 642 (Or. Ct. App. 2011)........................................................................16

*Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*,
405 F. Supp. 3d 408 (W.D.N.Y. 2019) .................................................................16

*Giordano v. Mkt. Am., Inc.*,
941 N.E.2d 727 (N.Y. 2010).................................................................................11

*GLJ, Inc. v. United States*,
505 F. Supp. 3d 863 (S.D. Iowa 2020) .................................................................15

*Golden v. Diocese of Buffalo*,
184 A.D.3d 1176 (N.Y. App. Div. 2020) ..............................................................16

*Good v. Howmedica Osteonics Corp.*,
Nos. 15-cv-10133, 15-cv-10134, 2015 WL 8175256 (E.D. Mich. Dec. 8, 2015) ....................9

*Grayson v. Lockheed Martin Corp.*,
No. 20-cv-1770, 2021 WL 2873465 (M.D. Fla. May 13, 2021) ...........................15

*Hanlin Grp., Inc. v. Int'l Mins. & Chem. Corp.*,
759 F. Supp. 925 (D. Me. 1990) ...........................................................................16

*Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*,
430 P.3d 362 (Ariz. 2018)....................................................................................15

*Ileto v. Glock, Inc.*,
349 F.3d 1191 (9th Cir. 2003) ..............................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    999 F.3d 534 (8th Cir. 2021) ..................................................................................3

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    MDL No. 2047, 2020 WL 2425783 (E.D. La. May 12, 2020) ..................................9

*In re Gen. Motors LLC Ignition Switch Litig.*,
    No. 14-md-2543, 2019 WL 952348 (S.D.N.Y. Feb. 27, 2019) ..................................6

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007)........................................................................................14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    457 F. Supp. 2d 298 (S.D.N.Y. 2006).....................................................................17

*In re Opioid Litig.*,
    No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018)....................17

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
    977 F. Supp. 2d 885 (N.D. Ill. 2013) .......................................................................3

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    No. 09-md-02100, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ...............................3

*Jerkins v. Lincoln Elec. Co.*,
    103 So. 3d 1 (Ala. 2011).............................................................................................8

*Johnson Cnty. v. U.S. Gypsum Co.*,
    580 F. Supp. 284 (E.D. Tenn. 1984).......................................................................18

*Kitsap Cnty. v. Kev, Inc.*,
    720 P.2d 818 (Wash. 1986) (en banc).....................................................................16

*Leppink v. Water Gremlin Co.*,
    944 N.W.2d 493 (Minn. Ct. App. 2020)..................................................................16

*Libbey v. Vill. of Atl. Beach*,
    982 F. Supp. 2d 185 (E.D.N.Y. 2013) .....................................................................19

*Louisiana v. Rowan Cos.*,
    728 F. Supp. 2d 896 (S.D. Tex. 2010) ....................................................................16

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014)........................................................................11

*May v. AC & S, Inc.*,
    812 F. Supp. 934 (E.D. Mo. 1993)..........................................................................12

*Mayo v. Simon*,
    646 So. 2d 973 (La. Ct. App. 1994).........................................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ....................................................................................................3

*McLaughlin v. Superintending Sch. Comm. of Lincolnville*,
   832 A.2d 782 (Me. 2003)................................................................................................9

*Mitchell v. Mich. Dep't of Corr.*,
   318 N.W. 2d 507 (Mich. Ct. App. 1982) ......................................................................17

*Moran v. Fed. Nat'l Mortg. Ass'n*,
   No. 12-cv-212, 2012 WL 2919529 (E.D. Va. July 17, 2012)........................................16

*Murphy v. Mancari's Chrysler Plymouth, Inc.*,
   887 N.E.2d 569 (Ill. App. Ct. 2008) ..............................................................................4

*Murphy v. Spelts–Schultz Lumber Co. of Grand Island*,
   481 N.W.2d 422 (Neb. 1992).......................................................................................10

*Newton v. MJK/BJK, LLC*,
   469 P.3d 23 (Idaho 2020)..............................................................................................15

*Nix v. Chemours Co. FC, LLC*,
   456 F. Supp. 3d 748 (E.D.N.C. 2019) ..........................................................................16

*Penelas v. Arms Tech., Inc.*,
   No. 99-1941, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) .....................................17

*People v. ConAgra Grocery Prods. Co.*,
   17 Cal. App. 5th 51 (2017) ...........................................................................................15

*Phillips 66 Co. v. Lofton*,
   94 So. 3d 1051 (Miss. 2012)..........................................................................................10

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005) ...............................................................................................18

*Ramirez v. City of Chi.*,
   129 N.E.3d 612 (Ill. App. Ct. 2019) .............................................................................20

*Reg'l Airport Auth. of Louisville & Jefferson Cnty. v. LFG, LLC*,
   255 F. Supp. 2d 688 (W.D. Ky. 2003)...........................................................................15

*Reybold Grp., Inc. v. Chemprobe Techs., Inc.*,
   721 A.2d 1267 (Del. 1998) ...........................................................................................18

*Richards v. Eli Lilly & Co.*,
   355 F. App'x 74 (7th Cir. 2009) ....................................................................................12

*Robertson v. Allied Signal, Inc.*,
   914 F.2d 360 (3d Cir. 1990)..........................................................................................18

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Rosenfeld v. Thoele*,
  28 S.W.3d 446 (Mo. Ct. App. 2000)................................................................17

*Russell Corp. v. Sullivan*,
  790 So. 2d 940 (Ala. 2001).........................................................................15

*Sadler v. State*,
  56 S.W.3d 508 (Tenn. Ct. App. 2001) ..............................................................16

*Simply Thick, LLC v. Thermo Pac, LLC*,
  No. 13-cv-1036, 2014 WL 3543403 (E.D. Mo. July 17, 2014)..............................20

*Snyder v. Bos. Whaler, Inc.*,
  892 F. Supp. 955 (W.D. Mich. 1994) ..............................................................12

*Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) ..............................................................17

*State ex rel. Jennings v. Purdue Pharma L.P.*,
  No. N18C-01-223, 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019)....................14

*State v. Lead Indus. Ass'n*,
  951 A.2d 428 (R.I. 2008)................................................................13, 14, 16, 17

*Statler v. Dell, Inc.*,
  841 F. Supp. 2d 642 (E.D.N.Y. 2012) ..............................................................11

*Stumler v. Ferry-Morse Seed Co.*,
  644 F.2d 667 (7th Cir. 1981) (per curiam)..........................................................12

*Thomas v. Countryside of Hastings, Inc.*,
  524 N.W.2d 311 (Neb. 1994)...........................................................................10

*Thunander v. Uponor, Inc.*,
  887 F. Supp. 2d 850 (D. Minn. 2012)...............................................................13

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*,
  984 F.2d 915 (8th Cir. 1993) .....................................................................13, 14

*Trentadue v. Gorton*,
  479 Mich. 378 (2007) ....................................................................................9

*Vega-Santana v. Nat'l R.R. Passenger Corp.*,
  956 F. Supp. 2d 556 (S.D.N.Y. 2013)...............................................................20

*Waltman v. Fahnestock & Co.*,
  792 F. Supp. 31 (E.D. Pa. 1992) .....................................................................20

*Williams v. Taylor Mach., Inc.*,
  529 So. 2d 606 (Miss. 1988).............................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Yaccarino v. Midland Nat'l Life Ins. Co.*,
   No. 11-cv-5858, 2013 WL 3200500 (C.D. Cal. June 17, 2013)............................................20

STATUTES

Ala. Code § 6-2-38..........................................................................................................................8

Ala. Code § 7-2-725......................................................................................................................12

Ariz. Rev. Stat. Ann. § 47-2725...................................................................................................12

Conn. Gen. Stat. § 42a-2-725.......................................................................................................12

Conn. Gen. Stat. § 52-572m............................................................................................................7

Conn. Gen. Stat. § 52-577a.............................................................................................................7

Ga. Code § 51-1-11..........................................................................................................................7

735 Ill. Comp. Stat. 5/13-213.....................................................................................................4, 5

810 Ill. Comp. Stat. 5/2-725.........................................................................................................12

Ind. Code § 26-1-2-725.................................................................................................................12

Ind. Code § 34-20-3-1.....................................................................................................................5

Iowa Code § 614.1............................................................................................................................6

Ky. Rev. Stat. Ann. § 355.2-725...................................................................................................12

La. Civ. Code Ann. art. 2534........................................................................................................12

La. Stat. Ann. § 51:1409...............................................................................................................12

Md. Code, Com. Law § 2-725.......................................................................................................12

Me. Rev. Stat. tit. 5, § 205-A..........................................................................................................9

Me. Rev. Stat. tit. 14, § 752............................................................................................................9

Mich. Comp. Laws § 445.901.......................................................................................................12

Mich. Comp. Laws § 600.2945.......................................................................................................9

Mich. Comp. Laws § 600.5805.......................................................................................................9

Mich. Comp. Laws § 600.5827.......................................................................................................9

Minn. Stat. § 336.2-725................................................................................................................12

Miss. Code Ann. § 15-1-49...........................................................................................................10

Miss. Code Ann. § 75-2-725.........................................................................................................12

Mo. Rev. Stat. § 400.2-725...........................................................................................................12

N.C. Gen. Stat. § 1-46.1.................................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

N.C. Gen. Stat. § 1-50 (1995) ..................................................................7

N.D. Cent. Code § 41-02-104 ................................................................12

N.Y. C.P.L.R. § 214-c ...........................................................................11

N.Y. Gen. Bus. Law § 349 .....................................................................11

N.Y. U.C.C. Law § 2-725 .......................................................................12

Neb. Rev. Stat. § 25-224 ........................................................................10

Neb. Rev. Stat. § 25-21,180 ...................................................................10

Neb. Rev. Stat. U.C.C. § 2-725 ..............................................................12

Okla. Stat. tit. 12A, § 2-725 ...................................................................12

13 Pa. Cons. Stat. § 2725 .......................................................................12

Tenn. Code Ann. § 29-28-102 ..................................................................6

Tenn. Code Ann. § 29-28-103 ..................................................................6

Tenn. Code Ann. § 47-2-725 ..................................................................12

Tex. Bus. & Com. Code § 2.725 .............................................................12

U.C.C. § 2-725 ................................................................................11, 12

Va. Code Ann. § 8.2-725 .......................................................................12

Wash. Rev. Code § 62A.2-725 ...............................................................12

Wis. Stat. § 402.725 ........................................................................11, 12

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009)......................................................4

Gifford, *Public Nuisance as a Mass Products Liability Tort*,
   71 U. Cinn. L. Rev. 741 (2003) ..........................................................14

2009 N.C. Sess. Laws 420 .......................................................................7

Restatement (First) of Conflict of Laws (1934).......................................16

Restatement (Second) of Conflict of Laws (1971) ...................................16

Restatement (Second) of Torts (1979)................................................16, 17

Schwartz & Goldberg, *The Law of Public Nuisance: Maintaining Rational
   Boundaries on a Rational Tort*, 45 Washburn L.J. 541 (2006) ..............14

## INTRODUCTION

Defendant Chevron U.S.A. Inc. ("Chevron") recognizes that the core claims in this MDL—product liability claims asserting that Plaintiffs developed Parkinson's disease because of exposure to paraquat—will require factual development before they are ripe for resolution.  But Plaintiffs have overreached in ways that are properly addressed on the pleadings.  To clean up the docket, streamline the litigation, narrow the disputes, and focus the parties' attention on the critical legal and factual issues, Defendants seek—through this motion and the motion filed by Defendant Syngenta Crop Protection LLC ("Syngenta"), which Chevron joins—to eliminate those cases and claims that are not legally viable.

To start, many of the cases are time-barred, in whole or in part.  While some states apply a fact-dependent "discovery rule" to determine accrual of tort claims based on latent disease, other states have chosen to provide certainty for product manufacturers and distributors through statutes of repose that extinguish liability a fixed number of years after the product's sale.  And in some states, claims accrue when the disease manifests, even if the plaintiff denies recognizing any causal link to the defendant's conduct.  Plaintiffs have also asserted warranty claims, which in most states are *not* subject to any discovery rule and instead expire a fixed number of years after "tender."  In states governed by these rules, many Plaintiffs' claims are time-barred as a matter of law.

In addition, about half of Plaintiffs have asserted public nuisance claims.  That cause of action is legally inapposite.  Courts around the country have recognized that plaintiffs cannot avoid limits on products liability merely by slapping the "nuisance" label on the sale of lawful products.  This is not a case where a defendant invaded public rights by polluting a common water source or the environment through its operations.  It is a classic products liability case, involving sale of an herbicide that, when applied on private farms, was allegedly dangerous to the individuals exposed to it.  That means Plaintiffs cannot plausibly allege the elements of public nuisance.

1

Finally, although Plaintiffs acknowledge that Chevron ceased distributing paraquat 35 years ago, some Plaintiffs nonetheless name Chevron as a Defendant in cases alleging exposure that long post-dates that 1986 departure from the market.  There is no plausible basis to infer that products distributed by Chevron harmed Plaintiffs who were allegedly exposed to paraquat in the 1990s or 2000s.  The Court should dismiss Chevron as a Defendant in those actions.

## LEGAL STANDARD

"To survive a motion to dismiss," Plaintiffs must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This requires more than "a sheer possibility" of liability.  *Id.*  And while a court must accept well-pleaded facts as true and draw reasonable inferences in Plaintiffs' favor, "legal conclusions" and "conclusory statements … do not suffice" to state a claim.  *Id.*

## ARGUMENT

### I.   MANY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Given that paraquat has been registered for use as an herbicide in the United States for over 50 years—and, indeed, that Chevron *ceased* distributing paraquat in 1986—it is not surprising that many of the claims in this MDL are time-barred.  *First*, some states have adopted statutes of repose that extinguish all liability (or certain forms of liability) a fixed number of years after the sale of a product.  *Second*, in some states, causes of action accrue—and the statute of limitations begins to run—upon exposure to the allegedly toxic substance, or when symptoms of that exposure manifest or are diagnosed, even if the plaintiff did not know about the alleged causal link to the defendant's acts.  *Third*, the majority rule for implied warranty claims is that the cause of action accrues, and the limitations period begins to run, at the time of the tender for delivery.

Importantly, determining which legal rule applies to any given case requires a choice-of-law analysis.  Choice-of-law rules are dictated by the forum state, which in the MDL context means "where the case originated."  *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013).  If a case was directly filed in the MDL, courts treat it as "originating" in the state where the plaintiff used the product at issue, or where the plaintiff alleges he would otherwise have filed his suit.  *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 09-md-02100, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) (where product was used); *Cutter v. Biomet, Inc.*, 244 F. Supp. 3d 793, 800 (N.D. Ind. 2017) (same); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 999 F.3d 534, 539 (8th Cir. 2021) (describing order authorizing plaintiffs to designate venue where they would have sued).

Either way, the "originating" state's choice-of-law rules might require applying that state's *own* statute of repose or limitations, if the state treats the issue as "procedural."  *E.g.*, *Williams v. Taylor Mach., Inc.*, 529 So. 2d 606, 609 (Miss. 1988).  Alternatively, the originating state's choice-of-law rules might require applying the time bars of the state where the underlying tortious conduct or injury allegedly occurred.  *E.g.*, *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87 (2010) (whether to apply California or foreign state's time bars "must be determined through application of the governmental interest analysis that governs choice-of-law issues generally").

For purposes of this motion, the analysis below sets forth the legal rules that apply to the Current Actions in this MDL.  The Appendix then identifies, by reference to the applicable choice-of-law rules, which cases and claims are governed by each of these legal rules.[1]

---

[1] Chevron seeks dismissal through this motion only of claims that the pleadings themselves establish are time-barred.  In certain cases—either because the complaints fail to provide critical dates, or because of factual questions relating to the "discovery rule"—more factual development will be necessary to determine timeliness.  Chevron thus anticipates filing a second round of motions addressed to statutes of repose and limitations later in this litigation.

## A.      Many Claims Are Barred by State Statutes of Repose.

A statute of repose, like a statute of limitations, is a "mechanism[] used to limit the temporal extent or duration of liability for tortious acts." *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014). But unlike statutes of limitations, which measure that time limit from "'the date when the claim accrued,'" statutes of repose bar any suit "'brought after a specified time since the defendant acted,'" "'even if this period ends before the plaintiff has suffered a resulting injury.'" *Id.* at 7-8 (quoting Black's Law Dictionary 1546 (9th ed. 2009)).  These statutes are designed to provide defendants with "a fresh start," and accordingly are not subject to tolling doctrines. *Id.* at 9.

As relevant here, some states have enacted statutes of repose that foreclose product liability (or certain types of liability) a certain number of years after the sale of the product.  For purposes of this MDL, the analysis below takes the conservative approach of treating the end of the alleged exposure period as a proxy for the last possible date of sale.  For example, if a state has a 15-year repose period and a plaintiff alleges exposure from 1970 until 1985, claims encompassed by that statute would be barred by no later than 2000 and therefore subject to dismissal here.

**Illinois**' statute of repose requires strict product liability claims to be brought within the earlier of "12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller." 735 Ill. Comp. Stat. 5/13-213(b); *see also Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 572 (Ill. App. Ct. 2008) (explaining why this statute of repose is limited to strict liability claims).[2]

---

[2] The statute recognizes two exceptions, neither relevant to any Current Actions. *First*, if "the defendant expressly has warranted or promised the product for a longer period," the claim is not barred. 735 Ill. Comp. Stat. 5/13-213(b).  Defendants made no express warranties; Plaintiffs do not allege otherwise. *Second*, "if injury complained of occurs within [the 12- or 10-year period], the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal

4

In cases governed by Illinois law where the alleged paraquat exposure ended more than 10 years before the Plaintiff sued, strict liability claims must be dismissed.  In other words, any suit alleging exposure that ended by 2010 or 2011 necessarily involved paraquat that was sold before then, and strict-liability claims arising from those sales are barred.[3]  *See* Appx. at pp. 1-2 (list).

The **<u>Indiana</u>** statute of repose provides that "a product liability action must be commenced … within ten (10) years after the delivery of the product to the initial user or consumer."  Ind. Code § 34-20-3-1(b)(2); *see, e.g.*, *Bagby v. Gen. Motors, LLC*, No. 17-cv-00147, 2018 WL 2388595, at *1-2 (S.D. Ind. May 25, 2018).  This statute applies to claims "in which the theory of liability is negligence or strict liability in tort," Ind. Code § 34-20-3-1(a), and also extends to "breach of warranty" claims that allege "tortious personal injury," *Cavender v. Medtronic, Inc.*, No. 16-cv-232, 2017 WL 1365354, at *6-7 (N.D. Ind. Apr. 14, 2017).[4]

In cases governed by Indiana law, all strict liability, negligence, and warranty claims must therefore be dismissed where Plaintiffs' alleged exposure ended more than ten years before they sued.  *See* Appx. at p. 3 (list).

---

injury, ... but in no event shall such action be brought more than 8 years after the date on which such personal injury ... occurred."  *Id.* 5/13-213(d).  This latter exception does not apply to any of Plaintiffs' otherwise-barred claims because no such Plaintiff alleges that his injury occurred both within 12 years after the initial sale of the paraquat *and* less than 8 years before his suit.

[3] This includes claims alleging exposure prior to the statute of repose's enactment in 1979, because all such claims *accrued* after 1979.  *See* 735 Ill. Comp. Stat. 5/13-213(g) ("The provisions of this Section ... apply to any cause of action accruing on or after January 1, 1979, involving any product which was in or entered the stream of commerce prior to, on, or after January 1, 1979."); *see also Blazek v. Nicolet, Inc.*, 527 N.E.2d 568, 571 (Ill. App. Ct. 1988) (barring a claim brought seven years after enactment of statute of repose, because plaintiff had "reasonable amount of time after the effective date of the [statute] in which to file her cause of action").

[4] Similar to Illinois, if "the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery," then "the action may be commenced at any time within two (2) years after the cause of action accrues."  Ind. Code § 34-20-3-1(b)(2).  None of the Current Actions present that scenario, however.

In **<u>Tennessee</u>**, "[a]ny action against a manufacturer or seller of a product for injury to person ... must be brought ... within ten (10) years from the date on which the product was first purchased for use." Tenn. Code Ann. § 29-28-103(a); *see, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543, 2019 WL 952348, at *3 (S.D.N.Y. Feb. 27, 2019). The statute covers "all actions seeking to recover for personal injuries" allegedly "caused by defective or unreasonably dangerous products," "'under any substantive legal theory in tort or contract.'" *Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 512 (Tenn. Ct. App. 1999) (quoting Tenn. Code Ann. § 29-28-102(6)).

Actions subject to Tennessee's statute of repose are therefore entirely barred if they were brought more than 10 years after Plaintiffs' alleged exposure (and thus, by definition, more than 10 years after the paraquat's purchase for use). *See* Appx. at p. 4 (list).

In **<u>Iowa</u>**, product claims "based upon an alleged defect ... or failure of whatever nature or kind, based on the theories of strict liability in tort, negligence, or breach of an implied warranty shall not be commenced more than fifteen years after the product was first purchased." Iowa Code § 614.1(2A)(a)[5]; *e.g.*, *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 95 (Iowa 2002).

In cases governed by Iowa substantive law and involving exposure (and therefore sale) more than 15 years before Plaintiffs sued, all strict liability, negligence, and warranty claims must therefore be dismissed. *See* Appx. at p. 5 (list).

---

[5] The Iowa statute includes an exception for latent diseases allegedly caused by "exposure to a harmful material," but paraquat does not qualify under the statutory definition of that phrase, because neither Iowa nor the federal EPA has determined that paraquat presents "an unreasonable risk of injury to health or the environment." Iowa Code § 614.1(2A)(b)(1)-(2). Iowa's statute also excepts express warranties, *see id.* § 614.1(2A)(a), but for the reasons discussed *supra* at n.2, that exception does not apply here. Finally, the Iowa statute does not apply if the seller "intentionally misrepresents facts about the product or fraudulently conceals information about the product and that conduct was a substantial cause of the claimant's harm." Iowa Code § 614.1(2A)(a). But Plaintiffs have not alleged intentional fraud, let alone sufficiently pleaded any such claim with the particularity required by Federal Rule of Civil Procedure 9(b). *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In **<u>Georgia</u>**, strict product liability claims are barred "after ten years from the date of the [product's] first sale for use." Ga. Code § 51-1-11(b)(2), (c); *see, e.g.*, *Bagnell v. Ford Motor Co.*, 678 S.E.2d 489, 493 (Ga. Ct. App. 2009) (strict liability design-defect claim); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1307 (11th Cir. 1999) (strict liability failure-to-warn claim).

In cases subject to Georgia's statute of repose and involving exposure more than 10 years before Plaintiffs sued, all strict liability claims must be dismissed. *See* Appx. at p. 6 (list).

In **<u>North Carolina</u>**, product liability actions "brought more than 12 years after the date of initial purchase" are barred. N.C. Gen. Stat. § 1-46.1. Although this 12-year limit applies only to causes of action "that accrue on or after" October 1, 2009, 2009 N.C. Sess. Laws 420 § 3, any earlier claims are subject to the *more stringent* predecessor statute, which imposed a 6-year limit, *see* N.C. Gen. Stat. § 1-50(a)(6) (1995). Both versions of the statute of repose broadly apply to all claims seeking "recovery of damages for personal injury ... based upon or arising out of any alleged defect or any failure in relation to a product." *Id.* § 1-46.1; *id.* § 1-50(a)(6) (1995); *see Cramer v. Ethicon, Inc.*, No. 20-cv-95, 2021 WL 243872, at *4 (W.D.N.C. Jan. 25, 2021) (barring strict liability, negligence, implied warranty, and consumer fraud claims).

Therefore, actions governed by North Carolina law that allege exposure ending more than 12 years before Plaintiffs sued must be dismissed in their entirety. *See* Appx. at p. 7 (list).

**<u>Connecticut's</u>** statute of repose bars product liability actions on any theory filed "later than ten years from the date that the [defendant] last parted with possession or control of the product." Conn. Gen. Stat. § 52-577a; *see also id.* § 52-572m(b) (defining product liability claim).[6]

---

[6] The statute recognizes an exception for claimants who can prove that their harms occurred during the "useful safe life of the product," Conn. Gen. Stat. § 52-577a(c), but Plaintiffs make no such allegations. And for the same reasons explained above, the exceptions for express warranties or for fraud, *see id.* § 52-577a(d), do not apply to this MDL either. *Supra* nn.2 & 5.

Actions governed by Connecticut law thus must be dismissed entirely if the paraquat was used (and so left Defendants' control) more than 10 years before the suit.  *See* Appx. at p. 8 (list).

## B.    Many Claims Are Barred by Applicable Statutes of Limitations.

Even where no statute of repose applies, many claims are nonetheless barred by the statute of limitations.  The key question is when the limitation period begins to run, which is usually when the claim "accrues."  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042, 2049 (2017). State law varies regarding when a claim based on latent injury "accrues."  In some states, the "discovery rule" provides that claims do not accrue until a reasonable person would be aware of both the injury and its cause.  Applying that rule presents questions about actual and constructive notice; more factual development is therefore needed before claims governed by that rule can be dismissed.  In other states, however, accrual turns on the date when *the injury* occurred or was discovered, regardless of the plaintiff's (lack of) knowledge of its cause.  In many cases governed by those states' laws, Plaintiffs' claims are time-barred based on the face of the Complaints.

Specifically, for the Current Actions, six states (Alabama, Maine, Michigan, Mississippi, Nebraska, and New York) have accrual rules that do not hinge on the plaintiff's discovery of the cause of injury, and many of the claims governed by those states' law are time-barred.[7]

In **Alabama**, personal injury claims are governed by a 2-year statute of limitations.  Ala. Code § 6-2-38(*l*); *Boyce v. Cassese*, 941 So.2d 932, 945 (Ala. 2006).  Where claims are based on exposure to an allegedly toxic substance, if the last exposure occurred prior to 2006, the cause of action "accrue[d] on the date of the last exposure to that toxic substance—even if there is no manifest injury at that time."  *Jerkins v. Lincoln Elec. Co*., 103 So. 3d 1, 5 (Ala. 2011).

---

[7] Certain other states also apply accrual rules based on the date of injury, but those rules do not result in dismissal of any claims in the Current Actions, either because none are governed by those states' laws or because Plaintiffs allege injuries that manifested within the limitation periods.

Thus, any claims governed by the Alabama statute of limitations are barred if based on pre-2006 exposure to paraquat.  For later exposures, "the limitations period is triggered by discovery of the damage or injury itself, regardless of whether the plaintiff can identify the cause of the damage or whether the full scope of the injury has been recognized."  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2020 WL 2425783, at *4 (E.D. La. May 12, 2020). Such claims are barred no later than 2 years after diagnosis.  *See* Appx. at p. 9 (list).

In **Maine**, civil actions are governed by a default 6-year limitation period.  Me. Rev. Stat. tit. 14, § 752.  That period begins running at "the point at which a wrongful act produces an injury," *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 832 A.2d 782, 788 (Me. 2003), because Maine rejects the discovery rule outside three inapplicable contexts, *see Descoteau v. Analogic Corp.*, 696 F. Supp. 2d 138, 140-42 (D. Me. 2010).  For that same reason, claims under the Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A, accrue at the time of injury, not discovery.  *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 33-34 (D. Me. 1994).

Tort and statutory claims under Maine law, therefore, accrue no later than the date of the Plaintiff's diagnosis, and are barred no later than 6 years later.  *See* Appx at p. 10 (list).

In **Michigan**, claims for injuries "caused by or resulting from the production of a product" are subject to a 3-year statute of limitations.  Mich. Comp. Laws §§ 600.2945(h) & 600.5805(12). By statute, these claims accrue when "the wrong upon which the claim is based was done."  *Id.* § 600.5827.  Michigan courts have held that "[t]he wrong is done when the plaintiff is harmed." *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 231 n.5 (2003).  Because the statute "precludes the use of a broad common-law discovery rule," *Trentadue v. Gorton*, 479 Mich. 378, 407 (2007), the claim accrues "at the first moment of harm," *Good v. Howmedica Osteonics Corp.*, Nos. 15-cv-10133, 15-cv-10134, 2015 WL 8175256, at *3 (E.D. Mich. Dec. 8, 2015).

Claims governed by the Michigan statute of limitations are therefore barred no later than 3 years after a Plaintiff's diagnosis.  *See* Appx. at p. 11 (list).

In **<u>Mississippi</u>**, a 3-year statute of limitations generally applies to civil claims.  Miss. Code Ann. § 15-1-49(1); *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1059 (Miss. 2012).   In actions involving "latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."  Miss. Code Ann. § 15-1-49(2).  This provision, importantly, requires only "discovery of the injury, *not discovery of the injury and its cause.*"  *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010).

Claims governed by the Mississippi statute of limitations are thus barred no later than 3 years after diagnosis or manifestation of symptoms.  *See* Appx. at p. 12 (list).

In **<u>Nebraska</u>**, claims for injuries "caused by … the manufacture, construction, design, formulation, . . . testing, packaging, or labeling of any product" are governed by a 4-year limitation period.  Neb. Rev. Stat. §§ 25-21,180 & 25-224.  That period "'begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage.'"  *Murphy v. Spelts–Schultz Lumber Co. of Grand Island*, 481 N.W.2d 422, 428 (Neb. 1992).  "Discovery refers to the fact that one knows of the existence of an injury or damage and not that one knows who or what may have caused that injury or damage."  *Thomas v. Countryside of Hastings, Inc.*, 524 N.W.2d 311, 313 (Neb. 1994).

Claims under Nebraska law are thus barred no later than 4 years after diagnosis.  *See* Appx. at p. 13 (list).

In **<u>New York</u>**, the 3-year statute of limitations applicable to "an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance" runs "from the date of discovery of *the injury* by the plaintiff or from the date when through the

exercise of reasonable diligence *such injury* should have been discovered by the plaintiff[.]"  N.Y. C.P.L.R. § 214-c(2) (emphasis added).  Actions under New York's consumer protection statute, N.Y. Gen. Bus. Law § 349, likewise "accrue when a plaintiff is injured by the actions alleged to have violated the Statute," *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014).  Accrual "is not dependent upon any date when discovery of the alleged deceptive practice is said to occur."  *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012).[8]

Claims governed by the New York rule are thus barred no later than 3 years after Plaintiffs' diagnoses.  *See* Appx. at p. 14 (list).

### C.      Most Warranty Claims Are Also Time-Barred.

The Uniform Commercial Code—adopted in relevant part by most states—imposes a four-year limitation period for an action for breach of any contract for sale, U.C.C. § 2-725(1), including personal injury actions based on a breach of implied warranty.  A handful of states have adopted a modified rule with a five- or six-year limitations period.  *E.g.*, Wis. Stat. § 402.725(1).

In those states, the limitation period begins to run "when the breach occurs"—*i.e.*, "when tender of delivery is made"—and that is so "regardless of the aggrieved party's lack of knowledge of the breach."  U.C.C. § 2-725(2).  In other words, "a breach of an implied warranty is complete when a defective product is delivered, and the statute of limitations begins running at delivery,

---

[8] For tort claims, if the "discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury," the period can be extended for an additional year after "such discovery of the cause of the injury."  N.Y. C.P.L.R. § 214-c(4).  To invoke the extended limitations period, however, a plaintiff must "allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of [the] injury had not been discovered, identified or determined" at the earlier time.  *Id.*  That inquiry turns not on *plaintiff's* awareness, but on the broader knowledge of the "technical, scientific or medical community."  *Giordano v. Mkt. Am., Inc.*, 941 N.E.2d 727, 733 (N.Y. 2010).  This exception is inapplicable here because no Plaintiff alleges that (i) the cause of injury was discovered within five years after the injury and within one year before bringing suit, or (ii) that the alleged causal link was beyond the knowledge of the broader "medical community" when the default limitations period expired.

even if the buyer could not discover the defect until later." *Richards v. Eli Lilly & Co.*, 355 F. App'x 74, 75 (7th Cir. 2009); *see also Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667, 669 (7th Cir. 1981) (per curiam) (claim accrued when farmer received "delivery of the seed," even though he could not have discovered he received a different varietal until he harvested tomatoes later).[9]

Under this approach, claims for breach of implied warranty are barred when paraquat was delivered more than four, five, or six years before the suit.  As relevant to the Current Actions, this rule governs in: Alabama, Arizona, Connecticut, Illinois, Indiana, Kentucky, Louisiana, Maryland, Minnesota, Mississippi, Missouri, Nebraska, New York, North Dakota, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Washington, and Wisconsin.[10]  *See* Appx. at pp. 15-27 (list).

Several states also apply the same transaction-based accrual rule to claims under consumer protection statutes.  Specifically, claims under Louisiana's Unfair Trade Practice and Consumer Protection Act are barred one year after "the time of the transaction or act which gave rise to this right of action."  La. Stat. Ann. § 51:1409(E); *see also Mayo v. Simon*, 646 So. 2d 973, 976 (La. Ct. App. 1994).  Michigan's Consumer Protection Act, Mich. Comp. Laws § 445.901, is governed by a 6-year limitation period, with claims accruing upon "occurrence" of the violation, which is construed to be "the time of purchase."  *Snyder v. Bos. Whaler, Inc.*, 892 F. Supp. 955, 959 (W.D.

---

[9] The discovery rule does apply "where a warranty explicitly extends to future performance of the goods," U.C.C. § 2-725(2), but that rule "is inapplicable to ... implied warranty claims*,"* which "by definition can never explicitly encompass future performance," *City of Princeton v. Transamerica Delaval, Inc.*, No. 83 C 3155, 1985 WL 8052, at *5 n.5 (N.D. Ill. May 30, 1985); *see also May v. AC & S, Inc.*, 812 F. Supp. 934, 944 (E.D. Mo. 1993).  Plaintiffs here allege *implied* warranty.

[10] *See* Ala. Code § 7-2-725; Ariz. Rev. Stat. Ann. § 47-2725; Conn. Gen. Stat. § 42a-2-725; 810 Ill. Comp. Stat. 5/2-725; Ind. Code § 26-1-2-725; Ky. Rev. Stat. Ann. § 355.2-725; La. Civ. Code Ann. art. 2534 (for good-faith sellers); Md. Code, Com. Law § 2-725; Minn. Stat. § 336.2-725; Miss. Code Ann. § 75-2-725; Mo. Rev. Stat. § 400.2-725; Neb. Rev. Stat. U.C.C. § 2-725; N.Y. U.C.C. Law § 2-725; N.D. Cent. Code § 41-02-104; Okla. Stat. tit. 12A, § 2-725; 13 Pa. Cons. Stat. § 2725; Tenn. Code Ann. § 47-2-725; Tex. Bus. & Com. Code § 2.725; Va. Code Ann. § 8.2-725; Wash. Rev. Code § 62A.2-725; Wis. Stat. § 402.725.

Mich. 1994).  Finally, the Minnesota consumer fraud and deceptive trade practices statutes are subject to a 6-year limitation period that "begins to run on the date of sale" and "not delayed based on the discovery of a potential claim." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 876 (D. Minn. 2012).  *See* Appx. at pp. 28-29 (list).

## II.   PLAINTIFFS CANNOT REPACKAGE PRODUCTS LIABILITY CLAIMS AS NUISANCE CLAIMS.

Claims based solely on sale of a lawful product—without more—sound in product liability, not public nuisance.  Courts have consistently rejected the "clever, but transparent attempt" to evade limits on products liability by invoking the nuisance cause of action instead.  *City of Phila. v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 911 (E.D. Pa. 2000).  Doctrinally, selling allegedly harmful products does not impair a "public right," which is an element of the tort in all states that govern the public nuisance claims in the Current Actions.  In some states, the sale of a product cannot give rise to nuisance liability for another reason too: The seller lacks "control" over the instrumentality of the nuisance when the injury occurred.  Either way, Plaintiffs' contrary theory would end-run important limits of products-liability law developed over decades to ensure a careful policy balance.  Plaintiffs' public nuisance claims thus fail as a matter of law.

### A.    Courts Do Not Allow Public Nuisance Claims To Be Based Solely on the Sale of Lawful Products, Absent Additional Allegations of Wrongdoing.

Courts have long recognized that, to avoid turning nuisance law into "a monster that would devour in one gulp the entire law of tort," *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993), the boundaries between products liability and nuisance must be respected.  A claim based solely on the defendant's sale or distribution of an allegedly harmful product—without any other allegations of wrongdoing—sounds in products liability, which is "designed specifically to hold manufacturers liable for harmful products." *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456 (R.I. 2008).  Otherwise, plaintiffs would be able to end-run important "requirements that surround

13

a products liability action," which have developed over decades to ensure a careful policy balance.

*See id.*; *see also* Schwartz & Goldberg, *The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort*, 45 Washburn L.J. 541, 552 (2006); Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cinn. L. Rev. 741, 767 (2003).

For these reasons, courts "refus[e] to apply" nuisance law "in the context of injuries caused by defective product design and distribution," absent allegations of some additional wrongdoing. *City of Phila.*, 126 F. Supp. 2d at 909; *see also, e.g.*, *In re Lead Paint Litig.*, 924 A.2d 484, 501 (N.J. 2007) (distinguishing "public nuisance realm" as "entirely different" from selling "ordinary, unregulated consumer product"); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) ("[T]he courts have enforced the boundary between the well-developed body of product liability law and public nuisance law."); *Lead Indus.*, 951 A.2d at 456 ("The law of public nuisance never before has been applied to products, however harmful.").[11] Only where there is some "plus" factor—where *other* aspects of a defendant's conduct, beyond merely selling a lawful product, created the nuisance—have courts allowed claims to proceed.  For example, the California Court of Appeal allowed a governmental entity to sue lead manufacturers on a nuisance theory seeking abatement, not damages, because that claim was "not premised on a defect in a product or a failure to warn but on affirmative conduct that assisted in the creation of a

---

[11] *See also Tioga*, 984 F.2d at 920 (failing to find "any North Dakota cases extending the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance"); *Det. Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) ("[M]anufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect."); *State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019) ("In Delaware, public nuisance claims have not been recognized for products."); *City of St. Louis v. Cernicek*, No. 02CC-1299, 2003 WL 22533578, at *2 (Mo. Cir. Ct. Oct. 15, 2003) ("The attempt here is not only to blur, but obliterate, the line that s[e]parates *public nuisance* claims from those based on *product liability* law.").

hazardous condition," namely "affirmative promotion of lead paint for interior use, not their mere manufacture and distribution." *Cnty. of Santa Clara v. Atl. Richfield Co.*, 40 Cal. Rptr. 3d 313, 328 (Ct. App. 2006); *see also, e.g., Ileto v. Glock, Inc.*, 349 F.3d 1191, 1201, 1210-14 (9th Cir. 2003) (allowing nuisance claim against firearms manufacturer where plaintiffs "d[id] not allege that the guns in question were defectively designed or manufactured or that the defendants failed to affix an adequate warning on the guns" but rather that defendants had allegedly generated the nuisance by "creating an illegal secondary market for guns"); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002) (similar).

Here, Plaintiffs are squarely attacking the product itself rather than some additional conduct that created any alleged nuisance.  Indeed, many Plaintiffs appear to have nearly copied-and-pasted their core products liability theories under a public nuisance label, and they make no allegations of the type that have sufficed to elevate a products liability case into a nuisance case.[12]

### B.    Plaintiffs Have Not Alleged Interference with a "Public Right."

Doctrinally, many states enforce this line between products liability and nuisance through the "public right" element of nuisance.  *City of Chi. v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1114 (Ill. 2004).  Indeed, every state whose law governs a Current Action asserting a nuisance claim maintains that traditional, definitional requirement,[13] and Plaintiffs cannot plead it.

---

[12] For essentially the same reasons, public nuisance claims are precluded in the states that have comprehensive and exclusive statutory regimes governing products liability.  On this point, Chevron incorporates the arguments in Part I.A of Syngenta's motion to dismiss.

[13] *Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001); *Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 430 P.3d 362, 365 (Ariz. 2018); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 79 (2017); *Grayson v. Lockheed Martin Corp.*, No. 20-cv-1770, 2021 WL 2873465, at *3 (M.D. Fla. May 13, 2021) (Florida law); *Newton v. MJK/BJK, LLC*, 469 P.3d 23, 35 (Idaho 2020); *City of Chi.*, 821 N.E.2d at 1113; *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 12333 (Ind. 2003); *GLJ, Inc. v. United States*, 505 F. Supp. 3d 863, 878 (S.D. Iowa 2020) (Iowa law); *Reg'l Airport Auth. of Louisville & Jefferson Cnty. v. LFG, LLC*, 255 F. Supp. 2d 688, 692 (W.D. Ky. 2003) (Kentucky law); *Bd. of Comm'rs v. Tenn. Gas Pipeline*

A "public right" is one "common to all members of the general public," like "the public health, the public safety, the public peace, the public comfort or the public convenience"—*e.g.*, the right to use "a public bathing beach."  Restatement (Second) of Torts § 821B(2)(a) & cmt. g (1979).  It "is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."  *Id.*  Invasion of "a public right" therefore requires "more than an aggregate of private rights by a large number of injured people." *Lead Indus.*, 951 A.2d at 448; *see also City of Chi. v. Am. Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005) (public right is not "an assortment of claimed private individual rights" but rather "an indivisible resource shared by the public at large, like air, water, or public rights-of-way"); *Golden v. Diocese of Buffalo*, 184 A.D.3d 1176, 1177 (N.Y. App. Div. 2020) ("Conduct does not become a public nuisance merely because it interferes with ... a large number of persons. There must be some interference with a public right.  A public right is one common to all members of the general public.").

---

*Co., LLC*, 29 F. Supp. 3d 808, 855 (E.D. La. 2014) (Louisiana law); *Hanlin Grp., Inc. v. Int'l Mins. & Chem. Corp.*, 759 F. Supp. 925, 935 (D. Me. 1990) (Maine law); *Capitol Props. Grp., LLC v. 1247 Ctr. St., LLC*, 770 N.W.2d 105, 110 (Mich. Ct. App. 2009); *Leppink v. Water Gremlin Co.*, 944 N.W.2d 493, 499 (Minn. Ct. App. 2020); *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So.2d 857, 860 (Miss. 1988); *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007) (en banc); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*, 405 F. Supp. 3d 408, 441 (W.D.N.Y. 2019) (New York law); *Nix v. Chemours Co. FC, LLC*, 456 F. Supp. 3d 748, 761 (E.D.N.C. 2019) (North Carolina law); *Cherokee Nation v. McKesson Corp.*, No. 18-cv-056, 2021 WL 1181176, at *5 (E.D. Okla. Mar. 29, 2021) (Oklahoma law); *Drayton v. City of Lincoln City*, 260 P.3d 642, 645 (Or. Ct. App. 2011); *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 420 (3d Cir. 2002); *Sadler v. State*, 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001); *Louisiana v. Rowan Cos.*, 728 F. Supp. 2d 896, 905 (S.D. Tex. 2010) (Texas law); *Moran v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-212, 2012 WL 2919529, at *4 (E.D. Va. July 17, 2012) (Virginia law); *Kitsap Cnty. v. Kev, Inc.*, 720 P.2d 818, 821 (Wash. 1986) (en banc).  In the Current Actions asserting public nuisance claims, the alleged exposures occurred in these 24 states, and their law presumptively governs under both the traditional *lex loci delicti* choice-of-law rule and the more modern "most significant relationship" standard.  *See generally* Restatement (First) of Conflict of Laws §§ 377, 379 (1934); Restatement (Second) of Conflict of Laws § 146 (1971).

The right to be free from a defective product is not a right common to all members of the general public.  *See Lead Indus.*, 951 A.2d at 448.  Nor could the right here be conceived of as the right to public health.  Interference with public health means things like "keeping diseased animals or the maintenance of a pond breeding malarial mosquitoes," threatening the health of the public at large.  Restatement (Second) of Torts § 821B cmt. b; *see also, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) (contaminated aquifer).  Even cases taking the broadest view of "public health" have still required an "epidemic" or "crisis" affecting wide swaths of the population—and imposing corresponding costs on the public fisc— before finding nuisance theories viable.  *E.g.*, *In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *22 (N.Y. Sup. Ct. June 18, 2018).  Here, paraquat is a product used only by certain individuals—specifically registered to do so—in the course of private employment.  Even under Plaintiffs' theory, there was no harm to the public at large.  For that reason, Plaintiffs have not pleaded interference with public rights, and their public nuisance claims must be dismissed.

## C.     In Some States, the Nuisance Claims Also Fail Because Plaintiffs Have Not and Cannot Allege That Defendants "Controlled" the Paraquat.

Some states have adopted another element of nuisance liability that independently defeats the claims.  In 11 of the relevant states, Plaintiffs must allege that Defendants had "*control* over the instrumentality causing the alleged nuisance *at the time the damage occurs*."  *Lead Indus.*, 951 A.2d at 449.[14]  It "would run contrary to notions of fair play" to hold sellers liable when "they lack direct control over how end-purchasers use" the product.  *City of Phila.*, 126 F. Supp. 2d at 911.

---

[14] *See Penelas v. Arms Tech., Inc.*, No. 99-1941, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999); *Cobbley v. City of Challis*, 139 P.3d 732, 736 (Idaho 2006); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (Indiana law); *Bd. of Water Works Trs. of Des Moines v. SAC Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 63 (Iowa 2017); *Mitchell v. Mich. Dep't of Corr.*, 318 N.W.2d 507, 508 (Mich. Ct. App. 1982); *Appletree Square 1 Ltd. P'ship v. W.R. Grace & Co.*, 815 F. Supp. 1266, 1274 n.13 (D. Minn. 1993) (Minnesota law); *Rosenfeld v. Thoele*, 28 S.W.3d 446, 451 (Mo. Ct. App. 2000); *Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d

17

Here, Plaintiffs' injuries allegedly resulted from paraquat application that occurred only after the product had left Defendants' control and entered the stream of commerce. For this reason too, Plaintiffs' claims legally fail in the states that impose a "control" element.

For all of these reasons, the Court should dismiss the nuisance claims as a matter of law. The cases asserting such claims are identified in the Appendix at pp. 30-34. The claims subject to dismissal for the additional reason in Part II.C are separately denoted on the same chart.

## III. CHEVRON MUST BE DISMISSED FROM ALL CLAIMS BASED ON POST-1990 EXPOSURES.

Plaintiffs acknowledge in their pleadings that Chevron exited the paraquat market some 35 years ago, in 1986. Nonetheless, some Plaintiffs have named Chevron as a Defendant in cases that allege injury based on exposures that did not *begin* until 1990 or later. Those claims approach the frivolous and should be dismissed under *Iqbal*'s pleading standard. Since Chevron stopped selling paraquat in 1986, there is simply no basis to draw a "reasonable inference that [Chevron] is liable" for injury allegedly caused by exposures many years later. *Iqbal*, 556 U.S. at 678.

After all, "[i]t is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The plaintiff "must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred." *Id.* This bedrock principle applies to all of the causes of action at issue in this MDL. *E.g.*, *Robertson v. Allied Signal, Inc.*, 914 F.2d 360 (3d Cir. 1990) ("proof of cause in fact" is required "in a products liability action"); *Reybold Grp., Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998) (same for breach of warranty); *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 52 (Ill. 2005) (same for Illinois

---

91, 97 (N.Y. App. Div. 2003); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007) (Oklahoma law); *City of Phila.*, 277 F.3d at 422 (Pennsylvania law); *Johnson Cnty. v. U.S. Gypsum Co.*, 580 F. Supp. 284, 294 (E.D. Tenn. 1984) (Tennessee law).

Consumer Fraud Act).  And Chevron could be the but-for cause of Plaintiffs' injuries only if Chevron distributed or manufactured the paraquat that ultimately allegedly injured them.

Yet Plaintiffs admit that Chevron exited the paraquat market in September 1986.  *See, e.g.*, No. 21-pq-840, Compl. ¶ 44 ("In September 1986, ICI and CHEVRON entered into an agreement terminating their paraquat licensing and distribution agreement."); No. 21-pq-835, Compl. ¶ 32 (In "September 1986 … ICI paid Chevron for the early termination of its rights under the paraquat licensing and distribution agreement."); No. 21-pq-829, Compl. ¶ 115 ("The ICI-Chevron Chemical Agreements were renewed or otherwise remained in effect until about 1986.").

Given that admitted and undisputed timeline, it is implausible that Plaintiffs whose only exposure to paraquat postdated 1990—four years after Chevron left the market—were injured by paraquat distributed by Chevron.[15]  At minimum, a plaintiff seeking to assert such a claim would need to plead additional facts making it reasonable to infer that the paraquat at issue, contrary to ordinary practice, sat on a shelf for years (or even decades) before it was applied.  Absent such allegations, these Plaintiffs have at most alleged the "sheer possibility" of liability on Chevron's part, which does not suffice to meet the pleading standard.  *Iqbal*, 556 U.S. at 678.

Plaintiffs' only effort to address this deficiency is a boilerplate recitation that "Defendants and those with whom they were acting in concert manufactured and distributed the paraquat … to which Plaintiff … was exposed."  *E.g.*, No. 21-pq-840, Compl. ¶ 18.  But "conclusory allegations" that parties "acted in concert" do not meet the plausibility standard, *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 215-16 (E.D.N.Y. 2013), particularly when the complaints expressly admit

---

[15] Chevron reserves the right to later move for summary judgment or other relief based on failure to prove actual causation in cases alleging earlier exposures.  For pleading purposes, this motion takes a conservative approach and does not seek dismissal for exposures between 1986 and 1990, given the (unlikely) possibility that such exposures were attributable to Chevron products sold before 1986.  After four years, however, that theory is surely implausible.

the parties' contractual relationship *ended* at a specific earlier time.  This Court should therefore dismiss all post-1990 exposure claims against Chevron.  *See* Appx. at pp. 35-36 (list).

For similar reasons, certain of Plaintiffs' claims against Chevron are time-barred even if claims against other Defendants are not.  Specifically, in states where warranty or consumer protection claims accrue on delivery, all such claims against Chevron are necessarily barred, even if Plaintiffs allege recent or ongoing deliveries.  No delivery *by Chevron* could have occurred after 1986.  *E.g.*, *Simply Thick, LLC v. Thermo Pac, LLC*, No. 13-cv-1036, 2014 WL 3543403, at *5 (E.D. Mo. July 17, 2014) (treating sale of factory as latest possible accrual of warranty claim).  *See* Appx. at pp. 37-38 (list).  Likewise, statutes of repose may bar suit against Chevron, even in cases where claims against other Defendants may remain timely due to recent or ongoing sales.  *E.g.*, *Yaccarino v. Midland Nat'l Life Ins. Co.*, No. 11-cv-5858, 2013 WL 3200500, at *9 n.9 (C.D. Cal. June 17, 2013) (for limitations defense, looking to date when defendant "stopped selling" product).  Among the Current Actions, there are some such cases governed by the Illinois status of repose.  Again, any sales by Chevron admittedly occurred before 1986, and the Illinois statute of repose has long expired on claims arising from those decades-old sales.  *See* Appx. at pp. 38-39 (list).

## CONCLUSION

For these reasons, the Court should dismiss the counts identified in the Appendix.[16]

---

[16] In cases where all primary claims (in general or against Chevron) are subject to dismissal under either this motion or Syngenta's motion, any derivative claims (*e.g.*, for loss of consortium) must also be dismissed.  *Ramirez v. City of Chi.*, 129 N.E.3d 612, 619-20 (Ill. App. Ct. 2019) ("When the impaired spouse's claim fails as a matter of law, the deprived spouse's claim for loss of consortium must also fail."); *Vega-Santana v. Nat'l R.R. Passenger Corp.*, 956 F. Supp. 2d 556, 562 (S.D.N.Y. 2013) ("[A] loss of consortium claim is a derivative action that depends on the viability of the primary cause of action.").  Likewise, if all that remains in a case (or against Chevron) is a claim for punitive damages, the case should be dismissed (or Chevron should be dismissed) because punitive damages are a remedy, not a cause of action.  *See, e.g.*, *Crabtree ex rel. Kemp v. Est. of Crabtree*, 837 N.E.2d 135, 137 (Ind. 2005) ("Punitive damages are a remedy, not a separate cause of action."); *Waltman v. Fahnestock & Co.*, 792 F. Supp. 31, 32 (E.D. Pa. 1992) ("[P]unitive damages are a remedy, not a cause of action").  *See* Appx. at p. 40 (list).

September 13, 2021

Respectfully submitted,

*/s/ Leon F. DeJulius, Jr.*

Steven N. Geise
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Fax: (844) 345-3178
sngeise@jonesday.com

Joseph C. Orlet
Bryan Hopkins
Megan Ann Scheiderer
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Fax: (314) 480-1505
Joseph.Orlet@huschblackwell.com
Bryan.Hopkins@huschblackwell.com
Megan.Scheiderer@huschblackwell.com

Leon F. DeJulius, Jr.
Traci L. Lovitt
Sharyl A. Reisman
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
tlovitt@jonesday.com
sareisman@jonesday.com

Jihan E. Walker
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Fax: (312) 782-8585
jihanwalker@jonesday.com

*Counsel for Chevron U.S.A. Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 13, 2021, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>*/s/ Leon F. DeJulius, Jr.*</u>
Leon F. DeJulius, Jr.

*Counsel for Chevron U.S.A. Inc.*