**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION** | Case No. 3:21-md-3004-NJR |
|  | MDL No. 3004 |
| **This Document Relates To:** | Hon. Judge Nancy J. Rosenstengel |
| **All Current Actions.** *See* **CMO No. 8.** |  |

**MEMORANDUM IN SUPPORT OF SYNGENTA'S
CONSOLIDATED PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT .................................................................................................................... 5

I.     **The Court Should Dismiss Warranty And Consumer Protection Claims That Are Precluded By State Products-Liability Laws.** ......................................... 7

II.    **Numerous Plaintiffs' Warranty Claims Fail.** .................................................. 8

    A.     Numerous Plaintiffs Fall Outside The Scope Of State Warranty Law. ................ 10

    B.     Certain Plaintiffs' Warranty Claims Should Be Dismissed For Failure To Provide Pre-Suit Notification. ................................................................. 13

III.   **Most of the Consumer Protection Claims Fail.** ............................................. 13

    A.     Claims Under the Consumer Protection Laws of California, Maine, Michigan, Missouri, and Pennsylvania Fall Outside the Scope of Those Statutes. ............................................................................ 14

    B.     Numerous Consumer Protection Acts Do Not Permit Money Damages as Compensation for Personal Injury. ...................................................... 16

    C.     Minnesota and Idaho Consumer Protection Claims Fail for Other Reasons. ....... 17

**CONCLUSION** ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mfg. v. U.S. Shipping Bd. Emergency Fleet Corp.*,
    7 F.2d 565 (2d Cir. 1925) (Hand, J.)......................................................................20

*Ambach v. French*,
    216 P.3d 405 (Wash. 2009).............................................................................23

*Armijo v. Ed Black's Chevrolet Ctr., Inc.*,
    733 P.2d 870 (N.M. Ct. App. 1987) (N.M. law)............................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................12

*Back v. Wickes Corp.*,
    378 N.E.2d 964 (Mass. 1978)......................................................................16

*Bacon v. Countrywide Bank FSB*,
    No. 11-CV-107, 2012 WL 642658, *R&R adopted*, 2012 WL 639521 (D. Idaho
    Feb. 28, 2012) ...........................................................................................25

*Bartner v. Carter*,
    405 A.2d 194 (Me. 1979)............................................................................24

*Bednar v. Pierce & Assocs.*,
    220 F. Supp. 3d 860 (N.D. Ill. 2016) ...........................................................23

*Bryant v. Hoffmann–La Roche, Inc.*,
    585 S.E.2d 723 (Ga. Ct. App. 2003)............................................................19

*C-B Kenworth, Inc. v. Gen. Motors*,
    706 F. Supp. 952 (D. Me. 1988)..................................................................22

*Cannon Techs. v. Sensus Metering Sys.*,
    734 F. Supp. 2d 753 (D. Minn. 2010)..........................................................24

*Colvin v. FMC Corp.*,
    604 P.2d 157 (Or. 1979) .............................................................................18

*Cowens v. Siemens-Elema AB*,
    837 F.2d 817 (8th Cir. 1988) (Mo. Law) ......................................................18

*Curlee v. Mock Enters.*,
    327 S.E.2d 736 (Ga. Ct. App. 1985)........................................................13, 19

*Dutch Jackson IATG, LLC v. Basketball Mktg. Co.*,
   846 F. Supp. 2d 1044 (E.D. Mo. 2012)................................................................22

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986)..............................................................................................15, 16

*Edwards v. Wis. Pharmacal Co.*,
   987 F. Supp. 2d 1340 (N.D. Ga. 2013) ...............................................................19

*Franklin v. Caterpillar, Inc.*,
   No. 08-CV-583, 2009 WL 10728499 (N.D. Okla. Oct. 1, 2009) .........................18

*Gray v. Abbott Labs., Inc.*,
   No. 10-CV-6377, 2011 WL 3022274 (N.D. Ill. Jul. 22, 2011)........................12, 13

*Haskin v. Glass*,
   640 P.2d 1186 (Idaho Ct. App. 1982) ..................................................................25

*Holyfield v. Chevron U.S.A.*,
   No. 20-CV-165, 2021 WL 1380280 (E.D. Mo. Apr. 12, 2021) .......................18, 19

*Jefferson v. Lead Indus. Ass'n*,
   930 F. Supp. 241 (E.D. La. 1996) ........................................................................14

*L.B. Corp. v. Schweitzer-Mauduit Int'l*,
   121 F. Supp. 2d 147 (D. Mass. 2000) ..................................................................21

*Lamont v. Winnebago Indus.*,
   569 F. Supp. 2d 806 (E.D. Wis. 2008)..................................................................16

*In re Levaquin Prods. Liab. Litig.*,
   752 F. Supp. 2d 1071 (D. Minn. 2010)..................................................................24

*Martin v. Heinold Commodities*,
   643 N.E.2d 734 (Ill. 1994) ...................................................................................23

*McCleary v. Elekta, Inc.*,
   No. 19-CV-52, 2019 WL 5295699 (W.D. La. Oct. 18, 2019)................................14

*Miller v. U.S. Steel Corp.*,
   902 F.2d 573 (7th Cir. 1990) ..........................................................................15, 16

*Moorman Mfg. v. Nat'l Tank Co.*,
   435 N.E.2d 443 (Ill. 1982) ...................................................................................15

*Morgan v. Mar-Bel, Inc.*,
   614 F. Supp. 438 (N.D. Ga. 1985) .......................................................................13

*Morris v. Harvey Cycle & Camper Inc.*,
    911 N.E.2d 1049 (Ill. App. 2009) ....................................................................23

*Olson v. Push, Inc.*,
    No. 14-CV-1163, 2014 WL 4097040 (D. Minn. Aug. 19, 2014) ...........................24

*Peoples v. United Servs. Auto. Ass'n*,
    452 P.3d 1218 (Wash. 2019)..........................................................................23

*Pitre v. Yamaha Motor Co.*,
    51 F. Supp. 3d 644 (E.D. La. 2014)...............................................................14

*Roberson v. Maestro Consulting Servs.*,
    507 F. Supp. 3d 998 (S.D. Ill. 2020)..............................................................12

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984)......................................................................................11

*In re St. Jude Med.*,
    425 F.3d 1116 (8th Cir. 2005) ......................................................................24

*In re St. Paul & K.C. Grain Co.*,
    94 N.W. 218 (Minn. 1903).............................................................................24

*Suchanek v. Sturm Foods*,
    No. 11-CV-565-NJR, 2018 WL 6617106 (S.D. Ill. Jul. 3, 2018)...................20, 21

*Taylor v. McNichols*,
    243 P.3d 642 (Idaho 2010).............................................................................25

*Taylor v. Southwire Tools & Equip.*,
    130 F. Supp. 3d 1017 (E.D. Ky. 2015) (Ky. Law).................................................18

*Teel v. Am. Steel Foundries*,
    529 F. Supp. 337 (E.D. Mo. 1981) (Mo. Law) .......................................................18

*In re Valsartan, Losartan & Irbesartan Prod. Liab. Litig.*,
    No. MDL 2875, 2021 WL 364663 (D.N.J. Feb. 3, 2021)......................................15

*Wahl v. General Elec. Co.*,
    983 F. Supp. 2d 937 (M.D. Tenn. 2013).............................................................12

*Willet v. Johnson & Johnson*,
    No. 12-CV-34, 2019 WL 7500524 (S.D. Iowa Sep. 30, 2019) ..............................23

*In re Yasmin & Yaz*,
    No. 09-MD-2100, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011)..............................13

## Statutes

810 ILCS 5/2-318 ...................................................................................................17

73 P.S. § 201-9.2 ..............................................................................................21, 22

7 U.S.C. §§ 136(a)(2)(G) ......................................................................................11

7 U.S.C. § 136(p)(2) ..............................................................................................11

7 U.S.C. § 136(q)(1)(A), (F)-(G) .....................................................................11, 21

7 U.S.C. § 136a(d)(1)(A) .......................................................................................22

Ariz. Rev. Stat. § 47-2318 ....................................................................................17

Cal. Civ. Code § 1761(d) ................................................................................13, 21

Conn. Gen. Stat. § 42a-2-318 ...............................................................................17

Conn. Gen. Stat. § 52-572n(a) ..............................................................................14

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ...............11

Fla. Stat. § 672.318 ........................................................................................17, 18

Ga. Code § 11-2-318 ............................................................................................17

H.R. 1237, 80th Cong., 61 Stat. 163 (1947) .......................................................11

Idaho Code § 28-2-318 .........................................................................................17

Idaho Code § 48-603 .............................................................................................25

Idaho Consumer Protection Act, Idaho Code § 48-601 ......................................25

Ind. Code § 26-1-2-318 .........................................................................................17

Ind. Code § 34-20-1-1 ...........................................................................................14

Iowa Code § 714H.2 ........................................................................................13, 23

Kan. Stat. § 60-3302 .............................................................................................14

Ky. Rev. Stat. § 355.2-318 ....................................................................................17

Louisiana Products Liability Act, La. Stat. § 9:2800.52 .................................13, 14

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1), (3) ....................................21

Me. Rev. Stat. tit. 5, § 213 ..........................................................................................21, 24

Mich. Comp. Laws § 440.2318 ...............................................................................................17

Mich. Comp. Laws § 445.902 ................................................................................................21

Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.* ...................23

Miss. Code § 11-1-63 ..............................................................................................................14

Miss. Code § 75-2-318 ...........................................................................................................17

Mo. Rev. Stat. § 400.2-318 .............................................................................................16, 17

Mo. Rev. Stat. § 407.025 ........................................................................................................21

N.C. Gen. Stat. § 25-2-318 ....................................................................................................17

N.C. Gen. Stat. § 99B-1.1 ......................................................................................................14

Neb. Rev. Stat. U.C.C. § 2-318 ..............................................................................................17

Okla. Stat. tit. 12A, § 2-318 ...................................................................................................17

Or. Rev. Stat. § 72.3180 .........................................................................................................17

Pa. Stat. tit. 13, § 2318 ..........................................................................................................17

61 Stat. 163 (1947) ................................................................................................................11

W.Va. Code § 46-2-318 ..........................................................................................................17

Wash. Rev. Code § 7.72.010 ..................................................................................................14

Wash. Rev. Code § 62A.2-318 ...............................................................................................17

Wis. Stat. § 402.318 ...............................................................................................................17

**Rules**

Rule 12(b)(6) ....................................................................................................................10, 12

**Other Authorities**

40 C.F.R. § 152.160(b) ...........................................................................................................11

40 C.F.R. §152.168 ................................................................................................................11

40 C.F.R. § 152.170(a) ...........................................................................................................22

40 C.F.R. § 156.70(c)..............................................................................................11

40 C.F.R. § 170.1 *et seq.*.......................................................................................12

2 Hawkland U.C.C. Series § 2-318:3................................................................17, 19

Order Re: Defendants' Demurrer, *Paraquat Coordinated Cases*, No.: JCCP
    MSS031 (Contra Costa Cty., Cal. Sup. Ct. Dec. 23, 2019)...................................22

Restatement (Second) Conflict of Laws § 145 (1971)................................................13

U.C.C. § 2-318.............................................................................................13, 17, 18

U.C.C. § 2-607...........................................................................................................20

13 Williston on Contracts § 37:41 (4th ed.)...............................................................18

**INTRODUCTION**

This MDL involves alleged personal injuries purportedly caused by a highly regulated herbicide that members of the general public cannot legally purchase or use. While Syngenta vigorously disputes these allegations, they make up this MDL's core claims for strict products liability—the traditional tort causes of action intended to compensate parties that suffer physical injuries caused by defective products. That is why every one of this MDL's plaintiffs invokes those tort theories in seeking compensation for the physical injuries they allege defendants' paraquat products caused.

But many plaintiffs go further and add legally deficient claims that spill over into the fields of warranty and consumer protection. Yet both fields chiefly concern compensating parties for economic loss rather than physical injuries—a distinction that many states' courts and legislatures maintain through various legal rules. *Warranty* remedies stem from commercial transactions and honor a buyer's expectations about the quality and value of the purchased products. And *consumer protection* laws give regulators and consumers tools to deter and remedy sales, marketing, and business practices that cause consumers financial harm. To be sure, there may be cases involving other products that allege independent injuries for both physical harm and economic loss—but a case alleging paraquat caused a plaintiff physical injury is not one of them.

Here, plaintiffs' allegations do not implicate warranty or consumer protection law: by their own allegations, most plaintiffs never even purchased paraquat products or suffered any financial impact independent of their alleged physical injuries. Indeed, the compensation plaintiffs seek has nothing to do with paraquat products disappointing plaintiffs' expectations of how effectively it killed weeds, or alleged marketing that supposedly duped plaintiffs into buying a weed killer that was worthless or unneeded. As detailed below, this Court should generally dismiss plaintiffs' warranty and consumer protection claims and narrow the cases' focus to the products-liability

claims intended to address their alleged injuries. Narrowing these cases to otherwise viable tort claims will allow the parties to focus fact and expert discovery on legally plausible causes of action and will streamline the Court's consideration of these cases' core issues.

The reasons this Court should dismiss plaintiffs' warranty and consumer protection claims fall into three analytical categories.

***States with Exclusive Products-Liability Laws.*** Some states—here, Connecticut, Indiana, Kansas, Louisiana, Mississippi, North Carolina, and Washington—have enacted comprehensive products-liability laws that provide the exclusive remedy for product-based personal injuries. In those states, product-based claims under warranty and consumer protection theories are subsumed by the relevant products-liability regime. The Court should plainly dismiss warranty and consumer protection claims under those states' laws.

***Warranty Claims.*** *First*, many plaintiffs fall outside the categories of persons with warranty rights under the state laws they invoke. In states that limit warranty remedies to a product's purchaser and the purchaser's family, household-members, and guests, the Court should dismiss the claims of plaintiffs that do not meet those criteria—specifically, plaintiffs who allege paraquat exposure in their capacities as employees, farm workers, day laborers, and bystanders. In addition, some states further limit warranty rights to actual purchasers by requiring that warranty plaintiffs demonstrate vertical privity. For those states, the Court should dismiss warranty claims by non-purchasers.

*Second*, the commercial laws in thirty states impose robust requirements that a warranty claimant provide pre-suit notice to a defendant of the alleged breach. The Court should dismiss the complaints of plaintiffs that invoke those state laws but fail to plead pre-suit notice.

***Consumer Protection Claims.*** *First*, the consumer protection laws in California, Maine, Missouri, and Pennsylvania provide remedies only for consumers who purchased goods primarily for personal, family, or household use. Paraquat products cannot be legally used for personal, family, or household purposes, nor do any plaintiffs allege they bought paraquat products for those reasons. Indeed, some plaintiffs never bought paraquat products at all. And even plaintiffs that allegedly purchased paraquat products for use on family farms still made those purchases in a commercial capacity, not as consumers seeking goods for their household or family. Claims under those consumer protection statutes warrant dismissal.

*Second*, the consumer protection laws in Illinois, Iowa, Maine, Minnesota, and Washington State do not provide remedies for physical harm. Plaintiffs here do not seek damages for independent economic loss, and the consumer protection claims in those states should be dismissed.

*Third*, certain plaintiffs' consumer protection claims under Minnesota and Idaho law fail for other reasons. The Court should dismiss the claims of plaintiffs that invoke Minnesota's consumer protection law but allege no connection between their injuries and the State of Minnesota. Idaho's consumer protection law requires a transaction between plaintiff and defendant and requires that a plaintiff plead one of a specifically enumerated list of violations—none of which include the allegations here.

## BACKGROUND

Paraquat is a chemical compound used in agricultural products that has been registered and sold in the United States since the mid-1960s.[1] *See* Ex. A, EPA, *Paraquat Dichloride Proposed*

---

[1] Because Syngenta has already submitted a position paper describing the MDL cases' issues, it provides limited background to further inform the Court's disposition of this motion. Moreover, although Syngenta does not move for dismissal under Rule 12(b)(6) based on the doctrine of federal preemption, it reserves that defense for summary judgment or trial.

*Interim Reg. Rev. Decision* 10 (Sep. 2020) (hereinafter "*EPA Paraquat PID*"). Paraquat products'

The sale, purchase, and use of paraquat products are subject to EPA regulation and under the

Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq*.[2]

The EPA's FIFRA authorities include regulating and overseeing the information a

manufacturer communicates to users. That includes federal regulation of information included in

any advertisements or product marketing. *See* 40 C.F.R. §152.168. The EPA likewise regulates

the informational content included on any pesticide product's labels, packaging, and

accompanying brochures or literature at any stage of the production or distribution process.[3]

In addition, FIFRA and EPA regulations cover the uses and applications of pesticides.

Since the late 1970s, paraquat has been one of many pesticides classified as "restricted use,"

meaning it is "not available for purchase or use by the general public." *See* Ex. B, EPA, *Restricted*

*Use Prods. (RUP) Report* (updated Feb. 22, 2021). Instead, certain agricultural professionals (and

those under their supervision) are the only persons who may legally purchase or apply paraquat

products. *See* 40 C.F.R. § 152.160(b).

Users face civil and criminal penalties for using a paraquat product without appropriate

training and licensing or in a manner inconsistent with its labeling. 7 U.S.C. §§ 136(a)(2)(G);

136*l*. As the EPA has emphasized, once a label is approved "***the label is the law***." Ex. C, EPA,

---

[2] Congress enacted FIFRA in 1947 as a labeling law, *see* H.R. 1237, 80th Cong., 61 Stat. 163 (1947), and today it forms "a comprehensive regulatory statute" that "regulate[s] the use, as well as the sale and labeling, of pesticides; regulate[s] pesticides produced and sold in both intrastate and interstate commerce; provide[s] for review, cancellation, and suspension of registration; and g[i]ve[s] EPA [extensive] enforcement authority," *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991-92 (1984) (marks and citation omitted).

[3] *See* 7 U.S.C. § 136(q)(1)(A), (F)-(G); *id.* § 136(p)(2) ("labeling" includes "all labels and all other written, printed, or graphic matter ... accompanying the pesticide ... at any time[] or ... to which reference is made on the label or in [accompanying] literature"); *see also* 40 C.F.R. § 156.70(c) (requiring that any "[s]pecific statements pertaining to the hazards of [a pesticide] product and its uses *must be approved by the* [*EPA*]") (emphasis added).

*Pesticide Reg. Manual* at 1-2 (rev. Dec. 2016) (emphasis in original). Federal regulations also require employers to implement certain training and safety measures for any employees that work with restricted-use pesticides. *See* 40 C.F.R. § 170.1 *et seq.* The Court must consider that statutory and regulatory background when evaluating plaintiffs' claims that defendants breached a warranty emanating from the sale of paraquat products or that defendants' manufacture and sale of paraquat products violate state consumer protection laws.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] Plaintiffs must allege well-pleaded, non-conclusory facts supporting each element of each of their claims. *See id.* Courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Roberson v. Maestro Consulting Servs.*, 507 F. Supp. 3d 998, 1016 (S.D. Ill. 2020). That is, a "plaintiff need not plead detailed factual allegations, but must provide 'more than labels and conclusions, and a formulaic recitation of the elements.'" *Id.*

## ARGUMENT

This Court should dismiss the many warranty and consumer protection claims brought by plaintiffs who have invoked state laws that bar such claims where, as here, the plaintiff alleges physical injuries allegedly caused by a manufacturer's product.[5] The argument that follows falls into three analytical categories.

---

[4] For efficiency purposes, this brief's quoted excerpts omit internal quotation marks and citations.

[5] This motion approaches warranty claims according to the state where each plaintiff alleges exposure or the plaintiff's residence if no state of exposure is alleged. *See Gray v. Abbott Labs., Inc.*, No. 10-CV-6377, 2011 WL 3022274, at *3 (N.D. Ill. Jul. 22, 2011); *see also Wahl v. General Elec. Co.*, 983 F. Supp. 2d 937, 945 (M.D. Tenn. 2013). Although this Court, as an MDL forum,

**First**, in some states, lawmakers have passed exclusive products-liability laws that subsume any actions based in warranty or consumer protection. *See infra* Part I; *see, e.g.*, Louisiana Products Liability Act ("LPLA"), La. Stat. § 9:2800.52 ("establish[ing] the exclusive theories of liability for manufacturers for damage caused by their products"). For plaintiffs invoking those states' laws, the Court should dismiss any warranty or consumer protection claims and permit those plaintiffs to proceed under the relevant products-liability laws.

**Second**, in other states, courts and legislatures maintain limits specific to the state's warranty or consumer protection laws. *See infra* Part II. States have limited the scope of warranty law through statute by narrowing remedies to product purchasers and their family, household-members, and guests, *see, e.g.*, U.C.C. § 2-318, and through maintaining traditional requirements that a warranty plaintiff show contractual privity with the defendant, *see, e.g.*, *Curlee v. Mock Enters.*, 327 S.E.2d 736, 743 (Ga. Ct. App. 1985). Plaintiffs that fall outside those limits fail to state a viable warranty claim under such regimes. In addition, several plaintiffs' warranty claims should be dismissed for the independent reason that they fail to plead pre-suit notice to defendants of the alleged breach here.

**Third**, there are also limitations in various states' consumer protection laws, including limiting recovery to purchasers of household goods, *see, e.g.*, Cal. Civ. Code § 1761(d), and precluding recovery for personal injuries or for remedies other than prospective relief, *see, e.g.*, Iowa Code § 714H.2 (excluding "damages for bodily injury"); *see infra* Part III. The Court should also dismiss the claims that do not fall within those limitations.

---

applies the choice-of-law rules of each transferee court, *see In re Yasmin & Yaz*, No. 09-MD-2100, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011), the place of injury supplies substantive warranty law under numerous choice-of-law approaches, *see, e.g.*, *Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438 (N.D. Ga. 1985) (place of injury); *Gray*, 2011 WL 3022274, at *3 ("most significant relationship" test); *see also* Restatement (Second) Conflict of Laws § 145 (1971).

# I.    The Court Should Dismiss Warranty And Consumer Protection Claims That Are Precluded By State Products-Liability Laws.

For complaints that invoke warranty or consumer protection laws in Connecticut, Indiana, Kansas, Louisiana, Mississippi, North Carolina, or Washington, comprehensive products-liability laws preclude plaintiffs warranty claims as a matter of law.[6]

For example, the Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damage caused by their products."  La. Stat. § 9:2800.52.  By enacting that language, "[t]he legislature clearly intended the LPLA to serve as the ***only*** means of recovery against a manufacturer for damage caused by their product."  *McCleary v. Elekta, Inc.*, No. 19-CV-52, 2019 WL 5295699, at *3 (W.D. La. Oct. 18, 2019) (emphasis added).  Thus, an independent action for "breach of implied warranty or redhibition is not available as a theory of recovery for personal injury."  *Jefferson v. Lead Indus. Ass'n*, 930 F. Supp. 241, 245 (E.D. La. 1996).  Likewise, "the LPLA bars plaintiffs from maintaining an action under [Louisiana's Unfair Trade Practices Act]."  *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 662 (E.D. La. 2014).

Analogous statutes in Connecticut, Indiana, Kansas, Mississippi, North Carolina, and Washington State similarly consolidate all claims based on allegedly defective products.[7]  Those statutes subsume any such defective-products claims brought under those states' commercial codes or consumer protection acts.  *See* App. I-A.

Here, the various actions' allegations of physical harm caused by exposure to paraquat are textbook examples of harm allegedly caused by a manufacturer's product.  Nonetheless, many

---

[6]  These comprehensive laws also preclude claims for fraud and public nuisance.  *See* App. I-A. In addition to the reasons set forth in Chevron's motion, the Court should dismiss claims for fraud or nuisance that invoke these states' laws.

[7]  Conn. Gen. Stat. § 52-572n(a); Ind. Code § 34-20-1-1; Kan. Stat. § 60-3302; Miss. Code § 11-1-63; N.C. Gen. Stat. § 99B-1.1; Wash. Rev. Code § 7.72.010.

plaintiffs bring implied-warranty claims that invoke the common law or respective commercial codes of states whose legislatures have passed a products-liability statute to serve as the *exclusive* remedies for product-based personal injuries. *See* App. I-B. Similarly, several plaintiffs bring claims under those states' consumer protection laws. *See* App. I-C. Because those states' products-liability statutes explicitly subsume consumer protection claims and implied-warranty claims under the common law or commercial code, those plaintiffs' claims should likewise be dismissed. *See In re Valsartan, Losartan & Irbesartan Prod. Liab. Litig.*, No. MDL 2875, 2021 WL 364663, at *26 (D.N.J. Feb. 3, 2021) (holding that state products-liability acts subsumed implied-warranty claims under many states' laws).

## II. Numerous Plaintiffs' Warranty Claims Fail.

The primary purpose of a warranty remedy is to protect a buyer's expectations about the products she purchases: the "essence of a warranty action" is providing a remedy for "a contracting party … to recoup the benefit of its bargain" and address the economic injury that stems from the "failure of the product to function properly." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868 (1986). Warranty, a species of contract law, is the appropriate vehicle for "protect[ing] expectation interests … when a qualitative defect is involved, i.e., when a product is unfit for its intended use." *Moorman Mfg. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982).

That stands in contrast to products liability law and torts in general: "the essence of a product liability tort case is … that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury," not that he "failed to receive the quality of product he expected." *Id.* Unlike contract and warranty remedies, "[p]roducts liability law has evolved into a specialized branch of tort law for use in cases in which a defective product caused, not the usual commercial loss, but a personal injury." *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990); *see also E. River*, 476 U.S. at 868.

8

Most state-law frameworks reflect the principle that "commercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage." *Miller*, 902 F.2d at 575. To save "contract law [from] drown[ing] in a sea of tort," *E. River*, 476 U.S. at 865, courts and legislatures in those jurisdictions have attempted, to varying degrees, to maintain the distinction between products liability law, which concerns compensating for the costs of product-based injuries, and warranty law, which concerns fulfilling the purchasers' expectation value in transactions for the products they buy.[8] State legislatures in 22 states have done so by adopting the version of the U.C.C.'s three warranty alternatives that limits implied-warranty claims to the product purchaser and foreseeable users in the purchaser's family or household. *See, e.g.*, Mo. Rev. Stat. § 400.2-318. Likewise, courts in some states have maintained the tort–contract boundary by enforcing traditional requirements of privity between plaintiff and defendant. *See, e.g.*, *Lamont v. Winnebago Indus.*, 569 F. Supp. 2d 806, 815-16 (E.D. Wis. 2008) ("privity of contract must exist between a buyer and seller in order to create an implied warranty"). No matter the vehicle, all of these states apply warranty laws that reflect courts' and legislatures' decisions to distinguish warranty from products liability and to limit warranty claims to commercial disputes alleging economic injury.

And yet here many plaintiffs bring implied-warranty claims that run directly afoul of these principles. Under settled principles of state law, this Court should not permit plaintiffs to obviate those boundaries as detailed below.

---

[8] A minority of states have blurred or abandoned distinctions between warranty and products liability. *See, e.g.*, *Back v. Wickes Corp.*, 378 N.E.2d 964, 969 (Mass. 1978) (in Massachusetts, principles of warranty and products liability are "congruent in nearly all respects").

**A.      Numerous Plaintiffs Fall Outside The Scope Of State Warranty Law.**

To begin, many plaintiffs fail to plead cognizable warranty claims under applicable law.

***First,*** the Court should dismiss warranty claims brought under state laws that have adopted the U.C.C.'s warranty provision limited to purchasers and their family, household-members, and guests.[9]  *See* 2 Hawkland U.C.C. Series § 2-318:3.  Specifically, "Alternative A" of the U.C.C. is the narrowest of the code's three proposed options, and it takes a restrictive approach to the forms of privity—"horizontal" and "vertical"—that warranty claims traditionally require.  Horizontal privity describes the relationship between the retailer and a non-purchaser (*e.g.*, a family member); vertical privity describes relationships of different parties in the distribution chain (*i.e.*, manufacturer, retailer, and buyer).  *See id.* § 2-318:2.

| Alternative A | Alternatives B & C |
|---|---|
| A seller's warranty … extends to any natural person **who is in the family or household of his buyer or who is a guest in his home** if it is reasonable to expect that such person may use, consume or be affected by the goods … | A seller's warranty … extends to any natural person who may reasonably be expected to use, consume or be affected by the goods … |

U.C.C. § 2-318 (emphasis added).[10]  Alternative A extends horizontal privity to only a purchaser's family, household, and guests, whereas Alternatives B and C obviate both privity requirements altogether.  Employees, contractors, commercial invitees, and bystanders typically fall outside the

---

[9]  Plaintiffs here invoke the laws of nineteen Alternative A jurisdictions.  Those states are Arizona (Ariz. Rev. Stat. § 47-2318); Connecticut (Conn. Gen. Stat. § 42a-2-318); Florida (Fla. Stat. § 672.318); Georgia (Ga. Code § 11-2-318); Idaho (Idaho Code § 28-2-318); Illinois (810 ILCS 5/2-318); Indiana (Ind. Code § 26-1-2-318); Kentucky (Ky. Rev. Stat. § 355.2-318); Michigan (Mich. Comp. Laws § 440.2318); Mississippi (Miss. Code § 75-2-318); Missouri (Mo. Rev. Stat. § 400.2-318); Nebraska (Neb. Rev. Stat. U.C.C. § 2-318); North Carolina (N.C. Gen. Stat. § 25-2-318); Oklahoma (Okla. Stat. tit. 12A, § 2-318); Oregon (Or. Rev. Stat. § 72.3180); Pennsylvania (Pa. Stat. tit. 13, § 2318); Washington (Wash. Rev. Code § 62A.2-318); West Virginia (W.Va. Code § 46-2-318); Wisconsin (Wis. Stat. § 402.318).

[10]  Alternative C further extends to property damage and to organizations, whereas A and B cover only personal injury and apply only to "natural persons."  *See* U.C.C. § 2-318.

scope of warranty statutes in Alternative A jurisdictions. *E.g.*, *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015) (Ky. Law) ("warrant[ies] extend[] only to the buyer's family members and household residents or guests … [not] to employees of a commercial purchaser."); *see also* 13 Williston on Contracts § 37:41 (4th ed.) ("Alternative A … [is] construed as not extending protection to employees of the purchaser or to invitees on commercial or other nonhousehold premises.").[11]  A small number of Alternative A jurisdictions extend warranty rights to a buyer's employees, but do so by adding explicit language to the default text of the U.C.C. *See, e.g.*, Fla. Stat. § 672.318 ("seller's warranty … extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home ***or who is an employee, servant or agent of his or her buyer***" (emphasis added)).

Indeed, one transferor court in these actions has already dismissed an agricultural worker's warranty claim, because he fell outside the statutorily enumerated persons with a cognizable right of action. *See Holyfield v. Chevron U.S.A.*, No. 20-CV-165, 2021 WL 1380280, at *8 (E.D. Mo. Apr. 12, 2021).  Other courts have reached similar conclusions in the context of employees' claims based on insecticides sold to the employer. *See Colvin v. FMC Corp.*, 604 P.2d 157, 161 (Or. 1979) (holding family, household-members, and guests "d[o] not include persons in the position

---

[11] *See, e.g.*, *Cowens v. Siemens-Elema AB*, 837 F.2d 817, 822 (8th Cir. 1988) (Mo. Law) (affirming dismissal of warranty claim because § 2-318 "d[oes] not permit a warranty claim brought by an employee of a purchaser"); *Teel v. Am. Steel Foundries*, 529 F. Supp. 337, 345 (E.D. Mo. 1981) (Mo. Law) ("There is nothing in the express wording of this section to indicate that an employee of a buyer may benefit from the seller's warranty."); *Taylor*, 130 F. Supp. 3d at 1021 (Ky. Law) ("A warranty extends only to the buyer's family members and household residents or guests … [not] to employees of a commercial purchaser."); *Franklin v. Caterpillar, Inc.*, No. 08-CV-583, 2009 WL 10728499, at *4 (N.D. Okla. Oct. 1, 2009) (Okla. Law) ("[E]mployees of the buyer are not included …" (citation omitted)); *Armijo v. Ed Black's Chevrolet Ctr., Inc.*, 733 P.2d 870, 872 (N.M. Ct. App. 1987) (N.M. law) ("We are persuaded by the reasoning of other courts that have discussed the Uniform Commercial Code implied warranty theory that employees of a purchaser are excluded from the manufacturer's warranty protections offered by provisions comparable to Section 55–2–318.").

of" an employee claiming injury from workplace insecticide exposure). And even plaintiffs that were allegedly exposed to paraquat products while employed on a family farm encountered it in a commercial capacity as employee, not as a guest or member of the purchaser's household or family. *See Holyfield*, 2021 WL 1380280, at *8 n.9.

**Second**, in addition to the limits described above, state courts have reinforced the boundaries between warranty and products-liability remedies by retaining traditional vertical-privity limitations within the marketing and distribution chain. *See, e.g.*, *Edwards v. Wis. Pharmacal Co.*, 987 F. Supp. 2d 1340, 1346 (N.D. Ga. 2013) (warranty claims for personal injury require vertical privity) (citing *Bryant v. Hoffmann–La Roche, Inc*., 585 S.E.2d 723, 731 (Ga. Ct. App. 2003)). That is, even if family members, household residents, and guests do have warranty rights, they still must have vertical privity, *see* 2 Hawkland, *supra*, § 2-318:2; *see also, e.g.*, *Curlee*, 327 S.E.2d at 743 (observing that "legislature … adopted the most restrictive of the three 'privity' alternatives … [instead of] cho[osing] a less restrictive alternative, including the abolition of any requirement of privity").

The upshot of these legal rules is that a plaintiff who seeks compensation for personal injuries under a warranty theory faces multiple different limitations based on the principles distinguishing warranty law from the products-liability context that more appropriately fits their generic allegations. First, non-purchaser plaintiffs in Alternative A jurisdictions fall outside the scope of statutory warranty remedies unless they are a foreseeable user that is the family, household-member, or guest on the product's actual purchaser. Thus, the Court should dismiss the warranty claims of plaintiffs that invoke warranty laws limited to purchasers and their families, households, and guests but that fail to allege they bought the paraquat at issue. *See* App. II-A-2.

Second, in four states—Florida, Georgia, Kentucky, and Wisconsin—even purchasers of a product lack warranty rights against a manufacturer that did not sell them the product at issue. *See* App. II-A-3. Thus, the Court should dismiss the warranty claims of plaintiffs that invoke warranty laws requiring vertical privity and that fail to allege they bought the paraquat products at issue directly from Syngenta or Chevron. *See* App. II-A-4.

### B. Certain Plaintiffs' Warranty Claims Should Be Dismissed For Failure To Provide Pre-Suit Notification.

Independently, many plaintiffs' warranty claims should be dismissed for failure to plead pre-suit notice. The warranty laws of twenty-two states require that a plaintiff plead notice to Syngenta and Chevron of the alleged breach within a reasonable time of discovering the alleged breach. *See* U.C.C. § 2-607; App. II-B-1. As courts have explained for generations: "The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning." *Am. Mfg. v. U.S. Shipping Bd. Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925) (Hand, J.). Most plaintiffs cannot, and did not, plead notice, and their warranty claims should be dismissed. *See* App. II-B-2.

### III. Most of the Consumer Protection Claims Fail.

Many plaintiffs invoke state consumer protection laws that fail as a matter of law. While the specific reason varies from case to case, the underlying problem is that the allegations here do not raise cognizable consumer protection issues.

Consumer protection laws are generally intended to "prevent sharp practices and dealings in the marketing of merchandise" that risk consumers being "victimized … [and] lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Suchanek v. Sturm Foods*, No. 11-CV-565-NJR, 2018 WL 6617106, at *8 (S.D. Ill. Jul. 3, 2018); *see, e.g.*, *id.* (allegations of deceptively selling instant coffee in pods resembling Keurig machines).

That is, consumer protection cases generally allege some variation of: wayward marketing practices; about household consumer products and directed to public consumers; and a transaction that causes consumers to lose money. *See id.* This case, in contrast, involves: allegations concerning a heavily regulated herbicide that is exclusively for agricultural application and illegal for household use; allegations unrelated to paraquat's marketing, much of which is regulated down to the font and color, *see* 7 U.S.C. § 136(q)(1)(A), (F)-(G); and claims of bodily harm from a product many plaintiffs do not allege to have ever purchased.

Plaintiffs do not bring these claims as "consumers" in any commonsense understanding of the word. *See, e.g.*, Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1), (3) ("consumers" are purchasers of products "normally used for personal, family, or household purposes"). Nor would the relief they seek "protect" consumers as such any more than a generic tort claim. *See L.B. Corp. v. Schweitzer-Mauduit Int'l*, 121 F. Supp. 2d 147, 152 (D. Mass. 2000) (consumer protection actions are "intended to protect against unfair and deceptive practices in trade, not unfair practices in general" not simply "any tort claim," which "all … encompass 'acts or practices' that could arguably be considered 'unfair'"). This overarching problem infects most plaintiffs' consumer protection claims as detailed below.

### A. Claims Under the Consumer Protection Laws of California, Maine, Michigan, Missouri, and Pennsylvania Fall Outside the Scope of Those Statutes.

The Court should dismiss claims brought under the consumer protection laws of California, Maine, Michigan, Missouri, and Pennsylvania. All five statutes provide for the recovery of economic damages suffered as a result of certain consumer purchases. But to invoke the statute, a plaintiff's purchase must have involved "goods or services primarily for personal, family, or household purposes." Cal. Civ. § 1761(d); 73 P.S. § 201-9.2 (same); Me. Rev. Stat. tit. 5, § 213 (same); Mo. Rev. Stat. § 407.025 (same); *see also* Mich. Comp. Laws § 445.902..

Here, as threshold matter, many plaintiffs with CLRA, ME UTPA, MMPA, and UTPCPL claims do not allege to have bought paraquat products at all. That alone merits dismissal of their claims. *See* 73 P.S. § 201-9.2 (explicitly limiting the universe of plaintiffs to *purchasers*); *Dutch Jackson IATG, LLC v. Basketball Mktg. Co.*, 846 F. Supp. 2d 1044, 1051 (E.D. Mo. 2012) ("plaintiffs are not alleging injury as a result of *their* purchase or lease of defendants' merchandise … [and are not] within the class of persons the MMPA was enacted to protect"); *C-B Kenworth, Inc. v. Gen. Motors*, 706 F. Supp. 952, 957 (D. Me. 1988) (the ME UTPA "creates a private right of action **only** for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'").

In addition, paraquat products have no "personal, family, or household" uses, much less could such uses have been the "primary" reason for purchasing paraquat: paraquat is and has long been a "restricted use" herbicide, 7 U.S.C. § 136a(d)(1)(A), and federal law and EPA regulations limit its sale and use only to certified applicators, *see* 40 C.F.R. § 152.170(a). Plaintiffs' own complaints underscore that paraquat was used in the commercial agricultural setting, not for personal, family, or household purposes. *See* App. III-A-2. And even plaintiffs that allegedly purchased paraquat products for use on family farms still made those purchases in a commercial capacity, not as consumers seeking goods for their household or family. As a matter of law, plaintiffs fail to plead consumer purchases sufficient to invoke the relevant statutes. *See* App. III-A-1. That is why this very argument led plaintiffs proceeding in California state court to abandon their claims under the CLRA. *See* Ex. D, Order Re: Defendants' Demurrer, *Paraquat Coordinated Cases*, No.: JCCP MSS031 (Contra Costa Cty., Cal. Sup. Ct. Dec. 23, 2019) (dismissing with prejudice claims under CLRA). The CLRA, MCPA, ME UTPA, MMPA, and UTPCPL claims should be dismissed with prejudice.

## B. Numerous Consumer Protection Acts Do Not Permit Money Damages as Compensation for Personal Injury.

Plaintiffs have no monetary damages remedy for personal injuries under the consumer protection acts in Iowa, Illinois, Maine, Minnesota, and Washington. *First,* the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.2, provides that compensable damages "do[] not include damages for bodily injury, pain and suffering, mental distress, or loss of consortium, loss of life, or loss of enjoyment of life." Iowa Code § 714H.2; *see Willet v. Johnson & Johnson*, No. 12-CV-34, 2019 WL 7500524, at *4 (S.D. Iowa Sep. 30, 2019) (judgment for defendant on claims seeking damages for personal injury).

*Second,* personal-injury damages are similarly unavailable under Illinois's Consumer Fraud Act, which "provides remedies for purely economic injuries." *Morris v. Harvey Cycle & Camper Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. 2009); *see id.* (affirming dismissal where "plaintiff did not allege actual damages in the form of specific economic injuries"); *Bednar v. Pierce & Assocs.*, 220 F. Supp. 3d 860, 865 (N.D. Ill. 2016) (dismissing ICFA claim); *see also Martin v. Heinold Commodities*, 643 N.E.2d 734, 751 (Ill. 1994) ("While plaintiffs note that section 10a(a) of the Act states that the trial court 'in its discretion may award actual damages or any other relief which the court deems proper' … , we cannot agree with plaintiffs that this section allows the court free reign to award any amount of damages it chooses.").

*Third,* in the State of Washington, "[p]ersonal injury damages … are not compensable damages under the CPA and do not constitute injury to business or property." *Ambach v. French*, 216 P.3d 405, 408 (Wash. 2009); *see Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218 (Wash. 2019) ("personal injury claims are not within the scope of the CPA").

*Fourth,* damages are unavailable under the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.* Courts have "consistently concluded that the DTPA affords

only prospective injunctive relief." *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1075 n.3 (D. Minn. 2010); *see also Cannon Techs. v. Sensus Metering Sys.*, 734 F. Supp. 2d 753, 768 (D. Minn. 2010) ("It is well-settled that monetary damages are not available under that statute; the sole statutory remedy for deceptive trade practices is injunctive relief.").

*Fifth*, and finally, damages for personal injury are not available under the Maine UTPA. The plain language of the statute limits recovery to "loss of money or property." Me. Rev. Stat. tit. 5, § 213. "[T]hat language appears to rule out recovery, under the statute, of several kinds of non-restitutionary damages, such as damages for personal injury, mental distress or loss of time." *Bartner v. Carter*, 405 A.2d 194, 203 (Me. 1979).

The Court should dismiss with prejudice claims seeking monetary compensation for personal injuries under those states' consumer protection laws. *See* App. III-B-2.

### C. Minnesota and Idaho Consumer Protection Claims Fail for Other Reasons.

*First*, most of the claims alleged under the MUDTPA should be dismissed because the plaintiffs lack any apparent connection to Minnesota. Many of those plaintiffs do not reside in Minnesota, have never lived in Minnesota, were exposed to paraquat products in a state other than Minnesota, and allege no other connection to the state. *See* App. III-C. These plaintiffs cannot overcome "the general rule which limits the operation of statutory law to the state of its enactment." *In re St. Paul & K.C. Grain Co.*, 94 N.W. 218, 225 (Minn. 1903); *see Olson v. Push, Inc.*, No. 14-CV-1163, 2014 WL 4097040, at *2 (D. Minn. Aug. 19, 2014) ("Minnesota law does impose a presumption against the extra-territorial application of state law."). Indeed, the Minnesota Supreme Court has never applied the MUDTPA extraterritorially. *See In re St. Jude Med.*, 425 F.3d 1116, 1121 (8th Cir. 2005). Accordingly, the MUDTPA claims by out-of-state plaintiffs who allege out-of-state injuries should be dismissed. *See* App. III-C.

**Second**, claims brought under the Idaho Consumer Protection Act, Idaho Code § 48-601, should be dismissed because those plaintiffs lack statutory standing and fail to allege a statutory violation. Regarding standing, "[i]n order to have standing under the Idaho Consumer Protection Act … the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (citing Idaho Code § 48-603); *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982) ("a claim under the ICPA must be based upon a contract"). Here, plaintiffs allege no contractual relationship with any defendant. *See Sweeten v. Syngenta Crop Protection, LLC*, 3:21-pq-00687, ¶ 6 (alleging "exposure to paraquat over many years while working on his employer's farm in Idaho"); *see generally Zaugg v. Syngenta Crop Protection LLC*, 3:21-pq-00694 (no allegations of purchase or other contractual relationship with a defendant).

In addition, Idaho CPA permits only actions for specifically enumerated violations. *See Taylor*, 243 P.3d at 662 (finding that plaintiff failed to state a claim for which relief could be granted when plaintiff failed to allege which prohibited act under the ID CPA defendants engaged in); *see also Bacon v. Countrywide Bank FSB*, No. 11-CV-107, 2012 WL 642658, at *7, *R&R adopted*, 2012 WL 639521 (D. Idaho Feb. 28, 2012) ("recovery is permitted only for specific actions that are deemed to be unfair or deceptive"). Those enumerated violations do not include the Idaho plaintiffs' products-liability claims, *see Sweeten*, No. 3:21-pq-00687; *Zaugg*, No. 3:21-pq-00694, nor do their pleadings otherwise allege that defendants engaged in one of the statutorily prohibited acts. *See Taylor*, 243 P.3d at 662.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the warranty and consumer protection claims indicated in Appendixes I-B, I-C, II-A-2, II-A-4, II-B-2, III-A-2, and III-B-2.

Dated:  September 13, 2021

Respectfully submitted,

 /s/ *Ragan Naresh*

Michael J. Nester, #02037211
DONOVAN ROSE NESTER P.C.
15 North 1st Street, Suite A
Belleville, IL 62220
(618) 212-6500 (Tel.)
(618) 212-6501 (Fax)
mnester@drnpc.com

Leslie M. Smith, P.C., #6196244
Bradley H. Weidenhammer, P.C., #6284229
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Ragan Naresh, P. C. *admitted pro hac vice*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000

*Counsel for Syngenta Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 13, 2021, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

 /s/ *Ragan Naresh*                               
Ragan Naresh