# EXHIBIT D

ELECTRONICALLY FILED
12/23/2019
K. BIEKER, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA - MARTINEZ
T.Ciardella, DEPUTY CLERK

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF CONTRA COSTA

DATE: December 23, 2019
JUDGE: Edward G. Weil

DEPARTMENT: 39
CLERK: Marion Merino
UNREPORTED

**PARAQUAT COORDINATED CASES**

Case No.: JCCP MS5031

## ORDER AFTER HEARING – DECEMBER 19, 2019
## RE: DEFENDANTS' DEMURRER

Defendants demur to the complaint on grounds of federal preemption, and alternatively ask that the Court dismiss or stay the matter on grounds of primary jurisdiction. On December 18, 2019, the Court issued a tentative ruling overruling the demurrer and denying the request for stay. Oral argument was held on December 19, 2019. The Court hereby issues a ruling as follows.

Defendants' demurrer is **sustained without leave to amend as to Count IV, and otherwise overruled.** Defendants shall file and serve their answers by January 21, 2020.

The parties agree that Defendants' demurrer applies to all the cases presently included in this Coordinated Proceeding. For ease of reference, the Court refers to the complaint filed in *Watts v. Syngenta AG*, Contra Costa Case No. MSC19-00637.

The main Plaintiffs allege that they were diagnosed with Parkinson's Disease after using Paraquat. The Plaintiffs have sued Defendants for (1) strict products liability, (2) negligence, (3) nuisance, (4) California Consumers Legal Remedies Act and (5) breach of the implied warranty of merchantability. In addition to the main Plaintiffs, some Plaintiffs have brought loss of consortium claims.

Defendants demur to each claim for the failure to state a cause of action. Defendants argue that all the claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §136, et seq. Defendants also argue that the doctrine of primary jurisdiction requires this Court to stay or dismiss this proceeding.

1

Finally, Defendants argue that the California Consumers Legal Remedies Act claims fail because Plaintiffs' exposure to Paraquat was not primarily for personal, family or household purposes and as such, the CLRA does not apply here. Plaintiffs concede this argument and therefore, the demurrer to Count IV is sustained without leave to amend.

**Express Preemption**

FIFRA provides that "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." (7 U.S.C. § 136v(a).) Thus, FIFRA does not preempt all state law, but specifically allows state regulation of pesticides that is more strict than that permitted by the Environmental Protection Agency ("EPA"). What a state may not do is impose "any requirements for labeling or packaging in addition to or different from those required" by EPA. (7 U.S.C. § 136v(b).) Thus, while Syngenta argues, in essence, that a uniform national pesticide system in which the EPA makes all decisions concerning pesticide use is a superior policy choice, Congress has chosen to draw the preemption provision more narrowly. Accordingly, the Supreme Court has recognized that FIFRA "leaves ample room for States and localities to supplement federal efforts even absent the express regulatory authorization of § 136v(a). (*Wisconsin Public Intervenor v. Mortier* (1991) 501 U.S. 597, 613.)

The parties agree that Paraquat is regulated by the EPA under FIFRA, 7 U.S.C. §136, et seq. The focus of the inquiry here is section 136v, which states that the States "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act…"

*Bates v. Dow Agrosciences L.L.C.* (2005) 544 U.S. 431 explained that "[f]or a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement '*for labeling or packaging*'; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is '*in addition to or different from* those required under this subchapter.' " (*Id.* at 444.) The court went on to state that "[r]ules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.' None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted." Could this lead to "a crazy-quilt of anti-misbranding requirements different from the one defined by FIFRA itself"? Conceivably. But this is the exact argument rejected by the Supreme Court in *Bates*, which responded that "the clear text of § 136v(b) and *Medtronic* cannot be so easily avoided." (*Id.*, at 448.)

Here, as in *Bates*, Plaintiffs' strict products liability, negligence, nuisance and warranty of merchantability claims all include allegations that the product was improperly designed and manufactured. (Watts Comp. ¶¶ 74, 89(a), (b), 99, 129.) The negligence claim also includes allegations that the Defendants did not properly test Paraquat. (Watts Comp. ¶¶ 89(c)-(e).) As explained in *Bates*, these allegations are not preempted. Thus, the demurrer on preemption fails, because each cause of action alleges facts to support a state law claim that is not preempted by FIFRA.

Both parties discuss the failure to warn claims that are included in the complaints. Both the strict liability and negligence claims include allegations that Defendants failed to adequately warn of the risks associated with Paraquat and failed to provide proper instructions to avoid these risks. (Watts Comp. ¶¶ 81, 89(f), (g).) As *Bates* explained, claims based on the negligent-failure-to-warn "are premised on common-law rules that qualify as 'requirements for labeling or packaging.' " (*Bates, supra*, 544 U.S. 446.) *Bates* also explained that a state failure to warn claim is not preempted by FIFRA if the "common-law duties are equivalent to FIFRA's requirements that a pesticide label not contain 'false or misleading' statements." (*Id.* at 447.) In order to determine whether a state failure to warn claim is preempted by FIFRA, the court must look at state law requirements for that claim. (*Id.* at 453.) Notably absent from Defendants' briefing, however, is a discussion of the California law on strict products liability and negligence claims based on the failure to warn, and how it is "in addition to or different from" the EPA requirements. Thus, Defendants have not shown that claims based on a failure to warn under California law are preempted.

Among the variety of federal district court cases on the issue, two are most worth discussing here. *Wilgus v. Hartz Mt. Corp.* (N.D.Ind. Feb. 19, 2013, No. 3:12-CV-86) 2013 U.S.Dist.LEXIS 24226 decided that allegations seeking to impose liability for improper warnings or product instructions are preempted by FIFRA. This decision was not based on California law and the analysis in *Wilgus* was not persuasive. *Wilgus* barely discussed *Bates* and it does not appear that the court considered what was required under Indiana law and whether those requirements were broader than those in FIFRA. In contrast, in *Hardeman v. Monsanto Co.* (N.D.Cal. 2016) 216 F. Supp. 3d 1037 the court considered what is required for a failure to warn claim in California and found that the California claims were not preempted by FIFRA. (*Id.* at 1037-1038.) In reply, Defendants take issue with *Hardeman's* description of requirements imposed by California law, but overall have failed to establish that California requirements are more broad than those imposed under FIFRA

In the tentative ruling, the Court found that Defendants place too much reliance on *Mut. Pharm. Co. v. Bartlett* (2013) 570 U.S. 472. *Bartlett* involved a design defect state law claim related to a generic pharmaceutical. This context is key since the makers of generic drugs are statutorily prevented from changing the composition of their drug or changing the label so that it differs from that of the named brand drug. (*Id.* at 475, 483-484.) Because of these specific limitations, the only way for the pharmaceutical to comply with both state law and federal law was to stop selling the pharmaceutical. The Supreme Court rejected an argument that state law is not preempted by federal law

3

because the pharmaceutical company could always stop selling the product. (*Id.* at 486-487.) *Bartlett* deserves much more discussion, although it arises in the context of conflict preemption (see below), because the statute at issue in that case does not have an express preemption provision.

**Conflict Preemption**

In the tentative ruling, the Court also pointed out that Defendants have not shown that FIFRA prevents Defendants from asking the EPA to change their compound or their label. In fact, FIFRA allows Defendants to ask the EPA for permission to amend its label. (7 U.S.C. §136a(f)(1); see also *Bates, supra,* 544 U.S. at 438-439.) Since the hearing, the Court has reviewed both *Bartlett* and *PLIVA, Inc. v. Mensing* (2011) 564 U.S. 604. In *Mensing,* the Supreme Court dealt with a situation similar to *Bartlett,* i.e., labeling of a generic drug, which was required to use the same labeling as had been approved for the name-brand drug. Plaintiffs "assert[ed] that when a private party's ability to comply with state law depends on approval and assistance from the FDA, proving pre-emption requires that party to demonstrate that the FDA would not have allowed compliance with state law." (*Id.,* at 620.) In a departure from previous conflict-preemption doctrine, the Court held that "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." The Supreme Court acknowledged that the FDA might be willing to change the label, but concluded that the alternative construction would greatly undermine the Supremacy Clause as it applies to conflict preemption. For this Court's purposes, the fact that the conclusion was extensively debated with the four-justice minority only solidifies the deliberate nature of the majority's holding.

What is left to this Court is to determine whether there is any difference between the FDCA and FIFRA for this purpose. The preemption provisions are not at all the same. FIFRA specifically addresses the issue of preemption. As the Supreme Court noted in *Bartlett,* "the FDCA's treatment of prescription drugs includes neither an express pre-emption clause…,nor an express non-pre-emption clause[.]" (*Bartlett, supra,* 570 U.S. at 493.)

In *Bartlett* the Supreme Court addressed how the holding could be reconciled with *Bates*. The Court found that in *Bates* "the design-defect claim in question was not a 'requirement' for labeling or packaging'" and thus fell outside the class of claims covered by the express preemption provision as issue in that case." (*Id.* at 491.) In other words, the product at issue in *Bates* might have been modified or reformulated to make it safer and thereby comply with state tort law, completely independent of any warnings. In contrast, it found that the record in the case before it showed that drug in question could not be changed in any way other than the labeling, i.e., could not be reformulated. (*Id.,* at 475 ["Because Mutual was unable to change sulindac's composition as a matter of both federal law and basic chemistry, New Hampshire's design-defect cause of action effectively required Mutual to change sulindac's labeling to provide stronger warnings."]) Thus, a change in labeling would be the only way to comply with state-law duties.

4

Defendants make the same factual argument in this case: Paraquat is a specific chemical compound, which cannot be modified while still remaining Paraquat, thus stronger warnings will be the only way to comply with state law. (See Defendants' reply brief, 17:19-22 ["Parquat dicholoride…is an organic compound, and Plaintiffs do not even begin to suggest what sort of 'redesign' might overcome their alleged 'design defects.'"].) This, however, is a factual issue, and cannot be resolved on demurrer.

This still leaves the issue of whether the state law requirements are "in addition to or different from" the FIFRA requirements. *Bates* clearly held that even a "labeling" claim could proceed as long as it is not "in addition to or different from" federal requirements, and neither *Bartlett* nor *Mensing* address that aspect of *Bates*. In *Bates*, the Supreme Court stated that state tort law is not preempted "if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." (*Id.*, at 447.) It found that it was up to the lower courts to determine whether "these particular common-law duties are equivalent to FIFRA's misbranding standards." (*Id.*) This concept was relied on by the District Court in *Hardeman, supra,* which was decided after *Bartlett* and *Mensing* (although it cites neither case). As the Court said in *Hardeman*, EPA's decision is prima facie evidence of compliance with FIFRA's requirements, but is not conclusive. (*Hardeman, supra,* at 1038.)

Second, much of *Bartlett* was devoted to rejection of the claim that the "alternative" of not selling the product does not avoid preemption. Under FIFRA, however, states are specifically given the option of more restrictively regulating the product, even banning it. ("A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter." 7 U.S.C. § 136v(a).) Thus, arguably, if the imposition of liability amounted to a ban of the product it would be permissible. This distinction between the FDCA and FIFRA was not addressed in *Bartlett*.

Finally, Defendants cite to *Buckman Co. v. Plaintiffs' Legal Comm.* (2001) 531 U.S. 341 for the holding that State law fraud-on-the-FDA claims are preempted under conflict preemption. It is clear that *Buckman* does not apply here, since both sides agree that the complaints do not include a claim based on fraud-on-the-EPA. Defendants start their conflict preemption discussion with a note that the "Complaints all avoid any explicit statements that Defendants secured Paraquat's registrations by defrauding the EPA." (Memo p. 23.) Plaintiffs agree that their complaints are not based on fraud on the EPA. (Oppo. p. 22.)

The bottom line is that plaintiffs bringing a tort claim involving a FIFRA-registered product must thread a small needle, or series of needles: they must show either (1) the product violates state-law standards completely independent of any "failure to warn" claim that might affect the labeling; or (2) that the state-law duty to warn actually is not in substance broader than the EPA misbranding requirements. In making that showing, plaintiffs may not rely on any theory that EPA might allow a different warning if requested, or that EPA approval was obtained through fraud.

5

This leaves the issue of what do to about the complaints in this proceeding. Count I, "Strict Products Liability," includes an entire section (B) entitled "failure to warn," encompassing various theories of inadequate warning. (Watts Comp. ¶¶ 77-82.) However, section (B) is included with other allegations in Count I that are clearly not preempted. In addition, if section (B) was considered as its own claim, it still alleges a valid cause of action because it is possible that the state law requirements for providing adequate warnings are not broader than the EPA misbranding requirements. Thus, the demurrer based on preemption must be overruled. However, the parties should be aware of the limitations on the failure to warn claims as this litigation continues. These limitations may be addressed through appropriate motions or proposed jury instructions at the appropriate time.

### Primary Jurisdiction

Defendants argue that the EPA is currently conducting a review of Paraquat and that this Court should invoke the doctrine of primary jurisdiction and dismiss or stay this case pending the outcome of the EPA review. As discussed below, much of the facts in support of this argument are based on documents without a proper request for judicial notice. Therefore, much of these documents are not properly considered when ruling on this demurrer. However, both sides agree that the EPA is currently conducting a registration review of Paraquat and the Court will accept this fact as true.

" ' *"Primary jurisdiction"* ... comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' [Citation.]" *(Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390.) "[T]he primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. [Citations.]" *(Id.* at 39.) "No rigid formula exists for applying the primary jurisdiction doctrine [Citation.] Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. [Citation.]" *(Id.* at 391.) Courts have discretion on whether to decline to adjudicate a case until the administrative process has been completed, unless there is a specific statutory scheme that prohibits a court from exercising discretion under the doctrine of primary jurisdiction. *(Id.* at 391-392, 394.)

Here, Defendants do not argue that FIFRA specifically prohibits the courts from exercising discretion under the doctrine of primary jurisdiction. Thus, this Court is free to exercise its discretion when deciding whether to stay these cases pending outcome of the EPA's review of Paraquat.

It is not at all clear that the EPA's decisions will affect a significant portion of Plaintiffs' claims and thus, assist with the goal of judicial efficiency. As *Bates* explained, there are a number of common law claims (including design defect) that are not covered by FIFRA. In addition, product registration under FIFRA is prima facie evidence, *but not conclusive proof*, that the pesticide, its labeling and packaging comply with the registration provisions of the Act. (7 U.S.C. § 136a(f)(2).)

Defendants also argue that invoking primary jurisdiction would protect the integrity of the FIFRA regulatory scheme. Defendants are concerned that allowing a jury to decide the claims raised in this proceeding would usurp the EPA's authority to regulate pesticides such as Paraquat. This argument is not persuasive. If a jury were to conclude that Plaintiffs' claims are meritorious and award damages then Defendants may be motivated to change their labeling or redesign their product, but as *Bates* explained, they would not be required to change it. Thus, the regulatory scheme in FIFRA would remain intact.

It does not appear that the issues raised by this Coordinated Proceeding are so complex that it would be helpful for the EPA to finish its review before these cases proceed. There may well be complicated scientific principles raised in this proceeding, but such issues are regularly presented to Courts and juries throughout this State. Although *Bates* did not discuss primary jurisdiction, the Supreme Court expressed confidence that juries can decide issues of misbranding and there was no reason to think that an occasional verdict contrary to the EPA's conclusions "would result in difficulties beyond those regularly experienced by manufacturers of other products that every day bear the risk of conflicting jury verdicts." (*Bates, supra,* 544 U.S. at 452.)

Finally, to the extent that federal law on the doctrine of primary jurisdiction applies here, the Court finds the analysis in *Ryan v. Chemlawn Corp.* (7th Cir. 1991) 935 F.2d 129 to be on point.

For these reasons, the Court is not convinced that the doctrine of primary jurisdiction should be used in this case. Therefore, the Court exercises its discretion and will not stay this case pending the outcome of the EPA's review of Paraquat.

**Procedural Matters**

Defendants reference a number of documents from the EPA. Defendants provided the court with website addresses, but have not included copies of these documents. It appears that Defendants want the Court to take judicial notice of these documents, however, they did not make a formal request for judicial notice. If Defendants had made a formal request for judicial notice they would have also been required to provide copies of these documents. (California Rule of Court, Rule 3.1306, Evid. Code §453(b).) Nor would it be appropriate to accept the EPA documents as proof of the facts asserted in them, especially those related to the safety of the product. The Court did not consider

these documents when ruling on this demurrer, except that the Court accepted the uncontested position that the EPA is currently conducting a registration review of Paraquat.

DATED: DECEMBER 23, 2019

Hon. Edward G. Weil
**Judge of the Superior Court**