IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Plaintiffs' Motion for Alternate Service of Process on Defendant Syngenta AG (SAG). (Doc. 333). Plaintiffs seek Court authorization to serve SAG via email, via its domestic subsidiary, and/or via domestic counsel. SAG opposes an alternative method of service for law firms who have yet to properly serve it under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). (Doc. 368). For the following reasons, Plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs in 343 cases and counting in these coordinated proceedings allege generally that exposure to Paraquat products manufactured, distributed, sold by Defendants SAG, Syngenta Crop Protection, LLC, and Chevron U.S.A., Inc., caused their Parkinson's disease. SAG is a Swiss corporation with its principal place of business in Basel, Switzerland. Because the United States and Switzerland are both signatories of the Hague Convention, it is undisputed that the Hague Convention applies to service of process on SAG.

Plaintiffs, however, seek authorization to serve SAG by an alternative method, as requiring every plaintiff to serve SAG in Switzerland via the Hague Convention could take months and cause extensive delay and expense. Plaintiffs argue the Court has discretion to allow alternative methods of service of process under Federal Rule of Civil Procedure 4(f)(3) if the facts and circumstances regarding the foreign defendant warrants the use of an alternative method. Plaintiffs note that SAG has been on notice of personal injury cases related to the use of Paraquat for nearly four years and has been represented by the same counsel during that time; thus, there are no due process concerns if SAG were served via email. Moreover, SAG has been served in related state court litigation under the Hague Convention; it has waived formal service in three MDL member actions; and SAG has been served via the Hague Convention in one case pending in this MDL. *See Holyfield v. Syngenta AG*, Case No. 3:21-pq-553-NJR (S.D. Ill. 2021). Because SAG is a sophisticated, multi-national corporation engaged in extensive online operations and email communications, service of process by alternate means is both appropriate and permissible.

In response, SAG claims Plaintiffs have not even attempted service via the Hague Convention, nor have they engaged in discussions of methods of service that respect SAG's due process rights and international comity while also reducing costs and expediting the process. (Doc. 368). Furthermore, SAG has not authorized its domestic counsel to accept service on its behalf, and proper service in the state court cases does not suffice for this Court to exercise personal jurisdiction over SAG in hundreds of other cases involving different states' laws. SAG contends that Plaintiffs' desire to move this

litigation along quickly is an insufficient reason to dispense with international law altogether. As a compromise, SAG proposes that each law firm engaged in this litigation serve SAG under the Hague Convention, then SAG will waive service for any additional case filed by that law firm.

In reply, Plaintiffs note that they attempted to initiate a discussion regarding service in July 2021, but SAG refused. (Doc. 375). Plaintiffs argue that SAG is on notice of the claims in this MDL, Plaintiffs are taking a commonsense approach given the Court's aggressive timeline, and SAG's proposal is inconsistent with its supposed opposition to waiver. While it claims each complaint is too factually distinct to provide SAG with notice of the claims against it, each case filed by a law firm will likely be factually distinct. Therefore, SAG's desire to have each law firm serve it via the Hague Convention before it will waive service for future cases filed by that firm is illogical.

## DISCUSSION

Rule 4(f) of the Federal Rules of Civil Procedure provides that an individual may be served outside the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as the Hague Convention, or "by any other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(1), (3). There is no dispute that the Hague Convention applies in this case, as the United States and Switzerland are both signatories to it. There also is no dispute that the Hague Convention does not forbid service by email. *See NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, No. 20-CV-07543, 2021 WL 2986303, at *5 (N.D. Ill. July 15, 2021) ("Service by email is not specifically provided

for in the Convention, but neither is it forbidden.").

Alternative service is "neither a 'last resort' nor 'extraordinarily relief,'" but instead "is merely one means among several which enables services of process on an international defendant." *Rio Props. v. RioIInt'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). SAG argues, however, that before the Court can issue an order for alternative methods of service under Rule 4(f)(3), Plaintiffs must meet two additional showings: (1) that they have reasonably attempted to effectuate service on SAG; and (2) that the circumstances require court intervention.

While the Seventh Circuit has not spoken on the matter, several district courts in this Circuit have required that a plaintiff demonstrate why alternative service should be authorized under Rule 4(f)(3). *See Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013) (citing the advisory committee notes to Rule 4); *NBA Properties, Inc.*, 2021 WL 2986303 at *7 (finding the Court could authorize service by email as long as Plaintiffs "make a showing as to why alternative service should be authorized"); *1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, No. 20-CV-06811, 2021 WL 2136073, at *8 (N.D. Ill. May 26, 2021) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate under certain circumstances, such as when 'there is a need for speed that cannot be met by following the Hague Convention methods.' ").

Many of these courts have disagreed, however, that service under the Hague Convention must be attempted before alternative service can be authorized. *See 1025 W. Addison St.*, 2021 WL 2136073, at *8; *Commodity Futures Trading Comm'n v. Caniff*, No. 19-CV-2935, 2020 WL 956302, at *5 (N.D. Ill. Feb. 27, 2020) ("The plain language of the rule

does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3)."); *Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018) (explaining that a plaintiff "is not required to first attempt service through the Hague Convention under Rule 4(f)(1) before asking [the] Court to allow alternate means"). This Court follows suit and finds that nothing in Rule 4(f)(1) requires a plaintiff to comply with the Hague Convention before alternate service is ordered.

Plaintiffs also have demonstrated why alternative service should be authorized. Plaintiffs attempted to initiate a protocol for service on SAG in July 2021, but SAG refused. Now, three months later, there still is no streamlined process for serving SAG. The company has been served via the Hague Convention in at least one case in this MDL, it has waived service of process in three MDL member cases, and it has been aware of the claims Plaintiffs are making for at least four years. There simply is no question that SAG is aware of the claims pending in this MDL. *See Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016) ("Rule 4(f)(3) permits the court to order service by any means not prohibited by international agreement, as long as the method of service comports with constitutional notions of due process."). The Court rejects SAG's arguments to the contrary.

Furthermore, the Plaintiffs who have attempted to initiate service under the Hague Convention have been told the process will take 16 weeks or longer. Since its initial Case Management Order, the undersigned has emphasized the importance of the orderly and expeditious resolution of this litigation. (Doc. 16). This goal cannot be realized if each plaintiff is required to wait four months to effectuate service on SAG.

Finally, SAG's argument that it has not authorized its U.S.-based counsel to accept service on its behalf is unavailing. Once a court authorizes an alternative service method, no specific authorization from the defendant is required to make the Order effective. *See 1025 W. Addison St.*, 2021 WL 2136073, at *9. Indeed, service upon the domestic counsel of a foreign defendant is "a common form of service under Rule 4(f)(3). *Id.* (quoting *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV 0902047, 2015 WL 13387769, at *5 (E.D. La. Nov. 9, 2015); *see also Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371, 1376 (D. Or. 2014) ("[S]everal federal courts have authorized service under Rule 4(f)(3) on domestic counsel as involuntary agents for their clients abroad.").

Service of process by email is not prohibited by the Hague Convention, and Plaintiffs have demonstrated why an alternative method of service is necessary in this case. For these reasons, the Motion for Alternative Service of Process on Defendant Syngenta AG filed by Plaintiffs (Doc. 333) is **GRANTED**. Pursuant to Rule 4(f)(3), Plaintiffs have authorization to serve SAG via email, via its domestic subsidiary, and/or via its U.S.-based counsel.

**IT IS SO ORDERED.**

DATED:   October 13, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**