IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: PARAQUAT PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | Case No.: 3:21-md-3004-NJR<br><br>MDL No. 3004 |
| This Document Relates to All Cases | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

Pursuant to CMO No. 8, Defendants filed motions to dismiss relating to cases that were served on at least one defendant on or before August 11, 2021. Syngenta Crop Protection, LLC, and Syngenta AG (hereinafter "Syngenta") filed a joint motion, in which they also joined arguments made by Chevron U.S.A., Inc. Likewise, in its separate motion, Chevron U.S.A, Inc. (hereinafter "Chevron"), joined the arguments raised by Syngenta. Because Defendants joined in each other's arguments, Plaintiffs file this joint response.

For the reasons set forth below, Defendants' motions are premature at this stage of the litigation and should be summarily denied without prejudice to being reasserted at a later time. Alternatively, Plaintiffs request an additional thirty (30) days to respond to any arguments not summarily denied without prejudice.

### BACKGROUND

During a pre-meeting status conference, Defendants made a three-headed proposal as to the procedure that would govern its responsive pleadings to the hundreds of complaints that have been transferred to or filed in this Court:   first, that Defendants be allowed to file a master motion to dismiss that applies to all cases subject to the MDL; second, that the requirement to file responsive pleadings be stayed for cases currently not subject to a responsive pleading deadline; and, third, that Defendants be allowed to hold in reserve any dispositive motions which challenge this Court's jurisdiction but instead allow the Defendants to challenge the legal sufficiency of the Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (Tr. of Aug. 27, 2021, Pre-

Meeting Status Conference at 18-21.) Plaintiffs objected to the first and third elements of Defendants' proposal and instead suggested that the parties work together to identify which cases are likely to be initially tried so that targeted pretrial motions can be quickly resolved and discovery commenced. (Id. at 21-22.)

CMO No. 8 was intended to "streamline" the motion to dismiss process for the Court and the Court's staff to avoid "hundreds of filings in hundreds of cases." (Tr. of Aug. 27, 2021, Status Conference at 8:13-16.) While it is true that, on paper, Defendants filed only two Rule 12(b)(6) motions to dismiss, in actuality, the motions assert hundreds of arguments attacking each of the claims filed in over one hundred cases implicating choice of law issues involving thirty-six (36) states. If Defendants' Motions to Dismiss are allowed to proceed, this Court and Plaintiffs will be forced to address an endless array of interrelated and unrelated legal issues which, not unlike a hundred-headed-hydra, will regenerate new legal issues that will thwart any possibility of an efficient resolution of the issues that will control the disposition of the bellwether trials.

## DISCUSSION

I. **Defendants' Attempt to Dispose of Hundreds of Individual Claims by Means of a "Master Motion to Dismiss" Thwarts the Intention of CMO No. 8 and the Efficiencies of Consolidated Pretrial Proceedings.**

The purpose of multidistrict consolidation under 28 U.S.C.A. § 1407 is to empower the transferee court to formulate a pretrial program that: (1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi–Piece Rim Products Liability Litigation,* 464 F.Supp. 969, 974 (J.P.M.L. 1979), and (2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties, *In re Managed Care Litigation,* 2000 WL 1925080 (J.P.M.L. 2000).

The Defendants' "master motions to dismiss" are a wolf in sheep's clothing and violate the fundamental purpose of an MDL to "ensure that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Managed Care Litigation,* 2000 WL 1925080 (J.P.M.L. 2000). Defendants' shotgun approach of raising over 350 arguments for dismissal of various claims raises legal issues that are unique to the many subgroups of Plaintiffs who seek justice before this Court.

Paradoxically, Defendants insist that, after this Court wades through the ocean of Rule 12(b)(6) issues, they be allowed then to raise fundamental issues as to this Court's jurisdiction over the cases pending before it. If, as Defendants assert, a fundamental question of jurisdiction exists which might make all this Court's rulings void or moot, common sense and respect for this Court's time dictate that Defendants make their jurisdictional challenges – or any other challenge that would affect the entirety of the litigation – now or forever hold their peace. (Tr. of Aug. 27, 2021 Pre-Meeting Status Conference at 21: 6-16.)

**II.    Innumerable Legal Issues, Unique within the Many Subgroups of Plaintiffs, Preclude Resolution of the Hundreds of Plaintiffs' Cases by means of a 'Master Motion to Dismiss'.**

**Statutes of Repose**

Defendants raise statute of repose arguments under seven (7) states' laws relating to twenty-seven (27) cases. Notably, Defendants seek total dismissal of only two (2) cases on this basis – one under Connecticut law and one under North Carolina law. What each argument directed to each of the twenty-seven (27) cases has in common is that it requires a factual determination relating to either when the particular product in each particular case left Defendants' control or was sold, or when the particular plaintiff was last exposed to paraquat.

These inquiries do not streamline the process for the Court and its staff. Rather, they require a complaint-by-complaint examination of every allegation, which, as the case develops during

discovery, could be amended. Defendants' approach promulgates a fallacy that only two motions are pending on the master docket. In fact, it is no more streamlined than filing a separate motion in every member case. This state by state, as well as fact intensive, analysis is more appropriate at the bellwether stage, when a particular state's law is at issue and the particular facts of the case are being developed.

### Statutes of Limitations

Defendants raise statute of limitations arguments as a complete bar to sixteen (16) cases under six (6) states' laws. What each argument directed to each of the sixteen (16) cases has in common is that it requires a factual determination relating to diagnosis or manifestation of symptoms. In many cases, there will be no formal diagnosis. Similar to a statute of repose analysis, this inquiry requires a fact intensive review of every allegation in every complaint and, moreover, a factual determination establishing a diagnosis or the sufficiency of symptoms. This is not a birth defect case where the date of injury is the date of birth; establishing any date of diagnosis will require factual development of each particular case. Therefore, these arguments are more appropriately determined at the bellwether stage after the facts of a particular case are developed during the bellwether process.

### Statutes of Limitations – Warranty Claims

Defendants raise statute of limitations arguments relating to warranty claims asserted in seventy-two (72) actions under twenty-one (21) states' laws. The commonality among these arguments is the requisite factual determination of when a particular breach occurs or, as defined by the defense, when tender of delivery is made. Reviewing and analyzing each of the seventy-two (72) member case complaints is the antithesis of a streamlined process at the responsive pleading stage in a multi-district coordinated proceeding. These arguments likewise should be addressed as they apply to any bellwether selection.

### Statutes of Limitations – Statutory Consumer Protection Claims

Defendants raise statutes of limitations arguments relating to statutory consumer protection claims in twelve (12) cases involving three (3) states' laws. What each of these arguments has in common is an inquiry into the timing of each particular purchase or sale. As with the arguments described above, the appropriate time for this inquiry is during the bellwether stage, such that an inquiry can be made into the facts of the particular case that is part of the bellwether process.

### Public Nuisance Claims

Defendants argue that all public nuisance claims, which are found in "about half" of the cases covered by CMO No. 8, should be dismissed because there was no harm to the public at large. Defendants additionally argue that under the laws of eleven (11) states, the public nuisance claims should be dismissed from nineteen (19) member cases because any alleged injury to any particular plaintiff occurred after the product left Defendants' control and entered the stream of commerce.

Defendants concede that approximately half of the cases covered by CMO No. 8 do not include public nuisance claims. Defendants' request that the Court conduct this analysis, regardless of whether any cases selected as part of any bellwether protocol actually asserts such a claim, defeats the purpose of a streamlined approach.

### Warranty Claims

Defendants seek dismissal of warranty claims brought under nineteen (19) states' laws in sixty-eight (68) cases based upon a lack of privity. Specifically, Defendants contend that only purchasers and their household members and guests – and not employees, contractors, commercial invitees, or bystanders – are able to bring warranty claims in these states. This argument necessarily requires the Court to delve into the factual circumstances surrounding the purchase of the paraquat to which each plaintiff in those sixty-eight (68) cases was exposed. This inquiry is

more appropriate with respect to the particular bellwether pool cases.

Additionally, Defendants seek dismissal for failure to plead pre-suit notice as required in twenty-three (23) states. This argument involves sixty-one (61) cases. Again, it is worth noting that this argument does not resolve any case in its entirety and, consequently, does not streamline the Court's handling of Defendants' responsive pleadings.

### Consumer Protection Claims

Defendants contend that Plaintiffs in twelve (12) cases do not meet the definition of consumers or have no contractual relationship with any defendants as required under six (6) states' laws. Additionally, Defendants argue that monetary damages are not allowed under the consumer protection statutes of six (6) states and therefore request dismissal with prejudice of thirty-two (32) member cases. Like the other arguments raised by Defendants, this analysis requires an in-depth evaluation of facts that, upon additional case work up, could be amended by Plaintiffs, such that undertaking this analysis now is neither an efficient use of the Court's resources nor a streamlined process for moving cases forward. Moreover, Defendants' request for dismissal with prejudice based upon whether monetary damages are available ignores other relief that may be available under a particular state's law and requires the Court's analysis of such on a state-by-state basis. As with Defendants' other arguments raised in their motions to dismiss, such consideration is more appropriate during the bellwether process.

### Exclusive Product Liability Laws

Defendants argue that product liability statutes in seven (7) states affecting twenty-five (25) cases bar recovery under any other theory of liability and, therefore, any other theories of liability should be dismissed with prejudice. It is important to note that this argument does not resolve any cases in their entirety.

Asking the Court to conduct an in-depth analysis of state law that may not ultimately be a

state at issue in the bellwether process lacks regard for the Court's time and resources and, again, is the antithesis of a streamlined process for the Court's convenience and benefit. This is especially true where, taking Defendants' argument at face value, claims will remain, and the case will move forward. Narrowing the claims makes sense during the bellwether stage, not at the responsive pleading stage, for a multidistrict litigation. This is especially true where cases ultimately will be subject to transfer or remand as intended under 28 U.S.C § 1407.

### **Derivative Claims**

It is axiomatic that derivative claims cannot survive dismissal of the primary claims upon which they are based. However, these too should be decided at a later time if and when the primary claims are evaluated.

### **Post-1990 Claims**

Chevron seeks dismissal from all cases arising from paraquat exposure after 1990 because it ceased distributing paraquat in 1986. Notably, Chevron acknowledges that it could be possible for product to remain in the marketplace beyond 1990, stating: "[a]t minimum, a plaintiff seeking to assert such a claim would need to plead additional facts making it reasonable to infer that the paraquat at issue, contrary to ordinary practice, sat on a shelf for years (or even decades) before it was applied." (Doc. 351, p. 19.)

During the September 24, 2021, Status Conference, the Court instructed the parties to meet and confer regarding a process to resolve this issue without motion practice. Based upon Chevron's acknowledgement that there is some possibility that exposure after 1990 could be attributable to Chevron, any dismissals obtained through the meet and confer process should be without prejudice to refiling should discovery reveal that these products remained in the public marketplace longer than claimed by Chevron.

### **Alternative Motion for Additional Time**

Alternatively, if the Court decides that any or all of the arguments raised by Defendants are appropriate for resolution at this stage of the proceeding, Plaintiffs request an additional thirty (30) days to respond to those arguments. This request is not made for purposes of delay; to the contrary, by filing this response seeking summary dismissal without prejudice, Plaintiffs are heeding the Court's continued emphasis on "the importance of the orderly and expeditious resolution of this litigation." (See Doc. 414, citing to Doc. 16.)

Contrary to what Plaintiffs believed to be the purpose of an omnibus motion to dismiss, i.e., addressing up front any issues that would affect the litigation as a whole and all of the cases filed within this consolidated proceeding, such as the preemption defense that Defendants reserved in a footnote in their papers, Defendants seek to create a legal circus by presenting over 350 arguments to dismiss certain claims from 120 cases. This presents choice of law issues that require the Court to evaluate each of the 120 cases rather than addressing common issues in a streamlined fashion and thereby violates the spirit of CMO No. 8.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Docs. 350 and 352) should be denied without prejudice to being reasserted as those arguments relate to potential bellwether cases. Alternatively, Plaintiffs request an additional thirty (30) days to respond to any arguments not summarily denied as premature.

Dated: October 13, 2021                                   Respectfully submitted,

/s/ Sarah Shoemake Doles
Sarah Shoemake Doles
**CAREY DANIS & LOWE**
8235 Forsyth Blvd., Suite 1100
Saint Louis, Missouri 63105
(314) 725-7700
(314) 721-0905-0905 (Facsimile)
sdoles@careydanis.com

Khaldoun A. Baghdadi
**WALKUP, MELODIA, KELLY & SCHOENBERGER**
650 California Street, 26th Floor
San Francisco, California 94108
(415) 981-7210
kbaghdadi@walkuplawoffice.com

Peter J. Flowers
**MEYERS & FLOWERS, LLC**
225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
(630) 232-6333
(630) 845-8982 (Facsimile)
pjf@meyers-flowers.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, I electronically filed Plaintiffs' Response to Defendants' Motions to Dismiss with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record.

/s/*Sarah Shoemake Doles*
Sarah Shoemake Doles