IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION, | ) ) ) ) ) ) ) | Case No. 3:21-md-03004-NJR <br><br> MDL No. 3004 <br><br> Reply Memorandum in Support of Motion to Dismiss |
| This Document Relates to Cases Identified in Notice of Motion and Proposed Order | | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR
CONSOLIDATED PARTIAL MOTIONS TO DISMISS CURRENT ACTIONS**

Plaintiffs' response to Defendants' motions to dismiss (ECF 417, "Resp.") is not a response at all. Instead of defending their claims against the legal challenges Defendants put forward, Plaintiffs object—more than a month later—to the motion-to-dismiss protocols this Court adopted in CMO 8 (ECF 347). Their objections are both improper and meritless. Improper, because the Court already heard and rejected Plaintiffs' position (namely, that Defendants should be foreclosed from filing motions to dismiss other than in the handful of cases that will be picked as bellwethers). Having failed to persuade the Court, Plaintiffs should not be permitted to pursue their own case management approach. Plaintiffs' objections are also meritless, as there is nothing "premature" about addressing common legal deficiencies that doom scores of claims and cases on the face of the pleadings. Indeed, other than brief recitations of the MDL framework's pursuit of judicial economy, Plaintiffs fail to cite a single authority for the ill-conceived process they advocate—a process far more prone to inefficiency than following CMO 8's approach and resolving the broadly applicable issues raised in Defendants' motions. Instead, it is Defendants' motions—which the Federal Rules entitle them to file—that promise to streamline the litigation, narrow the disputes between the parties, and make it possible to engage in meaningful bellwether-selection.

Finally, while Defendants would have consented to a reasonable extension, Plaintiffs never broached that topic with Defendants or filed a motion seeking that relief from the Court, and the Court should not allow Plaintiffs to ignore deadlines and case management orders with impunity. The Court should treat Defendants' motions as unopposed, and grant their proposed orders.

**1.** As Plaintiffs admit, the parties aired their positions about how best to move forward with Rule 12(b) motions at an August status conference. (Resp. 1.) Plaintiffs at that time urged that bellwether selection should happen first. (ECF 324-1 at 22-23.) The Court evidently did not agree. Instead, on September 10, 2021, the Court issued CMO 8, which instructed Defendants to

raise their Rule 12(b)(6) defenses to a first tranche of cases by omnibus motion, with "appendixes specifically identifying the legal rules, defenses, and objections that apply to particular actions." (ECF 347, ¶ 1.)  Plaintiffs did not object to or seek reconsideration of CMO 8, and Defendants complied with CMO 8 by the September 13 deadline.  (ECF 351 & 352.)

Respectfully, however, Plaintiffs have not complied with the Court's directive that they "shall file responses on or before **October 13, 2021**, collectively responding to each 12(b)(6) motion."  (ECF 347, ¶ 1.)  Instead, Plaintiffs filed a "response" that does not actually respond to any of Defendants' arguments for dismissal on the merits, but instead collaterally attacks CMO 8—more than a month after it was entered.  That attack comes too late, and is waived.  *Cf.* Fed. R. Civ. P. 51(c)(2)(B) (objections must be made "promptly").  More importantly, it will be impossible to litigate these matters in an orderly and efficient way if Plaintiffs continue to go their own way instead of respecting the Court's role in setting and controlling case management.

**2.**     Although the time to debate these issues has long passed, Plaintiffs' gripes about CMO 8 are baseless.  They suggest it would be more efficient to first pick bellwether cases and to adjudicate motions respecting those cases only, while holding hundreds of other cases in abeyance indefinitely without any threshold review.  That is both practically and legally misguided.

**a.**     Practically, it does not make sense to select bellwether cases until after the Court addresses the legal disputes presented by the motions to dismiss, because the Court's rulings will shape and narrow the claims and issues that remain.  *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 489 (7th Cir. 2020) ("Coordinated or consolidated pretrial proceedings can be used to streamline litigation … and to narrow issues … by motions to dismiss").  For example, if the Court agrees that Plaintiffs cannot state a public nuisance claim, or a claim under certain states' consumer protection statutes, that would inform whether a plaintiff asserting those claims is representative

as a bellwether.  Or, if the Court agrees that Illinois' statute of repose bars virtually all strict liability claims, for instance, that may counsel in favor of ensuring that a non-Illinois case is represented.  The point is that bellwether-selection will be far more educated and informed *after* this Court issues legal rulings that implicate the scope and nature of Plaintiffs' stable of claims.

Plaintiffs are also wrong to suggest that the omnibus motions will require considering an "endless array" of issues with limited significance.  (Resp. 2.)  MDL courts routinely consider omnibus Rule 12 motions with broadly applicable arguments addressed to claims under numerous state laws, including the same types of arguments that Defendants' motions raise.[1]  Those motions present a limited number of discrete, black-letter legal rules, each of which affects multiple cases in the first tranche of Current Actions.  Once the Court resolves those issues, it should be relatively straightforward for the parties to apply them to the hundreds of later-filed cases.  *See* Manual for Complex Litig. § 34.27 (4th ed. 2004) ("Rulings on Rule 12 motions can also be deemed to apply to new parties absent special circumstances.").  The rulings will also guide plaintiffs' lawyers around the country as they solicit and file new cases.  It is true that adjudicating the motions will require the Court to adopt a choice-of-law framework, but that is inevitable in MDLs.[2]  It is also relatively simple here: The substantive law of the state of exposure will virtually always govern.

---

[1] *See, e.g.*, *In re Valsartan, Losartan & Irbesartan Prods. Liab. Litig.*, No. 19-MD-2875, 2021 WL 364663, at *1 (D.N.J. Feb. 3, 2021) (resolving "defendants' arguments relating to subsumption of claims by various states' Products Liability Acts, and Rule 12(b)(6) pleading deficiencies for common law claims of negligence … [and] strict liability"); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1141, 1147 (S.D. Fla. 2020) (considering motion to dismiss claims for unjust enrichment, common law fraud, negligence, products liability, breach of warranty, consumer protection, and medical monitoring under laws of 50 states, D.C., and Puerto Rico); *In re Interior Molded Doors Antitrust Litig.*, No. 18-CV-718, 2019 WL 4478734, at *1 (E.D. Va. Sept. 18, 2019) (state antitrust, consumer protection, and unjust enrichment laws; 39 states); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 847 (E.D. Mich. 2014) (same; 22 states); *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 948 (E.D. La. 2011).

[2] *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 143 (E.D. La. 2002) (determining that claims are governed by "the law of the states in which the drug was ingested"); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016) (determining that claims are governed by the law of the state where plaintiffs bought allegedly defective cars); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 09-MD-2100, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) (analyzing choice-of-law for privilege disputes).

As for Plaintiffs' objection that certain of Defendants' arguments are premature because they require "factual determination[s]" (Resp. 3), that is simply not true.  The only "facts" relevant to the motions to dismiss—*e.g.*, when each plaintiff was exposed to paraquat, when each plaintiff was diagnosed with Parkinson's disease, and whether each plaintiff purchased paraquat himself or was exposed through employment—are alleged in Plaintiffs' complaints.  Defendants' appendixes cite the relevant paragraphs of each complaint and identify the facts alleged therein, to make the adjudicatory process as simple as possible.  Plaintiffs respond that their allegations "could be amended" (Resp. 4), but allegations that Plaintiffs themselves authored cannot simply be recanted to replead around an unfavorable legal determination.  *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013) ("A plaintiff … may not plead facts in their amended complaint that contradict those in their original complaint."); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (plaintiff may not "change[] his statement of the facts in order to respond to the defendant['s] motion to dismiss").  Regardless, even if Plaintiffs could cure any of their pleading defects through amendment, they are obligated now by the Civil Rules and CMO 8 to defend (or abandon) the claims they pleaded.

    **b.**  In any event, Rule 12 motions are not an optional part of civil litigation that an MDL court can bypass in the interest of efficiency or to encourage settlement.  The Sixth Circuit recently made that clear in a decision granting mandamus relief, *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020).  In that case, the district court "had refused to adjudicate [Defendants'] motions to dismiss." *Id.* at 846.  Explaining that Rule 12 gives defendants the right to file such motions, the Court of Appeals ruled "that the district court may *not* refuse to adjudicate motions properly filed under that Rule." *Id.*  After all, "an MDL court must find efficiencies within the Civil Rules, rather than in violation of them." *Id.* at 845.  And resolving Rule 12 issues at the

pleading stage *promotes* the Federal Rules' objective of a "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1. Defendants here are seeking to promote the "just and efficient conduct" of this proceeding, 28 U.S.C. § 1407, and believe (consistent with the Federal Rules) that early resolution of certain common legal arguments is an important step toward that goal.

**3.** Last, Plaintiffs ask for an additional 30 days to respond to Defendants' motions if the Court decides (again) to consider them. (Resp. 8.) Had Plaintiffs timely requested a reasonable extension, Defendants would certainly have consented. But the request should have come weeks ago, not in a late-night filing on the day of the deadline. Indeed, Plaintiffs advised at the September 24 status conference that they "absolutely will be able to handle" at least parts of their opposition "within the 30-day deadline," and would "talk to [Special Master Ellis]" about an extension if one became necessary. (ECF 378-1 at 5; *see also* ECF 378 at 5 ("We have a great team ... to respond to all of the arguments that are raised in that Motion to Dismiss.").) But Plaintiffs never did so, and it is now apparent that they did not use their 30 days to actually work on a substantive response. Nor have Plaintiffs filed a motion seeking more time, and an opposition brief is not a proper vehicle for seeking affirmative relief. While Plaintiffs claim to want a "streamlined" process, they have failed to keep pace, and continued delay is prejudicial to Defendants.

Accordingly, Defendants respectfully submit that the Court should treat their motions as unopposed, and rule accordingly. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (affirming dismissal where plaintiff "effectively abandon[ed] the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (same, and explaining that "[i]f [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning").

October 20, 2021                                    Respectfully submitted,

                                                    /s/ Leon F. DeJulius, Jr.
Steven N. Geise                                     Leon F. DeJulius, Jr.
JONES DAY                                           Traci L. Lovitt
4655 Executive Drive, Suite 1500                    Sharyl A. Reisman
San Diego, CA 92121                                 JONES DAY
Telephone: (858) 314-1200                           250 Vesey Street
Fax: (844) 345-3178                                 New York, NY 10281
sngeise@jonesday.com                                Telephone: (212) 326-3939
                                                    Fax: (212) 755-7306
Joseph C. Orlet                                     lfdejulius@jonesday.com
Bryan Hopkins                                       tlovitt@jonesday.com
Megan Ann Scheiderer                                sareisman@jonesday.com
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600                     Jihan E. Walker
St. Louis, MO 63105                                 JONES DAY
Telephone: (314) 480-1500                           77 West Wacker Drive, Suite 3500
Fax: (314) 480-1505                                 Chicago, IL 60601
Joseph.Orlet@huschblackwell.com                     Telephone: (312) 782-3939
Bryan.Hopkins@huschblackwell.com                    Fax: (312) 782-8585
Megan.Scheiderer@huschblackwell.com                 jihanwalker@jonesday.com

*Counsel for Chevron U.S.A. Inc.*


                                                    /s/ Ragan Naresh
Ragan Naresh, P. C.                                 Michael J. Nester, #02037211
KIRKLAND & ELLIS LLP                                DONOVAN ROSE NESTER P.C.
1301 Pennsylvania Ave., NW                          15 North 1st Street, Suite A
Washington, DC 20004                                Belleville, IL 62220
(202) 389-5000                                      (618) 212-6500 (Tel.)
                                                    (618) 212-6501 (Fax)
                                                    mnester@drnpc.com

                                                    Leslie M. Smith, P.C., #6196244
                                                    Bradley H. Weidenhammer, P.C., #6284229
                                                    KIRKLAND & ELLIS LLP
                                                    300 North LaSalle
                                                    Chicago, IL 60654
                                                    (312) 862-2000

*Counsel for Syngenta Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 20, 2021, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Leon F. DeJulius, Jr.*
Leon F. DeJulius, Jr.

*Counsel for Chevron U.S.A. Inc.*
