**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION, | ) ) ) ) ) ) ) ) | Case No. 3:21-md-03004-NJR<br><br>MDL No. 3004 |
| This Document Relates to All Cases | | |

**DEFENDANTS' JOINT SUBMISSION IN SUPPORT OF THEIR
PROPOSED PROTOCOL FOR THE SELECTION OF BELLWETHER CASES**

Defendants' proposed bellwether protocol—a hybrid approach involving both random and party selection—uses best practices to identify a representative sample of cases that will yield meaningful information about the broader MDL inventory. The protocol, which is described in detail in the draft CMO attached as Exhibit A and the visual aid attached as Exhibit B, begins with the random selection of 50 cases; from that selection pool, the parties select 20 cases for fact discovery and waive *Lexecon* rights for those cases; at the close of fact discovery, the parties strike 8 cases; and 5 of the remaining 12 cases are then randomly selected for motion practice and possible trial. Plaintiffs' contrary proposal—that a single case, selected by Plaintiffs alone, should serve as the bellwether—lacks any support in precedent or commentary, would waste party and judicial resources without meaningfully advancing the MDL, and fails to properly account for *Lexecon* issues. The Court should adopt Defendants' proposal.

The purpose of a bellwether process is to "provide meaningful information and experience to everyone involved."[1] In particular, pretrial proceedings in bellwether cases should yield "decisions on key issues applicable to other cases in the [MDL] (including on *Daubert* issues, cross-cutting summary-judgment arguments, and the admissibility of key evidence)."[2] And those decisions and (if necessary) trial results should "help the parties assess the strengths and weaknesses of various types of claims pending in the MDL."[3]

---

[1] Hon. Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 TULANE L. REV. 2323, 2332 (2008); *see* 4 NEWBERG ON CLASS ACTIONS § 11:13 (5th ed.) (noting that Judge Fallon's recommendations regarding bellwether selection are the "best documented in the literature").

[2] Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, 23 (2d ed. 2018), *available at* https://scholarship.law.duke.edu/bolch/5/ (hereinafter, "Duke MDL Manual"); *see also Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) (noting that bellwethers may "aid[] in predicting the outcome of tricky questions of causation or liability").

[3] Duke MDL Manual at 23; *see also* MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf (explaining that bellwethers should "enable the parties and the court to determine the nature and strength of the claims ... and what range of values the cases may have").

To achieve those ends, the cases selected as bellwethers must be sufficiently numerous and sufficiently representative to provide reliable information about the broader set.[4] Proceeding with a small number of non-representative bellwethers would only prolong the MDL and waste resources.[5] A bellwether protocol should therefore "minimize the risk that parties will attempt to 'game' the … process to result in test trials of cases that are not representative of the entire case pool."[6]

There are three primary ways MDL courts have attempted to identify a representative sample of bellwether cases: (1) pure random selection, (2) party or judicial selection, or (3) a "hybrid" of random selection and party or judicial selection.[7] Because the first two methods "may not provide a truly representative cross-section of all cases,"[8] courts and commentators have increasingly found that a hybrid approach works best.[9] For example, in one recent MDL, the court

---

[4] *See* MANUAL FOR COMPLEX LITIGATION § 22.315 ("[T]he more representative the test cases, the more reliable the information about similar cases will be."); Duke MDL Manual at 19 ("[T]he bellwether process will be valuable only if the cases selected for trial are truly representative of the whole[.]"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 09-MD-02100-DRH, 2010 WL 4024778, at *1 (S.D. Ill. Oct. 13, 2010) ("It is critical to a successful bellwether plan that an honest representative sampling of cases be achieved.").

[5] *See* Fallon, 82 TULANE L. REV. at 2359 ("If one side … can cast aside with conviction its defeats as being atypical, the bellwether trials will have failed in their ultimate purpose."); *cf., e.g., In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc*., No. 14-cv-1748, 2017 WL 2574057, at *5 (N.D. Ill. May 22, 2017) (using an "idiosyncratic," "unrepresentative" case as a bellwether would "disrupt[]" the process to "which the Court and the parties ha[d] already devoted enormous time and resources"); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 322 F. Supp. 3d 911, 913 (D. Minn. 2018) (noting that a failed bellwether process "would waste the resources expended in advancing" that process and "delay the … MDL by many months").

[6] Duke MDL Manual at 26.

[7] *See id.* at 23–26; Deutsch & Spencer, *Trends in Selecting Bellwether Trials in Multidistrict Litigation*, 34 WESTLAW JOURNAL 16, 1 (2016), *available at* https://www.shb.com/-/media/files/professionals/d/deutschnicholas/bellwethertrialselection.pdf?la=en.

[8] Duke MDL Manual at 25; *see also* FED. JUDICIAL CTR., COORDINATING MULTIJURISDICTION LITIGATION: A POCKET GUIDE FOR JUDGES 12 (2013), *available at* https://www.fjc.gov/sites/default/files/2014/Coordinating-Multijurisdiction-Litigation-FJC-2013.pdf ("Selecting cases randomly … is unlikely to produce a representative set of verdicts that will assist the parties in reaching a global settlement."); Fallon, 82 TULANE L. REV. at 2348 ("If cases are selected at random, there is no guarantee that [those] cases … will adequately represent the major variables.").

[9] *See, e.g.,* Deutsch & Spencer, 34 WESTLAW JOURNAL at 2 ("[M]any courts have adopted a hybrid approach in which the parties may select bellwether cases, but only from a pool of cases that is either randomly selected or selected by the Court."); Duke MDL Manual at 25 ("[A] hybrid approach allows parties to participate in the selection process,

"began by randomly choosing 100 cases"; "[e]ach side then picked 16 cases" for discovery; and eight cases were selected to proceed to trial.[10]

Defendants' proposed bellwether protocol is a hybrid approach of the kind courts and commentators favor.[11]  It is the product of weeks of discussions with Plaintiffs and with Special Master Ellis.   It provides for large enough discovery and trial pools that pre-trial rulings—including on *Daubert* motions and potentially dispositive issues like causation, failure to warn, and exposure—can be extracted to the broader MDL inventory.   It encompasses enough cases to identify claims that are so thin and weak that plaintiffs and their counsel would rather dismiss them than move toward trial.   Indeed, more than 70 plaintiffs (roughly 20% of the total plaintiffs with PAQs due on November 23rd) have already chosen to dismiss their claims rather than complete the short-form PAQ.  A comparable number may well chose voluntary dismissal rather than face discovery or trial, and Defendants' proposal accounts for that possibility.[12]   It also specifically addresses Plaintiffs' stated concerns about resolving *Lexecon* issues prior to discovery.[13]   And it

---

provides some assurance that claims are representative, and avoids concerns with other approaches while yielding what could be a representative stable of cases.").

[10] Duke MDL Manual at 25 (discussing *In Re: Testosterone Replacement Therapy Products Liability Litigation*, No. 14-cv-01748, MDL No. 2545 (N.D. Ill.)); *see also, e.g., In re: Benicar (Olmesartan) Prod. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016 WL 1370998, at *1 (D.N.J. Apr. 6, 2016) (citing CMO No. 15 (Dkt. No. 193) ("allow[ing] the parties to select 20 bellwether cases from a pool of 30 randomly selected cases"); 4 NEWBERG ON CLASS ACTIONS § 11:15 (discussing various bellwether protocols in which of 20–30 cases were initially selected for discovery, and then a smaller subset (3–5) were selected for trial).

[11] *See* Exhibit A (draft CMO); Exhibit B (visual aid).

[12] Exhibit A ¶¶ 3–4, 7; *see* Duke MDL Manual at 27 (discussing voluntary dismissals and suggesting, for instance, that in the event of a voluntary dismissal "the other party could be invited to choose the replacement case"); Deutsch & Spencer, 34 WESTLAW JOURNAL at 3 (noting that tactics regarding voluntary dismissals "ha[ve] the potential to derail the bellwether process, and MDL courts have dealt with [voluntary dismissals] in a variety of ways").

[13] Exhibit A ¶ 3; *see also, e.g.,* Fallon, 82 TULANE L. REV. at 2359 (suggesting that *Lexecon* waivers be given before a party may "nominat[e] a case to fill a spot in the trial-selection pool" and proceed through discovery); *In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385 (S.D. Ill. Apr. 9, 2013) (Am. CMO No. 28 at 2), *available at* http://www.ilsd.uscourts.gov/Documents/mdl2385/CMO28Amended.pdf (providing that *Lexecon* waivers be given for all cases the proceed to discovery); *Baxter v. Lincoln Elec. Co.*, No. 1:08-WF-17037, 2012 WL 112526, at *4 (N.D. Ohio Jan. 12, 2012) (suggesting that a party waive its *Lexecon* rights when it nominates a case to serve as a bellwether); *Solis v. Lincoln Elec. Co.*, No. 1:04-CV-17363, 2006 WL 266530, at *4 (N.D. Ohio Feb. 1,

minimizes the potential for gamesmanship by allowing the opposing side to select a replacement case where a *Lexecon* waiver is declined.[14]

Defendants sent their bellwether proposal to Plaintiffs on October 1, 2021. Plaintiffs failed to respond for nearly six weeks.[15] When they finally did respond, Plaintiffs identified no specific concerns and offered no constructive feedback. Instead, they effectively disavowed the bellwether process altogether, suggesting that they should *unilaterally* choose a single case to proceed to trial and that Defendants should provide a blanket *Lexecon* waiver for all Illinois cases.[16]

Plaintiffs' unilateral selection proposal undermines the very purpose of bellwether selection: to identify a *representative* sample of cases. It is inconsistent with the great weight of precedent and commentary.[17] It makes no account for the waste and delay that would result if the single bellwether voluntarily dismisses during or after discovery (a real possibility given the number of voluntary dismissals to date). And it does nothing to ensure that pretrial rulings or (if necessary) trial results will have any relevance to cases beyond the one Plaintiffs unilaterally select. Instead, it appears to be a direct attempt to take only what Plaintiffs believe to be their strongest case to trial, and then rely on that idiosyncratic result to coerce inflated settlements. That is not a bellwether process at all.

---

2006) ("when the parties were negotiating the concept of holding bellwether trials," the court addressed *Lexecon* by providing that parties would have to waive *Lexecon* rights to designate a case as a potential bellwether).

[14] *See* Exhibit A ¶ 3; *see, e.g., In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385 (S.D. Ill. Apr. 9, 2013) (Am. CMO No. 28 at 2) (providing that the defendants would have the right to select a replacement case where the plaintiffs declined to waive *Lexecon* for a case the defendants had previously selected).

[15] *See* Exhibit C (Nov. 16, 2021 Letter from L. DeJulius) at 1.

[16] *See* Exhibit D (Nov. 9, 2021 Letter from P. Flowers) at 1.

[17] *See* Duke MDL Manual at 27 (a productive bellwether process requires "obtaining a sufficient number of outcomes to provide guidance, given the variety of fact patterns, claims, and defenses anticipated"); *id.* at 20 ("Usually, a judge should be skeptical of the value provided by trying one side's 'strong' cases that may not be representative of the broader claims[.]"); Fallon, 82 TULANE L. REV. at 2350 ("[I]n permitting only one side to fill the entire trial-selection pool, the transferee court opens the door for the inequitable stacking of overtly unfavorable and possibly unrepresentative cases, as well as creating an atmosphere of antagonism.").

Their insistence on a blanket *Lexecon* waiver is similarly misguided and unworkable. Venue considerations are often case-specific, and parties have the right to assert or waive *Lexecon* rights on a case-by-case basis.[18] Moreover, limiting the bellwether pool to Illinois cases—as Plaintiffs' proposal seems to suggest—would virtually guarantee a non-representative sample.[19] The entire purpose of an MDL is to provide a path toward resolution of all cases, not just cases in one jurisdiction. So the *Lexecon* waiver process should allow for a bellwether pool that spans multiple jurisdictions.[20] Defendants' proposal, unlike Plaintiffs', achieves that goal, while still preserving party and judicial resources by providing for waivers before discovery begins.[21]

Defendants respectfully request that the Court adopt their proposal and enter the draft CMO attached as Exhibit A.

---

[18] *See* Fallon, 82 TULANE L. REV. at 2358 ("To effectuate *Lexecon* waivers, the parties should each consider the merits of all cases individually and, under circumstances with which each feels comfortable, waive their *Lexecon* objections on a case-by-case basis."); Duke MDL Manual at 21–22 (discussing problems arising from a "blanket *Lexecon* waiver").

[19] *See* Fallon, 82 TULANE L. REV. at 2354 (limiting pool to cases involving "a single state's substantive law would render the bellwether trials of limited value"); Duke MDL Manual at 21 (cases from a single jurisdiction "may not be representative of the entire MDL case pool"); Loren H. Brown et al., *Bellwether Trial Selection in Multi-District Litigation: Empirical Evidence in Favor of Random Selection*, 47 AKRON L. REV. 663, 683 (2014) ("[B]ecause of differences in state law and commercial practices, it is unclear whether plaintiffs from one state will be representative of those from every other state.").

[20] *See, e.g., In re Fosamax Prod. Liab. Litig.*, No. 06-MD-1789-JFK, 2011 WL 1584584, at *1 (S.D.N.Y. Apr. 27, 2011) ("So that the selected cases would constitute a representative sample of the cases comprising the … MDL," parties were permitted to select cases from other jurisdictions "on the condition that, for each case selected … , the parties would execute *Lexecon* waivers."); Duke MDL Manual at 21 (discussing *Lexecon* and suggesting that courts "adopt a strategy for facilitating the availability of the broadest possible pool of [bellwether] candidates").

[21] *See supra* n.13.

December 1, 2021

Respectfully submitted,

/s/ Leon F. DeJulius, Jr.

Steven N. Geise
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Fax: (844) 345-3178
sngeise@jonesday.com

Joseph C. Orlet
Bryan Hopkins
Megan Ann Scheiderer
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Fax: (314) 480-1505
Joseph.Orlet@huschblackwell.com
Bryan.Hopkins@huschblackwell.com
Megan.Scheiderer@huschblackwell.com

Leon F. DeJulius, Jr.
Traci L. Lovitt
Sharyl A. Reisman
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
tlovitt@jonesday.com
sareisman@jonesday.com

Jihan E. Walker
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Telephone: (312) 782-3939
Fax: (312) 782-8585
jihanwalker@jonesday.com

*Counsel for Chevron U.S.A. Inc.*

Ragan Naresh, P. C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000

/s/ Ragan Naresh

Michael J. Nester, #02037211
DONOVAN ROSE NESTER P.C.
15 North 1st Street, Suite A
Belleville, IL 62220
(618) 212-6500 (Tel.)
(618) 212-6501 (Fax)
mnester@drnpc.com

Leslie M. Smith, P.C., #6196244
Bradley H. Weidenhammer, P.C., #6284229
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Counsel for Syngenta Defendants*

6

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| ) | |
| ) | |
| **In re: PARAQUAT PRODUCTS**  ) | Case No. 3:21-md-3004-NJR |
| **LIABILITY LITIGATION,**  ) | |
| ) | MDL No. 3004 |
| ) | |
| **This Document Relates to All Cases**  ) | |
| ) | |

**CASE MANAGEMENT ORDER NO. [X]**
**REGARDING SELECTION OF BELLWETHER PLAINTIFFS**

The Court hereby ORDERS that the following procedures shall govern the selection of bellwether plaintiffs for pre-trial discovery and trial plaintiff selection:

1.      Within 7 days following completion of the PAQs, the Court will randomly select 50 plaintiffs for inclusion in a bellwether selection pool.[1]

2.      Within 7 days of the Court identifying the bellwether selection pool, lead counsel for plaintiffs shall select 10 plaintiffs from the selection pool, and Syngenta and Chevron shall each select 5 plaintiffs from the selection pool, for a total of 20 plaintiffs, to serve as pre-trial discovery plaintiffs.  Selections shall be sent via email simultaneously to the opposing side at 5:00 pm CST on the date they are due.

3.      The selecting party waives its rights pursuant to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, for any plaintiff it selects.  Within 7 days of the selection described in this paragraph, any pre-trial discovery plaintiffs selected by Defendants shall

---

[1]    To facilitate this random selection, plaintiffs' counsel shall provide the Court and Defendants with a list of all plaintiffs in the MDL as of the date of CMO [x], in alphabetical order by last name, each numbered sequentially.  The Court will use the random sequence generator at random.org (RANDOM.ORG - Sequence Generator) to randomly sequence the plaintiff numbers, the first 50 numbers in the randomized sequence shall constitute the selection pool.

determine whether to voluntarily dismiss (without prejudice) their claims and each party must indicate whether it will waive its *Lexecon* rights for plaintiffs the opposing side selected.  If a plaintiff is removed from the discovery pool as part of this process—either because *Lexecon* waivers are not obtained or because the plaintiff voluntarily dismisses—the party that selected that plaintiff shall select a replacement (or replacements) from the bellwether selection pool as necessary to establish a discovery pool of 20 plaintiffs (10 chosen by plaintiffs and 5 each chosen by Syngenta and Chevron) for whom all parties waive *Lexecon*.  If the parties select one or more of the same plaintiffs for inclusion in the discovery pool, the additional pre-trial discovery plaintiffs will be selected from the remaining plaintiffs in the bellwether selection pool on an alternating basis.  The side with the least amount of selected plaintiffs currently in the pre-trial discovery pool shall select first.

4.   Once a pre-trial discovery plaintiff is in the pool, a pre-trial discovery plaintiff cannot voluntarily dismiss without prejudice; any voluntary dismissal will be with prejudice, absent agreement of parties or upon court order showing of good cause.

5.   The parties shall pursue bilateral fact discovery for all pre-trial discovery plaintiffs simultaneously, to be completed within the time specified in CMO [x].

6.   At the close of fact discovery, each side can strike four of the opposing side's selections (two strikes each for Syngenta and Chevron and four strikes for plaintiffs), leaving 12 pre-trial discovery plaintiffs total, from which the Court will randomly select five plaintiffs to be prepared for trial, using the same random sequence generator.  These five plaintiffs' cases will be tried individually in serial trials in the order in which they are randomly selected, should any of the five plaintiff's cases survive to trial.

2

7.      The voluntary dismissal by a pre-trial discovery plaintiff following inclusion in the 20 plaintiff bellwether selection pool shall count as a strike by plaintiffs.  In the event that more than four pre-trial discovery plaintiffs voluntarily dismiss their cases, defendants shall receive an additional strike for each such dismissed pre-trial discovery plaintiff.

8.      The parties will complete expert discovery as to all five trial plaintiffs, followed by dispositive motions and *Daubert* motions, and, if necessary, staggered individual trials, pursuant to the schedule set forth in CMO [x].  If the Court schedules multiple sequential trials, it will set trial-related  deadlines after ruling on dispositive motions and *Daubert* motions in connection with each of the five trial plaintiffs.

        **SO ORDERED.**


        _____
        **Chief Judge Nancy J. Rosenstengel**


Dated: _____

# EXHIBIT B

**All Cases in the MDL**

**50 Cases Randomly Selected by Court**

Plaintiffs Select 10 Cases for Discovery and Waive *Lexecon* for Those Cases

Defendants Select 10 Cases for Discovery and Waive *Lexecon* for Those Cases

**Lexecon Waivers:** Defendants Waive *Lexecon* for Plaintiffs' Cases; Where Waivers Not Obtained, Plaintiffs Select Replacements

**Lexecon Waivers:** Plaintiffs Waive *Lexecon* for Defendants' Cases; Where Waivers Not Obtained, Defendants Select Replacements

**20 Cases Proceed Through Fact Discovery**

Defendants Strike 4 of Plaintiffs' Cases

Plaintiffs Strike 4 of Defendants' Cases

**12 Representative Cases in Trial Selection Pool**

**Court Randomly Selects 5 Cases for Motion Practice and (if Necessary) Trial**

# EXHIBIT C

## JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-3830
lfdejulius@jonesday.com

November 16, 2021

Peter J. Flowers, Esq.
Meyers & Flowers, LLC
3 North Second Street
Suite 300
St. Charles, IL 60174

Sarah Shoemake Doles
Carey Danis & Lowe - St. Louis
8235 Forsyth Boulevard
Suite 1100
St. Louis, MO 63105

Khaldoun A. Baghdadi
Walkup, Melodia, Kelly & Schoenberger
650 California Street
26th Floor
San Francisco, CA 94108

Re: *In re: Paraquat Products Liability Litigation*, No. 3:21-md-3004 (S.D. Ill.)

Dear Counsel:

I am writing on behalf of Chevron U.S.A. Inc., Syngenta AG, and Syngenta Crop Protection LLC (collectively "Defendants") in response to Plaintiffs' November 9, 2021 letter regarding the process for identifying bellwether cases in the above-referenced proceeding.

A recurring topic of our weekly calls with Special Master Ellis for the past several months has been the parties' agreement that the Court needs to adopt an appropriate bellwether protocol for the MDL proceeding. To that end, Defendants and Plaintiffs Leadership Committee had a conference call in mid-September to discuss, in good faith, a potential bellwether process, including a process to address concerns expressed by both sides on *Lexecon* waivers. Based on that call, Defendants drafted a bellwether protocol that was designed to be mutually acceptable and sent it to Plaintiffs nearly six weeks ago. Despite Plaintiffs' repeated commitment on our weekly calls with Special Master Ellis to provide comments on the draft protocol, we did not receive any comments—or even a request for a discussion—until November 9. And, on November 9, instead of providing substantive comments, Plaintiffs disavowed any bellwether

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

November 16, 2021
Page 2

process instead suggesting that Plaintiffs pick a case of their choosing to try.  To say the least, we were surprised.  That offer is not only one-sided and inequitable, but it does nothing to move the overall litigation toward dispositive motions and if necessary trials and appeals.

In addition to providing no justification for their proposal that Plaintiffs unilaterally choose a case to proceed, Plaintiffs cite no legal authority to support their assertion that random selections are unrepresentative.  To the contrary, courts have recognized that in order "[t]o obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases."  MANUAL COMPLEX LIT. § 22.315 (4TH ED.).  MDL courts often rely on purely random bellwether selections.  *See, e.g., In re Deepwater Horizon Belo Cases,* No. 19-cv-963, 2020 WL 6689212, at *1 (N.D. Fla. Nov. 4, 2020) ("Two groups of Plaintiffs have been randomly selected to proceed as bellwether cases, with discovery bifurcated between general and specific causation").  More importantly, *Defendants' draft protocol is not a random selection.*  While Defendants' draft protocol used a random selection to narrow the field to a more manageable number of cases, the protocol provided that the parties would select cases and strike cases so that a truly representative selection could proceed through discovery.  Plaintiffs have offered no objection (or response at all) to Defendants' proposed selection and strike process.

For similar reasons, Plaintiffs' proposal that all parties waive any jurisdictional objections they may assert under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) for all Illinois cases is not well taken.  Defendants have repeatedly informed Plaintiffs that they cannot agree to a blanket *Lexecon* waiver but would be happy to discuss such waivers in the context of specific cases.  Defendants, furthermore, understand Plaintiffs' desire to not work up initial bellwether cases where Defendants will not agree to waive *Lexecon*.  Based on the parties' discussions and to accommodate Plaintiffs' concerns, the draft bellwether protocol provided that Defendants would provide *Lexecon* waivers *before* case specific discovery began.  On our September conference call, Plaintiffs thought this could be a workable compromise.

It is critical to establish a procedure for identifying bellwether cases as soon as possible to serve our shared goals of minimizing the expense of this litigation and imposing as little burden as possible on the Court.  We are available to meet and confer on our call with you tomorrow at 2 pm ET.  If we are unable to reach agreement on that call, we suggest proposing an expedited briefing schedule on the issue so that the Court can decide and determine the bellwether protocol as soon as possible.

Sincerely,

Leon F. DeJulius, Jr.

JONES DAY

November 16, 2021
Page 3


Cc:    Sharyl A. Reisman
       Jihan E. Walker
       Leslie M. Smith
       Bradley H. Weidenhammer
       Ragan Naresh
       Megan Ann Scheiderer
       Randi Ellis

# EXHIBIT D



PRINCIPALS
TED A. MEYERS
PETER J. FLOWERS
CRAIG D. BROWN
RYAN P. THERIAULT

3 NORTH SECOND STREET, SUITE 300
ST. CHARLES, ILLINOIS 60174
PHONE (630) 232-6333
FACSIMILE (630) 845-8982
www.meyers-flowers.com

CHICAGO OFFICE
225 W. WACKER DRIVE
SUITE 1515
CHICAGO, ILLINOIS 60606
(312) 214-1017

November 9, 2021

Leslie M. Smith, P.C.
Bradley H. Weidenhammer, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654

Leon F. DeJulius, Jr.
Sharyl A. Reisman
Jihan E. Walker
**JONES DAY**
250 Vesey Street
New York, NY 10281

Ragan Naresh, P. C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, DC 20004

Megan Ann Scheiderer
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

> *Re:  Paraquat Products Liability Litigation*
> *Case No. 3:21-md-3004-NJR, MDL 3004*

Dear Counsel:

Thank you for your draft bellwether proposal. We have reviewed your proposal and have the following preliminary thoughts.

As an initial premise, we believe that a process of random selection of bellwether cases will not provide us an accurate assessment as to the true value of these cases.  This method has repeatedly resulted in the selection of cases that do not provide any meaningful information to move the entire litigation forward. Given that plaintiffs have the burden of proof, we propose that plaintiffs be tasked with the first trial selection. We are happy to discuss a process for the selection of cases moving forward after plaintiffs select the first case to proceed to trial.

With respect to venue, we propose that all parties agree to waive Lexecon for all Illinois cases, in writing, within the next ten (10) days.  After PAQs have been completed, circulated and reviewed by both sides, the parties can then revisit which additional jurisdictions, if any, the parties are agreeable to proceeding with to trial in the Southern District of Illinois.

We thank you for your consideration and look forward to your thoughts.

Sincerely,

Peter J. Flowers, Esq.
MEYERS & FLOWERS, LLC

PJF/cld

cc: Sarah Shoemake Doles; Khaldoun A. Baghdadi; Randi Ellis