IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| | MDL No. 3004 |
| This Document Relates to All Cases | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case is before the Court *sua sponte* on the matters of discovery and compliance with the Orders of this Court. In Case Management Order No. 5, the undersigned directed Defendants to produce to Plaintiffs all discovery from *Hoffmann v. Syngenta Crop Protection, LLC, et al.*, No. 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir.). Defendants objected to this Order with regard to any privileged or protected documents. (Doc. 319). On September 3, 2021, the Court overruled Defendants' objections and ordered Defendants to turn over any document that does not contain attorney work product. (Doc. 332). The Court's September 3 Order specifically directed Defendants to produce all non-expert witness deposition transcripts and exhibits from *Hoffman*. (*Id.*).

Plaintiff's counsel in *Hoffman*—who also has cases pending in this MDL—subsequently filed an Emergency Motion to Enforce the Protective Order in the Circuit Court of St. Clair County. Plaintiff's counsel specifically sought to prohibit the production of the deposition transcripts of the Syngenta Defendants' corporate witnesses, Philip Botham and Montague Dixon, and Chevron's corporate witness, Timothy Patterson,

because the transcripts allegedly contained attorney work product including case theories and trial strategy. Circuit Judge Kevin Hoerner granted that motion, but he did not explicitly prohibit the production of Defendants' corporate witness deposition transcripts. Instead, the order prohibited "the disclosure of the transcripts and videotapes of the depositions of Defendants' experts and the exhibits thereto" and ordered Defendants not to disclose the documents in the MDL to the extent they include "the substance of Plaintiffs' experts' opinions or the bases therefor, or Plaintiffs' counsel's theories of the case or trial strategy." (Doc. 726-1 at pp. 11-12).

The MDL Plaintiffs then filed a motion for *in camera* review of the corporate witness deposition transcripts. (Doc. 726). Plaintiffs asserted the transcripts were not privileged under the work product doctrine, Judge Hoerner's order did not prohibit production of non-expert materials, and the transcripts were necessary to ensure Defendants' corporate representatives gave testimony consistent with their prior testimony. (*Id.*). In response, Defendants asserted Judge Hoerner made a mistake in wording in his order and meant to prohibit the disclosure of the corporate witness deposition transcripts, considering the language referenced above was contained in a section titled "Depositions of Defendants' corporate designees." (Doc. 806). And Defendants, of course, were concerned with violating the terms of Judge Hoerner's Order given that they remain parties to the *Hoffman* matter.[1]

While Defendants are probably correct that Judge Hoerner made a mistake, the

---

[1] While the parties are in the process of settling in *Hoffman*, the settlement has not been finalized.

Order says what it says. Judge Hoerner did not specifically prohibit the production of Defendants' corporate witness deposition transcripts. Thus, the Court ordered Defendants to produce the documents for this Court's *in camera* review to determine whether they contained privileged attorney work product. (Doc. 889). Yet, Defendants still have been reluctant to comply and provide the Court with the documents for *in camera* review, much less produce the documents to Plaintiffs, as doing so would potentially violate Judge Hoerner's order.

With the corporate representative depositions rapidly approaching in the MDL, however, the time has come to put this issue to rest. Accordingly, the Court invokes its powers under the All Writs Act and the relevant exceptions to the Anti-Injunction Act to enjoin Judge Hoerner's Order prohibiting the production of the corporate witness deposition transcripts.

The All Writs Act empowers federal courts to "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The United States Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

The Anti-Injunction Act does not provide authority for the issuance of injunctions, but instead limits the authority that a court would otherwise have under the All Writs Act if state litigation is involved. *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 770 (7th

Cir. 2017). The Anti-Injunction Act bars a federal court from enjoining state court proceedings, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "This exception, the Supreme Court teaches, means that an injunction may be issued where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Winkler*, 101 F.3d at 1201 (quoting *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)); *see also In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 397 F. Supp. 2d 957, 961 (N.D. Ill. 2005) ("While federal courts ordinarily may not enjoin state actions, where a federal MDL court's jurisdictional power is sufficiently threatened by a parallel state court action, such an injunction may issue."). For example, in *Winkler*, the Seventh Circuit held that a federal district court presiding over complex multidistrict litigation has the authority to issue an injunction to protect the integrity of its pretrial discovery orders, as long as the injunction is narrowly crafted to prevent specific abuses that threaten the court's ability to effectively manage the litigation. *Id.* at 1203.

Even if the Court has the power to issue an injunction, the undersigned "must still determine whether an injunction is an appropriate exercise of its authority" under Federal Rule of Civil Procedure 65. *In re Jimmy John's Overtime Litig.*, 877 at 769. For an injunction to issue, Plaintiffs must have a "better than negligible" chance of succeeding on the merits, no adequate remedy at law, and irreparable harm absent such relief. *Id.* Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after

trial. G*irl Scouts of Manitou Council, Inc. v. Girls Scouts of the United States, Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008). If those requirements are met, then the Court must balance the harm that party will suffer without an injunction against the harm the other party would suffer should the Court issue an injunction. *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). The Court must also consider the public interest in granting or denying an injunction. *Id.* In its final analysis, "the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Id.* (quotation and citation omitted).

Considering the low threshold for the first element, as well as the fact that Defendants have agreed to settle the *Hoffman* matter in state court, the Court finds Plaintiffs have a better than negligible chance of success on the merits. Furthermore, Plaintiffs in all 677 cases in this MDL will suffer irreparable harm for which there is no adequate remedy law if they are unable to review the corporate witnesses' prior testimony before their depositions in this matter, both to prepare for the depositions and for impeachment purposes. For the same reason, Plaintiffs would be greatly harmed if an injunction is not entered, but Defendants would suffer no harm. Defendants have access to the deposition transcripts and exhibits, and defense counsel can prepare their clients for their upcoming depositions accordingly. Plaintiffs are clearly at a disadvantage. And the public always has an interest in fair litigation, especially when the matter involves hundreds of plaintiffs from across the United States. Issuing an injunction to ensure Plaintiffs have access to the same materials as Defendants only serves the public interest.

Finally, when considering all factors as well as the costs of being mistaken, the

Court is confident that an injunction is proper. Although Plaintiff's counsel in *Hoffman* asserts the corporate witness depositions constitute attorney work product, a claim with which the state court agreed, the undersigned finds the transcripts are not protected work product.

"The attorney work product privilege establishes a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014) (citing *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2010); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006)). "The work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E.*, 600 F.3d at 621–22. The privilege protects documents prepared by attorneys in anticipation of litigation, documents that consist of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* (quoting FED. R. CIV. P. 26(b)(3)(B)). The privilege is waived, however, when the work product is voluntarily disclosed to an adversary. *Id.* (citing *United States v. Hamilton*, 19 F.3d 350, 353 (7th Cir. 1994)). "Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as a total waiver." *In re Bank One Sec. Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 423 (N.D. Ill. 2002).

Clearly, Plaintiff's counsel in *Hoffman* waived any work-product protection that existed when he disclosed his thoughts and strategies to Defendants during the relevant depositions. Moreover, Defendants possess the transcripts. There is no doubt, then, that the privilege—if any existed—was waived by counsel in *Hoffman* and the deposition transcripts do not constitute protected work product.

Because the transcripts do not constitute work product, and the state court's protective order is the only obstacle preventing Defendants from producing this non-privileged material, the Court hereby **ENJOINS** Judge Hoerner's Order enforcing the Protective Order in *Hoffmann v. Syngenta Crop Protection, LLC, et al.*, No. 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir.). This injunction is **LIMITED** to Judge Hoerner's purported restriction on producing the deposition transcripts of Philip Botham, Montague Dixon, and Timothy Patterson. Defendants shall produce the deposition transcripts Philip Botham, Montague Dixon, and Timothy Patterson to Plaintiffs' counsel within **24 hours**.

The Clerk of Court shall provide a copy of this Order to Judge Hoerner via email message at Kevin.Hoerner@co.st-clair.il.us.

**IT IS SO ORDERED.**

DATED:   February 8, 2022

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**