IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| | MDL No. 3004 |
| This Document Relates to All Cases | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are partial motions to dismiss filed by Defendants Chevron U.S.A. Inc. (Doc. 350) and the Syngenta Defendants (Doc. 352) (collectively, "Defendants").[1] Plaintiffs filed responses in opposition (Docs. 695, 696), and Defendants filed replies (Docs. 809, 812). For the following reasons, the motions are granted in part and denied in part.

### FACTUAL BACKGROUND[2]

Paraquat dichloride ("Paraquat") is a synthetic chemical compound that has been used as an active ingredient in herbicide products sold in the United States since the mid-1960s. Paraquat is used to kill broadleaf weeds and grasses in fruit and vegetable fields, to control weeds in orchards, and to dry plants before harvest by inhibiting photosynthesis, which results in destruction of cell membranes. It is typically applied via knapsack sprayers, hand-held sprayers, crop dusters, trucks with pressurized tanks, and

---

[1] Defendants have joined each other's motion; accordingly, the Court refers to the motions as being filed by all Defendants and discusses them accordingly.

[2] Unless otherwise noted, the following facts are taken from Plaintiffs' complaints. *See, e.g.*, Case Nos. 21-pq-547-NJR, 21-pq-606-NJR.

tractor-drawn pressurized tanks. The U.S. Environmental Protection Agency (EPA) has designated Paraquat as a "Restricted Use" product (RUP). (Doc. 352-3). RUPs have the potential to cause injury to applicators or bystanders without added restrictions. (*Id.*). As a RUP, Paraquat is not available for purchase by the public or for residential use and may only be applied by certified applicators. (*Id.*). It is one of the most widely used herbicides in the United States. (Doc. 352-2).

Plaintiffs in this multi-district litigation (MDL) allege they developed Parkinson's disease from exposure to Paraquat manufactured and distributed by Defendants. Parkinson's disease is an incurable, progressive nervous system disorder that affects one's movement.[3] Plaintiffs allege Paraquat enters the human body through absorption, inhalation, or ingestion. Paraquat then enters the bloodstream and, ultimately, the brain. There, Paraquat molecules allegedly cause damage and destruction to dopamine-producing neurons, leading to impaired signaling between neurons and causing the brain to lose control over motor function.

Plaintiffs allege that many epidemiological studies have found an association between Paraquat exposure and Parkinson's disease, including studies finding a two- to five-fold or greater increase in the risk of Parkinson's disease in people with occupational exposure to Paraquat compared to people without such exposure. Plaintiffs further claim Defendants had knowledge of these studies, as well as the relationship between Paraquat exposure and Parkinson's disease, yet actively concealed this information.

---

[3] Mayo Clinic, "Parkinson's disease" https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/symptoms-causes/syc-20376055 (last visited Feb. 9, 2022).

Plaintiffs advance numerous claims against Syngenta, the primary manufacturer of Paraquat products, and Chevron, the exclusive United States distributor of Paraquat until 1986.[4] These theories include: strict product liability—design defect; strict product liability—failure to warn; negligence; public nuisance, violation of state consumer protection statutes; and breach of implied warranty of merchantability. Defendants now move to dismiss a number of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to evaluate the adequacy of a complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, a plaintiff need only allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has interpreted *Twombly* and *Iqbal* to "require

---

[4] Currently, Defendant Syngenta Crop Protection, LLC, is the leading manufacturer and distributor of Paraquat in the United States.

'some specific facts' to support the legal claims asserted in the complaint. *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). "While the required level of specificity 'is not easily quantified,' a plaintiff must allege "enough details about the subject-matter of the case to present a story that holds together." *Id.* Fundamentally, "the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 586-87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

DISCUSSION

## I.  State Statutes of Repose

A statute of repose places "an outer limit on the right to bring a civil action" measured "not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). "A statute of repose 'bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1546 (9th ed. 2009)). "[S]tatutes of repose reflect legislative decisions that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability." *Id.* at 9 (quoting *School Board of Norfolk v. United States Gypsum Co.*, 360 S.E.2d 325, 328 (Va. 1987) (internal quotation marks omitted)). Equitable tolling is not available to pause the running of a statute of repose. *Id.*

Defendants argue many claims should be dismissed because they are time-barred on the face of Plaintiffs' complaints by applicable state statutes of repose. (Docs. 350, 351).

In response, Plaintiffs argue that Defendants fraudulently concealed the dangers of using Paraquat, thereby tolling the statutes of repose of Illinois, Georgia, Connecticut, and Iowa. Specifically, they allege Defendants knew or should have known that Paraquat was a highly toxic substance that can cause severe neurological injuries and impairment, and Plaintiffs had no reason to suspect that working with Paraquat could cause them to develop Parkinson's disease due to Defendants' efforts to conceal the harmful nature of the product. And in other states—Iowa, Indiana, and North Carolina—statutes of repose do not apply to allegations involving exposure to an inherently dangerous substance that causes a latent disease. The Court addresses each state in turn.

## A. Illinois

Under Illinois law, no strict product liability action shall be commenced later than "12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller." 735 ILL. COMP. STAT. § 5/13-213(b). Thus, Defendants argue, in cases governed by Illinois law where the alleged Paraquat exposure ended more than 10 years before a plaintiff sued, his or her strict liability claims must be dismissed. In response, Plaintiffs point to 735 ILL. COMP. STAT. § 5/13-215, which allows a plaintiff to bring an action within five years of discovering he or she has a cause of action if the defendant has fraudulently concealed the cause of action. "The concealment contemplated by section 13–215 must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007).

The Illinois Supreme Court has recognized that § 13-215 provides for tolling of the statute of repose if a defendant fraudulently conceals the cause of action. *DeLuna v. Burciaga*, 857 N.E.2d 229 (Ill. 2006). In *DeLuna*, a case involving legal malpractice, the court observed that while § 13-215 refers to a person's "discovery" of a cause of action, and thus could be construed to only apply to statutes of limitations, prior Illinois case law, the rules of statutory interpretation, and "basic principles of justice and reason" mandate § 13-215's application to statutes of repose. *Id.* at 240.

> While some might well point out that a plaintiff's knowledge of his or her cause of action should be irrelevant where a statute of repose is concerned, as a statute of repose is intended to terminate the possibility of liability after a defined period of time, *regardless of* a potential plaintiff's lack of knowledge of his or her cause of action . . . , there would be an obvious and gross injustice in a rule that allows a defendant . . . to conceal the plaintiff's cause of action and then benefit from a statute of repose.

*Id.* at 240, 242.

At least one other MDL court evaluating whether to toll the Illinois statute of repose in cases outside legal malpractice has relied on *DeLuna* to find that the fraudulent concealment exception applies to strict product liability claims. *See In re Fluoroquinolone Prod. Liab. Litig.*, No. CV 15-3417 (JRT), 2017 WL 690188, at *2 (D. Minn. Feb. 21, 2017). This Court likewise finds that the fraudulent concealment exception applies to Illinois's strict product liability statute of repose.

To establish fraudulent concealment of a cause of action in Illinois, a plaintiff must "show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim." *Id.* (citing *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004)). The defendants must have known the misrepresentations were

false and made them with the intent to deceive the plaintiff, and the plaintiff must have detrimentally relied on the representations such that he or she delayed filing suit until after the statute of limitations expired. *Gredell*, 803 N.E.2d at 548. Mere silence by defendants and failure by a plaintiff to learn of his cause of action is not enough. *Id.*

Here, the allegations in Plaintiffs' complaint are sufficient to establish fraudulent concealment of the cause of action. They allege that Defendants had a duty to disclose the hazards of Paraquat and their failure to do so constitutes a false representation; Defendants made affirmative false representations about the safety of Paraquat; Defendants made those representations with the intent to deceive Plaintiffs; and Plaintiffs relied on this intentional concealment to their detriment, as the concealment prevented Plaintiffs from learning about the cause of action through the exercise of ordinary diligence.

Furthermore, the Court disagrees with Defendants' assertion that fraudulent concealment only applies if Plaintiffs allege conduct above and beyond the wrongdoing upon which their failure to warn claims are founded. The Illinois Supreme Court has held that the alleged conduct establishing fraudulent concealment need not be different from the statements or omissions that form the basis of the cause of action. *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 46 N.E.3d 706, 717, *opinion modified on denial of reh'g* (Jan. 28, 2016). The acts "may be concurrent or coincident with it, or even precede it, provided they are of such a nature * * * as to operate after the time when the cause of action arose and thereby prevent its discovery, and were so designed and intended." *Id.* (citation omitted).

Plaintiffs generally allege that despite the risks associated with Paraquat and Defendants' duty to disclose such hazards, the Paraquat manufactured and distributed by Defendants was not accompanied by a warning that, when inhaled, ingested, or absorbed into the body, it was likely to cause latent neurological damage, including Parkinson's disease. Thus, when Plaintiffs were diagnosed with Parkinson's, or even began experiencing symptoms, they would not have known of any connection between their exposure to Paraquat and their neurological disease, causing them to delay filing any claims. At the very least, whether the alleged omissions prevented Plaintiffs from filing suit within the limitations period is a plaintiff-specific inquiry that requires additional fact discovery.

Finally, Defendants claim Plaintiffs' allegations fall short of the heightened pleading standard under Federal Rule of Civil Procedure 9(b). But because the statute of repose is an affirmative defense, Plaintiffs had no obligation under Rule 9(b) to plead around it. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses"). Plaintiffs are not claiming the tort of fraudulent concealment; they allege that Defendants fraudulently concealed the cause of action. Both cases cited by Defendants involved complaints specifically alleging claims of fraud or the tort of fraudulent concealment and, as such, are inapposite. *See Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018); *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990).

For these reasons, the Court finds that the Illinois Plaintiffs have sufficiently pleaded facts establishing fraudulent concealment, and their strict product liability

claims will not be dismissed as time barred by Illinois's statute of repose.

### B. Iowa

Defendants argue that, under Iowa's statute of repose, all strict liability, negligence, and warranty claims must be dismissed in any case involving exposure more than 15 years before Plaintiffs sued. *See* IOWA CODE § 614.1(2A)(a). Plaintiffs assert, and Defendants acknowledge, however, that the statute does not apply if the manufacturer or distributor "intentionally misrepresents facts about the product or fraudulently conceals information about the product and that conduct was a substantial cause of the claimant's harm." *Id.* The statute also does not apply "to the time period in which to discover a disease that is latent and caused by exposure to a harmful material," in which case the cause of action accrues when the disease *and its cause* is known or should have been known by the plaintiff. *Id.* § 614.1(2A)(b)(1). A "harmful material" is defined as "any substance which is determined to present an unreasonable risk of injury to health or the environment by the United States environmental protection agency pursuant to the federal Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*, or by this state, if that risk is regulated by the United States environmental protection agency or this state." *Id.* § 614.1(2A)(b)(2).

Defendants claim neither exception applies here, but the Court disagrees as to the latent disease exception. Plaintiffs argue Paraquat is a Restricted Use Pesticide (RUP), which the EPA describes as having "the potential to cause unreasonable adverse effects to the environment and injury to applicators or bystanders." Thus, Paraquat clearly is a harmful material in that it presents "an unreasonable risk of injury to health or the

environment." Defendants counter, however, that the exception only applies to substances regulated by the EPA *pursuant to the Toxic Substance Control Act*, and Paraquat does not fall in that category. Instead, Paraquat is regulated under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).

The Court does not read the statute so narrowly. A "harmful material" is also one that is determined to present an unreasonable risk of injury to health or the environment by the state of Iowa, if that risk is regulated by the state of Iowa. § 614.1(2A)(b)(2). Iowa has adopted the EPA's list of Restricted Use Pesticides (RUP), which includes Paraquat. *See* 5 Iowa Code. § 206.20; "Restricted Use Pesticides Updated List," https://www.epa.gov/system/files/documents/2021-10/rup-report-10-08-2021.pdf (last visited Feb. 10, 2022). As a RUP, Iowa regulates the use of Paraquat including certification standards for those who purchase, apply, and handle it. 5 Iowa Code § 206, *et seq.* Therefore, the Court finds that Paraquat is a harmful material as defined by the Iowa legislature, and the statute of repose does not apply in this case.

### C. Connecticut

Under Connecticut law, product liability claims are barred if filed later than 10 years from the date the defendant "last parted with possession or control of the product." Conn. Gen. Stat. § 52-577a(a). A "product liability claim" includes, but is not limited to strict liability, negligence, breach of express or implied warranty, failure to warn, and misrepresentation. *Id.* § 52-572m. Thus, Defendants argue that any action governed by Connecticut law must be dismissed entirely if the plaintiff used Paraquat more than 10 years before filing suit.

Again, Plaintiffs rely on the exception for fraudulent concealment. Connecticut's exception states: "The ten-year limitation provided for in subsection (a)… shall not preclude any action against a product seller who intentionally misrepresents a product or fraudulently conceals information about it, provided the misrepresentation or fraudulent concealment was the proximate cause of harm of the claimant." CONN. GEN. STAT. § 52-577a(d). The exception concerns concealment of facts about the product in issue, not concealment of the cause of action. *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 487 (D. Conn. 2015) ("Section 52–577a(d) . . . permits an otherwise barred action if the defendant intentionally misrepresents *a product* or fraudulently conceals *information about it.*") (quoting CONN. GEN. STAT. § 52–577a(d)).

Thus, to qualify for the exception, the Connecticut Plaintiffs must allege: (1) "defendants had actual awareness, rather than imputed knowledge, of material information about the product; (2) that they intentionally concealed this information, either through intentional misstatement, affirmative act of concealment, or failure to disclose when under a duty to do so; and (3) that plaintiff's reliance on the misstatement or omission proximately caused the harm." *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 488 (D. Conn. 2015). "Information about a product is 'material' if it is likely to affect the decisions or conduct of its users." *Id.* at n.7 (citing *Miller v. Guimaraes*, 829 A.2d 422, 434 (Conn. 2003)).

Plaintiffs allege Defendants—at the time the Paraquat was sold to Plaintiffs— knew that Paraquat was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of people who used it;

knew that it was likely to cause latent neurological damage and neurogenerative disease, including Parkinson's disease; failed to provide adequate instructions regarding avoiding those risks; deliberately crafted their label, marketing, and promotion to mislead farmers and consumers; and engaged in selective fraudulent research, testing, and advertising, all in an effort to turn a profit by convincing the agricultural industry that Paraquat did not cause Parkinson's disease. *See, e.g.*, *O'Connor v. Syngenta*, Case 3:21-pq-00556-NJR, at Doc. 1. They further allege that Defendants' actions and omissions were a proximate cause of their severe and permanent physical injuries, pain, and disability. *Id.* Based on these allegations, Plaintiffs have adequately alleged the elements of fraudulent concealment under Connecticut law.

### D. Georgia

In Georgia, "no action shall be commenced . . . with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." GA. CODE § 51-1-11(b)(2). Defendants argue that in cases subject to Georgia's statute of repose and involving exposure more than 10 years before Plaintiffs sued, all strict product liability claims must be dismissed.

Georgia's statute of repose contains exceptions, however, for claims of willful, wanton, or reckless disregard for life or property.[5] § 51-1-11 (c); *Chrysler Grp., LLC v. Walden*, 792 S.E.2d 754, 759 (2016); *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999). "Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the

---

[5] It also does not apply to failure to warn claims. § 51-1-11 (c).

consequences . . . [as to be the] equivalent in spirit to actual intent." *Watkins*, 190 F.3d at 1216–17. Georgia courts define reckless conduct as "an act that is intended by the actor, [although] the actor does not intend to cause the harm which results from it. It is enough that he realize[s] or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct may prove harmless." *Chrysler Grp., LLC*, 792 S.E.2d at 760-61 (citation and quotation marks omitted).

Defendants assert Plaintiffs have pleaded no facts that would support applying this exception, nor could they, because selling a product that has been available for decades, in an industry regulated by the EPA, cannot be considered willful, reckless, or wanton. The Court disagrees and finds that Plaintiffs have alleged facts sufficient to meet the "reckless disregard" exception to the Georgia statute of repose. In the Georgia Plaintiffs' complaints, they allege Defendants "were fully aware of the safety risks of Paraquat," yet "deliberately crafted their label, marketing, and promotion to mislead farmers and consumers." *See, e.g.*, *Jones v. Syngenta AG*, No. 3:21-pq-669 at Doc. 1, ¶ 124. Plaintiffs claim Defendants did this with "conscious disregard of Plaintiff's rights" to "turn a profit by convincing the agricultural industry that Paraquat did not cause Parkinson's Disease, and that full disclosure of the true risks of Paraquat would limit the amount of money Defendants would make selling Paraquat." *Id.* Based on these allegations, the Court finds Plaintiffs have adequately alleged that Defendants acted with reckless disregard for life, placing them within the exception to the statute of repose. The Court is not convinced that the regulation of Paraquat by the EPA requires a different

result, as the case cited by Defendants was at the summary judgment phase and involved compliance with FAA regulations. *See Taylor v. Mooney Aircraft Corp.*, 464 F. Supp. 2d 439, 448 (E.D. Pa. 2006), *aff'd but criticized*, 265 F. App'x 87 (3d Cir. 2008). And even the *Taylor* case recognized that "[c]ompliance with the regulations will not prevent the imposition of punitive damages if other evidence is presented showing culpable behavior." *Id.* Plaintiffs have alleged such behavior here.

### E.  North Carolina

In North Carolina, "[n]o action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption." N.C. GEN. STAT. § 1-46.1. This version of the statute applies to product liability actions accruing on or after October 1, 2009, while claims accruing earlier are subject to a 6-year limit. See N.C. GEN. STAT. § 1-50(a)(6) (1995). Both versions of the statute apply to all product liability claims, regardless of their nature. *Cramer v. Ethicon, Inc.*, No. 1:20-CV-95-MOC-WCM, 2021 WL 243872, at *3 (W.D.N.C. Jan. 25, 2021). Accordingly, Defendants argue any actions governed by North Carolina law that allege exposure ending more than 12 years before Plaintiffs sued must be dismissed in their entirety.

There is disagreement among courts, however, as to whether "personal injury" includes "diseases" under North Carolina law. In *Wilder v. Amatex Corp.*, the North Carolina Supreme Court held that a different, repealed statute of repose, § 1-15(b), was not intended by the legislature to apply to claims arising from *diseases* such as asbestosis,

but did apply to latent *injuries*. 336 S.E.2d 66, 72-73 (N.C. 1985). The court explained the

difference:

> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent.

*Id.* at 70.

A year later, the Fourth Circuit Court of Appeals adopted *Wilder*'s reasoning in

finding that the six-year statute of repose found in § 1-50(a)(6)—the prior version of the

statute at issue here—did not apply to claims arising out of disease. *Hyer v. Pittsburgh*

*Corning Corp.*, 790 F.2d 30, 33–34 (4th Cir. 1986). In 2016, the Fourth Circuit again applied

*Wilder* to find the statute of repose found in § 1-52(16), regarding certain personal injuries,

also did not apply to claims arising out of disease. *Stahle v. CTS Corp.*, 817 F.3d 96, 100

(4th Cir. 2016) ("We understand that North Carolina law is settled that **disease is not a**

**latent injury**; instead, the legal injury and awareness of that injury occur simultaneously

at diagnosis."). *Id.* at 110 (emphasis added).

In a concurring opinion in *Stahle*, Judge Thacker was "reluctant to afford

substantial weight" to *Hyer* given that *Wilder*—upon which *Hyer* relied—construed a

statute that only encompassed claims involving "bodily injuries" while the statute of

repose at issue in *Hyer* generally referenced "personal injur[ies]." *Id.* at 112 (Thacker, J.,

concurring). Nevertheless, Judge Thacker recognized that, post-*Hyer*, the North Carolina

Supreme Court clarified that "[t]he term personal injury has a wide range of meanings," but, in the context of § 1-52(16), it includes latent injuries. *Id.* (quoting *Misenheimer v. Burris*, 637 S.E.2d 173, 175 (2006)). Judge Thacker continued: "At first blush, one would think a disease is—or at least breeds—a latent injury. But that is not the way North Carolina sees it. North Carolina has recognized that diseases can be 'the result [not] of a single incident but rather of prolonged exposure to hazardous conditions of a disease-causing agent.'" *Id.* (quoting *Booker v. Duke Med. Ctr.*, 297 N.C. 458, 256 S.E.2d 189, 204 (1979)).

Under this understanding of North Carolina law, the answer here seems straightforward: a disease is not a latent "personal injury," meaning the statute of repose at issue does not apply to the North Carolina Plaintiffs' claims. But, as Defendants point out in their reply, the Seventh Circuit Court of Appeals has expressly rejected this interpretation of North Carolina law as it applies to § 1-50(a)(6), the pre-2009 statute of repose. In *Klein v. DePuy, Inc.*, the Seventh Circuit held that it "cannot follow the Fourth Circuit," because the "plain language of the statute, its history, and North Carolina case law all support our belief that no exception was intended." 506 F.3d 553, 557-59 (7th Cir. 2007). Instead, the Seventh Circuit predicted that the North Carolina Supreme Court would not apply an exception to § 1-50(a)(6) for diseases. *Id.* Defendants argue that this Court is bound by the Seventh Circuit's understanding of North Carolina law, meaning there is no exception for latent diseases.

The Seventh Circuit's interpretation of North Carolina law has been criticized. In *In re Dow Corning Corp.*, the Sixth Circuit noted that "North Carolina courts have

consistently held . . . that where diseases are concerned, the only possible point in time from which to measure the first injury in the context of a disease claim is when the disease is diagnosed." *In re Dow Corning Corp.*, 778 F.3d 545, 552 (6th Cir. 2015) (citation and internal quotations omitted). In a footnote, the court expressed its disagreement with the Seventh Circuit's decision in *Klein*:

> *Klein* itself appears to be at odds with North Carolina law, as the North Carolina legislature has made it clear that the disease exception continues to apply to its statute of repose for product liability claims. *See* 2009 N.C. Laws S.L.2009–420 (S.B.882) (Extending the statute of repose from six to twelve years and stating that "[n]othing in this act is intended to change existing law relating to product liability actions based upon disease."). *See also* 2014 N.C. Sess. Laws 2014–44, § 1 (S.B.58) (rejecting the Supreme Court's interpretation of N.C. Stat. § 1–52(16) in *CTS Corp. v. Waldburger*, –––– U.S. ––––, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), and affirming an exception to the statute of repose for latent disease claims linked to groundwater contamination). We also note that *Klein* has never been cited by a North Carolina appellate court.

*Id.* at n.2.

Another district court in this Circuit faced the same issue in 2019—whether to follow North Carolina law or Seventh Circuit precedent regarding the statute of repose. *See In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, No. 3:12-MD-2391, 2019 WL 110892 (N.D. Ind. Jan. 3, 2019). In the Biomet MDL, Judge Miller in the Northern District of Indiana aptly observed that by taking the *Klein* approach, "in which each statute of repose must be analyzed separately," a question of first impression arose as to whether a "disease exception" exists for § 1-46.1(1) and, previously, § 1-50(a)(6). *Id.* at *5. By taking the *Hyer* approach, the "disease exception" first referenced in *Wilder* applies to most, if not all, statutes of repose. *Id.* Judge Miller determined that a federal district court in North

Carolina had a much better chance of deciding which path was the right one to take, and so he denied the defendants' motions for summary judgment without prejudice to refiling them after they were remanded for trial. *Id.* at *6.

Since the decision in the Biomet MDL, a North Carolina district court has again followed *Hyer* in recognizing a latent disease exception to § 1-46.1 and § 1-50(a)(6).[6] *Cramer v. Ethicon, Inc.*, No. 1:20-CV-95-MOC-WCM, 2021 WL 243872 (W.D.N.C. Jan. 25, 2021). The *Cramer* court defined a "true latent disease" as one that "develops within the body over an extended time period before manifesting any symptoms," making it "difficult, if not impossible, to determine the first point at which the plaintiff was first 'injured.'" *Id.* at *5. Such diseases, unlike acute injuries, "typically develop after multiple exposures to a harmful substance and that one particular exposure cannot be identified as the 'injury-causing' event." *Id.*

Here, Plaintiffs have alleged they developed Parkinson's disease, a progressive neurodegenerative disorder that manifests itself over years, possibly decades, from their exposure to Paraquat. *See, e.g.*, *Heath v. Syngenta*, 3:21-pq-734, Doc. 1 at ¶ 46. They further allege multiple exposures to Paraquat over a period time such that one certain exposure cannot be identified as the "injury-causing" event. *Id.* at ¶¶ 114, 133. Because Plaintiffs allege their exposure to Paraquat caused them to develop a latent "disease" as that term is understood by North Carolina state and federal courts, this Court finds that § 1-46.1

---

[6] The plaintiff in that case did not qualify for the exception given that her urinary tract and bladder infections resulting from a pelvic mesh implant did not fit the definition of a disease for purposes of the statute of repose. *Cramer v. Ethicon, Inc.*, No. 1:20-CV-95-MOC-WCM, 2021 WL 243872, at *5 (W.D.N.C. Jan. 25, 2021).

and § 1-50(a)(6) do not bar the North Carolina Plaintiffs' claims.

### F. Indiana

Indiana's statute of repose states that a product liability action sounding in negligence or strict liability "must be commenced . . . within ten (10) years after the delivery of the product to the initial user or consumer." IND. CODE § 34-20-3-1(b)(2). Defendants assert the statute of repose also extends to breach of warranty claims that allege tortious personal injury. Thus, Defendants argue, all strict liability, negligence, and warranty claims must be dismissed where Plaintiffs' alleged exposure ended more than ten years before they sued.

In response, Plaintiffs refer to the Indiana Supreme Court's holding that the "Product Liability Act statute of repose does not apply to cases involving protracted exposure to an inherently dangerous foreign substance" such as asbestos. *Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160, 1167 (Ind. 2016). Additionally, where a product liability claim is disguised as a warranty claim, it is subsumed by the Indiana Product Liability Act ("IPLA").[7] *Cavender v. Medtronic, Inc.*, No. 3:16-CV-232, 2017 WL 1365354, at *6-7 (N.D. Ind. Apr. 14, 2017).

Here, the Indiana Plaintiffs have brought strict liability and negligence claims under the IPLA, asserting that exposure to Paraquat, an inherently dangerous foreign substance, has caused their Parkinson's disease. Further, they do not dispute Defendants' contention that their implied warranty of merchantability claims are subsumed by the

---

[7] Plaintiffs do not dispute Defendants' contention that their implied warranty of merchantability claims are subsumed by the IPLA.

IPLA. And in reply, Defendants admit "Indiana's statute of repose has been construed by its courts to exclude claims for disease." (Doc. 812 at p. 4). Accordingly, the Court finds that the Indiana Plaintiffs' claims are not barred by the statute of repose.

### G. Tennessee

Defendants also raise the Tennessee statute of repose, but as pointed out by Plaintiffs, the only case Defendants challenge under Tennessee law was voluntarily dismissed. Therefore, the issue of whether the Tennessee statute of repose bars any cases in this MDL is not ripe for consideration.

## II.     Public Nuisance Claims

Defendants next seek to dispose of Plaintiffs' public nuisance claims as a simple repackaging of their product liability claims.

"A public nuisance is 'an unreasonable interference with a right common to the general public,' usually involving a significant interference with public health, safety, peace, comfort, or convenience." *Michigan v. U.S. Army Corps of Engineers*, 758 F.3d 892, 900 (7th Cir. 2014) (quoting Restatement (Second) of Torts). Examples of public nuisances include toxic runoff into a river, the discharge of noxious gas from one state into another, and changes to a state's drainage system that causes flooding in the farmland of another state. *Id.*

Courts have been wary, however, of extending public nuisance law to cover claims regarding non-defective products that are legally sold, absent some additional wrongdoing. *See State ex rel. Hunter v. Johnson & Johnson,* 499 P.3d 719, 726 (Okla. 2021) ("Public nuisance is fundamentally ill-suited to resolve claims against product

manufacturers . . . ."); *City of Philadelphia v. Beretta U.S.A.*, Corp., 126 F. Supp. 2d 882, 911 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002) ("[A]ppellate courts have refrained from applying public nuisance doctrine in cases where the instrument of the nuisance is a lawfully sold product which has left the manufacturer's control" as it is "nothing more than a clever, but transparent attempt at an end run around the legislature's statutory prerogatives."). Accordingly, Defendants argue that Plaintiffs' public nuisance claims must fail when they are attacking the product itself rather than any additional conduct that created a public nuisance.

Plaintiffs acknowledge that Defendants' citation of the law is correct, but they contend they have alleged the requisite additional wrongdoing—Defendants advertised and promoted a dangerous product, despite knowing of its disease-causing properties prior to marketing it in the United States. Plaintiffs cite to *County of Santa Clara v. Atlantic Richfield Co.*, in which the plaintiffs, on behalf of the People, alleged the defendants promoted lead paint for interior use even though they had known for nearly a century that the use of lead paint was hazardous to humans. *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309 (Ca. Ct. App. 2006). The California Court of Appeals found this was sufficient to state a claim for public nuisance. *Id.* At the same time, however, the court noted that it was a civil action brought in the name of the People seeking abatement as the remedy. *Id.* As to another claim asserted by a class of individual plaintiffs, the Court noted it was "reluctant to extend liability for damages under a public nuisance theory to an arena that is otherwise fully encompassed by products liability law." *Id.* at 313. Thus, while the class alleged defendants did more than merely manufacture and distribute a

product and fail to warn of its dangers, their public nuisance claim seeking damages was "much more like a products liability cause of action because it is, at its core, an action for damages *for injuries caused to plaintiffs' property by a product.*" *Id.*

Like the class allegations in *Santa Clara*, the Court finds Plaintiffs' public nuisance claims to be more like a products liability cause of action than an action to truly address a public nuisance. Plaintiffs complain that Syngenta promoted the benefits of Paraquat on its website while failing to warn of its risks, which is repetitive of Plaintiffs' failure to warn claim. They seek damages for their alleged injuries rather than abatement of any true public nuisance. Moreover, Plaintiffs provide no basis for their public nuisance claim against Chevron, which stopped distributing Paraquat in 1986. Accordingly, the Court agrees with Defendants that Plaintiffs' public nuisance claims must fail.

### A.  Interference with a Public Right

Even if a public nuisance claim were a viable cause of action in this case, Plaintiffs have failed to sufficiently plead its elements. Under the law of every state governing a cause of action in this MDL, Plaintiffs must allege interference with a "public right." *See* Doc. 351 at n.13. A "public nuisance" involves the unreasonable interference with a right common to all members of the general public. 7 American Law of Torts § 20:5. A public right is "collective in nature." Restatement (Second) of Torts § 821B (1979). Thus, pollution of a stream that deprives riparian owners of the use of that water for their land is not a public nuisance. *Id.* But if that pollution then prevents the use of a public beach or kills the fish in a stream, depriving all community members the right to fish, then that pollution becomes a public nuisance. *Id.* Defendants argue that Paraquat is a product

used only by certain individuals, who are specifically authorized to use it, in the course of private employment. Thus, Plaintiffs cannot show harm to the general public.

In response, Plaintiffs assert that long-term exposure to Paraquat by soil microorganisms and plant roots results in "harmful biomagnification in humans and mammals," and that "extensive Paraquat applications lead to widespread residues in the soil surface and aquatic environments that ultimately enter the food chain and damage the ecosystem." Thus, there is "a sufficient basis to believe that paraquat substantially and unreasonably interferes with a public right to be free from pollutants of land, water, and air resources to protect the food chain shared by all." (Doc. 695 at p. 19).

The cases in this MDL, however, involve injuries to individuals allegedly caused by direct exposure to Paraquat. Plaintiffs do not allege soil or water contaminated with Paraquat caused their Parkinson's disease. They claim Defendants acted negligently in relation to Paraquat's ability to be inhaled, ingested, or absorbed into the bodies of people who used, were nearby while it was being used, or who entered fields and orchards where it had been sprayed. Therefore, the Court finds Plaintiffs have not alleged any interference with a public right.

### B. Control over Paraquat

Finally, in 11 states whose laws govern actions in this MDL, Plaintiffs must allege Defendants had "control" over the product at the time the damage occurred. (Doc. 351 at n.14). "The purpose of public nuisance law has been viewed as intended to give public authorities a legal remedy to terminate the conduct of a defendant that is violating a public right and injuring the public safety, health, or welfare." 132 Am. Jur. Proof of Facts

3d 193. Thus, in order to seek abatement of a public nuisance, a defendant must have control over the instrumentality causing the nuisance condition. *Id.*

Defendants argue that Plaintiffs cannot sufficiently plead the element of control, as they allege their injuries resulted from Paraquat application that occurred after the product left Defendants' control. In response, Plaintiffs argue Defendants knew of the dangers of Paraquat, yet they failed to "tackle the problem." They claim Defendants had a tangible role in carrying on the nuisance by continuing their daily business operations, knowing of the potential harm to Plaintiffs and the public, without taking any steps to "rectify paraquat's toxic redox component prior to dumping the hazardous product onto their unsuspecting consumers." (Doc. 695 at p. 21). Plaintiffs cite *In re National Prescription Opiate Litigation*, in which the District Court for the Northern District of Ohio found the defendants had "control" over the nuisance in that their "conduct in carrying out their business activities [was] the instrumentality by which the nuisance was created and fueled." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023, at *10 (N.D. Ohio June 13, 2019).

This Court is not convinced that a manufacturer's choice to carry out its daily business activities constitutes control over a product after it has been sold. As pointed out by Defendants, in *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021), the Oklahoma Supreme Court reversed a $465 million judgment against Johnson & Johnson on a public nuisance theory of liability, finding there is no common law tort duty to monitor how a consumer uses a product after it is sold. Specifically, the court held that a manufacturer has no control over its product once it is in the hands of distributors and

wholesalers, no control over how consumers use the product regardless of any warning or instructions, and no control over the laws and regulations governing the distribution of its products. *Id.* at 728-29. To hold otherwise, would mean "a manufacturer could be held perpetually liable for its products under a nuisance theory." *Id.* at 726. Moreover, the *Hunter* court held, "[e]xtending public nuisance law to the manufacturing, marketing, and selling of products . . . would allow consumers to convert almost every products liability action into a [public] nuisance claim." *Id.* at 729-30 (citation and quotation marks omitted). The court recognized the "clear national trend to limit public nuisance to land or property use," and to reject the application of public nuisance to products. *Id.* at 730.

This Court agrees with that trend. Paraquat is a legally sold product, and Defendants exerted no control over Paraquat at the time of its application. To allow Plaintiffs to bring a public nuisance claim simply because Defendants carried on their normal day-to-day business operations while Paraquat was allegedly causing Plaintiffs' injuries would expand the tort beyond its intended purpose.

For these reasons, Plaintiffs' public nuisance claims must fail. The public nuisance claims in the cases identified in Defendants' Appendix (Doc. 351-1 at pp. 32-36) are dismissed.

## III.    Warranty Claims

Defendants contend the Court also should dismiss the warranty and consumer protection claims brought by Plaintiffs who have invoked state laws that bar claims alleging physical injuries caused by a manufacturer's product. Specifically, Defendants seek dismissal of claims brought in states where:

- exclusive products liability laws subsume any actions based in warranty or consumer protection;

- the law limits warranty remedies to certain individuals or requires pre-suit notice to a defendant of an alleged breach; or

- consumer protection laws limit recovery to purchasers of goods for personal, family, or household use or preclude recovery for physical harm.

The Court addresses each argument in turn.

### A. Preclusion by State Product Liability Laws: Indiana, Kansas, Louisiana, Mississippi, North Carolina, Washington

Defendants assert the product liability acts ("PLAs") of Indiana, Kansas, Louisiana, Mississippi, North Carolina, and Washington provide the exclusive remedy for product-based personal injuries and, thus, subsume any defective product claims brought under those states' commercial codes or consumer protection acts. In these states, Defendants contend, Plaintiffs' warranty claims and consumer protection claims must fail.

In response, Plaintiffs argue that many individuals were exposed to Paraquat before PLAs were enacted in these states or their dates of exposure are unstated. Thus, it is possible they were exposed before the relevant PLAs were enacted and the laws do not serve to preclude their claims. For example, the North Carolina PLA became effective in October 1979. Thus, any North Carolina Plaintiff who alleges exposure prior to 1979 would not be barred from bringing a warranty or consumer fraud claim. *See Bernick v. Jurden*, 293 S.E.2d 405, 413 (N.C. 1982) (holding substantive changes to product liability law in North Carolina PLA do not apply to claims where injury preceded PLA's effective date). They also argue that it is plausible that neurological injury occurs upon exposure

to Paraquat, even if the injury and its cause are discovered much later. Plaintiffs claim in a footnote that this analysis is consistent with their contention that their claims are timely because a claim arises for purposes of application of a PLA when the injury occurs, but for statute of limitations purposes, a claim does not accrue until the injury is discovered.

The Court disagrees. Either Plaintiffs' injuries accrued when they were first exposed—and therefore their claims are not precluded by a later-enacted PLA but barred by a statute of limitations—or their injuries accrued when they discovered the injury— saving their claims from the statute of limitations but barring them under the relevant PLA. Plaintiffs cannot have it both ways. Because Plaintiffs assert their claims did not accrue until 2021 when they learned of the alleged connection between Paraquat and Parkinson's disease, the Court is not persuaded that their claims pre-date the state PLAs. As a result, the PLAs of these states *do* apply.

Nevertheless, Plaintiffs assert their breach of implied warranty claims should not be dismissed because they allege economic losses, and the PLAs at issue do not bar warranty claims for economic losses. True, the PLAs at issue do not bar contractual claims brought under the UCC where a plaintiff alleges "purely economic loss arising from the failure of the product or service to perform as expected." *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1025 (N.D. Ind. 2011) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153–54 (Ind. 2005)); *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 804 (Kan. 2019) ("[T]he Legislature has not cast the product liability net so wide as to subsume and extinguish other legally viable causes of action for the recovery of economic losses" including a pure contract claim); *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940

(Miss. 2011) (Mississippi Products Liability Act does not abrogate a statutory cause of action for breach of implied warranty); *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 627 (M.D.N.C. 2020) (noting that the PLA does not govern actions for breach of implied warranty seeking to recover economic losses); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 729 (Wash. 1992) ("'Product liability claims' based on breach of express or implied warranties can be raised either in tort under the WPLA or in contract under the Uniform Commercial Code.").

Under Louisiana's PLA, "breach of implied warranty or redhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997); *In re Pradaxa Prod. Liab. Litig.*, No. 3:12-CV-60004-DRH, 2013 WL 3791509, at *9 (S.D. Ill. July 18, 2013) ("The LPLA allows for a redhibition claim only to the extent that the plaintiff seeks recovery of economic losses."). An action for redhibition exists when "a defect in the thing sold renders it absolutely useless, or so inconvenient in use that the law supposes a buyer would not have purchased that item had he known of the vice." *Manning v. Scott-Hixson-Hopkins, Inc.*, 605 So. 2d 233, 235 (La. Ct. App. 1992). Plaintiffs assert they have stated claims for redhibition; therefore, their implied warranty claims should not be dismissed.

In their Complaints, Plaintiffs allege Defendants impliedly warranted that Paraquat was of merchantable quality and fit for its ordinary purpose, and Defendants breached that warranty. Specifically, Plaintiffs claim Paraquat was not of merchantable quality or fit for its ordinary purpose when it was: (1) designed, manufactured,

formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it; (2) when inhaled, ingested, or absorbed, it was likely to cause or contribute to cause Parkinson's disease; and (3) there was no disclosure that use of and exposure to Paraquat carried an increased risk of developing Parkinson's disease. And, consequently, Plaintiffs allege they developed Parkinson's disease. Plaintiffs seek reasonable expenses and an award of punitive damages for the intentional disregard for the safety of Paraquat users. *See, e.g.*, *Causey v. Syngenta*, No. 3:21-pq-790, Doc. 1 at p. 53. These allegations are sufficient to state a claim for breach of implied warranty.

Yet Plaintiffs are only able to recover "the cost of the product and pure economic loss." *Id.* at 1026. Economic loss includes the loss of the bargain, repair, and replacement cost, loss of profits, and/or goodwill, including diminution in value. In other words, economic loss is those damages that arise as a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law." *Corvias Mil. Living, LLC*, 450 P.3d at 801 (cleaned up). Defendants argue Plaintiffs' implied warranty claims should be dismissed because they are seeking monetary damages for personal injury, not compensation for economic loss. The Court does not read Plaintiffs' allegations so narrowly; they seek actual or compensatory damages, which encompasses any economic losses suffered. *See Atkinson*, 813 F. Supp. 2d at 1025-26 (finding plaintiff could bring a breach of implied warranty claim for damages including the cost of the product and economic loss from the failure of the product, despite mentioning punitive damages).

Finally, the Court finds that Plaintiffs' consumer protection claims in these states are not subsumed by the state PLAs. As Plaintiffs argue, the Washington PLA does not bar claims under its Consumer Protection Act, while the Louisiana PLA only applies to claims against product manufacturers—not sellers—and more discovery is needed on the roles of each defendant in this case. Moreover, Defendants have not provided any basis for the dismissal of consumer fraud claims in Indiana, Kansas, Mississippi, or North Carolina, as those states' PLAs do not preclude consumer fraud claims. Defendants did not rebut this argument, so the Court will not dismiss Plaintiffs' consumer protection claims in these states.

### B.  Claims Outside the Scope of State Warranty Law

Defendants argue the Court should dismiss warranty claims brought under 19 state laws that extend horizontal privity only to the purchaser's family, household members, and guests of the product's actual purchaser. That is, non-purchaser plaintiffs such as employees, contractors, commercial invitees, and bystanders fall outside the scope of statutory warranty remedies in these states. Defendants also assert that in the four states that require vertical privity, Florida, Georgia, Kentucky, and Wisconsin, even purchasers of a product lack warranty rights against a defendant that did not directly sell them Paraquat. Thus, the Court should dismiss the warranty claims of Plaintiffs in these states if they failed to allege they bought the Paraquat products at issue directly from Syngenta or Chevron. Finally, Defendants contend many of Plaintiffs' warranty claims should be dismissed for failure to provide pre-suit notification as required by the laws of

22 states. Because most plaintiffs did not plead notice, their warranty claims should be dismissed.

The Court agrees with Plaintiffs that Defendants have "paint[ed] the nuanced laws of multiple states with too broad of a brush." (Doc. 696 at p. 18). With regard to horizontal privity, Defendants admit that a "small number" of states extend warranty rights to a buyer's employees, but they do not specify which states. Nor do they analyze Plaintiffs' factual allegations and explain how they fail to meet the privity requirements. As to vertical privity, Plaintiffs note that Syngenta had express communications with purchasers through rebate programs; thus, it would be premature to dismiss claims for lack of vertical privity without further discovery into the terms and scope of the rebate programs. Finally, with regard to notice, Defendants fail to account for states that do not require notice when there is no direct buyer-seller relationship, states where the complaint itself constitutes notice, and states where pleading actual or constructive knowledge of the breach of warranty constitutes notice. And, of course, Defendants have been involved in related litigation in Illinois state court since 2017, putting them on notice of the claims in this MDL.

For these reasons, the Court denies without prejudice Defendants' motion to dismiss Plaintiff's warranty claims.

## IV.    Consumer Protection Claims

Lastly, Defendants seek dismissal of Plaintiffs' consumer protection claims under a number of states' laws. Defendants argue the consumer protection laws of California, Maine, Michigan, Missouri, and Pennsylvania require a plaintiff to have purchased goods

or services for personal, family, or household services. Because Paraquat has no personal, family, or household use, Plaintiffs cannot plead violations of the applicable statutes; even if they purchased Paraquat for use on a family farm, the purchase was made in a commercial capacity. Additionally, the consumer protection laws of Iowa, Illinois, Maine, Minnesota, and Washington do not provide for monetary damages for personal injuries. Finally, claims alleged under Minnesota law by Plaintiffs have no apparent connection to Minnesota and must be dismissed, and claims arising under Idaho law fail because Plaintiffs do not allege the required contractual relationship with Defendants.

Again, the Court declines to dismiss Plaintiffs' consumer protection claims at this point in the litigation, with one exception. Plaintiffs argue that their consumer protection claims cannot be dismissed on a collective basis without examining the allegations contained in each complaint on a case-by-case basis, and the Court agrees. Determining which Plaintiffs properly alleged consumer protection claims requires a detailed comparison of each Plaintiff's complaint to the law of that state, something Defendants have not done. And with regard to the states that do not allow damages for personal injury, even if only economic losses are allowed, Defendants have not explained why this requires the complete dismissal of Plaintiffs' claims. As discussed above, the Court does not read the Complaints so narrowly as to exclude a claim for economic losses. Finally, Defendants have provided no authority that the purchase of Paraquat by themselves or an employer is insufficient to constitute a contractual relationship under Idaho law. Plaintiffs do not, however, dispute Defendants' argument that out-of-state Plaintiffs with

no Minnesota connection cannot bring a Minnesota consumer protection claim. Accordingly, the claims listed in Appendix III-C shall be dismissed. (Doc. 352-6).

## CONCLUSION

For these reasons, the Partial Motion to Dismiss filed by Defendant Chevron U.S.A. Inc. (Doc. 350) is **GRANTED in part and DENIED in part**. The public nuisance claims in the cases identified in the Appendix (Doc. 351-1 at pp. 32-36) are **DISMISSED**.

The Partial Motion to Dismiss filed by the Syngenta Defendants (Doc. 352) is also **GRANTED in part and DENIED in part**. The consumer protection claims raised under Minnesota law, as identified in Appendix III-C (Doc. 352-6 at p. 32) are **DISMISSED**.

**IT IS SO ORDERED.**

**DATED:   February 14, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**