# EXHIBIT 2

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Illinois

| | |
|---|---|
| In re: Paraquat Products Liability Litigation | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  3:21-md-3004-NJR |
| | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          University of Illinois Extension, 111 Mumford Hall (MC-710)
                  1301 W. Gregory Dr., Urbana, IL 61801
_(Name of person to whom this subpoena is directed)_

✔ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Schedule A (attached).

| Place: Jones Day, 110 N Upper Wacker Dr Suite 4800, Chicago, IL 60606 attn: Jihan Walker, or email as described in cover letter | Date and Time:  09/22/2022 9:00 am |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  09/08/2022

| _CLERK OF COURT_ | OR | /s/ Jihan Walker |
|---|---|---|
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_
Chevron U.S.A. Inc.                                                                                    , who issues or requests this subpoena, are:

Jihan Walker, Jones Day, 110 N. Wacker Dr., Ste. 4800, Chicago, IL 60606, jihanwalker@jonesday.com, 312-782-3939

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:21-md-3004-NJR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## SCHEDULE A

Pursuant to the foregoing subpoena, Respondent is required to produce, by the date stated on the subpoena, the documents requested herein.

## DEFINITIONS

For purposes of these Requests, the following definitions shall apply:

1.      The terms **"all," "any,"** and **"each"** shall each be construed as encompassing any and all.

2.      The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.      The term **"Agricultural Chemicals"** means chemicals used to farm, including but not limited to pesticides, insecticides, herbicides, fungicides, rodenticides, plant-growth regulators, attractants, repellents, spreading agents, fumigants, fertilizers, fuels, and other chemicals used to control crop-harming or crop-benefiting organisms or diseases.

4.      The terms **"Communication"** and **"Communications"** are used in the broadest possible sense and mean the transmittal of information, including, but not limited to, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including, but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance, between two or more Persons, including, but not limited to, letters, email, telephone calls, voice mails, text messages, facsimiles, and in-application messaging

(e.g., messages sent via Facebook, LinkedIn, Twitter, Snapchat, or any other application), irrespective of whether the other Person(s) reviews or responds to the Communication.

5.  The term **"Defendants"** means the following named defendants in the above-captioned case: Syngenta Crop Protection, LLC, Syngenta AG (collectively, "Syngenta"), and Chevron U.S.A. Inc. ("Chevron").

6.  The terms **"Document"** and **"Documents"** are used in the broadest possible sense to mean anything which may be within the meaning of Rule 34 of the Federal Rules of Civil procedure, and includes without limitation any written, printed, typed, photocopied, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. "Document" and "Documents" include, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or communications, electronic mail/messages and/or "e-mail," text messages, social media communications, voice mail messages, instant messaging, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by You through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks and magnetic tapes, and any preliminary

versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by You or anyone else.

7.      The term **"Paraquat"** includes the chemical compounds (a) paraquat, CAS 4685-14-7, also known as 1,1'-Dimethyl-4,4'-bipyridinium; (b) paraquat dichloride, CAS 1910-42-5, also known as 1,1'-Dimethyl-4,4'-bipyridinium dichloride, also known as methyl viologen; (c) paraquat methosulfate, CAS 2074-50-2, also known as 1,1'-Dimethyl-4,4'-bipyridinium bis(methyl sulfate); and (d) all other formulations of paraquat.

8.      The terms **"Person"** or **"Persons"** are defined as any natural person or any entity, including, but not limited to, any business or governmental entity or association.

9.      The terms **"relating"** and **"regarding"** are used in the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reporting, stating, or summarizing.

10.     The term **"Respondent"** refers to the Person(s), entity, or entities to whom the foregoing subpoena is directed.

11.     The terms **"Restricted Use Pesticide"** and **"Restricted Use Pesticides"** refer to all Agricultural Chemicals ever classified as for restricted use status by the United States Environmental Protection Agency, state law, or any state administrative agency.

12.     The terms **"You"** and **"Your"** shall refer to Respondent, and any past or present successor, parent, subsidiary, division or affiliate thereto, and all Persons acting on its behalf, including without limitation, present and former partners, members, associates, attorneys, employees, agents, and representatives thereof.

13.     All other words have their plain and ordinary meaning.

3

## INSTRUCTIONS

The following instructions apply to each Request for Production contained herein:

1.      Counsel for Chevron will discuss with You the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. 466, attached hereto as Appendix A).  Chevron is willing to receive native format productions from You and will Bates number those documents on Your behalf to minimize any burden and expense associated with processing and labeling responsive documents.

2.      As a third party receiving a subpoena in this matter, You are entitled to the protections of the Agreed Confidentiality Order entered in this case on August 11, 2021 (¶ 53 of Dkt. 218), attached hereto as Appendix B.

3.      Whenever necessary to bring within the scope of a request a document that might otherwise be construed to be outside its scope, the following constructions should be applied:

(a)    Construing the singular form of any word to include the plural and the plural form to include the singular;

(b)    Construing the past tense of a verb to include the present tense and the present tense to include the past tense;

(c)    Construing negative terms to include the positive and vice versa; and

(d)    Construing "include" to mean include or including "without limitation."

4.      If any part of a document is responsive to any request, the whole document is to be produced.  If You are unable to produce a document in response to any request, so state and indicate whether the document ever existed, or whether the document once existed but cannot be located.  To the extent any documents are lost or destroyed, produce any documents which support Your assertion that the document was lost or destroyed, and provide the date thereof.

4

5.      If a responsive document is withheld or redacted on the basis of the attorney-client privilege, attorney work-product privilege, or on the basis of some statutory or regulatory authority, provide the following information for each such document:

     (a)      The date of the document;

     (b)      All author(s) and recipient(s) of the document, including their titles and employers at the time of the creation and transmittal of the document; and, where not apparent from the identification alone, the relationship of such persons to each other and whether any of these individuals are an attorney;

     (c)      The general subject matter of the document; and

     (d)      The factual and legal basis for withholding or redacting the document.

6.      These document Requests are continuing in character so as to require You to produce additional documents if You obtain further or different information at any time before trial.

## REQUESTS FOR PRODUCTION

1.      All Documents relating to Laura Bowers, Joann Dall, Tamala Dillow, Stephen Durbin, Martin Feith, Steven Hawkins, Janet Kistner, George Muentnich, Dale Smith, Eddie Spence, Ralph Walter, or Linda Zumdahl, including but not limited to all licenses, trainings, examinations, study materials and records of suggested study materials, and continued education materials for the use or sale of Restricted Use Pesticides and Paraquat.

2.      All training materials, course materials, study guides, or examinations related to Restricted Use Pesticides or licensing or certifications to apply or use Restricted Use Pesticides.

3.      All examinations administered in Illinois from 1964-present for individuals seeking to obtain an applicator and/or operator license of any type for Restricted Use Pesticides, including but not limited to Paraquat.

5

4.      All study guides and other records of suggested study materials for examinations administered from 1964-present for applicator and/or operator licensure for Restricted Use Pesticides, including but not limited to Paraquat, in Illinois.

5.      All records of continued education requirements and all continued education documents, videos and/or other materials made available to applicators and/or operators of Restricted Use Pesticides, including but not limited to Paraquat, in Illinois from 1964-present.

6.      All training requirements, training manuals and other training materials for the use of Restricted Use Pesticides, including but not limited to Paraquat, in Illinois from 1964 - present.

7.      All records reflecting or relating to any studies, research, or analysis performed from 1964-present related to the safety or safe use of Paraquat.

8.      All records reflecting or relating to any studies, research, or analysis performed from 1964-present related to the effect of Paraquat on the quality of air, soil or water.

9.      All records reflecting or relating to any studies, research, or analysis performed from 1964-present regarding any human health effects related to Paraquat, including any hypothesized association between Paraquat and Parkinson's disease.

10.      All records reflecting or relating to any studies, research, or analysis performed from 1964-present related to any exposure assessments or exposure monitoring of workers using pesticides, including but not limited to Paraquat.

11.      All records reflecting or relating to any studies, research, or analysis performed from 1964-present related to any human health effects among workers using pesticides, including but not limited to Paraquat.

12.      All records reflecting training or educational meetings, classes, or materials made

6

available to the public by the state of Illinois at any governmental level, including by county, related to the use of Paraquat before it was classified as a Restricted Use Pesticide.

13.     Documents sufficient to identify—for each of the above requests for production which You contend You have no responsive Documents to produce—the Persons, agencies, universities, companies, or other entities most likely in possession of responsive Documents, Communications, records, or other responsive information.

# APPENDIX A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| This Document Relates to All Cases | MDL No. 3004 |

## ORDER REGARDING PRESERVATION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

**ROSENSTENGEL, Chief Judge:**

Pursuant to Federal Rule of Civil Procedure 26 and the agreement of the parties, the Court enters this order regarding the preservation and production of documents and electronically stored information ("ESI") in this case ("Order").

### I.    In General

1.    The purpose of this Order is to facilitate the timely, efficient, and economical production of discoverable and responsive documents and ESI in this case.

2.    This Order shall be binding on all parties to this case (including any parties substituted or appearing in MDL No. 3004, and the parties to any case that is consolidated into MDL No. 3004, after this Order is entered) and their attorneys of record, and its provisions shall govern the preservation and production of documents and ESI in this case unless and except to the extent that the parties (or the affected parties) otherwise agree in writing or the Court otherwise orders. Additionally, any obligations set forth in this Order, to the extent they differ from the *Hoffmann* Protective Order, shall apply only to document productions after entry of this Order.

3. The designation of documents and ESI produced in this case as containing Confidential Information and any restrictions on the use and disclosure of same shall be governed by a separate protective order entered by the Court and incorporated herein. The parties are not aware of, and do not intend, any conflict between the treatment of Confidential Information pursuant to this Order and the protective order.

4. This Order is not intended and shall not be construed as a ruling by the Court on the discoverability, relevance, authenticity, or admissibility of any documents, data, or information in this case. All objections to discovery requests are expressly preserved and shall be raised in due course as permitted by the rules. With the exception of actions this Order expressly requires a producing party to take and information it expressly requires a producing party to disclose or produce to a requesting party, it is not intended and shall not be construed as a ruling by the Court on the subject matter or temporal scope of permissible discovery in this case or as a determination by the Court about whether the likely burden or expense of any proposed discovery outweighs the likely benefit, taking into account the factors set forth in Fed. R. Civ. P. 26. A party may raise any of these issues with the Court by timely objection or motion.

5. This Order shall not preclude any party from raising any proper objection to the admissibility at trial of any document or ESI produced in this case.

6. This Order is not intended to define all the rights and obligations of the parties regarding the preservation of potentially discoverable documents and ESI or the production in this case of discoverable and responsive documents and ESI, to narrow or enlarge any party's obligation under applicable law to preserve potentially discoverable

documents and ESI, or to limit or enlarge any remedy that may be available for the breach of any such obligation.

7. To further facilitate the timely, efficient, and economical production of documents and ESI in this case and to limit the Court's involvement in the discovery process to circumstances where such involvement is necessary, the parties (or the affected parties) may at any time, by an agreement confirmed in writing, waive, modify, or resolve any ambiguity in any provision of this Order.

8. No motion seeking the waiver, modification, or construction of any provision of this Order, or any relief expressly authorized by or otherwise based on any provision of this Order, shall be filed until the party seeking such relief has complied with the Court's rules and/or orders regarding meet-and-confer conferences.

9. The Syngenta Defendants and the Chevron Defendants have previously made voluminous productions of documents in the *Hoffmann, et. al. v. Syngenta, et al.*, St. Clair County, Illinois, Cause No. 17-L-4517 case, including re-productions of materials from litigation involving the herbicide atrazine.[1] To the extent any documents, ESI, or other materials produced in *Hoffmann* are re-produced in this litigation, neither Syngenta nor Chevron is under any obligation to produce those materials in a manner different from how they were produced in *Hoffmann*. This paragraph does not, however, bar

---

[1] Pursuant to the *Hoffmann* 9/11/2018 Protective Order, documents from the following cases were deemed to have been produced in *Hoffmann*: (i) *Holiday Shores Sanitary District v. Syngenta Crop Protection, Inc., et al.*, Madison County, Illinois, Cause No. 2004-L-710; (ii) *City of Greenville, Illinois, et al. v. Syngenta Crop Protection, Inc., et al. and Syngenta AG*, U.S. District Court for the Southern District of Illinois, Cause No. 10-cv-188-JPG-PMF; and (iii) *Doe, James, et al. v. Syngenta Crop Protection, LLC, et al.*, St. Clair County, Illinois, Cause No. 13-L-425.

limited requests for data fields identified in Appendix 1 that are missing from any ESI materials produced in *Hoffmann*, requests for natives or color copies, or the ability of the parties to address other production issues.

## II. Definitions

10.    For purposes of this Order and any anticipated agreements relating to the production of ESI, the following definitions shall apply, unless any such definition conflicts with the Federal Rules of Civil Procedure, in which case, the Rules shall govern.

a.     *Cache file* means a copy of data created by a computer system to a temporary location or "cache" that allows frequently used data to be accessed more quickly by the computer.

b.     *Case* means the above-captioned lawsuit.

c.     *Chat* means any form of communication over an intranet, the internet, or other network, including instant messaging and video chat, that offers real-time transmission of text messages or video from sender to receiver, whether point-to-point from a sender to one receiver, or multicast from one sender to many receivers, whether such communications are transmitted over a party's or third-party's network and whether facilitated by an application residing on a party's or a third-party's network or device.

d.     *Cookie file* means a file that a web browser creates on a user's computer system that a website uses to identify the user and information about the user.

e.     *Custodian* means a person who had or has possession, custody, or control of documents or ESI.

f.  *Document* means any written, typed, printed, recorded, imaged, or graphic information or data, including ESI.

g.  *Electronically stored information* or *ESI* means any writing, drawing, graph, chart, photograph, sound recording, image, and other data or data compilation stored in any medium from which such information can be obtained either directly or, if necessary, after translation by the producing party into a reasonably usable form, including any hard-copy document scanned and stored electronically as a static image.

h.  *Extracted text* means a file or files containing text extracted from a document, and shall include all available information contained in the document's body and in any header, footer, comments, and notes that are part of or appended to the document.

i.  *Family* means a group of documents that includes a "parent" document such as an email, memorandum, or report and one or more "child" documents such as attachments or embedded files. A document family need not include .gif or .jpeg files with no substantive content, such as banners and logos.

j.  *Hard copy documents* means documents that are maintained in the ordinary course of business in a tangible format, such as paper or micro fiche. The generic term "documents" shall include hard copy and electronic documents.

k.  *Hash value* means the unique numeric value identifying a specific document, generated by a standard algorithm disclosed by the parties.

l.  *Load file* means an electronic file containing information identifying and describing a production set of scanned documents or processed ESI, including where

individual pages or files belong together as documents, associating attachments with their parent documents, associating documents with members of their document family, and identifying where each document begins and ends, and containing information about the individual documents, including any extracted or user-created metadata and OCR or extracted text.

   m. *Media* means a disc, tape, solid-state drive, computer, or other device used to store data.

   n. *Metadata* means information describing characteristics of a file, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the file is located.

   o. *Native format* means the format in which a file was originally created or modified (in contrast to a static image, such as a .tiff or .pdf file, of a file originally created by a different application).

   p. *Networked* or *shared storage system* means any physical or virtual data storage device that is accessible to multiple users.

   q. *OCR file* means a searchable text file created by an optical character recognition application from a static image or scanned hard-copy document.

   r. *Person* means an individual; a private or public for-profit or non-profit corporation, company, partnership, firm, association, cooperative, foundation, business trust, or other organization; a unit of government, government agency, department, or board, or other public entity; or a college, university, or school or department thereof.

s. *Preserve* or *preservation* means to prevent the destruction, alteration, deletion, shredding, incineration, wiping, or theft of documents or ESI.

t. *Produce* and *production* mean the transmission or delivery of documents by one party to another party, whether voluntarily or in response to a formal or informal request, and the transmission or delivery of documents by a third party to a party, whether voluntarily or pursuant to subpoena, for the purpose of discovery in this case.

u. *Producing Party* means the Party with the obligation to produce ESI.

v. *Receiving Party* means a Party to whom ESI is produced to.

w. *Rolling production* means a process in which a producing party responds to a request for production incrementally, by making a series of deliveries of responsive documents and ESI to the requesting party.

x. *Search term* means a word or string of words or phrases related by proximity or search operators for the purpose of identifying potentially discoverable ESI.

y. *Specified Time Period* means the period of time for which documents or ESI created, revised, modified, saved, sent or received may be subject to production. The specified time period may vary by party, issue, subject matter, or other factors, and will be determined either by agreement of the parties, or by order of the Court.

z. *Static image* means a representation of ESI produced by converting a native file or a hard copy document into a standard image format, such as Tagged Image File Format (TIFF), Portable Document Format (PDF), or Joint Photographic Experts Group (JPEG) format, which can be displayed and printed on multiple computer platforms using a commonly available application.

### III.     Preservation

11.     The parties shall preserve all discoverable or responsive documents and ESI reasonably expected to exist, including any metadata that may exist. If any such documents and ESI are likely contained on a source that a party identifies as not accessible, the parties will meet and confer with respect to the preservation requirements, if any, that the party should undertake with respect to any sources that are not accessible.

12.     The parties recognize that platform changes, upgrades, and other system modifications are often necessary for business or security purposes, and the parties will use their best efforts to avoid altering potentially discoverable ESI prior to collection. If a party intends for business purposes to retire a source of potentially responsive documents or ESI prior to collection, it shall give reasonable notice to all liaison counsel in writing, including a description of the source in question, the nature of the potentially responsive documents and ESI it contains, and the location of identical, accessible ESI (if any), and shall allow a reasonable time thereafter for any objections.

13.     Parties have no obligation to preserve ESI created automatically by the routine operation of a computer system or application, including metadata not listed in Appendix 1, cookie files, cache files, temporary system files, and ESI filtered out by an automatic spam or virus filter. To the extent a party knows of ESI in its custody or control that are discoverable or responsive to a request for production then this paragraph shall not relieve them of their obligation to preserve this information. Furthermore, no party shall be in violation of this protocol as a result of any of the following actions undertaken

in good faith and in the ordinary course of business and not for any reason related to this case:

       a.    inputting, accessing, updating or modifying a database, provided the underlying potentially discoverable data is not altered, deleted, modified or rendered inaccessible prior to collection;

       b.    editing, modifying, or taking down an internet, extranet, or intranet site provided all potentially discoverable documents and ESI are preserved and remain accessible;

       c.    editing or revising a discoverable document or discoverable ESI, as long as an unedited or unrevised original version is preserved.

## IV.    Supplementation of *Hoffmann* Production; Rolling Productions

14.    The Defendants will not be required to respond to requests or re-produce documents that are duplicative of the documents already produced in *Hoffmann*. The parties will meet and confer regarding the scope of any productions and present any disputes to the Court for prompt resolution.

15.    A producing party who intends or reasonably expects to comply with a requesting party's request for production through the use of rolling production shall notify the requesting party of its intention or expectation during the meet-and-confer discussions noted above, on a timeline consistent with the Court and the Parties' mutual desire for a prompt resolution of this action. A producing party who is using a rolling production will notify the receiving party when the production is substantially complete.

## V.    Search Methodologies for ESI Productions

16.    Prior to engaging in any search methodologies, including, but not limited to, search terms, technology assisted review, or other methods, the parties will meet and confer and attempt to reach agreement. The parties shall in good faith attempt to reach

agreement on protocols, such as hit reports or TAR validation, for identifying, searching, and review of documents that may be produced prior to any productions. If no agreement can be reached, then the parties may present the dispute to the Court. Each party may use one or more methods to collect, search, and review documents for production, and to produce discoverable non-privileged ESI that is responsive to another party's request for production. To the extent the producing party knows of documents and data in its custody or control that are discoverable or responsive to a request for production, then its use of one or more of these methods, shall not relieve it of its obligation to produce that information.

## VI.  Production of Hard-Copy Documents

17.    The following production specification shall apply to paper documents, photographic slides, negatives, and prints, and other documents that are on paper or in any other tangible form ("hard copy documents"), and were scanned in electronically for review and/or production in this case or any other litigation or in response to a subpoena.

### A.    Production Format

18.    Black-and-white ("B&W") hard-copy documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. To the extent that a static image has been created of any hard copy document containing color and/or grayscale, such static image containing color and/or grayscale shall be produced. If not previously imaged in color or grayscale, the parties will use reasonable efforts to produce hard copy documents containing color and/or grayscale as static images with grayscale and color, respectively; however, a party may, unless previously imaged in color and/or grayscale, produce

documents containing color in grayscale if it determines that the color-portion of a document is minimal and that production using grayscale would not in any way affect a reader's understanding of that document (*e.g.*, a letter where the only color included is a corporate logo on the first page). Notwithstanding such a provision, reasonable requests to produce grayscale documents in color shall be accommodated.

19.     Nothing herein shall preclude a party from, at its discretion, producing for inspection hard copy documents for which there are no electronic images or other tangible things in hard copy or tangible form. However, to the extent that a party elects to produce for inspection hard copy documents in tangible form, the producing party shall also make available to the requesting party any existing indices, inventories, lists, catalogs, or other data or documents that identify or describe the documents produced. Nothing in this paragraph, however, prevents a party from asserting undue burden in response to a request for such documents, and nothing in this paragraph waives or dilutes such an objection.

20.     Upon notice from the requesting party that a document or portion thereof is illegible, the producing party shall, if possible, produce a legible copy in the form of either a new TIFF, static image, or hard copy, or, if not possible, explain why a more legible copy of the document cannot be produced. The document's original orientation should be maintained (*i.e.*, portrait to portrait, landscape to landscape). No producing party shall be required to alter or re-create any document for which no grayscale or color version is in the party's possession or control or for which the original hard copy document is illegible.

### B. Bates Numbers, Designations, and Redactions

21.     Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions shall be burned into the image. TIFF image files shall be provided in an "Images" folder.

22.     For productions after the *Hoffmann* productions, any bates numbers previously assigned to a document as a result of a legal, regulatory, or governmental production shall be included, to the extent such document is collected from such a production. The start and end bates numbers from the production in another matter shall be added as distinct metadata fields for these document and be included in the production file.

### C. Notes and Attachments

23.     If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

### D. Unitizing Documents

24.     In scanning paper documents, parties shall use their best efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, paper documents should be logically unitized). Within

14 days (or as otherwise agreed) after notice from a requesting party that a document appears to have been unitized incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.

### E. Parent-Child Relationships

25.     A producing party shall use best efforts to preserve parent-child relationships (the associations between and among a parent document and its attachments) when scanning hard copy documents. A "parent" document in a production set shall be followed immediately by its "child" or "children." To the extent feasible, each non-privileged document within the family shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. Notwithstanding the foregoing, a document that is unitized at its lowest binding element (*e.g.*, letter with stapled or clipped attachments) may be scanned as one document, in which case it will be noted by begin and end Bates numbers. If there is any question about unitization or family members of any produced document, the parties shall meet and confer to discuss a remedy.

### F. OCR for Scanned Hard-Copy Documents

26.     The producing party shall provide for each document an appropriately formatted text file (.txt) of OCR text, named to match the first Bates number of the document. Text files shall be provided in a "Text" folder. If a document is redacted for privilege, the text file shall not contain the text of the redacted portions. If a receiving

party notifies the producing party that a document's OCR text is of poor quality, the producing party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

### G. Search of Hard-Copy Documents, Including Testing and Validation

27. A producing party may apply search terms and/or advanced analytics to search the OCR text of scanned hard-copy documents for the purpose of screening documents for relevance and responsiveness if the OCR text is of sufficient quality that search terms or advanced analytics can be applied reliably. Subject to section V, the producing party will notify the receiving party if they intend to use search terms for hard copy documents and the parties will meet and confer prior to any such search occurring.

### H. Unique IDs

28. Each TIFF image shall have a unique filename corresponding to the Bates number of that page. The filename shall not contain any blank spaces and shall be consistently zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. Bates numbers should be in the lower right-hand corner of each page on which they appear, if possible. If a Bates number or set of Bates numbers would otherwise be skipped in a production, the producing party shall fill any gaps with slip sheets so that there are no missing Bates numbers. Bates number prefixes will be consistent across all documents a party produces in the case.

### I. Data load files

29. Documents shall be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

a.     Field Separator: ASCII character 20 ("ii");

b.     Quote: ASCII character 254 ("þ"); and

c.     New Line: ASCII character 174 ("®").

30.     Relativity-compatible image and data load files shall be provided in a "Data" folder.

## VII.     Production Format for Future ESI Productions

### A.     In General

31.     Black-and-white ("B&W") documents shall be produced as single-page, B&W group IV TIFFs imaged at 300 dpi. Documents evaluated to contain grayscale or color shall be produced as grayscale static or color images, respectively, at the greater of 300 dpi or their resolution in native format. For native documents that are produced as static images, upon notice from the requesting party that a document or portion thereof is illegible, the producing party shall produce a legible copy in the form of either a new TIFF image, a native file of the illegible document, or shall provide an explanation as to why a legible copy or native file is not available for production. No producing party shall be required to alter or re-create any document for which no grayscale or color version is in the party's possession or control or for which the original native file is illegible. The document's original orientation should be maintained (*i.e.*, portrait to portrait, landscape to landscape). If a document is produced in static image format in accordance with this Order, Bates numbers, confidentiality designations (in accordance with the protective order entered or to be entered in this case), and redactions for privilege shall be burned into the image. TIFF image files shall be provided in an "Images" folder.

32.     All extractable text of native files shall be extracted directly from the native file and shall be delivered in an appropriately formatted text file (.txt) named to match the first Bates number of the document. Text files shall be provided in a "Text" folder. With the exception of spreadsheets, if a document is redacted for privilege, the document shall undergo OCR after redaction in order to remove the redacted text. If a receiving party notifies the producing party that a document's text file is of poor quality, the producing party will use reasonable efforts to provide a replacement file of better quality or alternatively explain why it is unable to do so.

**B.     Unique IDs**

33.     Each image shall have a unique filename corresponding to the Bates number of that page. The filename shall not contain any blank spaces and shall be consistently zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. Bates numbers should be in the lower right-hand corner of each page on which they appear, if possible. If a Bates number or set of Bates numbers would otherwise be skipped in a production, the producing party shall fill any gaps with slip sheets so that there are no missing Bates numbers. Bates numbers shall be unique across the entire production and prefixes will be consistent across all documents a party produces in the case. Any Bates numbers previously assigned to a document in the *Hoffmann* litigation shall contain those Bates numbers. The document's start and end Bates number from *Hoffmann* shall be included as produced fields for the document.

### C. Parent-Child Relationships

34.     A producing party shall preserve parent-child relationships (the associations between and among a parent document and its attachments) for ESI. If a producing party believes there is a logical or compelling reason to break the parent-child relationship, it shall notify the requesting party of its belief and explain the justification prior to doing so, with a sufficient description of the documents to give the requesting party adequate basis to determine whether to object. A "parent" document in a production set shall be followed immediately by its "child" or "children." Each non-privileged document within the responsive family shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. A producing party shall identify all documents for which it has broken the parent-child relationship with an explanation of why the relationship was broken and the documents that were not produced. If a receiving party identifies any document for which the parent-child relationship appears to have been broken, the producing party shall explain why the parent-child relationship is correct as produced or shall provide a replacement file with the correct parent-child relationship if it is possible to do so.

### D. Metadata

35.     Metadata shall be produced for all ESI, whether produced in native format or static image formats (*e.g.*, TIFF) as listed in Appendix 1 to the extent it exists in the file.

If certain metadata does not exist for a particular file, the corresponding metadata field will be blank.

36.     A producing party that redacts or withholds metadata from any field identified in Appendix 1 shall disclose that fact to the requesting party, describing the metadata withheld or redacted, shall explain why any metadata has been withheld, and shall include the redaction on its privilege log and preserve the redacted metadata.

**E.     Production of documents in native format**

37.     The following types of documents shall be produced in native format and linked to the database by the metadata field "NativeLink":

> a.     Spreadsheets (*e.g.*, MS Excel, .CSV);
>
> b.     Word processing files containing tracked changes or comments;
>
> c.     Presentation files containing tracked changes, comments, hidden slides, or presenter's notes;
>
> d.     ESI containing audio or video;
>
> e.     Structured Databases;
>
> f.     other files which cannot be reasonably converted to TIFF.

38.     The native file shall be named with the first Bates number of the respective document and any appropriate confidentiality designation (*e.g.*, "BATES_000000 – CONF" or "BATES_000000 – CONF-AEO"). The corresponding load file shall include native file link information for each native file produced.

39.     A requesting party may ask that other specified documents or ESI, including ESI from a database, initially produced in TIFF format be produced in native format in the event that the TIFF format is not reasonably usable. The requesting party

shall identify the documents by Bates numbers. Within 14 days (or as otherwise agreed) after such a request, the parties shall attempt to reach an agreement on the matter, including if it is possible to rectify the issue with the TIFF itself in lieu of producing the native document. If they are unable to do so, either party may move the Court to resolve the disagreement.

40.     Where native files are produced in lieu of TIFF images, each native file shall be assigned a unique Bates number. The producing party shall produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the native file. The placeholder shall be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" (or a similar phrase), and the name of the file as collected shall be branded in the center of the page. The producing party shall also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

41.     The receiving party may request production of other specified documents or ESI in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests, and within 14 days (or as otherwise agreed) after any such request is made, shall either explain why it will not or cannot comply with the request or produce the native documents with an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields required under this Order.

### F. Password-Protected Files

42. A party shall attempt to unprotect and image any files protected by password. If it is not possible to do so, or if there is a compelling reason not to do so, the producing party shall produce passwords for any password-protected files if such passwords are available.

### G. Embedded Documents

43. With the exception of small .gif files that are likely to be company logo images, any embedded ESI document (*e.g.*, a spreadsheet embedded within a word processing document) shall be extracted, produced as a separate document, and related back to the top-level parent document (*e.g.*, standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Appendix 1. Related documents shall be produced within a continuous Bates range.

### H. Data Load Files

44. Documents shall be provided with an Opticon Cross-Reference File and Relativity data load file using standard Relativity delimiters:

    a.       Column - ASCII 020

    b.       Quote - ASCII 254

    c.       Newline - ASCII 174

    d.       Multi-Value - ASCII 059

    e.       Nested Values - ASCII 092

45. All rows shall contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the "Cc" field contains semi-colons between email addresses, the "Bcc" field should also contain semi-

colons. Relativity-compatible image and data load files shall be provided in a "Data" folder. If parties exchange sample load files, any load-file change request shall be made within 14 days. Nothing in this Order shall preclude the parties from agreeing at any time to make changes to load files.

### I. De-duplication

46.     A producing party may de-duplicate documents across its custodians at the family-group level using a hash value calculated at the family level and including any blind copy fields. All custodians that were in possession of a de-duplicated document in the metadata will be populated in the ALL CUSTODIANS production field.

47.     The Parties agree that a Producing Party may review only the most inclusive email thread, however a Producing Party shall produce all e-mails separately and not as part of an inclusive e-mail thread.

### J. Identification of Custodians and Sources

48.     The custodian or originating source of a document or ESI shall be identified in the ALL CUSTODIANS field of the database load file. De-duplicated documents with other custodian values will have those custodian values appended to the ALL CUSTODIANS field. Documents found in the possession, custody, or control of a division, department, group, or other common entity or facility (*e.g.*, office, file room, archive, shared or networked storage, file-share, backup, warehouse, library, or reading room) shall be produced with that entity or facility identified as their custodian. The producing party shall use a uniform description of each particular custodian across productions.

### K. Foreign Language

49.     Foreign-language text files and metadata shall be produced with the correct encoding to enable the preservation of the original language. The processing of documents containing a foreign language shall be Unicode compliant.

### L. Date/Time format

50.     Dates shall be formatted consistently as MM/DD/YYYY, *i.e.*, a record with a sent date should have the same format in the last modified date field. If a date is unknown or unavailable, or the date field is not populated, the particular date field shall be left blank.

51.     Provided that they are consistently delimited in the data, date delimiters, such as slashes and colons, shall be consistent across all fields. In the format of MM/DD/YYYY, there are no spaces and only forward slashes.

52.     Times shall be formatted consistently as HH:MM:SS (zzz). If a time is unknown or unavailable, or the time field is not populated, the particular time field shall be left blank.

53.     All documents shall be processed to show the date and time in Coordinated Universal Time (UTC).

### VIII. Production Method and Media for Supplementation to *Hoffmann* Production

54.     Production media shall always be encrypted and will be sent via SFTP link provided via e-mail at the time a production letter is e-mailed, unless the parties agree otherwise. On the occasion in which a particular production is of a size that would make sending it via SFTP link impractical, the parties may agree to send encrypted physical

media such as a hard drive or USB. Production letters or e-mails will always accompany productions including the name of the matter in which it was produced, the production date, and the Bates number range of the material contained in the production.

55.     Passwords for encrypted media will be sent separately from the media itself. Each piece of production media or the electronic transfer of documents must be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the production media, as well as the sequence of the material in that production. Production media must include text referencing the case name and number.

56.     Any replacement production media must cross-reference the original production media and clearly identify that it is a replacement and cross-reference the document-number range that is being replaced.

57.     All production media capable of write protection should be write-protected before production.

58.     The producing party must retain native electronic-source documents for all ESI produced in this litigation until the conclusion of this litigation. The producing party must take all reasonable measures to maintain the original native electronic-source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at and before the time of production, in the event review of such metadata becomes necessary. The producing party must maintain a cross-reference file from the original documents to the production set of documents.

59.     Production media shall use AES-256 or an equivalent, industry-accepted method of encryption to preserve security of production deliverables.

**M.     Inability to Produce Metadata**

60.     At this time, the parties do not represent that any or all metadata described in this Order exists. During the course of collection, review, and production of documents and ESI, the parties shall determine what metadata exists. If metadata does not exist for any production document, the required production field will be blank.

61.     If data is encrypted when it is produced, the producing party shall transmit the credentials necessary to decrypt the data subsequent to that production.

**IX.     Assertions of Privilege**

62.     Nothing in this Order shall be interpreted to require production of Data protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege.

63.     A party may withhold or redact a portion of a document or ESI if and to the extent that the document or portion redacted is protected by attorney-client privilege, the work-product doctrine, or another applicable privilege.

**A.     Privilege Logs**

64.     To the extent that a document or any portion thereof (including any data from the agreed metadata fields) is withheld from production on the basis of the attorney client privilege, the work product doctrine, or any other applicable privilege, the producing party shall produce a rolling privilege log of withheld and redacted documents within 30 days after the document was withheld from the rolling production.

65.     Privilege logs shall be provided containing the information below (*see* Appendix 2 for privilege log fields):

a.     Each document listed on the privilege log will be sequentially numbered. If a privilege number is not used for any reason, it shall be identified as "Not Used" on the log.

b.     Document date (date created or last modified) for non-email messages or date sent for email.

c.     The identity of each person who sent, authored, signed or otherwise prepared the document, including which were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

d.     The identity of each person designated as an addressee or copyee, including which, if any, were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

e.     The identity of each person designated as a blind copyee, including which, if any, were employed and acting as licensed attorneys in good standing, as reflected in the document's metadata.

f.     A general description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the general subject matter of the document and the basis of the claim of privilege or other protection from disclosure, and the location of any redaction if the redaction was applied to a native file.

g.     The nature of the privilege or protection asserted (*i.e.*, attorney-client privilege; work product doctrine), and if no privilege claim is asserted, the basis of withholding the document or any portion thereof.

h.     For documents which are produced in redacted form, the location(s) of the redaction(s) shall be logged using the production bates numbers assigned to the redacted page(s).

i.     Nothing in a-h will relieve a party of reviewing the actual document(s) for privilege, and parties are not permitted to solely utilize metadata for privilege review.

66.     Where multiple email messages are part of a single chain or "thread," a party is only required to include on a privilege log the most inclusive message ("Last In

Time Email") and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the thread, provided that the log entry includes the names of the authors, addressees, and recipients (including copyees and blind copyees) for all thread members, that the description of the thread include the factual bases sufficient to support the claim of privilege for each thread member over which privilege is asserted, and that the log entry include the privilege designations applicable to any thread members.

67.     All persons/entities identified on the log who were employed or retained for the purpose of rendering legal advice, and duly licensed to practice law and in good standing as of the date of the document for which privilege is asserted shall be identified on the privilege log by a "*" following their name.

68.     After the receipt of a privilege log, any party may dispute a claim of privilege. Prior to seeking Court intervention, the party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation. Within fourteen (14) days, the party that designated the documents as privileged will provide a written response explaining the basis for its claim or privilege, or if applicable, de-designating documents as privilege and producing such documents in accordance with this Order. Thereafter, if the parties continue to disagree, they will then then meet and confer in good faith as to the claims of privilege. If agreement has not

been reached after fourteen (14) days, the parties shall submit the dispute to the Court for resolution.

**B.     Documents Presumptively Excluded from Privilege Logs**

69.     The following types of communications shall be presumed to be protected by the attorney-client privilege or to constitute attorney work product. Documents and ESI consisting of such communications need not be included on a party's privilege log:

   a.     Communications exclusively between or among a party's attorneys;

   b.     Outside counsel files;

   c.     Communications exclusively between plaintiffs and their attorneys after September 15, 2017;

   d.     Communications exclusively between defendants and their attorneys after September 15, 2017;

   e.     Communications exclusively between or among two or more defendants' attorneys pursuant to a joint defense agreement regarding this case;

   f.     Communications exclusively between or among a party's attorneys and expert consultants hired for purposes of litigation related to paraquat;

   g.     Work product of any party's attorney(s) created after September 15, 2017.

As used in this paragraph, a party's attorneys include non-employee attorneys retained in anticipation of or connection with this litigation, and in-house attorneys authorized to act and acting in the capacity of attorneys.

70.     The parties further agree to meet and confer regarding any proposed additional categories of documents that presumptively need not be logged.

X. **Assertions of Foreign Data Privacy Laws and Regulations**

71.     To the extent that the document or portion redacted contains information exempt from disclosure in accordance with applicable foreign data privacy laws and regulations the parties agree to meet and confer in good faith regarding potential redactions, logging, and production.

XI. **Disclosure of Attorney-Client Privileged or Work-Product Protected Information**

A. **Clawback Procedures**

72.     Pursuant to Federal Rule of Evidence 502(d), a producing party that discloses information subject to a claim of attorney-client privilege, the work-product doctrine, or other applicable privilege does not as a result waive or forfeit any such claim that it would otherwise be entitled to assert regarding that information. A separate Order regarding Federal Rule of Evidence 502(d) shall govern this procedure. The parties are not aware of, and do not intend, any conflict between this protocol and an Order regarding the Clawback procedure pursuant to Federal Rule of Evidence 502(d).

XII. **Documents not subject to this protocol**

73.     Documents produced by Plaintiffs in connection with the Plaintiff Assessment Questionnaire ("PAQ") pursuant to Case Management Order No. 7 (ECF No. 328) are not subject to the requirements of this protocol. Such documents shall be produced in accordance with the capabilities of the portal established for processing completed PAQs. In all events, such documents must comply with the requirements of this protocol with respect to containing a unique Bates number burned onto the image of

the document. The Bates number requirement for these documents may be satisfied if each page is labeled as follows [PAQ#]_[Unique Document ID Number]_[Page Number].

74.     As contemplated by Case Management Order No. 7, certain Plaintiffs will later be required to complete a Plaintiff Fact Sheet ("PFS") and produce the documents associated with a PFS. Document productions required by the PFS, as well as any document productions made by Plaintiffs after completion of the PAQ must comply with this protocol. Furthermore, to the extent a Plaintiff is selected to complete a PFS, such a Plaintiff must update the PAQ production to ensure compliance with this protocol.

## XIII.   Apportionment of Discovery Costs

75.     Absent an Order of the Court to the contrary, each party shall be responsible for the cost of preserving and producing documents and ESI that are in its possession or control.

    **IT IS SO ORDERED.**

    **DATED:  October 27, 2021**

    _____
    **NANCY J. ROSENSTENGEL**
    **Chief U.S. District Judge**

## APPENDIX 1: REQUIRED METADATA FIELDS

| Field | Description | Email | Non- Email ESI | Hard Copy | Depo Transcript |
|---|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | X | X | X | X |
| Bates Number End | Ending page Bates number | X | X | X | X |
| Attachment Begin | Beginning page of attachment range | X | X | | |
| Attachment End | Ending page of attachment range | X | X | | |
| Attachment Count | Number of attachments to an email | X | | | |
| All Custodians | Source(s) from which document or data was extracted, whether the electronic or hard copy files of an individual custodian or shared storage system including names of individual custodians and sources of documents of de-duplicated items for a single record. | X | X | X | X |
| File Path | Original File Path / Original Location Path | | X | | |
| File Name | File name of document | X | X | | |
| File Extension | File extension of document | X | X | | |
| Email Outlook Type | Type of Outlook item, *e.g.*, email, calendar item, note, task | X | | | |
| File Size | File size in bytes | X | X | X | X |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | X | X | X | X |
| Email Folder | Email folder path | X | | | |
| Email Subject | Subject of email | X | | | |
| Author | Document author | | X | | |
| From | Email author | X | | | |

| Field | Description | Email | Non- Email ESI | Hard Copy | Depo Transcript |
|---|---|---|---|---|---|
| To | Email recipients | X | | | |
| CC | Email copyees | X | | | |
| BCC | Email blind copyees | X | | | |
| Date Sent | Date sent in Universal Time Coordinated (UTC) | X | | | |
| Time Sent | Time sent in UTC | X | | | |
| Date Received | Date received in UTC | X | | | |
| Time Received | Time received in UTC | X | | | |
| Date Created | Date created UTC | | X | | |
| Date Last Modified | Date modified in UTC | | X | | |
| Time Last Modified | Most recent time in UTC that document last modified | | X | | |
| Hash Value | Unique electronic signature of email or electronic file | X | X | | |
| Message ID | Unique identifier assigned to a message and all attachments | X | | | |
| Text Link | Relative file path to the text file for each document | X | X | X | X |
| Native Link | Relative file path to each native file on the production media (only when natives are produced) | X | X | | |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | X | X | X | X |
| Has Redactions | Descriptor for documents that have been redacted (<yes> or <no>) | X | X | X | X |
| Witness | | | | | X |
| Date of Deposition | | | | | X |
| Short form title of Case or Matter in which taken | | | | | X |

**APPENDIX 2: PRIVILEGE LOG CONTENT**

| Priv Number | Document Date or Sent Date | Author or From | Recipient or To | CC | BCC | Description | Privilege Claim | Redacted at |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

# APPENDIX B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| | MDL No. 3004 |
| This Document Relates to All Cases | |

## PROTECTIVE ORDER

**ROSENSTENGEL, Chief Judge:**

As directed in Case Management Order No. 5 (Doc. 203), lead counsel for the parties have proposed the following protective order. Having reviewed the terms, the Court **APPROVES** the parties' proposal and **ORDERS** as follows:

I. **Purpose and Limitations**

    1.    The Parties agree and are entering into this Stipulated Protective Order with a goal toward moving this case forward in a speedy, collaborative, and efficient manner, while also balancing the public interest in access to information concerning the matters addressed in this litigation.

    2.    Disclosure and discovery activity in this action and related actions are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending this litigation may be warranted. Accordingly, the Parties hereby stipulate to and request that the Court enter the following Stipulated Protective Order ("Order"). The

Parties acknowledge that this Order governs discovery in *In Re: Paraquat Products Liability Litigation*, No. 3:21-md-03004-NJR. This order shall apply to all cases currently pending in MDL No. 3004 and to all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned hereto.

3.    The Parties have attempted to utilize and adopt the September 11, 2018 Protective Order (as subsequently amended) from the *Hoffmann* Litigation to the extent possible in drafting this Order, with necessary clarifications and changes to make it suitable for MDL litigation.

4.    This Order is binding on all Parties and their counsel in all cases currently pending and subsequently made part of these MDL proceedings, and shall govern each case in the proceedings. The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, and protect material to be kept confidential, pursuant to the Court's inherent authority, its authority under Federal Rule of Civil Procedure 26(c), and the judicial opinions interpreting such Rules.

5.    The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

6.       This Order shall not abrogate or diminish any statutory, or other legal obligation or right of any Party or person with respect to any Confidential Information.

7.       The recipient of any Confidential Information hereby agrees to subject himself/herself to the jurisdiction of this Court for the purpose of any proceedings related to the performance under, compliance with, or violations of this Order.

## II.    Definitions

8.       Action: This pending lawsuit, *In Re: Paraquat Products Liability Litigation*, No. 3:21-md-03004-NJR, including any amendments thereto, and all cases that have been or will be originally filed in, transferred to, or removed to this Court and assigned thereto.

9.       Challenging Party: Party that challenges the designation of information or items under this Order.

10.      Confidential Information or Items: Information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), or other federal or state laws, rules, or regulations, which may include:

(a) Information protected from disclosure by statute or regulation;

(b) Information that constitutes a trade secret in accordance with the federal Defend Trade Secrets Act, the Uniform Trade Secrets Act, or state trade secrets statutes;

(c) Non-public communications with regulators or other governmental bodies that are protected from disclosure by statute or regulation;

(d) Information that includes material protected by federal, state, or foreign data protection laws or other privacy obligations, including, but not limited to:

- The Health Insurance Portability and Accountability Act, 45 CFR Part 160 and Subparts A and E of Part 164;

- The EU General Data Protection Regulation (Regulation (EU) 2016/679);

- The UK Data Protection Act of 2018 (c. 12 (U.K.));

- The Brazilian General Data Protection Law, Federal Law no. 13,709/2018 (August 15, 2018);

- The Law of the People's Republic of China on Guarding State Secrets (promulgated by the Standing Committee of the Nat'l People's Cong., amended on April 29, 2010, effective on October 1, 2010);

- The Cybersecurity Law of the People's Republic of China (promulgated by the Standing Committee of the Nat'l People's Cong., effective on June 1, 2017);

- The Data Security Law of the People's Republic of China (promulgated by the Standing Committee of the Nat'l People's Cong., will take effect on September 1, 2021);

- The Draft Personal Information Protection Law (Bill for Second Deliberation) (promulgated by the Standing Committee of the Nat'l People's Cong., April 29, 2021 draft for public comment);

- The Singapore Personal Data Protection Act of 2012 (No. 26 of 2012) (October 15, 2012);

- The Swiss Federal Act on Data Protection of 19 June 1992;

- Swiss Federal Act on the Amendment of the Swiss Civil Code of 30 March 1911; Part Five: The Code of Obligations;

(e) Personally identifiable information ("PII"), including: Social Security Numbers; health information relating to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual, or the past present, or future payment for the provision of health care to an individual; personal financial information such as tax information, bank account numbers, and credit card numbers; insurance claim numbers; insurance policy numbers; or the personal email addresses or other contact information of company board members, executives, and employees; and/or

(f) Information, materials, and/or other documents reflecting non-public business or financial strategies, and/or confidential competitive information which, if disclosed, would result in competitive harm to the disclosing Party.

However, Confidential Information shall not include:

i. Any information that is in the public domain at the time of disclosure to a Receiving Party, or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order. This includes any public information posted by a Party that subsequently is made unavailable by removal from the public's view (e.g., deleted or closed social media posts); and/or

ii. Any information known to the Receiving Party prior to the disclosure or lawfully obtained by the Receiving Party after the disclosure from a

source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.

As described in Section V below, Confidential Information shall be affixed with a "Confidential - Paraquat Litigation" designation, consistent with how such materials were marked in the *Hoffmann* Litigation.

11. "Confidential - Attorney Eyes Only" Information or Items: Information that is so extremely sensitive in nature the disclosure of such material will put the Producing Party at a significant competitive disadvantage, and such that protecting the information cannot be avoided by less restrictive means than designation as "Confidential - Attorney Eyes Only." This includes current or past product formulas, ingredients, specifications, recipes, and manufacturing processes or technologies. This also includes information previously produced by Syngenta from Kynetec USA, Inc., pursuant to the July 1, 2019 Stipulated Amendment to Protective Order in the *Hoffmann* Litigation.

12. Counsel (without qualifier): Outside Counsel and In-House Counsel (as well as their support staff).

13. Designating Party: Party or Non-Party that designates information or tangible items that it produces in disclosures or in responses to discovery as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only."

14.     <u>Disclosure or Discovery Material</u>: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter, including but not limited to, answers to interrogatories, responses to requests for production, responses to requests for admission, and transcripts of depositions and hearings (or portions of such transcripts).

15.     <u>Expert</u>: A person who has been retained by a Party or its counsel to serve as an expert witness or as an undisclosed consultant in this Action (as well as his or her employees and support staff).

16.     <u>Hoffmann</u> <u>Litigation</u>: The case captioned *Hoffmann, et al. v. Syngenta, et al.*, No. 17-L-517, Cir. Ct., 20th Jud. Cir., St. Clair Cnty., Ill.

17.     <u>In-House Counsel</u>: Attorneys who are employees of a Party to this Action. In-House Counsel does not include any Outside Counsel retained by a Party to this Action.

18.     <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

19.     <u>Outside Counsel</u>: Attorneys who are not employees of a Party to this Action but are retained to represent or advise a Party to this Action and/or have appeared in this Action on behalf of that Party or are affiliated and/or associated with a law firm which has appeared on behalf of that Party, and

their support staff, who have access to documents designated "Confidential - Attorney Eyes Only" for use in this Action.

20.   <u>Party</u>: Any party to this Action, including all of its officers, directors, employees, consultants, Experts, and Outside Counsel (and their support staffs).

21.   <u>Producing Party</u>: Party or Non-Party that produces Disclosure or Discovery Material in this Action.

22.   <u>Professional Vendors</u>: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

23.   <u>Protected Material</u>: Any Disclosure or Discovery Material that is designated as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only."

24.   <u>Receiving Party</u>: A Party that received Disclosure or Discovery Material from a Producing Party.

III.   **Scope**

25.   The protections conferred by this Order apply to not only Protected Material (as defined above), but also to: (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any oral, written, or electronic

communications, testimony or presentation by Parties or their Counsel that might reveal Protected Material.

26.    This Order and its protections apply for pre-trial purposes only. This Order does not govern the use of Protected Materials at trial. The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

## IV.    Duration

27.    Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, or a court order otherwise directs. Final disposition shall be deemed to be the later of: (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law. The Court retains jurisdiction even after termination of this Action to enforce this Order and to make such amendments, modifications, deletions, and additions to this Protective Order as the Court from time to time deem appropriate.

## V.    Designating Protected Material

28.    Except as specified in Paragraphs 29 or 30 below, each Party or Non-Party that designates information or items as "Confidential - Paraquat Litigation"

or "Confidential - Attorney Eyes Only" under this Order must make good-faith reasonable efforts to limit any such designation to material that qualifies under the appropriate standards. Designations that are clearly unjustified or that have been made for an improper purpose (*e.g.*, to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other Parties) are prohibited.

29. To expedite production of potentially voluminous materials, a Producing Party may, but is not required to, produce materials without a detailed confidentiality review. In so doing, the Producing Party may designate those collections of documents that by their nature contain Confidential Information or Items with the appropriate designation notwithstanding that some of the documents within the collection may not qualify for such designation. A Producing Party may also utilize a filter or other software to make confidentiality designations without a detailed document-by-document confidentiality review. Any Receiving Party may, however, challenge these designations in accordance with the process laid out in Section VI, below.

30. The Syngenta Defendants and the Chevron Defendants have previously made voluminous productions of documents in the *Hoffmann* Litigation. For various reasons, many of those productions were made without detailed confidentiality review, and confidentiality designations were done in accordance with paragraph 29, above. The Parties agree that in re-

producing those documents in this litigation, neither Syngenta nor Chevron is under any obligation to conduct a detailed confidentiality review of those documents, and they may be produced with the same confidentiality designations they bore in the *Hoffmann* Litigation. Any Receiving Party may, however, challenge those designations in accordance with the process laid out in Section VI, below.

31. Except as otherwise provided in this Order or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

32. Designation in conformity with this Order requires:

    (a)    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" to each page of a paper or electronic document that contains protected material or to the cover page of bound or grouped material.

    (b)    A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the

designation, all of the material made available for inspection shall be treated as "Confidential - Attorney Eyes Only." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" legend to each page of a paper or electronic document that contains Protected Material.

(c)    A Party may designate documents produced by a Non-Party as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" if the document contains information for which that Party would have a right to apply the proposed designation if produced by that Party, by notifying all other Parties of the designation within a reasonable period of time after the production of documents by the Non-Party.

(d)    For testimony given in deposition or in other pretrial proceedings, in the event that a Producing Party designates some or all of a witness's deposition or other testimony as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only," the specific page and line designations over which confidentiality is claimed must be provided to the Receiving Party within thirty (30) days of receipt of

the final transcript, provided, however, that the Receiving Party will consider reasonable requests for an extension of the deadline. Deposition testimony shall be treated as "Confidential - Attorney Eyes Only," pending the deadline. After the 30-day period, if no Party has designated some or all of that deposition transcript as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" under this Protective Order, the entire deposition, or those portions of the deposition not designated as Confidential Information, will no longer be considered Confidential Information.

(e)     For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). With respect to documents produced in native format, the ESI Protocol to be entered in this Action shall govern the form and method for marking such documents as Protected Information. When possible, in order to minimize the likelihood of inadvertent disclosure of confidential information for any information transmitted by electronic means, the Producing Party

shall make a good faith effort to notify the Receiving Party of the fact

that confidential information is being produced.

33.     Disclosure of "Confidential - Paraquat Litigation" or "Confidential -

Attorney Eyes Only" Information does not waive the confidential status of

such Information. In the event that Protected Information is disclosed

without a marking or designation of it as such, the Producing Party may

thereafter assert a claim or designation of confidentiality, and promptly

provide replacement information or items with the appropriate designation

(and, if applicable, using the same Bates number as the original

production). Thereafter, the Receiving Party must immediately return or

destroy the original Protected Information and all copies of the same, and

make no use of such Information.

## VI.     Challenging Confidentiality Designations

34.     Any Party may challenge a designation of confidentiality at any time that

is consistent with the Court's Scheduling Order.

35.     The Challenging Party shall object to the propriety of the designation of

specific material as "Confidential - Paraquat Litigation" or "Confidential -

Attorney Eyes Only" by providing written notice to the Designating Party

of each designation it is challenging and describing the basis for each

challenge. To avoid ambiguity as to whether a challenge has been made, the

written notice must recite that the challenge to confidentiality is being made

in accordance with this specific Section of this Order. The parties shall

thereafter, within twenty-one (21) days or as otherwise agreed, meet and confer in an effort to resolve any disagreements. At the conclusion of that twenty-one day period, the Challenging Party shall provide a list of the designations that remain at issue ("Disputed Designations"). Counsel may agree to reasonable extensions.

36.     Within fourteen (14) days of receipt of the Disputed Designations, the Designating Party shall file a motion with the Court seeking relief. The Challenging Party shall file a response brief, if any, within fourteen (14) days thereafter. Consistent with local rules, no reply brief shall be filed except in exceptional circumstances. SDIL–LR 7.1(g). The burden of persuasion in any such dispute shall be on the Designating Party. Unless the Designating Party has expressly waived the confidentiality designation or until the Court has ruled on the disputed at-issue designation, all Parties shall continue to afford the material in question the level of protection designated by the Producing Party.

## VII.   Access to and Use of Protected Materials

37.     A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting or defending this litigation, including any appeal(s), so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must

comply with the provisions of Section XV below. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Outside of the context of this litigation, or pursuant to a protective order entered between the parties in a pending state court action, no Party or their representative, agent, or independent contractor may contact any person whose identity or contact information is ascertained from any Protected Material, including through telephone, text messaging, social media, and/or Internet message boards.

38.  Deponents and witnesses (and their counsel, if applicable) during a deposition or hearing may be shown or examined on any information, document or thing designated Protected Material if such person has signed the Acknowledgment and Agreement to Be Bound (Exhibit A). However, the following witnesses may be shown or examined on Protected Materials:

(a)  Any individual named in Paragraph 40 below;

(b)  if it appears from the face of the document that the witness authored or received or reviewed a copy of it, or knew the information described therein;

(c)  the witness was employed by or served as a consultant to the Producing Party (i) at the time the information, document or thing was created or (ii) at any time, so long as the deponent/witness's scope of employment or consultancy encompassed subject matters

addressed in the Protected Material sought to be shown or examined on;

(d)     the witness is a current employee of the Producing Party (or is the Producing Party);

(e)     the witness is a relative of a plaintiff; or

(f)     the witness is being produced to testify pursuant to Fed. R. Civ. P. 30(b)(6).

39.     Counsel shall have the right to exclude any person who is not authorized by this Order to receive documents or information designated as Protected Materials from any deposition where testimony regarding Protected Materials or the use of Protected Materials is likely to arise, but only during periods of examination or testimony directed to or comprising Protected Material. This paragraph does not apply to the deponent.

40.     A Receiving Party may disclose any information or item designated "Confidential - Paraquat Litigation" only to:

(a)     The Receiving Party's Outside Counsel in this Action, as well as employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)     The Parties to the litigation, including Plaintiffs and Defendants, including current or former directors, officers, employees (including In-House Counsel), agents, contractors, and representatives of the

Parties to whom disclosure is reasonably necessary for the purpose of assisting in the prosecution or defense of the Action;

(c)     Experts retained by the Producing Party and their staff;

(d)     Experts retained by the Receiving Party and their staff to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e)     The Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

(f)     Court reporters, videographers, and their staff;

(g)     Professional jury or trial consultants, and mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

(h)     Deponents and witnesses (and their counsel, if applicable) during a deposition, hearing, or deposition preparation consistent with Paragraph 38, above;

(i)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(j)     Any other person as to whom the Designating Party has consented to disclosure in advance;

(k)     Special masters or discovery referees appointed by the Court;

(l)     Mediators or settlement officers, and their supporting personnel, mutually agreed upon by any of the Parties engaged in settlement discussions; and/or

(m)     Such other persons as may be ordered by the Court, after the Designating Party has had an opportunity to be heard.

41.     A Receiving Party's Outside Counsel may disclose any information or item designated "Confidential - Attorney Eyes Only" only to:

(a)     Employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)     Defendants' directors, officers, and employees (including In-House Counsel) to whom disclosure is reasonably necessary for the purpose of assisting in the prosecution or defense of the Action for use in accordance with this Protective Order;

(c)     Experts retained by the Producing Party and their staff;

(d)     Experts retained by the Receiving Party and their staff to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e)     The court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

(f)     Court reporters, videographers, and their staff;

(g)      Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

(h)      Deponents and witnesses (and their counsel, if applicable) during a deposition, hearing, or deposition preparation consistent with Paragraph 38, above;

(i)      The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(j)      Persons who prepared, received, or reviewed the "Confidential - Attorney Eyes Only" Information prior to its production;

(k)      Any other person as to whom the Designating Party has consented to disclosure in advance;

(l)      Special masters or discovery referees appointed by the Court;

(m)      Mediators or settlement officers, and their supporting personnel, mutually agreed upon by any of the Parties engaged in settlement discussions; and/or

(n)      Such other persons as the parties may agree or may be ordered by the Court.

## VIII.  Information Filed with the Court

42.    The fact that information or material has been designated as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" is not

determinative of whether such information is, in fact, entitled to be deemed as such.

43. <u>Filing by the Designating Party</u>: The Designating Party may file designated Protected Material under seal or in redacted form per Local Rule 5.1(d) provided that contemporaneous with the filing, the Designating Party submits a separate motion and supporting declaration demonstrating good cause why the Protected Material meets the Seventh Circuit's standards for maintaining the designated Protected Material under seal or in redacted form. Within 10 days of the filing of this separate motion, a Receiving Party may challenge the Designating Party's motion to maintain the Protected Material under seal or in redacted form. Consistent with local rules, no reply brief shall be filed except in exceptional circumstances. SDIL–LR 7.1(g).

44. <u>Filing by a Receiving Party</u>: A Receiving Party shall file provisionally under seal or with redactions per Local Rule 5.1(d) any material designated by a Designating Party as Protected Material. The Designating Party shall then have 10 days after the Receiving Party's filing to submit a separate motion and supporting declaration demonstrating good cause why the Protected Material should be maintained under seal or in redacted form. Within 10 days of the filing of this separate motion, a Receiving Party may challenge the sealing or redaction. Consistent with local rules, no reply brief shall be filed except in exceptional circumstances. SDIL–LR 7.1(g).

45. The time frames set forth above may be extended by agreement of the parties or Court order in individual instances.

46. The process set forth above does not apply to motions regarding confidentiality designation disputes, which are governed by Section VI above.

**IX.  Security of Protected Material**

47. Any person in possession of another Party's Protected Material shall exercise the same care with regard to the storage, custody, or use of Protected Material as they would apply to their own material of the same or comparable sensitivity. Receiving Parties must take reasonable precautions to protect Protected Material from loss, misuse and unauthorized access, disclosure, alteration, and destruction.

48. If the Receiving Party discovers a breach of security relating to the Protected Material of a Producing Party, the Receiving Party shall: (1) provide written notice to the Producing Party of the breach within 48 hours of the Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide the Producing Party with reasonable assurance that the breach shall not recur; and (3) provide sufficient information about the breach so that the Producing Party can ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party and/or law enforcement in investigating any such security incident.

**X.    Protected Material Subpoenaed or Ordered Produced in Other Litigation**

49.    If a Receiving Party is served with a subpoena or a court order issued in other litigation that would compel disclosure of any information or items designated in this Action as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" the Receiving Party must:

(a)    Within two (2) days if compliance is due in less than ten (10) days, or at least seven (7) business days before compliance is due in more than ten (10) days, notify in writing the Outside Counsel for the Designating Party (by email, if possible) unless prohibited by law from doing so. Such notification must include a copy of the subpoena or court order;

(b)    Within two (2) days if compliance is due in less than ten (10) days, or at least seven (7) business days before compliance is due in more than ten (10) days, notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

(c)    Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

50.    If the Designating Party timely seeks a protective order, the Receiving Party served with the subpoena or court order shall not produce any information

designated in this Action as "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court or violate any applicable state or federal law, rules, or regulations.

## XI. Party's Own Information

51.     The restrictions on the use of "Confidential - Paraquat Litigation" or "Confidential - Attorney Eyes Only" Information established by this Protective Order are applicable only to the use of the Information received by a Party from another Party or from a Non-Party.

52.     Nothing herein shall impose any restrictions on the use or disclosure by a Party or witness of documents, material, or information lawfully obtained by such Party or witness independently of the discovery proceedings in these actions, whether or not such documents, material or information are also obtained through discovery proceedings in these actions.

## XII. A Non-Party's Protected Material Sought to be Produced in this Litigation

53.     The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "Confidential - Paraquat Litigation"

or "Confidential - Attorney Eyes Only." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections. Any Party issuing a subpoena to a Non-Party shall enclose a copy of this Order.

54.    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, then the Party shall (i) promptly notify in writing the requesting party and the Non-Party; (ii) provide the Non-Party with a copy of the Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and (iii) make the information requested available for inspection by the Non-Party.

55.    If the Non-Party fails to object or seek a protective order from this Court within fourteen (14) days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce such information before determination by the Court.

## XIII.    Unauthorized Disclosure of Protected Material

56.    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not

authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosure(s), (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A. This shall not limit any remedies that the Designating Party may have for disclosure of Protected Material.

## XIV. Miscellaneous

57. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order. Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon Plaintiffs' Co-Lead Counsel and Defendants' Liaison Counsel, with such writings to be filed with the Court if so directed. The Parties expressly reserve all rights to seek further protection.

58. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party

waives any right to object on any ground to use in evidence of any of the material covered by this Order.

59. Nothing in this Order shall modify the law regarding the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, and any other applicable privilege or protection from disclosure to the extent such privilege or protection exists under applicable law.

60. Entering into, agreeing, and/or complying with the terms of this Order shall not: (a) operate as an admission by any Party that any particular documents, material, or information contain(s) or reflect(s) currently valuable trade secrets or proprietary or commercial information; or (b) prejudice in any way the right of a Party at any time: (i) to seek a determination by the Court of whether any particular document, item of material, or piece of information should be subject to the terms of this Order; (ii) to seek relief on appropriate notice from any provision(s) of this Order, either generally or as to any particular document, item, or piece of information; (iii) to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information; or (iv) to seek documents or other information from any source.

61. Neither the existence of this Order nor any of its terms shall in any manner burden the right of any Defendant to assert defenses available under Federal Rules of Civil Procedure 8, 9, or 12 or otherwise challenge the sufficiency of any claim under the applicable laws. This Order and its terms

are expressly limited to this matter and shall not be used as evidence or considered in any other matter filed against any Defendant as a waiver to assert defenses of any kind including, but not limited to, choice of law, jurisdiction and venue. Neither the existence of this Order nor any of its terms shall in any manner burden the right of any Defendant to assert defenses of any kind including, but not limited to, those available under Federal Rule of Civil Procedure 12(b) in any unrelated matter. All such defenses are expressly reserved by the Defendants.

62.    Nothing in this Order shall require a Party to violate any applicable public records access, disclosure, or retention laws.

63.    Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.

64.    In the event that any person or Party violates the terms of this Protective Order by disclosing personal information relating to an individual third party, or in the event that any person or Party breaches the terms of the Protective Order in a manner that requires disclosure to a third party under pertinent privacy laws or otherwise, it shall be the responsibility of the breaching Party to contact that third party and to comply with any laws or regulations involving breaches of Personal Information.

## XV.  Final Disposition

65.     Unless otherwise ordered or agreed in writing by the Producing Party, within ninety (90) days after the final disposition of this Action (as defined by paragraph 27, above) each Receiving Party must return all Protected Material to the Producing Party or destroy such material, except: (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as government records or in compliance with other statutory, regulatory or legal authorities. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, upon the written request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) within a reasonable time after receiving the request that (1) identifies by bates number listing all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, lead counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain protected material.

**IT IS SO ORDERED.**

**DATED:**   **August 11, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address],

declare under penalty of perjury that I have read in its entirety and understand the

Protective Order that was issued by the United States District Court for the Southern

District of Illinois on _____, in the case of *In re: Paraquat Products Liability Litigation*,

Case No. 3:21-MD-3004-NJR. I agree to comply with and to be bound by all the terms of

this Protective Order and I understand and acknowledge that failure to so comply could

expose me to sanctions and punishment in the nature of contempt. I solemnly promise

that I will not disclose in any manner any information or item that is subject to this

Protective Order to any person or entity except in strict compliance with the provisions

of this Order.

I further agree to submit to the jurisdiction of the United States District Court for

the Southern District of Illinois for the purpose of enforcing the terms of this Protective

Order, even if such enforcement proceedings occur after the termination of this Action.

Date: _____

City and State where sworn and signed: _____

Printed Name: _____

Signature: _____