IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION | Case No. 3:21-md-3004-NJR |
| This Document Relates to: All Cases | MDL No. 3004 |

**PLAINTIFFS' MOTION TO SHORTEN TIME FOR
DEFENDANT CHEVRON U.S.A. INC. TO RESPOND TO
REQUESTS FOR INSPECTION AND PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 34(b)(2)(A), Plaintiffs respectfully request that the Court order Defendant Chevron U.S.A. Inc. (Chevron) to respond to Plaintiffs' First Request for Inspection and Second Request for Production of Documents within five (5) days.

**FACTUAL BACKGROUND**

This dispute stems from Chevron's refusal to search or make available roughly 700 boxes of documents currently housed at an Iron Mountain storage facility. See Declaration of Khaldoun A. Baghdadi, attached hereto as Exhibit 1; see also Exhibit 1-A, Letter from K. Baghdadi to S. Reisman dated Aug. 30, 2022. Both parties know these boxes contain documents that are relevant to the paraquat litigation and directly responsive to Plaintiffs' discovery requests, including written discovery served by Plaintiffs on September 20, 2021, April 15, 2022, and June 29, 2022. See Exhibit 1, p. 2. Plaintiffs know this to be true, because these boxes were previously made available to the pre-MDL plaintiffs in the *Hoffmann* litigation.[1] Exhibit 1-B, Letter from S. Reisman to K. Baghdadi, p. 1. As taken from Chevron's correspondence relating to these boxes of documents:

> By way of background, in the *Hoffmann* litigation (in which Mr. Baghdadi was co-counsel), the parties agreed on 300+ search terms to be run across

---

[1] *Hoffmann v. Syngenta Crop Protection, LLC, et al.*, No. 17-L-517 (Ill. Cir. Ct., 20th Jud. Cir.).

> Chevron's documents, including its indices for Chevron's records stored with Iron Mountain. Iron Mountain stores records from all Chevron companies, divisions, and departments. The application of the 300+ search terms to the indices for these records resulted in the identification of over 900 boxes and ultimately the production of over 50,000 records (over 415,000 pages) in the *Hoffmann* case. Chevron produced these documents to the MDL Plaintiffs in August 2021.
>
> After the initial production in the Hoffmann case, *Hoffmann* plaintiffs' counsel inquired about non-responsive "boxes," *i.e.,* those that did not hit on the 300+ search terms, and demanded inspection of those box indices. In response, Chevron provided plaintiffs' counsel with lists of every Chevron Chemical Company box from 1960-1986. Plaintiff's counsel reviewed those lists and chose for review "the approximately 700 boxes" that are at issue now. A team of Plaintiffs' counsel, including five lawyers from Mr. Baghdadi's law firm (The Walkup Law Office), spent four days reviewing those boxes and selected several thousand documents for scanning and production. Those documents were produced in *Hoffmann*, and also in the MDL and the JCCP, and are currently in the MDL and JCCP Plaintiffs' possession.

Exhibit 1-B, pp. 2-3.

During that time, five attorneys who were permitted access to the room housing the documents identified approximately 8,000 responsive documents. See Exhibit 1. The five attorneys who were permitted access to the warehouse were only permitted to inspect the documents for four days and had to comb through the boxes available to them. Id. Pre-MDL plaintiffs' counsel reviewed as many boxes as possible but were not provided adequate time to review all of the boxes, given the time constraints in light of trial and expert preparation. Id. The Covid pandemic prevented pre-MDL plaintiffs' counsel from returning and completing the review.

On February 26, 2022, MDL Plaintiffs sent an email to Chevron's counsel asking about the current status of the documents at Iron Mountain and whether they were ultimately copied and produced. Id. That email correspondence evolved to letters reflecting the parties' positions on these documents. See Exhibit 1; Exhibit 1-A; Exhibit 1-B; Exhibit 1-C, Letter from S. Reisman to MDL Plaintiffs' Leadership. Throughout the more than six (6) months of discussion on the issue, Chevron has maintained that (1) it has not reviewed these boxes of documents beyond pulling the

documents identified by pre-MDL counsel and producing them to MDL Plaintiffs and (2) it will not release the boxes to MDL Plaintiffs for their review. See Exhibit 1-C, p. 1, p. 1 n.1.

On September 21, 2019, Plaintiffs served Chevron with Plaintiffs' First Request for Inspection and Second Request for Production of Documents, seeking inspection of the approximately 700 boxes of documents maintained at Iron Mountain as described in the extensive correspondence and production of any inventory list, catalog, or itemization that describes or identifies those documents. See Exhibit 1. Because the parties have been conferring on this issue for months and Chevron has stated that it will neither undertake its own review of the documents nor allow Plaintiffs to inspect the documents, Plaintiffs ask this Court to order an expedited response time so that appropriate relief may be sought.

## LEGAL STANDARD

The federal procedural rules require a party to provide to other parties "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1); *see also Hickman v. Taylor,* 329 U.S. 495, 501 (1947) (general purpose of discovery is to encourage exchange of information in order to narrow and clarify basic case issues and assist in obtaining the truth). Discovery rules are liberally construed and subject to broad interpretation. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 566 (7th Cir. 1984) ("[T]he

Federal Rules 'permit the broadest possible scope of discovery'" (quoting *Wright & Miller*, Federal Practice and Procedure, Civil § 2036, at 268)).

A party may serve on any other party a request within the scope of Rule 26(b) to produce and permit inspection of documents and tangible things in its possession, custody, and control. *See* Fed. R. Civ. P. 34(a)(1). Within thirty (30) days after being served, a party must respond to each item or category by either stating that production and/or inspection will be permitted as requested or stating with specificity the grounds for objecting to the request, including the reasons. Fed. R. Civ. P. 34(a)(2)(B). Under Rule 34(a)(2)(A), the Court may order a shorter response time for the served party to respond whether it will permit or object to the inspection and production.

## ARGUMENT

### A. It is Undisputed that the Boxes Contain Relevant and Responsive Information

During the meet and confer efforts leading up to this motion, Chevron classified Plaintiffs' request as a "fishing expedition." See Exhibit 1-B, p. 3. Chevron's suggestion is nothing more than an attempt to distract the Court given it has not conducted a review of the documents in the 700 boxes beyond what was previously identified by five attorneys in a prior litigation. Because Chevron has not reviewed the documents, it has not met its discovery obligations nor can it suggest to the Court that these boxes do not contain relevant, responsive information. More specifically, Chevron concedes that, in responding to Plaintiffs' previously served discovery, it did not conduct its own search for responsive documents. Indeed, Plaintiffs and Chevron already understand that within this set of documents, there were already thousands of documents that pre-MDL plaintiffs deemed relevant. It is, therefore, reasonable to expect that the 700 boxes of documents contain more relevant, discoverable, and responsive documents.

## B.  Chevron Cannot Ignore a Full Warehouse of Relevant Documents

It is not disputed that the boxes are within Chevron's possession, custody, and control because the boxes are presently stored at an Iron Mountain warehouse pursuant to a contract with Chevron. See Exhibit 1-B, p. 4. Nor can Chevron seriously dispute that the boxes contain relevant documents because counsel for pre-MDL plaintiffs identified approximately 8,000 responsive documents amongst the box contents. Id. Plaintiffs' counsel does not know how many *additional* documents located amongst the box contents may be responsive to their discovery requests because the handful of attorneys for the pre-MDL plaintiffs granted access to inspect the documents lacked sufficient time to inspect *all* of the documents and were not able to return to complete the review. Exhibit 1. Importantly, Chevron does not know either, as demonstrated in its correspondence on this issue:

> Chevron made these boxes available to Plaintiffs' counsel for review in *Hoffmann* (as opposed to conducting a review and production) only due to specific circumstances in *Hoffmann*. These boxes contain both privileged documents and documents pertaining to other products not at issue in this litigation; if not for the specific circumstances in *Hoffmann*, **Chevron would have conducted a review and production as it does in the ordinary course of its litigations**.

Exhibit 1-B, p. 1 n.1, emphasis added; see also Exhibit 1-C, p. 2.

Nevertheless, the results of the pre-MDL sample of the warehouse contents demonstrate that the contents of these boxes are relevant and discoverable in "light of the broad definition of relevance under the Federal Rules of Civil Procedure." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360 (N.D. Ill. 2005). "The key phrase in this definition —'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting Fed. R. Civ. P. 26(b)(1)). The sample of the box contents that has already been viewed makes clear that

the boxes contain documents bearing on issues that are or may be in this MDL, and in light of the broad discovery rules, Plaintiffs are entitled to complete a review of the documents.

Courts have previously held that plaintiffs were entitled to discover whether *nineteen thousand* boxes of documents retained by the defendants contained relevant information and, in fact, went further than merely requiring the defendant to turn over the contents of the boxes, but also required the defendants to examine the boxes and describe their contents for the plaintiffs—paying for part of the process. *Am Intern. Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 412–13 (N.D. Ill. 2007); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 361–62 (N.D. Ill. 2005) (requiring defendants to review and produce the contents of 350 boxes of stored documents over objection that this would burden defendants who had already reviewed documents and would be required to re-review documents). During the meet and confer process proceeding this motion, Chevron admitted that it "has not reviewed these boxes beyond pulling the documents identified by Mr. Baghdadi's [pre-MDL] team" and asserted that it "will not release the boxes to [MDL] plaintiffs for their review." Exhibit 1-C, p. 1, p. 1 n.1. Chevron cannot be permitted to withhold 700 boxes of documents known to contain documents relevant to this MDL and responsive to Plaintiffs' discovery requests.

### C. The MDL is not *Hoffmann*

Chevron wants to limit MDL Plaintiffs to the case workup done in *Hoffmann*.[2] However, the two litigations are vastly different in posture. There are no longer a discrete number of plaintiffs involved, and now <u>this</u> Court has appointed a Plaintiffs' Executive Committee, charged with advocating for the interests of nearly 2,000 plaintiffs with filed cases in this MDL. See CMO 2,

---

[2] Yet, Chevron refuses to produce the reports and deposition transcripts for the experts that it disclosed in *Hoffmann*. Plaintiffs needed the Court's repeated intervention for Chevron to produce its own corporate representative's deposition transcript from *Hoffmann*. See Docs. 332, 935.

Doc. 169. Moreover, pre-MDL plaintiffs' counsel could not have known the specific facts and circumstances relating to the trial selection plaintiffs who have consented to be tried by this Court in the MDL; they had not even filed their cases at the time the *Hoffmann* search was undertaken. Rather, pre-MDL plaintiffs' counsel would have been focused on the facts, circumstances, and issues related to the limited number of plaintiffs involved in the *Hoffmann* case.

While these litigations involve some of the same issues, they are different litigations, and while this Court ordered Defendants to produce to MDL Plaintiffs the documents that were produced in *Hoffmann* (CMO 5, Doc. 203), it did not limit MDL Plaintiffs' discovery allowed in this MDL litigation. In fact, this Court specifically tasked MDL Plaintiffs' Leadership with drafting and serving additional discovery. CMO 2, Doc. 169, p.2.

### D. Privilege and Work Product Claims Should Not Bar Production of These Documents

As an initial matter, the party claiming privilege or work product protection bears the burden of showing the facts which give rise to it. *Thompson by Willis v. United States*, No. 18-CV-1520, 2020 WL 3962270, at * 2 (S.D. Ill. July 13, 2020). Chevron invoked privilege in a single sentence in a letter to Plaintiffs. See Exhibit 1-C, p. 2. Extending this argument, Chevron's position seems to be: (1) Conducting its own review of its documents is too burdensome (even though it concedes that is what it usually does in litigation); (2) Chevron will not allow MDL Plaintiffs to inspect the boxes because the boxes may contain privileged documents (even though pre-MDL plaintiffs' counsel were allowed to do so); (3) Therefore, the boxes and their contents are off limits. MDL Plaintiffs should not be prejudiced by Chevron's decision not to treat the paraquat litigation, whether it be the *Hoffmann* litigation or this MDL, as it would other litigations.

Chevron has had the time and ability to review these documents in advance of producing them. In so doing, as is the case with every other production of documents made in any case,

Chevron could elect to withhold or redact documents that may be privileged so long as a complete and appropriate privilege log is produced in their place. Rather, Chevron chose to leave the documents in boxes in the Iron Mountain storage facility and incur effectively no costs associated with its discovery obligations in this MDL. Chevron's failure to review their own documents does not justify withholding these documents from Plaintiffs. These documents should be available to Plaintiffs immediately.

## CONCLUSION

Plaintiffs respectfully request that the Court order, pursuant to Rule 34(b)(2)(A), Chevron to respond to Plaintiffs' First Request for Inspection and Second Request for Production of Documents within five (5) days. Because Chevron has taken the position in correspondence that it will neither conduct its own review of these documents nor make them available to Plaintiffs, the full thirty (30) day response time is unnecessary and will lead to further delay. An expedited response will allow Plaintiffs to seek whatever further Court intervention in required in this matter.

Dated: September 21, 2022

Respectfully submitted,

**PLAINTIFFS' CO-LEAD COUNSEL**

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7011
sdoles@levinlaw.com

Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY &
SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Telephone: (415) 981-7210
kbaghdadi@walkuplawoffice.com

Peter J. Flowers
MEYERS & FLOWERS, LLC
225 West Wacker Drive, Suite 1515
Chicago, IL 60606
Telephone: (630) 232-6333
pjf@meyers-flowers.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record.

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7011
sdoles@levinlaw.com