IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

In re: PARAQUAT PRODUCTS
LIABILITY LITIGATION

This Document Relates to All Cases

Case No. 3:21-md-3004-NJR

MDL No. 3004

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Report and Recommendations filed by Special Master Randi S. Ellis on October 11, 2022, pertaining to three discovery disputes between the MDL Plaintiffs and Defendant Chevron U.S.A. Inc. (Doc. 2531). Both Plaintiffs and Chevron objected, in part, to the Report and Recommendations (Docs. 2620, 2622), and the objections were briefed in full. (Docs. 2698, 2699, 2723, 2724). Specifically, both parties object to the Special Master's findings of fact and conclusions of law regarding the depositions of two of Chevron's witnesses, Richard Cavalli and Sarah McMillen. The parties do not object to the Special Master's findings regarding certain boxes of documents stored at Iron Mountain.

When timely objections are filed, the Court must undertake *de novo* review of the Special Master's findings of fact and conclusions of law. FED. R. CIV. P. 53(f)(3), (4). Procedural matters are reviewed only for an abuse of discretion. FED. R. CIV. P. 53(f)(5). Having performed the appropriate review, the Court adopts the Special Master's Report and Recommendations.

## I.    Richard Cavalli Deposition

On September 20, 2022, Plaintiffs filed a Motion to Compel and for Sanctions related to the deposition of Richard Cavalli. (Doc. 2407). Chevron initially disclosed Cavalli, a

Chevron toxicologist from 1969 through 1999, as a fact witness in its Rule 26(a)(1) Disclosures. (Doc. 2622-2). In an email dated August 3, 2022, however, Chevron informed Plaintiffs that because Cavalli served as a toxicologist, "out of an abundance of caution, we intend to identify him as a non-retained expert . . . at the appropriate time." (*Id.*). Chevron further stated that it did not intend to make Cavalli available for deposition again after his former disclosure as a non-retained expert because "there is no part of his knowledge or testimony that differs between his role as a fact witness and his role as a non-retained expert." (*Id.*).

In response to Chevron's email, Plaintiffs stated that their deposition of Cavalli, scheduled for August 22 and 23, would be in his capacity as a former employee fact witness; if Chevron chose to disclose Cavalli as a non-retained expert witness, it should also provide an appropriate Rule 26 disclosure; and to the extent Chevron intended to call Cavalli as an expert witness, Plaintiffs reserved the right to depose him again on the subject matter, topics, and opinions identified in any Rule 26 non-retained expert disclosure made by Chevron. (*Id.*). After further e-mail communications, Chevron agreed to serve a Rule 26 non-retained expert disclosure pursuant to Rule 26(a)(2)(C) by August 18, 2022. (*Id.*).

In the disclosure, Cavalli was described as a former Chevron toxicologist who provided toxicological support with respect to Chevron's Ortho paraquat products prior to Chevron's exit from the paraquat business in 1986. (Doc. 2622-2). Cavalli would provide testimony as to his state of mind and understanding of how paraquat affected the human body while working as a toxicologist at Chevron. Cavalli's beliefs and understandings were formed prior to his exit from the business in 1986 and were based on data and information available to him prior to 1986, including human data, toxicological studies, and worker exposure studies sponsored and/or conducted by Chevron, ICI or third parties, including

publicly-available literature on paraquat prior to Chevron's exit from the paraquat business in 1986. (*Id.*). Cavalli would not provide testimony regarding the current science or state of scientific knowledge related to paraquat. (*Id.*). Because Cavalli was a Chevron toxicologist, however, Chevron noted that it was disclosing Cavalli as a non-retained expert pursuant to Rule 26(a)(2)(C) out of an abundance of caution in the event the Court determines that his testimony falls within the scope of Federal Rule of Evidence 702. (*Id.*). After Chevron served the disclosure, Plaintiffs did not request any materials reviewed by Cavalli in preparation for his deposition.

Cavalli was deposed on August 22 and 23, 2022. (Doc. 2620-2). Cavalli testified that he met with Chevron attorneys on several occasions at his residence prior to his deposition. (*Id.* at pp. 77-78). Each meeting lasted from two to five hours. (*Id.* at p. 78). Attorneys for Chevron also met with Cavalli while on break during his trial testimony, as well as on the evening between the two days of his trial deposition. (*Id.* at p. 80). Cavalli acknowledged that he reviewed documents provided by counsel for Chevron during those meetings. (*Id.* at p. 79). But counsel for Chevron instructed Cavalli not to answer any questions about the nature of those meetings or to identify what documents he reviewed in preparation for his deposition—unless those documents refreshed his recollection. (*Id.* at pp. 76-79). He could not recall any documents that refreshed his recollection. (*Id.*). When Cavalli was later asked, again, to list the documents he reviewed in advance of his deposition, counsel for Chevron asserted work product privilege over the documents. (*Id.* at pp. 123-26).

On September 20, Plaintiffs filed a Motion to Compel and For Sanctions related to the Cavalli deposition. (Doc. 2407). In response, Chevron filed an emergency motion to strike Plaintiffs' motion, which the Court granted. (Docs. 2437, 2440). The Court also ordered the

parties to meet and confer in a good faith effort to resolve the dispute. (Doc. 2440).

Following email correspondence, the parties met and conferred via videoconference, along with the Special Master. Plaintiffs explained the relief they seek, including that (1) the Court order Cavalli to appear for a second deposition; (2) Chevron be compelled to produce all documents considered and/or relied upon by Cavalli and all correspondence to and from Cavalli with counsel for any party in this matter; (3) the second deposition take place at Chevron's expense; and (4) Chevron's attorneys be sanctioned. (*See* Doc. 2407).

Following this meeting, the Special Master issued the instant Report and Recommendations. (Doc. 2531). The Special Master recommends that (1) Chevron be ordered to produce to Plaintiffs within seven days a list of the documents reviewed by Cavalli in preparation for his deposition; (2) Plaintiffs' request to reopen the deposition to question Cavalli on those documents be denied; (3) Plaintiffs' request to reopen the deposition to question Cavalli on communications he had with Chevron's counsel during breaks in the course of the deposition be denied; and (4) all remaining requests by Plaintiffs for relief be denied.

### Plaintiffs' Objections

Plaintiffs agree that Chevron should be ordered to produce the list of documents reviewed by Cavalli, but they object to the remainder of the Special Master's recommendations. Specifically, Plaintiffs argue that, as a hybrid fact and expert witness, Cavalli's communications with defense counsel and the documents he reviewed are discoverable.[1]  Plaintiffs claim that, because they were wrongfully prevented from obtaining

---

[1] Plaintiffs also argue that because Cavalli's deposition was cross-noticed in the JCCP, California's treatment of non-retained expert witnesses is also relevant. Under the California Civil Code, non-retained experts are treated as fact witnesses, and there are no special discovery protections applicable to communications between the

answers on discoverable topics, Cavalli should be compelled to appear for a second deposition at Chevron's expense. Furthermore, they argue, Chevron is subject to sanctions for instructing Cavalli not to answer. Plaintiffs ask the Court to admonish counsel for Chevron for their unfounded objections, as well as their inappropriate conversations with Cavalli during breaks in his deposition.

In response, Chevron argues that it disclosed Cavalli as a non-retained expert only out of an abundance of caution due to his training as a toxicologist, not based on the substance of his testimony. Thus, he is properly considered a fact witness for privilege purposes. Even if Cavalli were deemed a non-retained expert, many courts have rejected Plaintiffs' position. Moreover, even if this Court finds Plaintiffs correct on the law, the Special Master correctly concluded there is no basis for a second deposition of Cavalli. Cavalli could not recall any specific documents he reviewed, and Plaintiffs waived their chance to question Cavalli about discussions with defense counsel during breaks when they did not ask about the interactions during the deposition. Finally, Chevron argues that Plaintiffs' request for sanctions is baseless when there is no controlling authority answering the question of whether designating someone as a non-retained expert results in the waiver of privilege, and when they have no evidence that any improper communications took place during the deposition breaks.

In reply, Plaintiffs argue they should be permitted to explore defense counsel's communications with Cavalli in order to expose any attorney-caused bias, considering Chevron wants to present Cavalli as a fact witness whom its own attorneys represent.

### Chevron's Objections

For its part, Chevron asserts the Special Master erred in ordering it to produce to

---

expert and counsel. *See Kalaba v. Gray*, 95 Cal. App. 4th 1416, 1422 (Cal. Ct. App. 2002).

Plaintiffs a list of the documents reviewed by Cavalli in preparation for his deposition. (Doc. 2622). Chevron argues the list of documents was protected by privilege because Cavalli was a fact witness—notwithstanding his designation as a non-retained expert. Chevron contends that it only disclosed Cavalli as a non-retained expert out of an abundance of caution (which Plaintiffs knew); his testimony as a non-retained expert is identical to his testimony as a fact-witness and is limited to his understanding of and state of mind with respect to certain toxicology issues prior to 1986; and Chevron is not offering his testimony as an expert witness. Because he should be designated a fact witness, any communications with him in preparation for his deposition are covered by attorney-client privilege. Even if Cavalli is considered a non-retained expert, Chevron argues, the Seventh Circuit has not specifically decided whether designating a witness as a non-retained expert results in the wavier of privilege and work product protection.

In response, Plaintiffs contend that whether Cavalli was designated as non-retained expert witness "out of an abundance of caution" is beside the point. Having designated and disclosed Cavalli under Rule 26(a)(2)(C), Chevron cannot now argue that because the testimony was fact testimony rather than expert testimony, his designation should be disregarded, and all communications should be protected.

*Analysis*

Under Rule 26(a)(2)(B), witnesses that have been retained to provide expert testimony or whose duties as the party's employee regularly involve giving expert testimony must prepare a written report. FED. R. CIV. P. 26(a)(2)(B). Rule 26(a)(2)(C) governs expert witnesses not required to provide a written report. FED. R. CIV. P. 26(a)(2)(C). These witnesses "may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703,

or 705." Fᴇᴅ. R. Cɪᴠ. P. 26 Committee Notes on Rules – 2010 Amendment. Examples of these "hybrid" witnesses include physicians or employees of a party who do not regularly provide expert testimony. *Id.*

Rule 26(b)(4)(C) explicitly protects communications between a party's attorney and any witness required to provide a report under Rule 26(a)(2)(B). The Committee Notes on Rules – 2010 Amendment state that Rule 26(b)(4)(C) provides work-product protection for attorney-expert communications and "is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." The Notes further specify that "[t]he protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying." *Id.* The rule "does not itself protect between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C)," although it also does not exclude protection under another doctrine. *Id.*

The Seventh Circuit has not spoken on whether designating a witness as a non-reporting expert results in the waiver of privilege and work-product protection, and recent district court opinions offer differing takes on Rule 26(a)(2)(C). *Compare Advanced Magnesium Alloys Corp. v. Dery*, No. 120CV02247RLYMJD, 2022 WL 16743623 (S.D. Ind. Nov. 7, 2022), *with Trading Techs. Int'l, Inc. v. IBG*, No. 10 C 715, 2020 WL 12309208 (N.D. Ill. Sept. 14, 2020), and *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14CV03103SRNFLN, 2016 WL 6774229 (D. Minn. Nov. 15, 2016).

Plaintiffs cite to *United States v. Sierra Pacific Industries*, 2011 WL 2119078, (E.D. Cal. May 26, 2011), an "oft-cited case" case relied upon by the *Trading Technologies* and *Luminara*

courts. In *Sierra Pacific*, the district court reviewed the plain language of Rule 26 before diving

into the Civil Rules Advisory Committee meeting notes, as the case was decided just months

after Rule 26 was amended on December 1, 2010. The court noted the Committee's arguments

on both sides of the table regarding whether a non-reporting expert's communications with

counsel should be protected. *Id.* at **6-7. In the end, the Committee decided not to codify

protections for communications with employee experts, stating:

> There are reasonable grounds to believe that broad discovery may be
> appropriate as to some 'no-report' experts, such as treating physicians who are
> readily available to one side but not the other. Drafting an extension that
> applies only to expert employees of a party might be tricky, and might seem to
> favor parties large enough to have on the regular payroll experts qualified to
> give testimony. Still more troubling, employee experts often will also be 'fact'
> witnesses by virtue of involvement in the events giving rise to the litigation.
> An employee expert, for example, may have participated in designing the
> product now claimed to embody a design defect. Discovery limited to
> attorney-expert communications falling within the enumerated exceptions
> might not be adequate to show the ways in which the expert's fact testimony
> may have been influenced.

*Id.* at *7 (quoting Report of the Civil Rules Advisory Committee (May 8, 2009, amended June

15, 2009), pp. 4–5).

Based on these Committee meeting notes and Ninth Circuit law prior to the 2010

Amendment with regard to non-reporting witnesses, the *Sierra Pacific* court concluded that

hybrid fact and expert opinion witnesses "should be treated differently than reporting

witnesses with respect to the discoverability of their communications with counsel." *Id.* at

*10. The court continued: "While it is desirable that any testifying expert's opinion be

untainted by attorneys' opinions and theories, it is even more important that a witness who

is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least

in some cases, discovery should be permitted into such witnesses' communications with

attorneys, in order to prevent, or at any rate expose, attorney-caused bias." *Id.* Yet the court declined to hold that designating a non-reporting expert witness waives otherwise applicable privileges and protections in all cases. *Id.*

The *Trading Technologies* court found *Sierra Pacific* persuasive and adopted its framework by reference, holding that "whether communications between counsel and [the witness] are privileged and whether work product protections apply turns on whether [the witness] offers pure opinion testimony or whether he is instead an expert whose underlying knowledge of the facts derives from his percipient knowledge of facts at issue in the litigation." *Trading Techs.*, 2020 WL 12309208, at *2. In *Trading Technologies*, the hybrid fact and opinion witness submitted a declaration in which he explained actions the defendant took based on his personal knowledge in those projects, but he also offered opinions about what the defendant could have done differently. *Id.* Thus, the court found that his "percipient knowledge" of the case was "inextricably linked to the opinions he offers," and, as a result, his communications with counsel were not privileged under the *Sierra Pacific* line of cases. *Id.*

More recently, the court in *Dery* rejected the *Sierra Pacific* framework, explaining that because retained expert witnesses must prepare a report containing the data and all other information *considered* by the expert witness in forming his opinions, litigants cannot argue that this material is privileged or otherwise protected from disclosure as attorney work product. 2022 WL 16743623, at *6. On the other hand, "it is axiomatic that a non-reporting expert does not have to provide a report and therefore does not have to reveal all of the information he or she considered in forming his or her opinions." *Id.* In other words, the information provided by counsel to a non-reporting expert is *not* provided with the expectation that it will become public. *Id.* "The basis for finding a waiver of privilege and

work product protection simply does not apply in the case of a non-reporting expert." *Id.*

Furthermore, while the *Sierra Pacific* court found it "even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased," *Dery* observed that "the same can be said for any fact witness who prepares with counsel prior to testifying, and a client does not waive the attorney-client privilege simply by testifying. Policy reasons alone cannot be the basis for finding waiver of attorney-client privilege or work product protection." *Id.* Ultimately, the *Dery* court held that the plaintiff did not waive the attorney-client privilege or work product protection by naming witnesses as non-reporting experts.

This Court finds both *Trading Technologies* and *Dery* to be well reasoned in certain regards, although, of course, neither is binding authority. What is binding is the language of Rule 26(b)(4)(C)(ii), which protects communications between a party's attorney and any reporting witnesses, except to the extent the communications identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed. FED. R. CIV. P. 26(b)(4)(C)(ii). The 2010 Committee Notes confirm that the rule does not itself protect communications between counsel and other expert witnesses, like Cavalli, for whom disclosure is required under Rule 26(a)(2)(C).

At the same time, however, communications between counsel and fact witnesses are covered by the attorney-client privilege. Chevron claims that Cavalli is a fact witness, as he is not offering any expert testimony and he did not prepare any opinions for this case. Cavalli is testifying only as to his recollections of his understanding of certain toxicology issues nearly 40 years ago, not to the truth of the matter asserted. Therefore, he is unlike a typical hybrid witness, *e.g.*, a treating physician, who will opine on the actual causes of an injury in

addition to the facts.

Given Chevron's assertions, the Court finds that Cavalli is more like a fact witness than a non-reporting expert. Thus, his communications with counsel are protected. Nevertheless, because Chevron admitted that it did not initially intend to object to the Special Master's Report and Recommendations, and because Chevron has already produced the materials that Cavalli reviewed and on which his testimony was based, the Court **OVERRULES** the parties' objections and **ADOPTS** the Special Master's recommendation that Defendants produce to Plaintiffs within seven days a list of the documents reviewed by Cavalli in preparation for his deposition. Plaintiffs' request to re-open the deposition to examine Cavalli on the documents he reviewed in preparation for his deposition and to inquire about his communications with counsel is **DENIED**. As noted by Chevron, Cavalli testified that he could not recall any specific documents that refreshed his recollection. Even if the communications were not protected, Plaintiffs waived the opportunity to ask Cavalli about the substance of his discussions with defense counsel during breaks when Plaintiffs did not ask about the nature of those interactions during the deposition.

Finally, the Court agrees with the Special Master and with Chevron that sanctions are not warranted here. The Seventh Circuit has not held that designating a witness as a non-retained expert results in the waiver of privilege, and, as discussed above, district courts (including those within this circuit) have taken differing approaches. Accordingly, Plaintiffs' request for sanctions is **DENIED**.

## II.     Sara McMillen Deposition

The second dispute relates to Plaintiffs' request on September 27, 2022, for additional time to examine Chevron's 30(b)(6) witness, Sara McMillen. Plaintiffs deposed McMillen on

April 27, 2022. After questioning McMillen for 12 hours, Plaintiffs indicated they needed additional time to complete the deposition. Chevron offered 20 minutes of additional time to Plaintiffs, but Plaintiffs rejected the offer.

The Special Master attended the parties' meet and confer on October 3, 2022, where Plaintiffs requested 1.5 hours to examine McMillen on the following topics:

1. Any and all results, protocols, correspondence, and EPA communications relating to the "California" study;

2. All PBPK studies (including study findings, results, and conclusions);

3. All studies relating to redox cycling of PQ in human or animal tissue including study findings, results, and conclusions;

4. Human studies—the nature and number of follow-up physical examinations conducted on workers that were in any human studies;

5. Any microscopic or histopathological examination of the tissues obtained in human poisoning cases; and

6. IBT studies—Chevron's determination, findings, and assessment of the IBT studies of paraquat.

Having attended the deposition, and upon review of the deposition transcript, the Special Master recommends that Plaintiffs' request to further depose McMillen be granted in part and denied in part. Specifically, the Special Master recommends that the Court grant Plaintiffs' request to reopen McMillen's testimony for 45 minutes on topics 1-3 and topic 6. Because Plaintiffs questioned McMillen extensively on topics 4 and 5, she recommends that Plaintiffs' request be denied as to those topics.

### Plaintiffs' Objection

Plaintiffs object to the Special Master's finding that they extensively questioned McMillen on topics 4 and 5, claiming her finding is unsupported by the record. They again request an additional 1.5 hours to complete the deposition.

According to Plaintiffs, McMillen is a former Chevron employee who had no knowledge of or involvement in Chevron's paraquat business. She had no firsthand knowledge of any work Chevron did with respect to paraquat, and she did not review any ICI documents as part of her preparations to testify on behalf of Chevron. Plaintiffs assert that Chevron failed to meet its obligation to fully and appropriately provide McMillen the information known and reasonably available to Chevron related to the topics identified in the deposition notice. Instead, McMillen's preparation was narrow, selective, and intended to obstruct Plaintiffs' access to the information. In addition to being unprepared, Plaintiffs argue that McMillen gave generic, non-responsive answers and that counsel for Chevron made over 300 objections, many of which were speaking objections. Furthermore, Plaintiffs notified Chevron long before the deposition that they would need more than 12 hours of deposition time to cover all topics on behalf of all MDL Plaintiffs, but Chevron offered a mere 20 additional minutes. When the 12 hours was up, the Special Master stated that if the witness was willing to continue, they could go forward. But instead, Chevron ended the deposition over Plaintiffs' objections.

With regard to the Report and Recommendations, Plaintiffs argue that the Special Master did not address the effect that the nature and volume of Chevron's objections had on their ability to depose McMillen, that she inaccurately found Plaintiffs adequately questioned McMillen on Topics 4 and 5 when McMillen could not answer their questions, and that she inaccurately found that Plaintiffs ended the deposition over her instruction.

*Chevron's Objection and Response*[2]

Chevron objects to the Special Master's recommendation to grant Plaintiffs' request to depose McMillen a second time on topics 1-3 and 6. Chevron claims the Special Master granted Plaintiffs' request without any reasoning, even though a court must consider Rule 26(b)(1) and (b)(2) when determining whether a party should be given additional deposition time. Plaintiffs not only had ample opportunity to obtain the information they now seek in the first deposition, but, Chevron argues, they wasted considerable time asking questions on topics outside of the agreed upon scope, questions the witness did not understand, questions that unreasonably asked for specific details about particular studies that no witness could hope to memorize, and questions that improperly asked for the witness to make legal conclusions. Chevron also asserts its objections were not improper, and Plaintiffs' claims of unpreparedness are unfounded considering McMillen reviewed 1,139 documents totaling 20,546 pages over 350 to 400 hours in preparation for her deposition.

Other factors suggesting the Court should deny Plaintiffs' request to re-depose McMillen, Chevron argues, include that Plaintiffs declined Chevron's offer of additional time while counsel and the witness were present, Plaintiffs waited five months after the deposition to file their motion to compel, and Plaintiffs have failed to show good cause for reopening the deposition.

*Analysis*

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The Court must allow additional time consistent with Rule 26(b)(2) if needed to

---

[2] The Court has combined the arguments made in Chevron's objection and its response to Plaintiffs' objection as they are largely the same.

fairly examine the deponent . . . ." FED. R. CIV. P. 30(d)(1). Under Rule 26(b)(1), discovery must be "proportional to the needs of the case," which, in turn, includes considering "whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(2) provides that a court may limit discovery if: "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ." *CW v. Textron, Inc.*, No. 3:10-CV-87 PPS, 2012 WL 13042499, at *1 (N.D. Ind. July 19, 2012) (quoting FED. R. CIV. P. 26(b)(2)(C)). A party seeking a court order to extend a deposition must show good cause to justify such an order. FED. R. CIV. P. 30(d), Committee Notes on Rules—2000 Amendment.

As an initial matter, the parties disagree on the Court's standard of review. Chevron argues for an abuse of discretion standard, noting that Rule 53(f) provides for abuse of discretion review on procedural matters—*i.e.*, matters that would ordinarily be left to the court's discretion. Because Plaintiffs' objection amounts to a disagreement on a procedural issue (the amount of additional time Plaintiffs should get), the Court should review the Special Master's report only for an abuse of discretion. *See* FED. R. CIV. P. 53(f)(5) ("the court may set aside a master's ruling on a procedural matter only for an abuse of discretion"). Plaintiffs argue for *de novo* review, claiming they are not merely objecting to the amount of additional time allowed by the Special Master in her Report and Recommendations. Rather, Plaintiffs are objecting to the Special Master's factual finding that "Plaintiffs questioned Ms. McMillen extensively on Topics 4 and 5."

After reviewing the Special Master's factual findings *de novo*, the Court agrees with

the Special Master and finds that McMillen's deposition transcript refutes Plaintiffs' arguments about their ability to question her on Topics 4 and 5.

Plaintiffs first claim McMillen was unprepared to answer questions under Topic 4 regarding follow-up physical examinations conducted on workers involved in human studies. Plaintiffs repeatedly questioned McMillen about what, if any, physical examinations were performed on workers who participated in studies completed in the 1960s. McMillen responded that the study said "a thorough physical exam" was performed, but that there were no details on what that exam included. (Doc. 2621-2 at p. 237). The workers also had medical exams, urine samples, and x-rays taken. (*Id.* at pp. 235-36). When asked, related to a 1981 study, whether another worker had a follow-up examination, McMillen explained that she did not recall seeing anything in the documents that said there was a follow-up study done. Plaintiffs' counsel asked, "So [on] behalf of Chevron and as their representative, no follow-up examinations were done on the 27 workers in the Howard 1981 study; correct?" McMillen responded: "Not to my knowledge." (*Id.* at p. 250). Plaintiffs' counsel asked the same question about follow-up examinations done on other workers; McMillen again said she did not recall seeing anything in the published version of the document regarding follow-up examinations. (*Id.* at p. 252). McMillen also said that more details might be included in drafts of the paper, but that she did not have the drafts with her. (*Id.* at p. 254). After counsel argued about whether McMillen should have memorized all of the documents in the file, Plaintiffs' counsel acknowledged that he had the drafts and that "[t]here's nothing in the drafts." (*Id.* at p. 255). Rather than show the drafts to McMillen so she could testify as to their contents, as requested by Chevron's counsel, Plaintiffs' counsel decided to move on. (*Id.* at p. 256). McMillen clearly answered the questions that were asked to the best of her ability.

With regard to Topic 5, Plaintiffs acknowledge they questioned McMillen about human autopsies but claim they were prevented from obtaining substantive responses due to the lack of time available for questioning. Given adequate time, Plaintiffs assert they would have questioned McMillen regarding microscopic or histopathologic examinations, two very specific types of testing that could have been conducted by Chevron on these tissues. Plaintiffs have cited to no specific pages of the deposition where they were prevented from obtaining substantive answers due to the lack of time. A keyword search shows Plaintiffs asked at least 13 questions regarding human autopsies during the deposition. If counsel wanted to ask about microscopic or histopathologic examinations, they should have managed their time and questioning appropriately. *See, e.g.*, *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 532 (N.D. Ill. 2005) ("In every deposition, choices have to be made about the subject matter to be covered. The 7-hour rule necessitates, especially in complex cases, that almost all depositions will be under-inclusive. The examiner therefore, must be selective and carefully decide how to apportion her time."); *Am. Hardware Mfrs. Ass'n. v. Reed Elsevier, Inc.*, No. 03C9421, 2007 WL 4557820, at *2 (N.D. Ill. Dec. 21, 2007) ("The rules do not allow for endless depositions and in every deposition, the parties must make choices about the subject matter to be covered.").

Based on its review of the transcript, the Court finds that the Special Master did not err when she determined that Plaintiffs adequately questioned McMillen on Topics 4 and 5.

The Court also finds that the Special Master did not abuse her discretion in recommending that the Court grant Plaintiffs an additional 45 minutes to question McMillen on Topics 1-3 and 6. As argued by Plaintiffs, Chevron objected more than 300 times, which inevitably led to some delay. The Special Master also suggested that the deposition continue

past the 12-hour mark while counsel and the witness were all together, but Chevron rejected that proposal. The parties agreed to bring the matter before the undersigned, and the undersigned finds no abuse of discretion.

For these reasons, the Court **OVERRULES** the parties' objections and **ADOPTS** the Special Master's recommendation that Plaintiffs be granted an additional 45 minutes to depose Sara McMillen on Topics 1-3 and 6.

## CONCLUSION

For these reasons, the objections filed by the MDL Plaintiffs and Defendant Chevron are **OVERRULED**. The Court **ADOPTS** the Special Master's Report and Recommendations (Doc. 2531) in its entirety.

**IT IS SO ORDERED.**

DATED:   December 15, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**