IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004 |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Defendants' Supplemental Motion to Dismiss public nuisance claims (at times referred to as the "Supplemental Motion"). (Doc. 3543). As explained more fully below, the Supplemental Motion requires this Court to carefully balance the goal of judicial economy in a multidistrict litigation with the requirement that each member case retain its separate identity. For the reasons stated below, Defendants' Supplemental Motion is **granted in part** and **denied in part**.

### INTRODUCTION

A. Defendants' Supplemental Motion and Plaintiffs' Individualized Responses

On February 14, 2022, this Court dismissed several claims that were based on public nuisance theories of liability without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter "February 2022 Order"). (Doc. 954); (Doc. 1161). The February 2022 Order covered public nuisance claims in 316 individual member cases that were pending at the time. (Doc. 1157); (Doc. 1161). Since then, the number of cases in this MDL has grown exponentially. Notably for purposes of this Order, several hundreds of

cases filed *after* the February 2022 Order have asserted claims for relief based on public nuisance, notwithstanding the Court's prior dismissal of similar claims based on the same legal theory. (Doc. 351-1 at 32—36); (Doc. 1161).

On February 14, 2023, Defendants filed the Supplemental Motion seeking the dismissal of all public nuisance claims that had been filed since the February 2022 Order, as well as "all public nuisance claims filed in the future for the same reasons articulated in the [February 2022 Order]." (Doc. 3543). Plaintiffs filed a Response[1] to the Supplemental Motion on March 29, 2023 (Doc. 3908) and Defendants replied on April 5, 2023 (Doc. 3979).

The Supplemental Motion broadly seeks the dismissal of all public nuisance claims in 726 member cases as well as all public nuisance claims that will be filed in the future. In light of the scope of Defendants' Supplemental Motion to Dismiss, the Court ordered Defendants to submit a supplemental appendix to the Supplemental Motion that identified the state law that applies in each case they asked the Court to dismiss (the "April 5th Order"). (Doc. 3984). The April 5th Order also gave Plaintiffs an opportunity to "file specific objections to the dismissal of the public nuisance claim(s) in any given case, specifically stating how that plaintiff has alleged interference with a public right." *Id*. Perhaps not surprisingly, the April 5th Order prompted Plaintiffs in 163 member cases to file individualized responses to Defendants' Supplemental Motion.

---

[1] Plaintiffs' Response was titled a "Motion to Strike Defendants' Supplemental Motion to Dismiss Public Nuisance Claims or, in the alternative, Plaintiffs' Response to Defendants' Supplemental Motion to Dismiss Public Nuisance Claims." (Doc. 3908). The Court denied Plaintiffs' request to strike Defendants' Supplemental Motion to Dismiss on April 5, 2023. (Doc. 3984).

These submissions present a substantial case management challenge.

> B.  <u>Balancing Judicial Economy and the Individuality of each Member Case</u>

The individualized resolution of 163 responses to Defendants' Supplemental Motion would require a case-by-case assessment of the sufficiency of the pleadings in each member case. The Court declines to engage in this type of case specific review because such an approach would be inconsistent with the purpose and objectives of multidistrict litigation. *See In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, 892 F.3d 624, 648 (4th Cir. 2018) (faced with a dispositive motion, an MDL court must "consider whether the issues presented are well suited for the transferee court to deal with in a collective fashion"); *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1231 (9th Cir. 2006) ("multidistrict litigation assumes . . . macro-, rather than micro-, judicial management because otherwise, it would be an impossible task for a single district judge to accomplish"). However, the Court is also cognizant of its duty to respect each member case's individuality. *See Gelboim v. Bank of America Corp.*, 574 U.S. 405, 413 & n.3 (2015) (cases consolidated for MDL pretrial proceedings "retain their separate identities" unless the parties elect to merge separate actions). This individuality requirement in an MDL ensures that each litigant's rights are respected while their cases are consolidated for pretrial proceedings under 28 U.S.C. § 1407. *Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55, 65 (3d Cir. 2023); *Looper v. Cook Incorporated*, 20 F.4th 387, 397 (7th Cir. 2021). Accordingly, "each lawsuit consolidated within the MDL must independently state a claim," *In re Interest Rate Swaps Antitrust Litigation*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018), and when a Rule 12(b)(6)

motion seeks the dismissal of multiple individual cases or claims, the Court must review the sufficiency of the pleadings on a case-by-case basis. *In re National Prescription Opiate Litigation*, 956 F.3d 838, 845 (6th Cir. 2020).

As presented, Defendants' Supplemental Motion and Plaintiffs' 163 individualized responses place the goals of efficiency and individuality in conflict with one another. An omnibus dismissal of all pending and future public nuisance claims, while promoting judicial economy, would likely infringe on each member case's individuality. Conversely, if the Court were to issue 163 separate orders on the sufficiency of each public nuisance claim for which Plaintiffs filed an individualized response, the Court would effectively convert each such member case into a stand-alone action for purposes of Defendants' Supplemental Motion, thereby thwarting the efficiency benefits of MDL consolidation. *In re Nuvaring Products Liability Litigation*, No. 4:08MD1964 RWS, 2009 WL 4825170, at *2 (E.D. Mo. Dec. 11, 2009); *In re Phenylpropanolamine Products Liability Litigation*, No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004).

### C. Trial Selection Plaintiff Keith Fuller's Response to the Supplemental Motion

One of the Plaintiffs who submitted an individualized response to the Supplemental Motion is Keith Fuller.[2] (Fuller Dkt. No. 40).[3] Mr. Fuller is one of four remaining trial selection plaintiffs in this MDL,[4] and his public nuisance claims were

---

[2] Although Mr. Fuller's amended complaint names him and his wife, Diane, as plaintiffs, only Mr. Fuller asserts a claim for public nuisance. Accordingly, for purposes of this Order, the Court will refer only to Mr. Fuller as the Plaintiff unless the context clearly states otherwise.
[3] References to "Fuller Dkt. No." refer to the docket and filings in that member case, *Fuller v. Syngenta Crop Protection, LLC et al.*, 3:21-pq-00836-NJR.
[4] On April 13, 2022, the Court selected six cases for further discovery. (Doc. 1317). Plaintiffs voluntarily dismissed two of those cases (*Walkington et al v. Syngenta AG et al.*, 3:21-pq-00601-NJR; and *Marx v. Syngenta*

dismissed in the February 2022 Order. Notwithstanding the prior dismissal of his public

nuisance claims, Mr. Fuller and his wife, Diane Fuller, filed an amended complaint on

July 20, 2022, which, in Count IV, asserts a claim for relief based on public nuisance.

(Fuller Dkt. No. 26).

As a trial selection plaintiff, Mr. Fuller's case is expected to be representative of the

larger plaintiff pool so that it, along with the other trial selection cases, may guide the

resolution of other cases in this MDL.[5] *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019

(5th Cir. 1997) ("A bellwether trial designed to achieve its value ascertainment function

for settlement purposes or to answer troubling causation or liability issues common to

the universe of claimants has as a core element representativeness"); *In re Society Insurance

Co. Covid-19 Business Interruption Protection Insurance Litigation*, No. 20 C 5965, 2021 WL

3290962, at *4 (N.D. Ill. Aug. 1, 2021) ("Bellwether cases are intended to be representative

of their peers . . . serving as the common springboard from which Court decisions on

substance (like the dismissal motions and early summary judgment motions), procedure,

and discovery can then apply to like cases and claims"). Mr. Fuller's case therefore

occupies an important role in this MDL because the facts underlying his claims, the legal

theories supporting them, and the Court's assessment thereof, inform the parties of the

strengths and weaknesses of pending claims in the broader plaintiff pool. *See In re E. I. du

Pont de Nemours and Company C-8 Personal Injury Litigation*, 54 F.4th 912, 919 n.3 (6th Cir.

2022) (bellwether trials "serve the twin goals of being informative indicators of future

---

*Crop Protection LLC et al.*, 3:21-pq-00922-NJR). On May 10, 2023, the Court entered judgment dismissing *Walkington* and *Marx* with prejudice. (*Walkington* Dkt. No. 25, and *Marx* Dkt. No. 14).
[5] Trial selection cases are commonly referred to as "bellwether cases."

trends and catalysts for an ultimate resolution") (internal quotation marks and citation omitted).

With these considerations in mind, the Court is reluctant, at this time, to issue an omnibus order dismissing all public nuisance claims in 726 individual member cases. However, to accommodate the competing interests of economy and individuality, the Court issues this Order as a supplement[6] to the February 2022 Order by addressing the merits of Mr. Fuller's public nuisance claim in his Amended Complaint.[7] The Court will defer ruling on the viability of the remaining public nuisance claims for now and will address their fair and efficient disposition in consultation with the parties as soon as practicable. *See Gelboim*, 574 U.S. at 415-16 ("if the MDL court believes that further proceedings might be relevant to a claim a defendant moves to dismiss, the court ordinarily can defer ruling on the motion"); *In re Korean Airlines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) (to enhance efficiency, an MDL court may "hold some cases in abeyance while proceeding with others").

Thus, for the following reasons, Defendants' Supplemental Motion to Dismiss is **GRANTED** insofar as it relates to Count IV of Mr. Fuller's First Amended Complaint. The Court defers ruling on Defendants' Supplemental Motion as it pertains to all

---

[6] *See* Fed. R. Civ. P. 54(b) (unless otherwise ordered by the court, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *Garcia v. Hebert*, No. 3:08CV95 (DFM), 2014 WL 1316096 (D. Conn. Mar. 28, 2014) (issuing ruling to supplement prior order dismissing plaintiff's conspiracy claim because prior order omitted analysis of potential theory of liability and concluding that claim was nevertheless properly dismissed).

[7] This Order does not alter the February 2022 Order. The public nuisance claims that were dismissed in the February 2022 Order remain dismissed unless explicitly stated otherwise.

remaining public nuisance claims.

## BACKGROUND

Keith Fuller and his wife, Diane Fuller, filed their First Amended Complaint on July 20, 2022 (the "Amended Complaint"). (Fuller Dkt. No. 26). Mr. Fuller owns and operates Fuller Fertilizer, and from 1977 to 2017, he used paraquat every year in connection with his work, which allegedly caused him to sustain significant personal injuries. *Id*. at ¶¶ 1, 118. The Amended Complaint asserts the following causes of action arising out of Defendants' "design, development, manufacture, testing, packaging, promoting, marketing, advertising, distribution, and sale" of paraquat: (i) negligence; (ii) strict products liability – design defect; (iii) strict products liability – failure to warn; (iv) public nuisance; (v) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (vi) breach of the implied warranty of merchantability; and (vii) loss of consortium. *Id*. at ¶¶ 1, 123–207.

A. Factual Allegations

Paraquat is used to kill broadleaf weeds and grass before planting or growing fruits, vegetables, or plantation crops. *Id*. at ¶ 38. To that end, paraquat is commonly sprayed multiple times per year via sprayers, aircraft (crop dusters), or vehicles, to control weeds in orchards or on farms yielding various crops. *Id*. at ¶¶ 39, 42. Paraquat is generally sold as a liquid concentrate and is then diluted with water before being sprayed on target weeds. *Id*. at ¶ 40. Each year, paraquat is applied to approximately 15 million acres of agricultural crops, including corn, soybeans, and fruits and vegetables. *Id*. at ¶ 43. The Amended Complaint asserts that, at all relevant times, it was reasonably

foreseeable that applicators of paraquat and others nearby would be exposed to it when it was used as intended. *Id.* at ¶ 44. This exposure occurs through direct contact with an individual's skin, inhalation, or ingestion. *Id.* at ¶ 45.

Paraquat is a "restricted use" pesticide under 40 C.F.R. § 152.175, meaning that it is "limited to use by or under the direct supervision of a certified applicator." *Id.* at ¶ 75. Mr. Fuller maintained an applicator's license for paraquat from 1977 until 2017. *Id.* at ¶ 118. He was allegedly exposed to paraquat through direct contact with his skin and contamination of his drinking water. *Id.* at ¶¶ 114, 119. Mr. Fuller also lived close to certain fields where paraquat was sprayed, which caused him to be exposed through "drift." *Id.* at ¶ 120. Throughout the time of his exposure from 1977 to 2017, Mr. Fuller did not know that paraquat could be harmful to him or others. *Id.* at ¶¶ 117, 121.

In 2020, Mr. Fuller was diagnosed with Parkinson's disease. *Id.* at ¶ 115. Mr. Fuller also allegedly sustained mental and emotional anguish, medical expenses, and significant economic and non-economic damages due to Defendants' acts and omissions. *Id.* at ¶¶ 112-13.

B. Allegations specific to Mr. Fuller's Public Nuisance Claim

Defendants manufactured paraquat for distribution and sale in Illinois. *Id.* at ¶ 178. Mr. Fuller, who is a citizen of Illinois, asserts that he and others had a right to a "healthful environment" while living and working in Illinois. *Id.* at ¶¶ 2, 180. Defendants knew or reasonably should have known that paraquat was likely to be inhaled, ingested, or otherwise absorbed into the bodies of people who used it or were near it. *Id.* at ¶ 182. Moreover, Defendants knew or reasonably should have known that, when inhaled,

ingested, or absorbed into the human body, paraquat could cause latent neurological injuries, including Parkinson's disease. *Id*. Therefore, in designing, manufacturing, and distributing paraquat in Illinois, Defendants created a condition that was harmful to Mr. Fuller's health, as well as the health of the general public. *Id*. at ¶ 183.

All people who lived or worked near fields where paraquat was sprayed were and continue to be "affected." *Id*. at ¶ 185. This "interference," the Amended Complaint alleges, "involved a significant interference with public health, public safety, or public welfare." *Id*. at ¶ 187. Moreover, as a direct and proximate result of Defendants' conduct, Mr. Fuller developed Parkinson's disease and suffered further substantial physical and mental injuries. *Id*. at ¶ 189.

### LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to evaluate the adequacy of a complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, a plaintiff need only allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). The Seventh Circuit has interpreted *Twombly* and *Iqbal* to "require . . . 'some specific facts' to support the legal claims asserted in the complaint." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). "While the required level of specificity 'is not easily quantified,' a plaintiff must allege 'enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (citation omitted). Fundamentally, "the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 586-87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

## DISCUSSION

A.  Documents attached to Mr. Fuller's Response to the Supplemental Motion

As a threshold matter, the Court notes that Mr. Fuller's response brief to the Supplemental Motion attaches three exhibits: a court order from the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County (Exhibit 1), and excerpts from two depositions taken in this case (Exhibits 2 and 3). None of these exhibits are mentioned in the Amended Complaint, and the Court generally may not consider material beyond the four corners of the complaint without converting a motion to dismiss into one for summary judgment. *Berthold Types Ltd. v. Adobe Systems Inc.*, 242 F.3d 772, 775 (7th Cir. 2001); *see also* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). Indeed, if the Court were to consider Mr. Fuller's extraneous exhibits offered in support of his response to the Supplemental Motion, it would trigger "multiple procedural consequences," *Berthold*,

242 F.3d at 775, including the requirement that all parties "be given a reasonable opportunity to present all the material that is pertinent" to a motion for summary judgment. FED. R. CIV. P. 12(d). This MDL recently advanced past the deadline for summary judgment and *Daubert* filings. Accordingly, the Court is disinclined to trigger the various procedural consequences of a summary judgment motion on the narrow issue that this Order addresses. As such, the Court declines to consider the exhibits attached to Mr. Fuller's response brief and will adhere to the boundaries of Rule 12(d).[8]

B.   Choice of Law

When federal jurisdiction is predicated on diversity of citizenship, as it is in Mr. Fuller's case, "state law applies to substantive issues." *Fednav Intern. Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). Here, the parties and the Court agree that Illinois law governs Mr. Fuller's public nuisance claim. (Doc. 4301-1); (Fuller Dkt. No. 40). As such, the Court's assessment of the viability of this claim is bound by the decisions of the Illinois Supreme Court. *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). "To the extent that the Illinois Supreme Court has not yet spoken to any of the issues before the Court, the Court shall apply the law is it would predict the Illinois Supreme Court would if deciding the case." *In re Syngenta Mass Tort Actions*, 272 F. Supp.

---

[8] Exhibit 1 reflects a court order from the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County, and therefore may be susceptible to judicial notice. "It is undisputed that the court may take judicial notice of prior court rulings without converting [the defendant's] motion to dismiss into a motion for summary judgment." *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 12 C 3229, 2013 WL 361810, at *2 (N.D. Ill. Jan 30, 2013); *see also Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) (recognizing that proceedings in other courts, state and federal, may be judicially noticed). Ultimately, the Court does not need to decide Exhibit 1's susceptibility to judicial notice because Mr. Fuller cited the decision in his response brief, and the Court will consider it as it would any other cited authority in support of a party's argument.

3d 1074, 1983 (S.D. Ill. 2017).

    C.  <u>Analysis</u>

It is well settled that when a private individual (as opposed to a governmental entity) asserts a claim for public nuisance in Illinois, the plaintiff "may recover damages . . . only if he or she has suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference." *Young v. Bryco Arms*, 821 N.E.2d 1078, 1083 (Ill. 2004) (internal quotation marks and citation omitted); *accord Joseph v. Wieland Dairy Co.*, 131 N.E. 94, 96 (Ill. 1921); *David M. Swain & Son v. Chicago, B. & Q.R. Co.*, 97 N.E. 247, 248 (Ill. 1911). "The harm must be of a different type, not merely a difference in severity or imposing a disproportionate share of the burden on [the] plaintiff[]." *In re StarLink Corn Products Liability Litigation*, 212 F. Supp. 2d 828, 848 (N.D. Ill. 2002) (applying Illinois law). This rule is commonly referred to as the "special injury" standing requirement. *Young*, 821 N.E.2d at 1083. Mr. Fuller claims that he satisfies this requirement because, in addition to sustaining personal injuries from his exposure to paraquat, he and other community farmers were injured because they depend on farming for their livelihood. (Fuller Dkt. No. 40). The Court disagrees.

The Illinois Supreme Court succinctly explained the special injury requirement's logic in *David M. Swain & Son v. Chicago, B. & Q.R. Co.* as follows:

> If a trench be dug across a public street, every person in the community who has occasion to use the street will be delayed and inconvenienced. The loss of time in going around such obstruction would be common to all who used such highway. One person might be delayed only a few seconds, while another, traveling by a different mode of conveyance, might be delayed

> much longer, and the nature of the business being done might be such that
> in one case the damage would be nominal while in another it might be
> considerable, but in all these cases the damages would differ only in degree,
> and not in kind; but if another person, in attempting to use the highway in
> the exercise of reasonable care, falls into the trench and receives a personal
> injury, or if his horse should fall into the ditch and receive an injury, clearly
> an action would lie for the special damage to his person or his property.
> 97 N.E. at 248–49.

The court went on to explain that "in the case where the injury was loss of time, business engagements, and the like, there is merely an injury to the public right to use the street, while in the second case the injury to the person and property is a direct trespass upon the individual and invades his personal and individual rights." *Id*. This analogy demonstrates that Illinois requires a private plaintiff asserting a claim for public nuisance to be distinctively injured by the nuisance compared to the injury sustained by the general public.

The Amended Complaint is entirely devoid of factual allegations suggesting the type of special injury necessary to confer standing. Mr. Fuller alleges that Defendants created a nuisance by designing and manufacturing paraquat in a manner that made it likely to be inhaled, ingested, and absorbed into people's bodies. As such, "[a]ll persons living or working near fields or orchards sprayed with . . . [p]araquat . . . were and are affected." This condition, Mr. Fuller claims, constituted an interference with the public's right to a healthful environment[9] and caused Mr. Fuller to develop Parkinson's disease.

---

[9] This Order does not decide whether the right to a "healthful environment," as Mr. Fuller has articulated it, is a recognized public right for purposes of a public nuisance claim. The Illinois Supreme Court has instructed courts applying Illinois law to closely scrutinize the asserted public right in a public nuisance action. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004) ("We are . . . reluctant to recognize a public right so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it"). To that end, the Court is skeptical of

Although the Court appreciates and does not minimize the debilitating consequences of Parkinson's disease, the fact that Mr. Fuller fell ill to Parkinson's constitutes an injury to him that is, at best, different in severity or degree, not different in kind, compared to the injury allegedly sustained by the general public. *In re StarLink*, 212 F. Supp. 2d at 848. The Amended Complaint appears to allege that paraquat polluted the environment in the vicinity where it had been sprayed, and that this condition adversely affected public health and safety by causing people in those vicinities to ingest, inhale, or absorb paraquat into their bodies. To the extent that others were injured by this alleged nuisance, such an injury would only be different in severity, if at all, compared to Mr. Fuller's injury. Stated differently, Mr. Fuller claims he fell ill to Parkinson's disease as a result of his exposure to paraquat, whereas other members of the public may have sustained less (or potentially even more) severe physical injuries from their own exposure to paraquat. Either way, the injuries to Mr. Fuller's and other people's health vary only in degree, not in kind. *David M. Swain & Son*, 97 N.E. at 249.

Mr. Fuller also offers an alternative theory for the first time in his response brief, to argue that he satisfies the special injury requirement. He claims that he, and other community farmers like him, "have a right to a healthful environment because they depend on farming for their livelihood." (Fuller Dkt. No. 40). In support of this proposition, Mr. Fuller cites *In re StarLink*, 212 F. Supp. 2d 828, to support his claimed

---

whether Mr. Fuller's asserted right to a "healthful environment" qualifies as a recognized public right. *See City of Chicago v. American Cynamid Co.*, 823 N.E.2d 126, 133 (Ill. Ct. App. 2005) (declining to decide whether plaintiffs properly alleged the existence of a public right where they claimed that the presence of lead-based paint throughout the City of Chicago constituted a public nuisance).

special injury based on the effect of the alleged nuisance on his "livelihood." Upon closer examination, however, *StarLink* supports the special injury requirement as the Court has explained it, and therefore, hurts more than it helps Mr. Fuller's position. In *StarLink*, several corn farmers sued the manufacturer of a genetically engineered corn seed for causing a nationwide contamination of the U.S. corn supply. *Id.* at 835. The farmer plaintiffs accused the seed manufacturer and other defendants of failing to comply with EPA requirements to segregate the modified corn seed from corn designated for human consumption, and to ensure that the modified corn seed was only used for its specially designated purposes. *Id.* at 834-35. The plaintiffs alleged that their U.S. and international corn sales were negatively affected by the contamination, causing them to sustain significant losses to their business. *Id.* at 835, 848. The Northern District of Illinois explained that the special injury requirement "restricts the types of harm that are compensable" and held that the plaintiffs had properly alleged a special injury because they, unlike the general public, "depend[ed] on the integrity of the corn supply for their livelihood." *Id.* at 848.

Turning to Mr. Fuller's attempt to analogize *StarLink*, it is clear that he has failed to allege a compensable injury. He claims that by virtue of his occupation as a community farmer, he stands in the same position as the *StarLink* plaintiffs. But *StarLink* did not hold that the plaintiffs suffered a special injury simply because they were corn farmers; it arrived at that conclusion because the contamination of the corn supply allegedly decimated their business. *Id.* Nowhere in the Amended Complaint does Mr. Fuller claim that paraquat negatively affected his business. Quite the opposite. Mr. Fuller relied on

paraquat to do his job, and although he alleges that it caused him severe *personal* injuries, he has not alleged any damages similar to those suffered by the *StarLink* plaintiffs. Accordingly, *StarLink* is of no help to Mr. Fuller's public nuisance claim.

Finally, Mr. Fuller cites a decision from the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County, in *Scharlau v. Syngenta Crop Protection LLC, et al.*, No. 21L32 (Ill. Cir. Ct. Vermilion Cnty. July 22, 2022), to argue that his public nuisance claim survives the Supplemental Motion. *Scharlau* supposedly denied a motion to dismiss the plaintiff's public nuisance claim, under similar factual circumstances as presented here. Unfortunately, the Court is unable to verify the basis of this decision because the *Scharlau* court offered no legal or factual analysis to support its conclusion. *See Hagerty, Lockenvitz, Ginzkey and Associates v. Ginzkey*, 406 N.E.2d 1145, 1146 (Ill. App. Ct. 1980) ("The trial court's order, while declaring a result, provides no legal analysis for the conclusion which is drawn. This is unfortunate, since we are therefore forced to speculate as to the basis for the decision"). In a single sentence, after discussing the applicable legal standard, and without reference to the specific public nuisance claims that were asserted, the court in *Scharlau* stated in relevant part that "Plaintiff has plead [sic] sufficient facts to bring each of the identified causes of action in his complaint, especially when joined with all reasonable inferences he is entitled to under the circumstances." *Scharlau*, No. 221L32. In light of the authorities discussed in this Order and the paucity of legal analysis presented in *Scharlau*, the Court declines to adopt the Fifth Judicial Circuit Court's conclusion. Accordingly, Mr. Fuller's Amended Complaint fails to allege the type of special injury that would confer standing to bring a public nuisance claim under Illinois law.

D.  <u>Next Steps</u>

This Order dismisses Count IV of Mr. Fuller's Amended Complaint. As the February 2022 Order and this Order hopefully make clear, the Court is skeptical of the viability of claims in this MDL that are based on a theory of public nuisance. As explained in the beginning of this Order, however, the Court's skepticism does not warrant the further dismissal of hundreds of pending and even future public nuisance claims at this time without a case specific assessment of each such claim.

Presently, there are four trial selection cases in this MDL that are scheduled for trial in October of this year, including Mr. Fuller's case.[10] Three of the four trial selection plaintiffs have asserted at least one cause of action based on public nuisance. Thus, within one week of the issuance of this Order, Plaintiffs' Leadership shall report to the Court whether the remaining trial selection plaintiffs wish to continue prosecuting their pending public nuisance claims. If they desire to do so, the Court will set a briefing schedule by which Defendants will have an opportunity to submit an opening motion to dismiss the remaining public nuisance claims brought by the trial selection plaintiffs. Plaintiffs will then have an opportunity to respond in the ordinary course.

Conclusion

For the reasons stated above, Defendants' Supplemental Motion to Dismiss (Doc. 3543) is **GRANTED in part and DENIED in part**. Count IV of the Amended Complaint in *Fuller v. Syngenta Crop Protection, LLC, et al.*, Case No. 3:21-pq-836-NJR is

---

[10] The other three trial selection cases are *Richter v. Syngenta Crop Protection, LLC, et al.*, No. 3:21-pq-00571-NJR; *Burgener v. Syngenta Crop Protection, LLC, et al.*, No. 3:21-pq-1218-NJR; and *Coward v. Syngenta Crop Protection, LLC, et al.*, 3:21-pq-1560-NJR.

**DISMISSED**. Defendants' Supplemental Motion to Dismiss is **DENIED without prejudice** as to all remaining public nuisance claims, pending further consultation among the parties and the Court.

> **IT IS SO ORDERED.**

> **DATED:  June 12, 2023**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**