IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004 |

### PLAINTIFFS' MOTION TO MODIFY IN PART AND STAY IN PART CMO 18

On May 15, 2023, this Court issued Case Management Order No. 18 ("CMO 18"). CMO 18 contains two parts – one part relating to deceased plaintiffs, which was an issue raised in a defense motion and was fully briefed, and a second part relating to "claims based on implausible theories of proof," which was not raised or briefed by the parties. (Doc. 4242). Plaintiffs seek to modify that part of the Order relating to "implausible theories of proof."

Following the Court's entry of CMO 18, defense counsel requested a meet and confer with Plaintiffs' leadership. During and following the meet and confer, it has become clear that Defendants' interpretation of Section B of CMO 18 is for Plaintiffs' Co-Lead Counsel to participate in identification of individual cases, based upon the information contained in an individual plaintiff's Plaintiff Assessment Questionnaire ("PAQ") as of the date of CMO 18 (**regardless of whether a deficiency has been issued**), for voluntary dismissal based upon examples of deficiencies set out in CMO 18 footnote 4.

Case Management Order No. 10 ("CMO 10") provides a framework for Defendants to challenge overdue and/or "materially deficient" PAQs. CMO 10 expressly provides a mechanism for Defendants to identify and give notice of "material deficiencies" in individual PAQs, for individual plaintiff's counsel to respond, for Defendants to request dismissal and seek review by the Special Master, for individual counsel to respond, for the Special Master to recommend

Page 1 of 7

dismissal to the Court, and for the Court to issue a show cause order and/or for the Court to dismiss the complaint without prejudice. (Doc. 469, pp. 4-5).  CMO 10 explicitly provides: "Plaintiffs' Lead Counsel and the members of the Plaintiffs' Executive Committee have no obligation to notify counsel for Plaintiffs whom they do not represent of Defendants' notices of overdue or deficient discovery or to respond to any motion practice pertaining thereto." (Doc. 469, p. 5).

As the Court recently noted in its Memorandum and Order entered on June 12, 2023, the Court must "carefully balance the goal of judicial economy in a multidistrict litigation with the requirement that each member case retain its separate identity" and individuality (Doc. 4386, pp. 1, 3). "This individuality requirement in an MDL ensures that each litigant's rights are respected while their cases are consolidated for pretrial proceedings under 28 U.S.C. § 1407." (*Id*. at p. 3). Recognizing this balance between efficiency and individuality, Plaintiffs Leadership Counsel remain committed to compile, transmit, and otherwise facilitate information among and between individual counsel, defense counsel, and the Court and, in that vein, asked Defendants for a list of plaintiffs and law firms that they believe fall within Section B of CMO 18.  Before providing a full list, Defendants asked Plaintiffs' Co-Lead Counsel to agree to artificial definitions and criteria for cases to move forward, in effect trying to turn CMO 18 into a vending machine for dismissal.

Plaintiffs' Co-Lead Counsel seek to modify CMO 18 such that the CMO 10 process be exhausted and Defendants not be allowed an end-around the deficiency process. There is a procedure in place to raise deficiencies with individual plaintiff's counsel, for counsel to have an opportunity to cure the deficiencies, for the matter to be raised with the Special Master, and for the Special Master to make a recommendation to the Court.  This process maintains the individuality of each member case while achieving the goal of judicial economy.[1]   In fact, this

---

[1] Defense counsel economy should not be confused with judicial economy.

process has been used for overdue PAQs and has resulted in PAQs being submitted or cases being voluntarily dismissed. As far as Plaintiffs' Co-Lead Counsel are aware, Defendants have not requested review and dismissal for **any** materially deficient PAQs.

The procedure set forth in CMO 10 is well-suited to handle the specific examples cited in CMO 18 footnote 4. (*See* Doc. 4242 at p. 4 n.4). For example, where "a plaintiff states that they have no information concerning their exposure to paraquat (as opposed to a different product)," that issue can be identified by Defendants as a material deficiency and individual plaintiffs, through counsel, should have an opportunity to be notified of the deficiency and cure the PAQ. This would also apply to the second scenario identified by the Court – specifically, review of the medical records requested and obtained by the individual plaintiff, as well as Defendants through the PAQ process, in order to resolve any deficiency regarding "medical evidence to support a diagnosis of Parkinson's disease."

Likewise, the third scenario should proceed through the deficiency process to clarify the plaintiff's assertions in the PAQ regarding the form in which paraquat was used. With respect to this third scenario, Defendants should be required to come forward with some evidence that the plaintiffs' allegations are implausible as they relate to Defendants' product(s). Importantly, there currently exists **nothing** in the record to show in what form paraquat has been available in the United States (or worldwide) over the past 60-plus years.[2] Beyond the formulation example noted by the Court in CMO 18, Defendants, in an email exchange as part of the meet and confer, seek to

---

[2] Notably, other formulations, including solid granules, were available in other markets but, because introduction of alternative formulations on a global basis would destroy Syngenta's profit from paraquat, Syngenta decided to offer such alternative formulations to regulatory authorities only as an alternative to product withdrawal. *See* The Paraquat Papers: How Syngenta's bad science helped keep the world's deadliest weedkiller on the market, https://unearthed.greenpeace.org/2021/03/24/paraquat-papers-syngenta-toxic-pesticide-gramoxone/ (last viewed June 2, 2023).

expand the "third category" to include instances where the PAQ includes a concentration or mix ratio inapplicable to paraquat, instances where paraquat was used in a way in which paraquat was not intended to be used during the relevant time frame (e.g., schools, golf courses, home/garden), instances where the PAQ includes a usage date before paraquat was on the market, and instances in which a plaintiff was exposed at a "below-authorized age." As an initial matter, this goes far beyond any reasonable reading of CMO 18. Moreover, just because Defendants sell paraquat in a certain way does not mean it is right. Just because a plaintiff may have used paraquat on a golf course or school grounds at a time when it was not authorized for such use does not mean paraquat did not cause Parkinson's disease. Just because a minor may have used paraquat on a family farm does not mean paraquat did not cause Parkinson's disease. These are comparative fault defenses under state law and do not universally bar suit. If Defendants view any of these matters as material deficiencies, CMO 10 provides the mechanism to challenge them.

As to the fourth scenario set out by the Court, "other evidentiary issues" should be evaluated using CMO 10's protocol to allow individual counsel the opportunity to cure the deficiency and/or show why dismissal is not appropriate. Some context relating to the *Marx* and *Walkington* dismissals cited by the Court in CMO 18 is in order. Defendants proposed these two cases as appropriate trial cases and the Court, after reviewing the parties' submissions, agreed. As such, these cases were worked up under the Court's various pretrial and scheduling orders. Both Plaintiffs disclosed their treating physicians as expert witnesses, based upon both Plaintiffs' counsel's investigation and case work up. Both Plaintiffs' counsel were prepared to file motions for voluntary dismissal with supporting declarations that explained the facts that neither doctor ultimately expressed during the deposition the opinions that were expressed in preparation for naming them as experts in advance of their depositions. However, based upon Plaintiffs

Leadership Counsel's belief, after conferring with the Special Master, that stipulations were the favored means for seeking dismissal, Plaintiffs Leadership Counsel and Marx's counsel and Walkington's counsel agreed that motion practice was neither necessary nor advantageous to effectuate the dismissals. Plaintiffs' Co-Lead Counsel include this context to rebut any potential inference of a lack of good faith on the part of Marx's counsel and/or Walkington's counsel.

Finally, Plaintiffs' Co-Lead Counsel are unable to agree to any category of fatal "evidentiary issues" at this stage of the litigation. This is not a proper procedure for merits determinations. Individual discovery has not occurred outside of the trial selection context; dispositive motions were recently filed and are not yet fully briefed or decided; expert discovery recently concluded and *Daubert* motions were recently filed and are not yet fully briefed or decided; no merits determinations based on an evidentiary record have been made; and no trial has occurred. (See Doc. 4386 at p. 5 (noting that the bellwether process is expected to be representative so that it may guide the resolution of other cases in this MDL) (citing *In re Society Insurance Co. Covid-19 Business Interruption Protection Insurance Litigation*, No. 20 C 5965, 2021 WL 3290962, at *4 (N.D. Ill. Aug. 1, 2021) ("Bellwether cases are intended to be representative of their peers . . . serving as the common springboard from which Court decisions on substance (like the dismissal motions and early summary judgment motions), procedure, and discovery can then apply to like cases and claims"))). In fact, this Court recently recognized that, as a trial selection case, Plaintiff Fuller's case "occupies an important role in this MDL because the facts underlying his claims, the legal theories supporting them, and the Court's assessment thereof, inform the parties of the strengths and weaknesses of pending claims in the broader plaintiff pool." (Doc. 4386 at p. 5). The dispositive issues raised in CMO 18 and sought to be determined by Defendants in summary fashion likely infringe on each member case's individuality. (See *id*. at p. 4 (noting

the conflict between the goals of efficiency and individuality)).  CMO 10 provides a mechanism by which all plaintiffs, by and through their individual counsel, have an opportunity to be heard on Defendants' challenges to the allegations asserted in their PAQs and avoids premature adjudication of the merits of cases.

For all of the foregoing reasons, Plaintiffs' Co-Lead Counsel urge this Court to modify in part CMO 18 to require the parties to follow the procedures set forth in CMO 10 to address the material deficiencies highlighted by the Court and to stay the June 20, 2023, deadline for filing a motion to dismiss until the CMO 10 deficiency process is exhausted.  Alternatively, any motions for dismissal should be filed in the individual member cases to allow individual plaintiffs' counsel the ability to file responses thereto and to have a complete record within the individual plaintiff's case.

Dated: June 19, 2023

Respectfully submitted,

**PLAINTIFFS' CO-LEAD COUNSEL**

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7011
sdoles@levinlaw.com

Khaldoun A. Baghdadi
WALKUP, MELODIA, KELLY &
SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Telephone: (415) 981-7210
kbaghdadi@walkuplawoffice.com

Peter J. Flowers
MEYERS & FLOWERS, LLC
225 West Wacker Drive, Suite 1515
Chicago, IL 60606
Telephone: (630) 232-6333
pjf@meyers-flowers.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to counsel of record.

/s/ *Sarah Shoemake Doles*
Sarah Shoemake Doles