# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION** <br><br> This document relates to: <br><br> *All Cases* | Case No. 3:21-md-3004-NJR <br><br> MDL No. 3004 <br><br> Hon. Judge Nancy J. Rosenstengel |

**DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

DEFENDANTS' STATEMENT OF MATERIAL FACTS ("SMF") ........................... 3

ARGUMENT .................................................................................................................... 6

I.     PLAINTIFFS' CLAIMS PREMISED ON AN INADEQUATE PARAQUAT LABEL ARE PREEMPTED. ................................................................................ 6

    A.     EXPRESS PREEMPTION. ...................................................................... 7

    B.     IMPLIED PREEMPTION. ..................................................................... 11

        1.     DEFENDANTS LACKED "UNILATERAL" AUTHORITY TO CHANGE THE LABEL. ................................................................ 11

        2.     THERE IS "CLEAR EVIDENCE" THE EPA WOULD NOT HAVE APPROVED A CHANGE. ........................................... 12

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarado v. Syngenta*,
   No. 3:25-pq-01830 (Sept. 25, 2025) ...................................................................................... 6

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) .................................................................................................... 7, 8, 9

*Bova v. U.S. Bank, N.A.*,
   446 F. Supp. 2d 926 (S.D. Ill. 2006) ...................................................................................... 3

*Cal. Rural Legal Assistance Found'n v. EPA*,
   No. 21-71287 (9th Cir.), ECF No. 27-1 ................................................................................ 5

*Carson v. Monsanto Co.*,
   92 F.4th 980 (11th Cir. 2024) ............................................................................................... 9

*In re Depakote*,
   2015 WL 4776093 (S.D. Ill. Feb. 14, 2015) ......................................................................... 6

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ........................................................................................... 9, 10

*Houston v. United States*,
   638 F. App'x 508 (7th Cir. 2016) .......................................................................................... 8

*Kramer v. Piper Aircraft Corp.*,
   520 So. 2d 37 (Fla. 1988) ..................................................................................................... 6

*McMullen v. Medtronic, Inc.*,
   421 F.3d 482 (7th Cir. 2005) .............................................................................................. 10

*Merck Sharp & Dohme Corp. v. Albrecht*,
   587 U.S. 299 (2019) ................................................................................................ 2, 12, 13

*Mut. Pharm. Co. v. Bartlett*,
   570 U.S. 472 (2013) ............................................................................................................ 11

*Nave v. Rainbo Tire Serv., Inc.*,
   462 N.E.2d 620 (Ill. App. Ct. 1984) ..................................................................................... 6

*In re Paraquat Prods. Liab. Litig.*,
   730 F. Supp. 3d 793 (S.D. Ill. 2024) .................................................................................... 3

# TABLE OF AUTHORITIES

**Page(s)**

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ................................................................................................ 2, 11, 12

*Schaffner v. Monsanto Corp.*,
   113 F.4th 364 (3d Cir. 2024) ................................................................................. *passim*

*Schoenhofer v. McClaskey*,
   861 F.3d 1170 (10th Cir. 2017) ......................................................................................... 8

**Statutes**

7 U.S.C. §§ 136(q)(1)(A), (F), (G), 136a(c)(5)(B) ................................................................... 3

7 U.S.C. § 136(q)(1)(G) ........................................................................................................... 13

7 U.S.C. § 136a-1 ....................................................................................................................... 12

7 U.S.C. § 136a(a), (c) ............................................................................................................... 3

7 U.S.C. § 136a(c)(1)(C), (F), (c)(5) ..................................................................................... 3

7 U.S.C. § 136a(f)(1) ................................................................................................................. 3

7 U.S.C. § 136a(g) ...................................................................................................................... 4

7 U.S.C. § 136j(a)(1)(E) ........................................................................................................... 3

7 U.S.C. § 136v(b) ................................................................................................................ 6, 8

21 U.S.C. § 360(k) ..................................................................................................................... 10

**Other Authorities**

7 C.F.R. § 362.10(f)(1) (1960) ................................................................................................. 3

21 C.F.R. § 814.39(a) ............................................................................................................... 10

40 C.F.R. § 152.44 ................................................................................................................ 3, 9

40 C.F.R. § 152.44(a) .................................................................................................... 3, 11, 12

40 C.F.R. §§ 152.50, 156.70 ..................................................................................................... 3

40 C.F.R. § 152.50(e) ................................................................................................................. 3

## TABLE OF AUTHORITIES

**Page(s)**

40 C.F.R. § 155.58(b)(4) ................................................................................................. 13

40 C.F.R. § 156.64(b)(1) ................................................................................................. 12

40 C.F.R. § 156.70(b) ..................................................................................................... 12

40 C.F.R. § 156.70(c) ...................................................................................................... 12

40 C.F.R. § 162.6(b)(3)(i)(A) (1988) ................................................................................ 3

**INTRODUCTION**

As this Court knows, Plaintiffs in this case allege that paraquat sold by Defendants Syngenta Crop Protection LLC, Syngenta AG, and Chevron U.S.A. Inc. ("Defendants") caused their Parkinson's disease ("PD"). Plaintiffs assert (among other things) that Defendants should have included a warning on paraquat's labeling that the product causes PD. Plaintiffs' claims premised on the inadequacy of paraquat's labeling, however, are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Defendants therefore seek partial summary judgment of all Plaintiffs' failure-to-warn claims under Federal Rule 56 and Local Rule 56.1 as set forth in the below statement of material facts and memorandum of law. This Court should grant summary judgment on those claims now because it can do so based on judicially noticeable documents—and doing so will narrow the scope of discovery, leading to the more efficient resolution of these cases.[1]

Under FIFRA, the EPA approves all pesticide labeling before the product may be sold. A pesticide distributor violates EPA regulation if it adds a new health warning to EPA-approved labeling without prior EPA authorization. Here, the EPA-approved paraquat labels do not contain any PD warning. Moreover, the EPA will approve a new warning only if that warning is adequately supported by the data. And the EPA has made clear, including in formal regulatory determinations, its view that the science is insufficient to prove that paraquat causes PD. So the

---

[1] Given the thousands of cases at issue, Defendants propose that the list of cases and claims to be dismissed be submitted following this Court's order, should this Court rule in Defendants' favor. If this Court were to rule in favor of Plaintiffs, Defendants respectfully request the opportunity to submit a renewed motion for summary judgment at a later time—for example, after any intervening court decision or after Defendants have had a chance to develop further evidence, including expert evidence on EPA practices, that will further support summary judgment.

EPA would not permit a PD warning on paraquat's labeling. In these circumstances, FIFRA preempts claims attacking the EPA-approved labeling several times over.

FIFRA *expressly* preempts state-law labeling requirements "in addition to or different from those" imposed by federal law. The EPA-approved paraquat labeling omits any PD warning. Plaintiffs nonetheless claim that state law requires adding a PD warning on paraquat's labeling. Plaintiffs thus seek to add a different or additional warning than what federal law requires. *See Schaffner v. Monsanto Corp.*, 113 F.4th 364, 393 (3d Cir. 2024) (state-law claim attacking the adequacy of Roundup's EPA-approved label for failing to warn of a cancer risk was expressly preempted "because Roundup's" EPA-approved "[l]abel omitted the Cancer Warning").

A federal statute like FIFRA also *impliedly* preempts state law when it is impossible to comply with both simultaneously. Under controlling Supreme Court precedent, impossibility preemption applies where, as here, a defendant cannot "unilaterally" change a product's labeling to comply with state law. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617-24 (2011). Moreover, impossibility preemption applies whenever there is "clear evidence" that an agency would not have approved the requested warning. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 302 (2019). And the EPA has repeatedly studied and rejected the claim that paraquat causes PD, so it would never permit Plaintiffs' requested PD warning.

Alternatively, this Court may wish to hold this motion in abeyance. The Supreme Court recently granted a petition for certiorari concerning FIFRA express and implied preemption. *See Durnell v. Monsanto Co.*, No. 24-1068. The Court did so at the recommendation of the Solicitor General, who asserted that FIFRA preempts state-law labeling claims like Plaintiffs'. Br. for the United States, *Monsanto Co. v. Durnell*, No. 24-1068, Ex. 1 at 23 ("*Durnell* Br."). The Court's

2

decision in *Durnell* will provide significant guidance on FIFRA preemption, so this court may wish to await that ruling before deciding this motion.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS ("SMF")**

1. Syngenta Crop Protection, LLC and Syngenta AG currently manufacture and distribute paraquat for use in the United States. Chevron U.S.A. Inc.'s predecessor in interest distributed and sold paraquat until 1986. *In re Paraquat Prods. Liab. Litig.*, 730 F. Supp. 3d 793, 801 (S.D. Ill. 2024).

2. Federal law controls pesticide labeling and prohibits the distribution of pesticides that have not been registered by the EPA. 7 U.S.C. § 136a(a), (c). As part of its registration process, the EPA reviews proposed pesticide labels to ensure compliance with FIFRA. 7 U.S.C. § 136a(c)(1)(C), (F), (c)(5); 40 C.F.R. § 152.50(e). The EPA only approves labels that comply with FIFRA's general requirement to provide a "warning or caution statement" sufficient "to protect health" and after determining that no statement is "false or misleading." 7 U.S.C. §§ 136(q)(1)(A), (F), (G), 136a(c)(5)(B).

3. Following approval, a registrant generally may not change the label without EPA permission. 7 U.S.C. § 136a(f)(1); 40 C.F.R. § 152.44. Doing so renders the product "misbranded," and selling a "misbranded" pesticide is unlawful. 7 U.S.C. § 136j(a)(1)(E); 40 C.F.R. § 152.44(a).[2] The EPA will only approve a label change that is based on sufficient data to support the change. *See, e.g.*, 40 C.F.R. §§ 152.50, 156.70; Ex. 2 (Office of Pesticide Programs Label Review Manual at 4-7), available at https://www.epa.gov/system/files/documents/2024-

---

[2] FIFRA has been amended over time but these key points have remained constant. *See, e.g.*, 7 C.F.R. § 362.10(f)(1) (1960) (federal approval required for "[c]hanges in substance in the labeling"); 40 C.F.R. § 162.6(b)(3)(i)(A) (1988) (EPA approval required when "[c]hanges are proposed in the labeling").

3

12/label_review_manual_12122024.pdf ("data submission and review is necessary" for, among other amendments, "a change in precautionary statements").[3]

4. Pesticide Registration Notice (PRN) 98-10, titled "Notifications, Non-Notifications and Minor Formulation Amendments" permits only minor labeling changes by notifying the EPA or even smaller changes without notifying the EPA. Ex. 3 (PRN 98-10), available at https://www.epa.gov/sites/production/files/2014-04/documents/pr98-10.pdf. For example, upon notifying the EPA, a registrant can add the claim "non-flammable." *Id*. at 6. And without notifying the EPA, registrants can "correct[] typographical and printing errors." *Id*. at 11.

5. Paraquat is a pesticide registered with, and subject to the regulation of, the EPA. *See generally* Ex. 4 (EPA July 2021 Interim Registration Review Decision). Paraquat's EPA-approved label does not include a PD warning. *See, e.g.*, Ex. 5 (EPA Label Approved August 2022). Nor has any previous approved label included a PD warning. Many EPA-approved labels since 1973 are available by searching "paraquat" or "Gramoxone" on the agency's "Pesticide Product and Label System," available at https://ordspub.epa.gov/ords/pesticides/f?p=PPLS:1. *See, e.g.*, Ex. 6 (EPA Label Approved March 2020); Ex. 7 (EPA Label Approved June 2023).

6. Paraquat's EPA registration is periodically reviewed in a process known as "reregistration." 7 U.S.C. § 136a(g); Ex. 4 (EPA July 2021 Interim Registration Review Decision), p. 4. As part of EPA's reregistration process for paraquat, in 2019, EPA scientists conducted a "systematic review" of the body of scientific literature on paraquat and PD. Ex. 8 (EPA June 2019 Systematic Review) at 4. The EPA first analyzed the epidemiological data and determined that

---

[3] The Court may take judicial notice of EPA reports and information contained on the EPA's website. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006) ("The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet.").

4

"[t]here is limited, but insufficient epidemiologic evidence" of "a clear associative or causal relationship" between paraquat and PD. Ex. 9 (EPA June 2019 Epidemiology Report) at 84. The EPA then evaluated additional data like toxicology studies. Ex. 8 (EPA June 2019 Systematic Review) at 5–6. Putting the epidemiological, toxicology, and other relevant data together, the EPA "concluded that the weight of evidence was insufficient to link paraquat exposure from pesticidal use of US registered products to PD in humans." *Id.* at 6.

7. Two years later, in 2021, the EPA issued an Interim Registration Review Decision permitting paraquat to continue to be sold in the United States. Ex. 4 (EPA July 2021 Interim Registration Review Decision) at 18, 42–43. As part of that decision, the EPA cited its 2019 findings and reiterated that "the weight of evidence was insufficient to link paraquat exposure from pesticidal use of US registered products to PD in humans." *Id.* at 18.

8. Certain petitioners challenged the EPA's interim registration of paraquat, arguing, among other things, that the EPA insufficiently evaluated (1) paraquat's volatilization (*e.g.*, ability to evaporate after application) and (2) whether paraquat causes PD. *Cal. Rural Legal Assistance Found'n v. EPA*, No. 21-71287 (9th Cir.), ECF No. 27-1. In 2024, the EPA responded by publishing its preliminary consideration of some of the issues raised by those petitioners, including issues regarding the EPA's evaluation of whether paraquat causes PD. Ex. 10 (EPA Jan. 2024 Preliminary Supplemental Consideration) at 3–4. It explained why various studies raised by those petitioners were an "inappropriate" basis to challenge its conclusion regarding the PD hypothesis. *Id.* at 29–32. And the EPA reiterated its conclusion that "PD is not an expected result of the pesticidal use of paraquat." *Id.* at 14.

9. The Ninth Circuit case is currently stayed while the EPA evaluates a separate challenge raised by the petitioners unrelated to the PD hypothesis. *See Cal. Rural Legal Assistance*

5

*Found'n*, ECF No. 27-1, p. 4.  The EPA's 2021 Interim Decision remains in place pending the EPA's evaluation of data concerning that separate challenge.  *Id.*, ECF No. 71-1, p. 4 (EPA joining request to hold case in abeyance and "leave the Interim Decision in effect while EPA further investigates the volatilization issue"); *id.*, ECF No. 74 (order granting request).

10.     The EPA is not reconsidering its 2019 systematic review regarding paraquat and Parkinson's disease.  *See id.*, ECF Nos. 63, 71-1 (EPA referencing only its intent to consider new volatilization data).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS PREMISED ON AN INADEQUATE PARAQUAT LABEL ARE PREEMPTED.

FIFRA preempts all of Plaintiffs' claims premised on the inadequacy of paraquat's labeling.  Plaintiffs' failure-to-warn claims, of course, are based on the supposed inadequacy of paraquat's labeling.  *See, e.g.*, Complaint at ¶¶ 98–104, *Alvarado v. Syngenta*, No. 3:25-pq-01830 (Sept. 25, 2025).  So, too, are several of Plaintiffs' other claims (at least in part): fraud, negligence, implied warranty, and state consumer protection statutes.  *See, e.g., id.* at ¶¶ 105–17 (alleging negligence, including for "labeling"); *id.* at ¶¶ 118–23 (breach of implied warranty); Complaint at ¶¶ 203–224, *Harris v. Syngenta*, 3:24-pq-02546 (Nov. 27, 2024) (fraud and violation of consumer protection statute).[4]  Plaintiffs cannot maintain these state-law claims, however styled, to the extent that these claims attack EPA-approved paraquat labels.

---

[4] Implied warranty claims "are essentially coextensive" with other theories of product liability; an implied warranty claim premised on a failure-to-warn thus falls with a strict liability failure-to-warn claim.  *See, e.g.*, *In re Depakote*, 2015 WL 4776093, at *10 (S.D. Ill. Feb. 14, 2015); *see also, e.g.*, *Nave v. Rainbo Tire Serv., Inc.*, 462 N.E.2d 620, 625 (Ill. App. Ct. 1984) ("[T]he strict liability theory is essentially the liability of implied warranty divested of the contract doctrines of privity, disclaimer and notice."); *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988) (calling this difference a matter of "nomenclature").

## A. Express Preemption.

FIFRA expressly preempts "any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). This provision preempts state law when two conditions are satisfied: (1) the state law at issue "must be a requirement '*for labeling or packaging*,'" and (2) the state requirement must be "'*in addition to or different from* those required under this subchapter.'" *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444 (2005) (emphasis in original). This second condition is sometimes called the "parallel requirements" test because the state requirement must be compared to the federal requirement to determine whether the state requirement is "parallel" to (*i.e.*, no broader than) the relevant federal requirement. *Id.*

There can be no dispute that the first condition is satisfied here. Plaintiffs assert a variety of claims premised (in whole or in part) on the theory that paraquat's labeling was legally deficient for failing to include a PD warning. *See supra* at 6. Those claims straightforwardly concern "requirements for labeling or packaging." *Bates*, 544 U.S. at 446.

Express preemption thus turns on the second condition: whether Plaintiffs' claims attacking the adequacy of paraquat labels seek to impose additional or different requirements than federal law. The answer is yes. *See Schaffner*, 113 F.4th at 393.

Federal law, specifically the EPA's Preapproval Regulation, requires a paraquat seller to adhere to EPA-approved paraquat labels. SMF ¶¶ 2–3. Paraquat's EPA-approved labels do not include a PD warning. SMF ¶ 5. Federal law thus mandates that a paraquat seller *omit* a PD warning on the paraquat label. *See Schaffner*, 113 F.4th at 385–86 (explaining that "Roundup's Preapproved Label omitted the Cancer Warning, and the Preapproval Regulation prohibited Monsanto from modifying Roundup's label to include it," and thus federal law required omitting a Roundup cancer warning). And there can be no doubt that the EPA's Preapproval Regulation—

7

a regulation issued through the notice and comment process and carrying the force of law—qualifies as a legal "requirement." *Id.* at 386.

With that federal requirement established, applying the parallel-requirements test is straightforward. Plaintiffs claim that state law requires product distributors to add a PD warning to paraquat's labeling. But federal law requires *omitting* a PD warning on paraquat's labeling. Plaintiffs' alleged state requirement is thus not parallel to the federal requirement; it is instead broader than the federal requirement. In these circumstances, FIFRA expressly preempts Plaintiffs' claims. *See id.* at 393 (omission of cancer warning allegedly violated state law "[b]ut it did not breach the Preapproval Regulation … because Roundup's Preapproved Label omitted the Cancer Warning").

This result furthers Congress's intent to ensure national uniformity in pesticide labeling. *Bates*, 544 U.S. at 452 n.26. Congress enacted FIFRA's express preemption provision because permitting individual states to regulate pesticide labels "would create significant inefficiencies for manufacturers." *Id.* at 452; *see* Ex. 1 (*Durnell* Br.) at 23 ("Section 136v(b) was meant to prevent that sort of inconsistency and patchwork results."). Accepting Plaintiffs' theory would lead to the exact inefficiencies that Congress sought to avoid: every state could insist on warnings that differ from EPA-approved warnings—indeed, states could even require warnings that conflict with each other. *See Schoenhofer v. McClaskey*, 861 F.3d 1170, 1175 (10th Cir. 2017) (citing *Bates*, 544 U.S. at 452); *see also Houston v. United States*, 638 F. App'x 508, 513 (7th Cir. 2016) (preemption appropriate to avoid "precisely the outcome" that the statute's express-preemption clause was "designed to prevent").

The Third Circuit's ruling in *Schaffner* found express preemption in analogous circumstances. There, the plaintiff brought a state-law failure-to-warn claim alleging that

8

Monsanto should have included a cancer warning on Roundup's label. 113 F.4th at 370–71. *Schaffner* identified the relevant federal requirement as the Preapproval Regulation, which required Monsanto to adhere to the EPA-approved label omitting any cancer warning. *Id.* at 386 (citing 40 C.F.R. § 152.44). The purported state-law requirement (to add a cancer warning) was thus different or additional to the federal requirement (to omit a cancer warning). *Id.* at 393. Accordingly, *Schaffner* held, "the parallel-requirements test is not satisfied" and plaintiff's "claim for failure to warn" was expressly preempted. *Id.*

While the Ninth and Eleventh Circuits have held to the contrary with respect to Roundup labeling, *see Hardeman v. Monsanto Co.*, 997 F.3d 941, 954–58 (9th Cir. 2021); *Carson v. Monsanto Co.*, 92 F.4th 980, 989–95 (11th Cir. 2024), the Third Circuit's more-recent decision in *Schaffner* carefully and thoroughly explained over 19 pages why those decisions were wrong and preemption is proper.

*Hardeman* reasoned that FIFRA's general statutory requirement to include warnings sufficient "to protect health" (*see* SMF ¶ 2) is "consistent with" state law. 997 F.3d at 955. *Carson* reached a similar conclusion. 92 F.4th at 991–92. But as *Schaffner* explained, to look only at the "broad statutory definition" is to address the question at too high a level of generality. 113 F.4th at 390. *Bates* makes clear that the preemption analysis must extend to whether state law requirements conflict with "specific EPA regulations." *Id.* And here, the Preapproval Regulation that controls pesticide labeling requires omitting a PD warning on paraquat's labeling. *See id.* Indeed, adding the PD warning to paraquat's labeling would *transgress* federal law; the fact that the warning allegedly would comply with FIFRA's general misbranding prohibitions is thus beside the point.

9

*Hardeman* and *Carson* further reasoned that the EPA's approval of a given label does not "carry the force of law." 997 F.3d at 957; *see Carson*, 92 F.4th at 992–93 (similar). Even if that were right in isolation, it again ignores the Preapproval Regulation, which was issued through the notice-and-comment process and, therefore, indisputably *does* regulate with the "force of law." *Schaffner*, 113 F.4th at 386, 398 n.20. *Hardeman* and *Carson*'s failure to grapple with that regulation undermines their force. *See id.*

Finally, *Hardeman* supposed that Monsanto might have added a cancer warning merely by notifying the EPA, as a "minor modification" pursuant to PRN 98-10. 997 F.3d at 959. But PRN 98-10's catchall category expressly provides that it does *not* include changes to "precautionary statements"—*i.e.*, warnings about human health hazards. *See Schaffner*, 113 F.4th at 383 (citing PRN 98-10 at 8). And certainly adding a warning about a major health risk goes far beyond the minor unilateral changes permitted (with or without notifying the EPA) by PR 98-10, like noting that a product is "non-flammable" or "correcting typographical and printing errors." Ex. 3 (PRN 98-10) at 6, 11; SMF ¶ 4. The Solicitor General's brief confirms as much. *Durnell* Br. at 5.

The Seventh Circuit is likely to follow *Schaffner*. Consider *McMullen v. Medtronic, Inc.*, 421 F.3d 482 (7th Cir. 2005), which addressed the Federal Food, Drug, and Cosmetic Act. That statute similarly prohibits state requirements "different from, or in addition to," any federal "requirement" for a medical device. *Id.* at 487 (quoting 21 U.S.C. § 360(k)). *McMullen* noted that federal regulation required FDA approval of any proposed labeling changes and that the FDA had already approved the warning accompanying the medical device. *Id.* at 488 (citing 21 C.F.R. § 814.39(a)). Thus, *McMullen* said any claim that a "manufacturer should have provided a different warning than the one approved by the FDA" would "impose a requirement that was different from, or in addition to, the applicable federal requirements and would be preempted." *Id.*

10

The same logic governs here and requires express preemption of Plaintiffs' claims concerning paraquat labels.

**B.     Implied Preemption.**

State law is also preempted if it is "impossible for a private party to comply with both state and federal requirements."  *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013).  Plaintiffs' failure-to-warn claim is preempted in two ways by reason of impossibility.

**1.     Defendants lacked "unilateral" authority to change the label.**

Under the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, a state-law claim is preempted on grounds of impossibility unless federal law would permit a defendant to "*unilaterally*" change the label in the way state-law supposedly requires.  564 U.S. at 617-20 (emphasis added).  As the Court explained, "[t]he question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it."  *Id.* at 620 (emphasis added).  So a state-law claim is impliedly preempted "when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency," like when a federal agency must approve a label change.  *Id.* at 623-24.  In such circumstances, it is irrelevant that a defendant "might have eventually been able to strengthen their warning label" through agency action.  *Id.* at 620; *see also, e.g.*, *Bartlett*, 570 U.S. at 490 (finding impossibility preemption of claims given "federal laws that prohibit manufacturers from unilaterally altering drug composition or labeling.").

Here, Defendants could not have unilaterally added a PD warning to paraquat's labeling.  EPA's regulations are clear: "[A]ny modification in the composition, labeling, or packaging of a registered product must be submitted with an application for amended registration," and that "application must be approved by the Agency *before* the product, as modified, may legally be

11

distributed or sold." 40 C.F.R. § 152.44(a) (emphasis added). And a separate provision confirms that "[s]pecific statements pertaining to the hazards of the product and its uses must be approved by the Agency." 40 C.F.R. § 156.70(c). Accordingly, Plaintiffs' failure-to-warn claim is preempted under *PLIVA*.

### 2. There is "clear evidence" the EPA would not have approved a change.

Impossibility preemption separately applies here because there is "clear evidence" that the EPA "would not have approved a change" to paraquat's label to add a PD warning. *Merck*, 587 U.S. at 310. EPA regulations require any warning on a label to be supported by adequate data. *See, e.g.*, 40 C.F.R. § 156.70(b) (precautionary statements describing a hazard required "[w]hen data or other information" demonstrate the existence of a risk); 40 C.F.R. § 156.64(b)(1) (expressly prohibiting use of "a signal word reflecting a higher Toxicity Category" than justified by the product's risks). And the EPA is fully informed of the science surrounding paraquat and PD; its scientists have specifically and repeatedly analyzed the studies and data on this topic. SMF ¶¶ 6–10. As recently as January 2024, the agency concluded there was not sufficient evidence to support a link between paraquat and PD. SMF ¶ 8. That constitutes "clear evidence" that the EPA would not permit a PD warning on paraquat's labeling.[5]

The EPA has acted pursuant to its "congressionally delegated authority," *i.e.*, with the "force of law" in at least three ways that preempt Plaintiffs' state-law claims. *Merck*, 587 U.S. at 315-16. First, the formal regulation giving the EPA control over the label indisputably has the force of law; Defendants cannot comply with that regulation when the EPA would not permit Plaintiffs' requested warning. 40 C.F.R. § 152.44(a); *Schaffner*, 113 F.4th at 398 n.20. Second,

---

[5] That the EPA considers the evidence insufficient even today to support a link between paraquat and PD makes more clear that the evidence did not support such a link prior to 1986, when Chevron exited the market.

12

the EPA's rejection of the paraquat-PD hypothesis came in the process of a statutorily required comprehensive review of paraquat's registration status. 7 U.S.C. § 136a-1. And third, the EPA has declined to require a PD warning, even though the EPA must propose "labeling changes" when necessary to protect human health. 7 U.S.C. § 136(q)(1)(G); 40 C.F.R. § 155.58(b)(4). *Merck* contemplated precisely this scenario—inaction in the face of a legal duty—when identifying "other agency action carrying the force of law" that would be sufficient for preemption. 587 U.S. at 316.

## CONCLUSION

This Court should grant partial summary judgment and dismiss Plaintiffs' state-law claims to the extent they are premised on inadequate paraquat labeling.

February 2, 2026                                                Respectfully submitted,

*/s/ Ragan Naresh*                                              */s/ Sharyl A. Reisman*
Ragan Naresh                                                    Leon F. DeJulius, Jr.
KIRKLAND & ELLIS LLP                                            Sharyl A. Reisman
1301 Pennsylvania Ave., N.W.                                    JONES DAY
Washington, D.C. 20004                                          250 Vesey Street
Tel.: 202.389.5000                                              New York, NY 10281
Fax: 202.389.5200                                               Telephone: (212) 326-3939
ragan.naresh@kirkland.com                                       Fax: (212) 755-7306
                                                                lfdejulius@jonesday.com
**Counsel for Syngenta AG and**                                 sareisman@jonesday.com
**Syngenta Crop Protection, LLC**
                                                                **Counsel for Chevron U.S.A. Inc.**

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 2, 2026, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Ragan Naresh*
Ragan Naresh

*Counsel for Syngenta AG and Syngenta Crop Protection, LLC*