# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) | |
| This document relates to: | ) ) | Case No. 3:21-md-3004-NJR |
| *All Cases* | ) ) | MDL No. 3004 |
| | ) ) | Hon. Judge Nancy J. Rosenstengel |
| | ) ) ) | |

**DEFENDANTS' SUPPLEMENTAL JOINT MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF MATERIAL FACTS ....................................................................................... 3

ARGUMENT .................................................................................................................................. 9

I.     DURNELL CONFIRMS THAT PLAINTIFFS' CLAIMS ATTACKING THE
       EPA-APPROVED LABEL ARE EXPRESSLY PREEMPTED. ...................................... 9

II.    DURNELL CONFIRMS THAT PLAINTIFFS' DESIGN-DEFECT CLAIMS
       ARE PREEMPTED. ....................................................................................................... 11

       A.     Plaintiffs' Design-Defect Claims Are Impliedly Preempted Under Federal
              Law. ..................................................................................................................... 12

       B.     Plaintiffs' Design-Defect Claims Are Preempted Under Certain States'
              Laws. .................................................................................................................... 17

III.   UNDER SOME STATES' LAWS, DISMISSING BOTH FAILURE-TO-WARN
       AND DESIGN-DEFECT CLAIMS REQUIRES DISMISSING NEGLIGENCE
       CLAIMS TOO. .............................................................................................................. 20

CONCLUSION............................................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Akee v. Dow Chem. Co.*,
  272 F. Supp. 2d 1112 (D. Haw. 2003) ...................................................................................19

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005)........................................................................................................7

*Bennett v. T-Mobile USA, Inc.*,
  597 F. Supp. 2d 1050 (C.D. Cal. 2008) ...............................................................................15

*Bledsoe v. Medtronic, Inc.*,
  2020 WL 43107 (N.D. Ind. Jan. 3, 2020) ........................................................................14, 16

*Bova v. U.S. Bank, N.A.*,
  446 F. Supp. 2d 926 (S.D. Ill. 2006).....................................................................................4

*Branham v. Ford Motor Co.*,
  390 S.C. 203 (2010).......................................................................................................20

*Braswell v. Cincinnati Inc.*,
  731 F.3d 1081 (10th Cir. 2013) ......................................................................................17, 19

*Cal. Rural Legal Assistance Found'n v. EPA*,
  No. 21-71287 (9th Cir.) .....................................................................................................5

*Cerniak v. Nissan Motor Co.*,
  1991 WL 147366 (N.D. Ill. July 26, 1991).............................................................................16

*Crane v. Syngenta Crop Protection LLC, et al*,
  No. 3:21-pq-00656 (Apr. 30, 2021).................................................................................9, 12

*Dietrich v. Syngenta Crop Protection LLC*,
  No. 3:21-pq-00622 (Apr. 27, 2021).................................................................................9, 12

*Eriksen v. Mobay Corp.*,
  41 P.3d 488 (Wash. Ct. App. 2002).....................................................................................19

*Farina v. Nokia, Inc.*,
  625 F.3d 97 (3d Cir. 2010).................................................................................................15

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000)............................................................................................16

*Henson v. Santander Consumer USA Inc.*,
   582 U.S. 79 (2017)..............................................................................................14

*Holowaty v. McDonald's Corp.*,
   10 F. Supp. 2d 1078 (D. Minn. 1998)................................................................20

*Hurley v. Motor Coach Indus., Inc.*,
   222 F.3d 377 (7th Cir. 2000) ...................................................................13, 15, 16

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
   620 F. Supp. 2d 755 (E.D. La. 2009)..................................................................15

*In re Vehicle Carrier Servs. Antitrust Litig.*,
   846 F.3d 71 (3d Cir. 2017)..................................................................................13

*Insolia v. Philip Morris Inc.*,
   128 F. Supp. 2d 1220 (W.D. Wis. 2000) .......................................................12, 17

*Jeter ex rel. Est. of Smith v. Brown & Williamson Tobacco Corp.*,
   294 F. Supp. 2d 681 (W.D. Pa. 2003)................................................................17

*Johnson v. Monsanto Chem. Co.*,
   129 F. Supp. 2d 189 (N.D.N.Y. 2001)................................................................18

*Judge Rotenberg Educ. Ctr., Inc. v. United States FDA*,
   3 F.4th 390 (D.C. Cir. 2021)...............................................................................14

*Klun v. Syngenta AG, et al*,
   No. 3:21-pq-00703 (June 24, 2021)..................................................................9, 12

*Lightolier v. Hoon*,
   876 A.2d 100 (Md. 2005) ....................................................................................17

*McMullen v. Medtronic, Inc.*,
   421 F.3d 482 (7th Cir. 2005) ..............................................................................10

*McPhail v. Deere & Co.*,
   529 F.3d 947 (10th Cir. 2008) ............................................................................17

iii

*Monsanto Co. v. Durnell*,
   609 U.S. __, 2026 WL 1825691 (June 25, 2026) ............................................................ passim

*Mut. Pharm. Co. v. Bartlett*,
   570 U.S. 472 (2013)....................................................................................16, 18, 19

*Near v. Enerco Group, Inc.*,
   2026 WL 2066062 (4th Cir. July 17, 2026)............................................................17

*Petr v. BMO Harris Bank N.A.*,
   95 F.4th 1090 (7th Cir. 2024) ..............................................................................12

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)..............................................................................................16

*Pokorny v. Ford Motor Co.*,
   902 F.2d 1116 (3d Cir. 1990)................................................................................16

*Quest Chemical Corp. v. Elam*,
   898 S.W.2d 819 (Tex. 1995)..................................................................................18

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008)................................................................................................7

*Robinson v. Philip Morris USA, Inc.*,
   2019 WL 1787637 (E.D. Pa. Apr. 23, 2019) .........................................................12

*Ruiz-Guzman v. Amvac Chemical Corp.*,
   7 P.3d 795 (Wash. 2000)........................................................................................17

*Simpson v. Standard Container Co.*,
   527 A.2d 1337 (Md. Ct. Spec. App. 1987) .............................................................17

*Strayhorn v. Wyeth Pharms., Inc.*,
   737 F.3d 378 (6th Cir. 2013) .................................................................................18

*Tompkins v. R.J. Reynolds Tobacco Co.*,
   92 F. Supp. 2d 70 (N.D.N.Y. 2000).......................................................................20

*Wilson v. Bradlees of New England, Inc.*,
   96 F.3d 552 (1st Cir. 1996)....................................................................................14

iv

**STATUTES**

7 U.S.C. §§ 136, 136a ........................................................................................................13

7 U.S.C. § 136(bb) ..........................................................................................................3, 16

7 U.S.C. § 136(p)(2) ............................................................................................................9

7 U.S.C. §§ 136(q)(1)(A), (F), (G) .....................................................................................3

7 U.S.C. § 136a-1 .................................................................................................................4

7 U.S.C. § 136a(a) ................................................................................................................3

7 U.S.C. § 136a(c)(1), (c)(5) ..........................................................................................3, 15

7 U.S.C. § 136a(f)(1), (f)(2) ........................................................................................3, 8, 10

7 U.S.C. § 136d(b) .............................................................................................................14

7 U.S.C. § 136j(a)(1)(E) ......................................................................................................3

7 U.S.C. § 136v(a), (b) ..............................................................................................6, 9, 14

7 U.S.C. § 499e(b) .............................................................................................................14

**OTHER AUTHORITIES**

40 C.F.R. § 152.44 .............................................................................................................10

40 C.F.R. § 152.44(a) ..........................................................................................................3

40 C.F.R. §§ 152.50, 156.70 ...............................................................................................3

40 C.F.R. § 152.50(e) ..........................................................................................................3

40 C.F.R. § 152.130(a) ........................................................................................................3

**INTRODUCTION**

The Supreme Court's recent decision in *Monsanto Co. v. Durnell*, 609 U.S. __, 2026 WL 1825691 (June 25, 2026), confirms that Syngenta and Chevron are entitled to summary judgment on (i) all of Plaintiffs' claims attacking the EPA-approved label, including but not limited to their failure-to-warn claims, and (ii) Plaintiffs' design-defect claims.[1]  This Court should grant summary judgment on those claims now because it can do so based on judicially noticeable documents— and doing so will lead to the more efficient resolution of these cases.

**Claims attacking paraquat's label.**  The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") "prohibits States from imposing any pesticide labeling requirements that are 'in addition to or different from' the federal labeling requirements 'under' FIFRA."  *Durnell*, 2026 WL 1825691, at *2 (quoting 7 U.S.C. § 136v(b)).  *Durnell* held that this provision expressly preempts any state-law claim that would require an additional safety warning beyond what the EPA required in approving a pesticide.  *Id.* at *2-3.  Many of Plaintiffs' claims are premised, in whole or in part, on the theory that Defendants should be held liable for omitting a Parkinson's disease ("PD") warning—a warning that the EPA has never required—on paraquat's labeling. Under *Durnell*, all of Plaintiffs' claims attacking paraquat's EPA-approved label are expressly preempted, including but not limited to their negligent and strict-liability failure-to-warn claims.

**Design defect.**  Plaintiffs' negligent and strict-liability design-defect claims are premised on the theory that paraquat is too dangerous to be sold at all—not that some different design choice should have been made.  *Durnell* makes clear that such claims fail as a matter of both implied preemption under federal law and based on the particulars of certain states' laws.

---

[1] Defendants Syngenta Crop Protection, LLC and Syngenta AG are referred to collectively as "Syngenta."  Defendant Chevron U.S.A. Inc. is referred to as "Chevron."  Together, these parties are called the "Defendants."  Defendants expressly incorporate by reference all prior arguments in their original omnibus motion for summary judgment, filed on February 2, 2026.  *See* ECF No. 5776 (Defendants' Joint Motion for Partial Summary Judgment).

1

As a matter of federal law, *Durnell* explained that Plaintiffs may not press state tort claims that would "upend FIFRA's carefully calibrated and EPA-centric regulatory scheme" or the EPA's determinations thereunder. 2026 WL 1825691, at *11. But Plaintiffs' design-defect claims would do just that for three reasons. ***First***, these claims improperly attempt to end-run Congress's statutorily prescribed procedures for removing a pesticide from the market. ***Second***, these claims conflict with the EPA's repeated determinations that paraquat can be used safely and seek to overturn EPA's careful balancing of competing interests. And ***third***, these claims conflict with the EPA's repeated determinations that paraquat should be regulated through mitigation measures like personal protective equipment—not pulled from the market entirely. In addition, under certain states' laws, design-defect claims cannot proceed when a label is adequate or the claim otherwise boils down to an attack on the label. Such claims necessarily attack the EPA-approved label, even if styled as "design defect," and so are straightforwardly precluded by *Durnell*.

**Negligence.** In some states, dismissing strict-liability failure-to-warn and design-defect claims requires dismissing negligence claims in full, too.

Accordingly, Defendants' motion for summary judgment should be granted. Given the thousands of cases at issue, Defendants propose that the list of cases and claims to be dismissed be submitted following this Court's dismissal order. To the extent the Court denies Defendants' motion, it should order the parties to confer and establish a process for briefing the post-*Durnell* state-by-state viability of any remaining claims, given certain states' state-law bars to Plaintiffs' design-defect claims and some states' follow-on preclusion of negligence claims.[2]

---

[2] If this Court were to rule in favor of Plaintiffs, Defendants respectfully request the opportunity to submit a renewed motion for summary judgment at a later time—for example, after any intervening court decision or after Defendants have had a chance to develop evidence that will further support summary judgment.

2

**STATEMENT OF MATERIAL FACTS**

A.    **Regulatory Background.**

1.    Federal law controls pesticide labeling and sales; it prohibits the distribution of pesticides that have not been registered by the EPA.  7 U.S.C. § 136a(a), (c).

2.    As part of its registration process, the EPA reviews proposed pesticide labels to ensure compliance with FIFRA.  7 U.S.C. § 136a(c)(1)(C), (F), (c)(5); 40 C.F.R. § 152.50(e).  The EPA only approves labels that comply with FIFRA's general requirement to provide a "warning or caution statement" sufficient "to protect health" and after determining that no statement is "false or misleading."  7 U.S.C. §§ 136(q)(1)(A), (F), (G), 136a(c)(5)(B).

3.    The EPA also reviews a product's composition to ensure it will not cause "unreasonable adverse effects on the environment" before registering it.  7 U.S.C. § 136a(c)(5)(C).  This determination requires the EPA to find no "unreasonable risk to man" and to weigh "the economic, social, and environmental costs and benefits" of the pesticide.  *Id*. § 136(bb).  A registrant can only sell a product "with the composition" approved by the EPA.  40 C.F.R. § 152.130(a).

4.    Following approval, a registrant generally may not change the label or composition of the product without EPA permission.  7 U.S.C. § 136a(f)(1); 40 C.F.R. § 152.44(a).  Doing so renders the product "misbranded," and selling a "misbranded" pesticide is unlawful.  7 U.S.C. § 136j(a)(1)(E); 40 C.F.R. § 152.44(a).  The EPA will only approve a change to the label or the product's composition that is based on sufficient data to support the change.  *See, e.g.*, 40 C.F.R. §§ 152.50, 156.70; ECF No. 5776-3 (Office of Pesticide Programs Label Review Manual at Ch. 4

3

p.    7),    *available    at*    https://www.epa.gov/system/files/documents/2024-12/label_review_manual_12122024.pdf.[3]

5.    Paraquat is a pesticide registered with the EPA.  ECF No. 5776-5 (EPA July 2021 Interim Registration Review Decision).  Paraquat's EPA-approved label has never included a PD warning.  *See, e.g.*, ECF No. 5776-6 (EPA Label Approved August 2022).  Many EPA-approved labels since 1973 are available by searching "paraquat" or "Gramoxone" on the agency's "Pesticide    Product    and    Label    System,"    available    at https://ordspub.epa.gov/ords/pesticides/f?p=PPLS:1.  *See, e.g.*, ECF No. 5776-7 (EPA Label Approved March 2020); ECF No. 5776-8 (EPA Label Approved June 2023).

6.    Paraquat's EPA registration is periodically reviewed in a process known as "reregistration."  7 U.S.C. § 136a-1; ECF No. 5776-5 (EPA July 2021 Interim Registration Review Decision) at 4.  As part of EPA's reregistration process for paraquat, in 2019, EPA scientists conducted a "systematic review" of the body of scientific literature on paraquat and PD.  ECF No. 5776-9 (EPA June 2019 Systematic Review) at 4.  The EPA first analyzed the epidemiological data and determined that "[t]here is limited, but insufficient epidemiologic evidence" of "a clear associative or causal relationship" between paraquat and PD.  ECF No. 5776-10 (EPA June 2019 Epidemiology Report) at 84.  The EPA then evaluated additional data like toxicology studies.  ECF No. 5776-9 (EPA June 2019 Systematic Review) at 5-6.  Putting all the relevant data together, the EPA "concluded that the weight of evidence was insufficient to link paraquat exposure from pesticidal use of US registered products to PD in humans."  *Id.* at 6.

---

[3] The Court may take judicial notice of EPA reports and information contained on the EPA's website.  *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006) ("The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet.").

7.      Two years later, in 2021, the EPA issued an Interim Registration Review Decision permitting paraquat to continue to be sold in the United States.  ECF No. 5776-5 (EPA July 2021 Interim Registration Review Decision) at 18, 42–43.  As part of that decision, the EPA cited its 2019 findings and reiterated that "the weight of evidence was insufficient to link paraquat exposure from pesticidal use of US registered products to PD in humans." *Id.* at 18.

8.      Certain petitioners challenged the EPA's interim registration of paraquat, arguing, among other things, that the EPA insufficiently evaluated (1) paraquat's volatilization (*e.g.*, ability to evaporate after application) and (2) whether paraquat causes PD.  Ex. 1 (*Cal. Rural Legal Assistance Found'n v. EPA*, No. 21-71287 (9th Cir.), ECF No. 27-1).  In 2024, the EPA responded by publishing its preliminary consideration of some of the issues raised by those petitioners.  ECF No. 5776-11 (EPA Jan. 2024 Preliminary Supplemental Consideration) at 3–4.  It explained why various studies raised by those petitioners did not change its conclusion regarding the PD hypothesis.  *Id.* at 29–32.  And the EPA reiterated its conclusion that "PD is not an expected result of the pesticidal use of paraquat." *Id.* at 14.

9.      The Ninth Circuit case is currently stayed while the EPA evaluates a separate challenge raised by the petitioners unrelated to the PD hypothesis.  Ex. 1 (*Cal. Rural Legal Assistance Found'n*, ECF No. 27-1) at 4.  The EPA's 2021 Interim Decision remains in place pending the EPA's evaluation of data concerning that separate challenge.  Ex. 2 (*Id.*, ECF No. 71-1) at 4 (EPA joining request to hold case in abeyance and "leave the Interim Decision in effect while EPA further investigates the volatilization issue"); Ex. 3 (*id.*, ECF No. 74 (order granting request)).

10.    The EPA is not reconsidering its 2019 systematic review regarding paraquat and Parkinson's disease.  *See* Ex. 4 (*id.*, ECF No. 63-1); Ex. 2 (*id.*, ECF No. 71-1) (EPA referencing only its intent to consider new volatilization data).

**B.    Procedural and Legal Background.**

11.    Plaintiffs and Defendants have reached an agreement in principle that, subject to certain conditions and acceptance by individual Plaintiffs, will resolve many of these claims.  *See* ECF No. 5789 (canceling April 2026 trial in light of pending settlement).  Some Plaintiffs, however, have opted out of the settlement.  *See* ECF No. 5833 (Order Selecting Smith and DiCello Firms' Opt-Out Cases For Limited Discovery); ECF No. 5834 (Order Selecting Nachawati Law Group's Opt-Out Cases For Limited Discovery).

12.    On February 2, 2026, Defendants filed a joint motion for partial summary judgment on all Plaintiffs' label-based claims based on FIFRA preemption.  ECF No. 5776.  In March 2026, this Court stayed further briefing until the Supreme Court decided *Durnell*, at the Plaintiffs' request.  ECF No. 5791.

13.    On June 25, 2026, the Supreme Court issued its ruling in *Durnell*, holding that any state-law tort claim premised on an inadequate EPA-approved label is expressly preempted by FIFRA.  2026 WL 1825691, at *8.

14.    In *Durnell*, the Court started with a textual analysis of FIFRA's express preemption provision.  That provision, entitled "Uniformity," provides that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."  7 U.S.C. § 136v(b).  Common-law "[f]ailure to warn claims" are state "labeling requirements because those 'rules set a standard for a product's labeling.'"  2026 WL 1825691, at *6 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 446 (2005)).  So the

key question was whether those state duties were "in addition to or different from" federal labeling requirements. *Id.* at *7.

15.      *Durnell* explained that, under FIFRA, the EPA may approve a pesticide's label only after determining that it contains all warnings "necessary and … adequate to protect health and the environment" and that the label "does not include any 'false or misleading' statements." *Id.* at *7. After the EPA makes those determinations and registers a pesticide, "manufacturers are legally *required* to use that label—unless and until [the] EPA approves or requires a label change." *Id.* *Durnell* thus held that a state tort claim that "would require Monsanto to add a cancer warning to its labels" was "in addition to" and "different from" Monsanto's "federal-law labeling obligations," as the EPA-approved label did not require a cancer warning. *Id.* at *8.

16.      The Court continued its analysis by looking at its precedents. *Bates* provided an example where FIFRA preemption would apply.  If an EPA regulation required a "CAUTION" designation for a pesticide, *Bates* said, then a state failure-to-warn claim that required a "DANGER" warning would be preempted. *Bates*, 544 U.S. at 453.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), addressed a similar preemption provision in the Medical Device Amendments of 1976 and held that the FDA's approval of a medical device preempted state tort claims. *Id.* at 316-22.  The Court viewed both of those situations as analogous to the EPA's decision not to require a cancer warning on Roundup's label. *Durnell*, 2026 WL 1825691, at *8-9.  Thus, under the Court's precedents, "safety claims that would impose labeling requirements 'in addition to' or 'different from' those required under FIFRA are preempted." *Id.* at *8.

17.      Most relevant here, *Durnell* addressed several counterarguments:

- First, *Durnell* rejected the argument that state and federal law are equivalent, rather than different, just because both state common-law and FIFRA require adequate warnings to protect human health.  *Id.* at *9-10.  That argument "disregards the central and

7

comprehensive role that EPA performs in making labeling determinations under FIFRA's registration provisions." *Id.* at *9.

- Second, *Durnell* rejected the argument that EPA's regulations exceed or violate its statutory authority under FIFRA. *Id.* at *10. FIFRA empowers the EPA to prescribe regulations to implement the statute, and "expressly directs" the EPA to "'determin[e]' that the pesticide's 'labeling' complies with FIFRA's many specific requirements." *Id.*

- Third, *Durnell* rejected the plaintiff's reading of 7 U.S.C. § 136a(f)(2), which provides that "[i]n no event shall registration … be construed as a defense for the commission of any offense under this subchapter." *Id.* at *10-12. Among other things, *Durnell* read this provision to apply only in EPA enforcement actions—not state tort suits. *Id.* at *10.

- Fourth, *Durnell* rejected the concern about a lag between new scientific developments and the EPA's ability to assess that information. *Id.* at *12-13. This "policy concern about regulatory lag is amply addressed by the extensive process that FIFRA and EPA's implementing regulations have established to respond to new or evolving safety information." *Id.* at *12.

18. At bottom, the Court rejected any argument that a plaintiff should be able to attack an EPA-approved label through state tort law because that would improperly "upend FIFRA's carefully calibrated and EPA-centric regulatory scheme[,]" which provides for "registration cancellation … proceedings[,]" the right to seek "civil or criminal penalties if a manufacturer fail[s] to inform EPA of important new safety-related information[,]" and other carefully crafted statutory remedies. *Id.* at *11. Allowing a plaintiff to short-circuit these processes to seek retrospective liability against a pesticide manufacturer would also "trigger[] potential retroactivity and estoppel questions" by penalizing manufacturers who had relied on the EPA's determinations. *Id.*

## **ARGUMENT**

I.    ***DURNELL* CONFIRMS THAT PLAINTIFFS' CLAIMS ATTACKING THE EPA-APPROVED
      LABEL ARE EXPRESSLY PREEMPTED.**

FIFRA expressly preempts "any requirements for labeling or packaging in addition to or
different from those required under this subchapter."  7 U.S.C. § 136v(b).[4]  This provision
"preempts a state-law labeling requirement that differs from the federal labeling requirements
imposed under FIFRA."  *Durnell*, 2026 WL 1825691, at *6.  Here, there can be no dispute that
Plaintiffs' claims attacking paraquat's EPA-approved label—including their negligent and strict-
liability failure-to-warn, warranty, and consumer-fraud claims, among others—seek to enforce
labeling requirements.[5]  These claims are premised on the theory that state tort law required
Defendants to include a PD warning on paraquat's labeling.  *See, e.g.*, Complaint at ¶¶ 97-115,
*Klun v. Syngenta AG, et al*, No. 3:21-pq-00703 (June 24, 2021) (The Smith Law Firm); Complaint
at ¶¶ 224-227, 232-235, *Dietrich v. Syngenta Crop Protection LLC*, No. 3:21-pq-00622 (Apr. 27,
2021) (Nachawati Law Group); Complaint at ¶¶ 203-206, 215-218, *Crane v. Syngenta Crop
Protection LLC, et al*, No. 3:21-pq-00656 (Apr. 30, 2021) (DiCello Levitt LLP).[6]  Such "state tort
duties constitute state labeling requirements."  *Durnell*, 2026 WL 1825691, at *6.

---

[4] "Labeling" is defined to include "all labels and all other written, printed, or graphic matter … accompanying the
pesticide or device at any time."  7 U.S.C. § 136(p)(2).  This motion uses the term "labeling" in this broader sense to
include not just the material affixed to paraquat's container but also all other written materials accompanying the
pesticide.

[5] For example, Plaintiffs assert claims like implied warranty and consumer fraud, among others, that are premised at
least in part on Defendants' omission of a PD warning on paraquat's labeling.  *See, e.g.*, *Klun*, 3:21-pq-00703, Compl.
¶ 120 (June 24, 2021) (raising implied-warranty claim based in part on how Defendants' products were "packaged");
*Dietrich*, 3:21-pq-00622, Compl. ¶ 221 (Apr. 27, 2021) (same); *Crane*, 3:21-pq-00656, Compl. ¶¶ 145, 157, 180, 200
(Apr. 30, 2021) (same).

[6] Defendants cite *Klun*, *Dietrich*, and *Crane* as examples of cases where the Plaintiff has opted out of settlement.
These three cases are the first listed case for each law firm in the Court's opt-out orders in which both Chevron and
Syngenta are defendants.

*Durnell* also makes clear that Plaintiffs' state-law labeling claims impose requirements "'in addition to or different from' the federal labeling requirements imposed 'under' FIFRA." *Id.* at *7. Federal law requires a seller to adhere to EPA-approved pesticide labels. 7 U.S.C. § 136a(f)(1); 40 C.F.R. § 152.44; *Durnell*, 2026 WL 1825691, at *7-8. This means that Plaintiffs may not press "any state tort claim" that seeks to hold the seller liable "for *not using* a label different from the EPA-approved label." 2026 WL 1825691, at *10. Any such claim "would require a pesticide manufacturer to use a label 'in addition to' or 'different from' federal requirements imposed under FIFRA," and so is "expressly preempted" by FIFRA. *Id.* Applying this principle, *Durnell* concluded—in light of the "EPA's labeling determinations that do not mandate a cancer warning" on Roundup—that FIFRA "expressly preempt[ed]" the plaintiff's "failure-to-warn suit … against Monsanto for not including a cancer warning on Roundup's label." *Id.* at *3, 9.

*Durnell* applies equally to foreclose Plaintiffs' label-based claims here. Paraquat's EPA-approved labels do not include (and have never included) a PD warning. *See, e.g.*, ECF No. 5776-6 (EPA Label Approved August 2022). Just as the EPA's omission of any cancer warning for Roundup meant that "federal law require[d] Monsanto to sell Roundup with the label that EPA approved … without a cancer warning," the EPA's omission of any PD warning for paraquat means that federal law required paraquat sellers to *omit* any PD warning from paraquat's label. *Durnell*, 2026 WL 1825691, at *8. FIFRA thus "expressly preempts" any "state tort claim" that faults Defendants "for not including a … warning" for PD "on [paraquat's] label." *Id.* at *3; *see also, e.g.*, *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 488 (7th Cir. 2005) (claim that a "manufacturer should have provided a different warning than the one approved by the FDA" would

10

"impose a requirement that was different from, or in addition to, the applicable federal requirements and would be preempted").[7]

Accordingly, summary judgment in Defendants' favor on all of Plaintiffs' claims attacking the EPA-approved label—including but not limited to their negligent and strict-liability failure-to-warn, warranty, and consumer-fraud claims—is warranted.

## II.    *DURNELL* CONFIRMS THAT PLAINTIFFS' DESIGN-DEFECT CLAIMS ARE PREEMPTED.

For the last several years, Plaintiffs' design-defect claims have consistently been premised on the theory that paraquat is too dangerous to be sold under *any* circumstances. Prior MDL plaintiffs argued that Defendants should have "stopped selling paraquat" and instead "designed" a herbicide "without paraquat."[8] So, too, did their experts. For example, Cynthia Rando opined that Defendants should have "stop[ped] selling" paraquat entirely.[9] David Mortensen stated that different herbicides should have been used entirely.[10] Plaintiffs have *never* identified some alternative design *choice* for paraquat that would have avoided their harm. Indeed, earlier this year, the Pennsylvania paraquat court granted Defendants summary judgment under New Jersey

---

[7] Even setting aside *express* preemption, Plaintiffs' claims attacking the EPA-approved label would be *impliedly* preempted for all the reasons given in Defendants' original motion—including that Defendants could not have unilaterally added a PD warning on paraquat's labeling, and that the EPA would not have permitted a PD warning on paraquat's labeling given its position on the paraquat-PD allegations. ECF No. 5776 (Defendants' Joint Motion for Partial Summary Judgment) at 11-13.

[8] ECF No. 4560 at 14 (Opposition to Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Cynthia Rando); ECF No. 4562 at 5 (Opposition to Defendants' Joint Motion for Summary Judgment).

[9] ECF No. 4356-1 (Rando 10/14/2022 Expert Report) (filed in Bellwether cases *Burgener*, *Coward*, *Fuller*, *Marx*, *Richter*, and *Walkington*) at 9, 26.

[10] ECF No. 4360-4 (Mortensen 10/14/2022 Expert Report) (filed in Bellwether cases *Burgener*, *Coward*, *Fuller*, *Marx*, *Richter*, and *Walkington*) at 6 (stating that "a multitude of herbicide alternatives to paraquat have and continue to exist"); ECF No. 4360-1 (Mortensen 3/1/2023 Supplemental Expert Report) (filed in Bellwether cases *Burgener*, *Coward*, *Fuller*, *Marx*, *Richter*, and *Walkington*) at 1 ("present[ing] alternative herbicides and non-herbicidal practices" to paraquat).

11

law for precisely that reason.[11]   Remaining MDL Plaintiffs continue to assert that same "stop selling" theory of design defect here.[12]

That stop-selling theory is contrary to both federal and state law given the EPA determination that paraquat, with its approved labeling, can be used safely and *Durnell*'s holding that state law cannot attack the EPA-approved label.  As a matter of federal law, the stop-selling theory is impliedly preempted for:   (i) end-running the statutorily prescribed processes for removing a pesticide from the market, (ii) overriding the EPA's balancing of interests in approving paraquat's design, and (iii) forcing the removal of a product that the EPA has chosen to regulate— not ban.  And under certain states' laws, design-defect claims cannot proceed when a label is adequate or otherwise boil down to attacks on the label—and so are straightforwardly precluded under *Durnell*.

### A.      Plaintiffs' Design-Defect Claims Are Impliedly Preempted Under Federal Law.

All of Plaintiffs' design-defect claims are preempted under federal law.  A state-law claim is impliedly preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Petr v. BMO Harris Bank N.A.*, 95 F.4th 1090, 1102 (7th Cir. 2024) (citations omitted).[13]   *Durnell* had no occasion to resolve implied preemption or design-defect claims, *see* 2026 WL 1825691, at *9 n.7, but the Court's discussion of FIFRA and

---

[11] Ex. 5 (1/21/2026 Order on *Mertens* Summary Judgment).

[12] *Klun*, 3:21-pq-00703, Compl. ¶¶ 41-48, 89-96 (June 24, 2021) (asserting that "'redox properties' … inherent in" paraquat's "chemical composition and structure" cause PD—a theory that would impose tort liability for the mere sale of paraquat); *see also Dietrich*, 3:21-pq-00622, Compl. ¶¶ 173-189, 201-206 (Apr. 27, 2021) (same); *Crane*, 3:21-pq-00656, Compl. ¶¶ 81-95, 107-18 (Apr. 30, 2021) (same).

[13] *See also, e.g.*, *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1222-24 (W.D. Wis. 2000) ("If Congress gives express sanction to an activity, the states cannot declare that activity tortious."); *Robinson v. Philip Morris USA, Inc.*, 2019 WL 1787637, at *5 (E.D. Pa. Apr. 23, 2019) ("[A] state tort claim imposing liability for an act declared legal by federal law may not be maintained where the state law 'stands as an obstacle to the ... purposes and objective of Congress.'") (citation omitted).

the logic of its opinion makes clear that Plaintiffs' design-defect claims are an "obstacle" to Congress's purposes in enacting FIFRA and delegating substantial authority to the EPA.

As *Durnell* explained, Congress created a "carefully calibrated and EPA-centric regulatory scheme" when it enacted FIFRA.  Any state-law claim that would "upend" or "nullify" that scheme undermines the "uniformity that Congress sought" for pesticide regulation.  *Id.* at *9, 11.  In particular, FIFRA prescribes a framework under which the EPA will "register pesticides" that do "'not generally cause unreasonable adverse effects' on human health and the environment," and enforce labeling requirements as "'necessary and … adequate to protect health and the environment.'"  *Id.* at *3 (discussing 7 U.S.C. §§ 136, 136a).  Applying that framework to paraquat, the EPA has both registered paraquat for decades and consistently rejected the need for a PD warning, finding insufficient evidence that paraquat causes PD.  *See* ECF No. 5776-5 (EPA July 2021 Interim Registration Decision) at 18; ECF No. 5776-11 (EPA Jan. 2024 Preliminary Supplement Consideration) at 33-35.

Given the above, Plaintiffs' theory that paraquat should not have been sold at all due to PD risk is impliedly preempted for at least three reasons.

***First***, obstacle preemption applies if a state law "undermine[s]" federal "policy objectives." *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 382 (7th Cir. 2000).  For example, where Congress has "created specific enforcement mechanisms" or other "means for private parties … to seek relief," obstacle preemption precludes plaintiffs from attempting to sidestep those mechanisms in favor of the tort system. *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 85-86 (3d Cir. 2017).  Plaintiffs seek to do exactly that by using lawsuits to bypass Congress's specified avenues for removing a pesticide from the market.  FIFRA provides for an administrative proceeding involving a cancellation hearing where the proponent can present its case for

13

cancellation. *See, e.g.*, 7 U.S.C. § 136d(b).  Alternatively, FIFRA also allows state legislation to "regulate the sale or use of any federally registered pesticide," 7 U.S.C. § 136v(a), including by prospectively "ban[ning] a pesticide within its borders," *Durnell*, 2026 WL 1825691, at *5 n.2.

Plaintiffs' design-defect claims end-run these statutorily prescribed channels.  Plaintiffs' tort lawsuits, of course, are not administrative cancellation proceedings of paraquat's registration under FIFRA.  Nor are they a state "regulation" of the sale or use of paraquat on a prospective basis.  There was no state or administrative-agency ban of paraquat during any relevant exposure period. *Wilson v. Bradlees of New England, Inc.*, 96 F.3d 552, 554 (1st Cir. 1996) ("regulation" means "positive law" like statutes/regulations—not common-law torts).  Congress knows well how to say when it wishes to license state tort claims, having done so in neighboring provisions of the U.S. Code—but it instead chose different language in FIFRA.  7 U.S.C. § 499e(b) ("[T]his section shall not in any way abridge or alter the remedies now existing at common law or by statute"); *id.* § 209(b) (same); *id.* § 1639j (expressly preserving "a State … common law right").  "[D]ifferences in language like this convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017).  Moreover, the *Durnell* plaintiff argued that the state's power to ban a pesticide necessarily included the power to regulate the sale of the product through tort liability, but the Court did not accept that argument despite having the opportunity to do so. *See* Ex. 6 (Brief of Respondent) at 44-45.[14]

***Second***, courts hold that design-defect claims are impliedly preempted when a federal agency has approved a product's design as safe to use before it was sold. *See, e.g.*, *Bledsoe v. Medtronic, Inc.*, 2020 WL 43107, at *7 (N.D. Ind. Jan. 3, 2020) (plaintiff's design-defect claim

---

[14] Put another way, *Durnell* confirms that the greater power (to entirely ban a product) does not include the lesser power (to impose tort liability on a product that the state has not banned).  "Courts regularly recognize that a greater power does not imply the existence of a lesser power." *Judge Rotenberg Educ. Ctr., Inc. v. United States FDA*, 3 F.4th 390, 398 (D.C. Cir. 2021) (listing various examples).

"would necessarily mean that the FDA's risk/benefit analysis was incorrect" and improperly "cause[] disruption to the federal system"); *Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008) (plaintiff's claims would improperly "question the judgment" of a federal agency regarding "the maximum standard for" radiofrequency "emissions") (citation omitted). Put another way, implied preemption applies where a state tort claim is in "essence" a "challenge to" how a federal agency has "balance[d] … competing objectives" in approving a product's design. *Farina v. Nokia, Inc.*, 625 F.3d 97, 122-23, 125-26, 133-34 (3d Cir. 2010); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 620 F. Supp. 2d 755, 756, 765-66 (E.D. La. 2009) (plaintiff's claims would require defendant to deviate from federal standards, undermining the statutory "balance between uniformity, safety, and affordability").

Consider *Hurley v. Motor Coach Industries, Inc*. There, the Department of Transportation approved two types of crash safety systems for bus manufacturers to choose from, including "two point seat belts." 222 F.3d at 381. Nonetheless, the plaintiff claimed that a bus was defectively designed for not going further and using safety measures like "a three point seat belt." *Id.* The Seventh Circuit held that the design-defect claim was obstacle preempted because it "foreclose[d] an option" authorized under federal law and so "would undermine" the "specific policy objectives" underlying the Department of Transportation's regulatory determination that two-point seat belts were sufficient. *Id.* at 382. In particular, the Department had to balance safety and other objectives in authorizing two-point seat belts, such as ensuring that seat belt-averse drivers would in fact "use the safety equipment that manufacturers install." *Id.*

Plaintiffs' design-defect claims are preempted under *Hurley* and the cases above. These claims seek to impose liability despite the EPA's repeated determination that paraquat will not cause "unreasonable adverse effects on the environment," 7 U.S.C. § 136a(c)(5)—a determination

15

that requires the EPA to find no "unreasonable risk to man" and to weigh "the economic, social, and environmental costs and benefits of the use of any pesticide," *id.* § 136(bb).  The EPA did exactly that in rejecting the claim that paraquat causes PD and determining that the benefits of paraquat warrant keeping its registration and allowing it on the market given the "economic, social, and environmental costs and benefits."  *See, e.g.*, ECF No. 5776-5 (EPA July 2021 Interim Registration Review Decision) at 43 (paraquat provides "high benefits" for the cultivation of various crops).[15]  Plaintiffs may not attempt through tort law to "foreclose[]" what the EPA has authorized, *Hurley*, 222 F.3d at 382, or otherwise to press claims that "would necessarily mean" the EPA's "risk/benefit analysis was incorrect," *Bledsoe*, 2020 WL 43107, at *7.

*Third*, implied preemption applies when a state tort claim would require a defendant to "pull[]" a product like paraquat "from the market." *Bartlett*, 570 U.S. at 475-76.[16]  Implied preemption applies where a defendant cannot "'unilaterally' do what state law required." *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618-620 (2011) (citation omitted).  As mentioned above, Defendants could not have unilaterally altered paraquat's labeling or formula—so Plaintiffs' claim reduces to the preempted theory that Defendants should have stopped selling paraquat. *See supra* at 13-14.  This "'stop-selling' rationale" is "incompatible with" federal "pre-emption jurisprudence," which recognizes that a company "is not required to cease acting altogether in order to avoid liability." *Bartlett*, 570 U.S. at 488.[17]

---

[15] The EPA refers to paraquat as "one of the most widely used herbicides in the United States" and an "important tool for the control of weeds."  Ex. 7 ("Ingredients Used in Pesticide Products: Paraquat Dichloride" EPA) *available at* https://www.epa.gov/ingredients-used-pesticide-products/paraquat-dichloride, last updated Nov. 13, 2025.

[16] As mentioned above, while FIFRA permits a state legislature/agency to ban a pesticide prospectively, it does not authorize a state tort claim that would retroactively impose liability for a seller doing precisely what the EPA and FIFRA authorized.

[17] *See also, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874-75, 886 (2000) (same); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1123 (3d Cir. 1990) (same); *Cerniak v. Nissan Motor Co.*, 1991 WL 147366, at *5 (N.D. Ill. July 26, 1991) (same).

16

Consider *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220 (W.D. Wis. 2000), as an additional example of courts applying related principles. *Insolia* impliedly preempted a claim that cigarettes were unreasonably dangerous due to the federal "policy that the sale of cigarettes is legal." *Id.* at 1223; *see also, e.g.*, *Jeter ex rel. Est. of Smith v. Brown & Williamson Tobacco Corp.*, 294 F. Supp. 2d 681, 685 (W.D. Pa. 2003) ("any state tort claim" attacking a product that "Congress chose to regulate … instead of completely ban[]" is impliedly preempted). The EPA, however, has expressly rejected that paraquat causes PD and accordingly has chosen to regulate paraquat through risk-mitigation measures like personal protective equipment—not ban it. *See* ECF No. 5776-5 (EPA July 2021 Interim Registration Review Decision) at 43.

### B.    Plaintiffs' Design-Defect Claims Are Preempted Under Certain States' Laws.

Certain states' laws independently foreclose Plaintiffs' design-defect claims after *Durnell.*

***First***, in some states, an adequate label defeats design-defect liability as a matter of law. For example, under Oklahoma law, there is no design-defect "liability if the product contains a warning that adequately addresses the known risks of use"—"[e]ven where a product's design defect makes the product unreasonably dangerous." *McPhail v. Deere & Co.*, 529 F.3d 947, 958 (10th Cir. 2008); *see also, e.g.*, *Lightolier v. Hoon*, 876 A.2d 100, 110, 111 (Md. 2005) ("[T]he existence of clear warnings on a product that poses a danger may … serve to bar strict liability claims" where the warnings are not "vague or otherwise difficult to understand.").[18]   *Durnell* makes clear that an EPA-approved pesticide label is adequate as a matter of law. After all, a

---

[18] *See also, e.g.*, *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1087 (10th Cir. 2013) (following *McPhail*); *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1341 (Md. Ct. Spec. App. 1987) ("product was not in a defective condition nor was it unreasonably dangerous" because defendants "provided adequate warnings"); *Near v. Enerco Group, Inc.*, 2026 WL 2066062, at *4-12 (4th Cir. July 17, 2026) (noting uncertainty regarding whether South Carolina would deem "adequate warnings" to "preclude a design defect claim as a matter of … law" and thus certifying question to state court); *Ruiz-Guzman v. Amvac Chemical Corp.*, 7 P.3d 795, 801, 804 (Wash. 2000) (finding that "a pesticide can be an 'unavoidably unsafe product'" which precludes liability where "proper warning is given").

pesticide seller is "legally *required* to use that label." 2026 WL 1825691, at *7. Holding that EPA-mandated label inadequate would "trigger[] potential retroactivity and estoppel questions," since "[t]he law is not ordinarily read to retroactively penalize persons for doing what the Government had required them to do." *Id.*

**Second**, in some states, a design-defect claim reduces to a duty to strengthen a product label in these circumstances and thus is preempted by *Durnell*.

Consider New Hampshire's design-defect claim, which is analyzed under the "risk-utility" framework. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 483 (2013). At bottom, that test asks whether (1) the product could have been redesigned to be safer; or (2) better warnings could have been added to avoid the harms. *Id.* (citing *Vautour v. Body Masters Sports Industries, Inc.*, 147 N.H. 150, 153 (2001)). And under New Hampshire law, "[i]n cases where it is impossible—in fact or by law—to alter a product's design … the duty to render a product 'reasonably safe' boils down to a duty to ensure 'the presence and efficacy of a warning to avoid an unreasonable risk of harm.'" *Id.* at 492 (citation omitted). Put differently, when a product cannot be redesigned, New Hampshire requires a defendant to add warnings to avoid "design-defect" liability. But the Supreme Court found this "warning-based design defect cause of action" "preempted" by federal law, where the drug at issue could not have been redesigned because (i) the generic manufacturers were "prohibited" legally "from unilaterally altering drug composition," and (ii) "the drug is chemically incapable of being redesigned." *Id.* at 483-84, 490. Federal law preempted such a claim attacking the "strength[] [of the product's] warnings." *Id.* at 484; *see also Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 397 (6th Cir. 2013) (similar, under Tennessee law).[19]

---

[19] *See also, e.g.*, *Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 195 (N.D.N.Y. 2001) (recognizing that "[c]laims of misdesign" can be "thinly veiled labeling or failure to warn claims"); *Quest Chemical Corp. v. Elam*, 898

18

The analysis is more straightforward under certain states' "consumer-expectations" test (assuming such a theory could be viable).  This test analyzes whether a product was unsafe beyond what an ordinary consumer would expect; those expectations are informed by a product's labeling. *See, e.g.*, *Eriksen v. Mobay Corp.*, 41 P.3d 488, 495 (Wash. Ct. App. 2002). Unsurprisingly, then, certain states recognize that this test boils down to the adequacy of the labeling.  *See, e.g.*, *id.* ("consumer expectations test could not be met … where … a manufacturer has adequately warned consumers of the risks associated with using a product"); *Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1092 n.3 (10th Cir. 2013) (Oklahoma's consumer-expectation theory for "design defects and inadequate warnings" are "merely different methods of proof for the same product liability claim").[20]  And, after *Durnell*, state-tort claims cannot hold the EPA-approved labeling inadequate.

For reasons like these, Plaintiffs' design-defect claims will be preempted in certain jurisdictions because they reduce to an attack on paraquat's label—exactly what *Durnell* held preempted.  As in *Bartlett*, the risk-utility theory boils down to a duty to warn.  Paraquat cannot be redesigned because (i) Defendants cannot "unilaterally alter" the EPA-approved paraquat formula, and (ii) Plaintiffs have not, and cannot, show some alternative design for paraquat that would have avoided their harm.  *See supra* at 11-12.  And as in *Eriksen* and *Braswell*, there is no way the consumer-expectation theory can be satisfied given that *Durnell* deems paraquat's EPA-approved label adequate as a matter of law.

Accordingly, the Court should grant Defendants summary judgment for design-defect claims in these states, even if it declines to do so under federal law.  To identify all affected states,

---

S.W.2d 819, 820-821 (Tex. 1995) (strict-liability claims were based on "failure to provide adequate warnings" and thus preempted).

[20] *See also, e.g.*, *Akee v. Dow Chem. Co.*, 272 F. Supp. 2d 1112, 1132 (D. Haw. 2003) (collecting cases recognizing that a "consumer cannot expect a product to perform more safely than government mandated warnings").

19

the Court should at minimum order the parties to confer and establish a process for briefing the viability of design-defect claims after *Durnell* on a state-by-state basis.

### III.    UNDER SOME STATES' LAWS, DISMISSING BOTH FAILURE-TO-WARN AND DESIGN-DEFECT CLAIMS REQUIRES DISMISSING NEGLIGENCE CLAIMS TOO.

In certain states, a plaintiff also cannot maintain a negligence claim based on injury from a product without showing the product had either a warning or labeling defect.  Courts in these states thus routinely dismiss negligence claims in full when the plaintiff's strict-liability failure-to-warn and design-defect claims are dismissed.  *See, e.g.*, *Holowaty v. McDonald's Corp.*, 10 F. Supp. 2d 1078, 1086 (D. Minn. 1998); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 90 (N.D.N.Y. 2000); *Branham v. Ford Motor Co.*, 390 S.C. 203, 210 (2010).  This Court should dismiss Plaintiffs' negligence claims in states that follow this principle, since their strict-liability failure-to-warn and design-defect claims must be dismissed for the reasons given above.  The Court should similarly direct state-by-state briefing on negligence as needed.

### CONCLUSION

This Court should grant Defendants' supplemental joint motion for summary judgment and dismiss:  (i) all of Plaintiffs' claims attacking the EPA-approved label—including but not limited to their negligent and strict-liability failure-to-warn, warranty, and consumer-fraud claims; (ii) Plaintiffs' negligent and strict-liability design-defect claims; and (iii) Plaintiffs' negligence claims in full in jurisdictions where such claims fall with the design-defect and failure-to-warn claims. To the extent necessary, the Court should order the parties to confer and establish a process for briefing the post-*Durnell* state-by-state viability of any remaining claims.

20

July 27, 2026

Respectfully Submitted,

*/s/ Ragan Naresh*
Ragan Naresh, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Telephone: (202) 389-5000
ragan.naresh@kirkland.com

***Counsel for Syngenta AG and
Syngenta Crop Protection, LLC***

*/s/ Sharyl A. Reisman*
Leon F. DeJulius, Jr.
Sharyl A. Reisman
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
Fax: (212) 755-7306
lfdejulius@jonesday.com
sareisman@jonesday.com

***Counsel for Chevron U.S.A. Inc.***

21

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 27, 2026, the foregoing was electronically filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Sharyl A. Reisman*
Sharyl A. Reisman

*Counsel for Chevron U.S.A. Inc.*