IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re: PARAQUAT PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Cases, filed and/or represented by The Smith Law Firm, PLLC** | **Case No.: 3:21-md-3004-NJR**<br><br>**MDL No. 3004** |

**NON-PARTICIPATING SMITH FIRM PLAINTIFFS' MOTION TO CLARIFY, MODIFY, AND TEMPORARILY STAY IMPLEMENTATION OF CMO 25 AND CMO 26 PENDING COURT-ORDERED MEDIATION**

Plaintiffs represented by The Smith Law Firm, PLLC who fall within the definition of "Non-Participating Smith Firm Plaintiffs" in Case Management Order No. 26 respectfully move under Federal Rules of Civil Procedure 16, 26, 54(b), and 6(b) for limited clarification, modification, and temporary stay relief concerning the implementation of Case Management Order No. 25 and Case Management Order No. 26.

Movants are currently engaged in settlement negotiations with defense counsel. The immediate concern is that the current CMO 26 deadlines, if allowed to run during negotiations, risk converting negotiations from a voluntary settlement process into a process conducted under the shadow of imminent case-dispositive burdens. Movants do not ask the Court to suspend legitimate case development indefinitely. They ask only that the Court harmonize its orders with the Special Master's later directions, the ongoing wet-signature project, and the settlement negotiations now underway.

The Firm has already commenced the wet-ink signature project requested by the Special Master on September 18, 2026. That project is underway and was scheduled for completion by the updated October 30, 2026 deadline. The Firm will continue that work. But CMO 26 currently starts thirty-day production and sixty-day expert-report periods that expire almost immediately after that signature project and during or shortly after the Court-directed settlement process. Those overlapping deadlines should be stayed or reset so negotiations can proceed based on case value, litigation risk, and finality, rather than procedural leverage.

Movants therefore request a practical order to stay CMO 26 implementation pending settlement negotiations and completion of the Special Master's settlement-review sequence; confirm that settlement remains voluntary and that nonacceptance does not create an adverse inference; preserve privilege and counsel consultation; defer individualized expert reports until the operative general-causation and Daubert framework is settled; require access to the complete Master Settlement Agreement under appropriate confidentiality protections; and, if negotiations fail, establish a defined litigation track for nonsettling plaintiffs.

## BACKGROUND

On April 8, 2026, the Court entered CMO 24, directing settlement administrators to provide information to Special Master Randi Ellis and directing the Special Master to meet with plaintiffs who had opted out of the Settlement Program or remained undecided, or, at her discretion, with plaintiff's counsel. The Firm met with the Special Master on April 17, 2026 and described when and how settlement ranges had been communicated to clients and the extensive efforts made to answer questions and document client decisions. Declaration of Counsel, Ex. B ¶¶ 2-4.

The Firm and its co-counsel provided settlement information in multiple formats. Before hosting five Zoom conferences, including one in Spanish, the Firm sent clients either an

ineligibility letter or an award-offer letter and sent multiple conference reminders by text and email. Settlement packets followed through clients' preferred communication methods. Staff proactively called clients within the Settlement Program to answer questions. Clients in the Rio Grande Valley were also offered in-person meetings with the firm's co-counsel, Law Offices of Ezequiel Reyna. Ex. B ¶ 3.

The Firm continued communicating with clients after those conferences. It sent additional text reminders concerning the settlement deadline and followed up with clients who had elected to participate but had not returned releases. Clients' elections were documented in the Firm's files. Those decisions were made after opportunities for consultation and based on the information available to counsel and clients. A high rejection rate does not establish that the decisions were uninformed. Ex. B ¶¶ 3-4.

On June 2, 2026, the Court entered an order selecting certain opt-out cases for limited discovery. For the Smith Law Firm, that order selected 47 plaintiffs, required Plaintiff Fact Sheets within fourteen days, depositions within sixty days, and joint summaries within fourteen days after each deposition. Counsel understood from subsequent Special Master communications that the Smith Firm's obligations under that order would be deferred while settlement discussions continued. Ex. B ¶ 6.

On June 12, 2026, the Court entered CMO 25. CMO 25 requires, among other things, a Special Master settlement-review process, detailed plaintiff disclosures, medical summaries and attestations, choice-of-law submissions, use documentation, witness affidavits, qualifying diagnostic records, individualized expert reports, and deficiency procedures. CMO 25 deferred many Section II deadlines to future implementation orders while directing plaintiffs to begin gathering information.

On September 18, 2026, the Special Master reopened the settlement acceptance window for seven days and described a follow-on process for plaintiffs who did not accept by September 25, 2026. That process included wet-ink statements identifying the first offer date, the communicated offer range, and the decision to decline; meetings in St. Louis or as otherwise arranged; a Court hearing requiring counsel's personal attendance; and an order after that hearing triggering CMO 25 deadlines. Ex. A; Ex. B ¶ 10. The Special Master later agreed to October 30, 2026 for completion of the signed statements. Ex. B ¶ 11.

On October 6, 2026, CMO 26 imposed thirty-day production and sixty-day expert-report periods for Non-Participating Smith Firm Plaintiffs. Under Rule 6(a)(1), those periods would end November 5 and December 7, 2026, respectively. The production deadline falls only days after the updated October 30 wet-signature deadline. CMO 26 also references "Section I" of CMO 25 even though the specified production and expert-report requirements appear in Section II. Movants request clarification and temporary relief so these processes are not operating on conflicting tracks.

## ARGUMENT

### I. A Temporary Stay is Necessary to Preserve Ongoing Good-Faith Negotiations

The parties are in active settlement negotiations, but negotiations will not be productive if CMO 26 operates simultaneously as an imminent, one-sided deadline regime against only the plaintiffs who have not accepted settlement offers.

The requested relief is narrow. Movants do not ask to avoid discovery or expert work. They ask the Court to suspend the running of CMO 26 deadlines during settlement negotiations and for a short, defined period after any impasse so the parties can negotiate without collateral litigation over compliance, sanctions, expert-report timing, or dismissal risks. A temporary stay would also prevent duplicative work that settlement may render unnecessary.

Federal Rule of Civil Procedure 16 gives the Court broad authority to manage complex litigation, coordinate discovery, facilitate settlement, and structure case-management deadlines. Rule 26(b)(1) requires proportionality, and Rule 26(b)(2)(C) requires limits on unreasonable duplication and disproportionate burdens. A short stay of CMO 26 implementation during mediation is consistent with those principles. It would protect the mediation process without impairing defendants' ability to obtain necessary discovery if mediation fails.

## II. Settlement Rejection Does Not Equate to Deficient Representation

Settlement remains an individual choice. A plaintiff may consider age, medical condition, exposure, economic loss, family needs, financial circumstances, litigation fatigue, risk tolerance, and the value placed on adjudication. Courts may encourage settlement and candidly assess litigation risk, but they may not coerce settlement through threatened penalties for refusing to settle. *Gevas v. Ghosh*, 566 F.3d 717, 719-20 (7th Cir. 2009). Authority to require participation in settlement proceedings likewise does not authorize coercing a party's settlement position. *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir. 1989) (en banc).

Movants do not contend that the Court intended coercion. The concern is functional. When the only plaintiffs facing immediate, extraordinary burdens are those who declined offers, and those burdens are triggered immediately after a reopened settlement window, the process risks being perceived as a penalty for nonacceptance unless the Court clarifies that settlement remains voluntary and that deadlines serve litigation needs rather than settlement pressure.

The record also shows that the Firm undertook extensive client outreach. It hosted multiple settlement conferences, provided written settlement communications, sent reminders, called clients, offered in-person opportunities for certain clients, and documented elections. Ex. B ¶¶ 3-4. The fact that many clients rejected offers does not establish that offers were not conveyed, that

clients were uninformed, or that counsel failed to consult with them. Nor does rejecting an offer make an otherwise comparable claim less meritorious.

The Court should confirm that rejection alone supports neither a penalty nor an adverse inference about any client's claim or counsel's representation. Legitimate discovery can proceed without placing pressure on clients to accept settlement merely to avoid extraordinary procedural burdens.

## III. The Expert-Report Deadline Should be Deferred until the Operative General-Causation Framework is Settled

CMO 26's sixty-day expert-report deadline is particularly problematic. Preparing individualized causation reports under Rule 26 requires experts to review each Plaintiff's complete medical records. Plaintiffs therefore need a workable process and sufficient time to obtain those records and provide them to their experts for review. Requiring hundreds of individualized reports before Plaintiffs have had a meaningful opportunity to complete that process, and while the governing general-causation framework remains unsettled, would be inefficient, prejudicial, and likely to generate unnecessary disputes.

Case-specific experts cannot responsibly prepare opinions in a vacuum. Their reports must account for the admissible general-causation evidence, the governing Daubert rulings, and the scope of opinions permitted in this MDL. If existing general-causation rulings remain subject to appellate review, stayed, or held in abeyance while settlement proceedings continue, then forcing nonsettling plaintiffs to produce individualized reports now would invert the ordinary sequence and risk wasteful, inconsistent, or prematurely constrained expert work.

This sequencing concern is especially significant because the MDL-wide general-causation and Daubert appellate posture has been held in abeyance while settlement proceedings continue. Nonsettling plaintiffs should not be prejudiced by an abeyance agreed to by MDL leadership and

defendants for settlement-administration purposes. If the appellate process concerning the governing expert framework is paused by agreement of other stakeholders, then nonsettling plaintiffs should not simultaneously be forced to produce case-specific causation reports on an accelerated schedule as though that framework were final and settled.

The proper sequence is straightforward. The Court should defer individualized expert reports until it confirms the governing general-causation and Daubert framework, provides adequate time to obtain complete medical records, resolves any pending appeal, stay, or abeyance affecting expert admissibility, and gives plaintiffs a reasonable period thereafter to prepare case-specific reports based on the evidence and rulings that will actually govern the cases. This relief would not excuse plaintiffs from producing expert reports. It would simply ensure that those reports are meaningful, reliable, and tied to the operative legal framework.

## IV. The Wet-Signature Process Should be Harmonized with CMO 25 and CMO 26

The Firm has continued the wet-signature project and does not currently request an extension of the October 30, 2026 deadline agreed to by the Special Master. The problem is not the signature deadline itself, nor does the Firm seek to suspend the Special Master's individual settlement-review meetings. Those meetings can proceed in an orderly way. The problem is that CMO 26 starts production and expert-report deadlines before the Special Master's described sequence has been completed.

Movants request that the Court confirm October 30 as the deadline for the pre-meeting wet-ink statements and direct a status report after that deadline. Movants further request clarification that the pre-meeting statements are distinct from any later CMO 25 certification following an actual Special Master meeting. To the extent individual meetings remain part of the process, they should be scheduled in a manner that accounts for plaintiffs' medical limitations, geographic dispersion, caregiver needs, language needs, and counsel availability, and CMO 26

production and expert deadlines should not begin to run until after that meeting process is completed or the Court otherwise enters a coordinated post-meeting schedule.

Those meetings should include basic safeguards. Counsel should be permitted to attend. Remote participation, language assistance, caregivers, and medical accommodations should be available where appropriate. Questions should be limited to confirming offer communication, offer range, and the client's decision, without intruding into privileged legal advice or strategy.

## V. Counsel Should Receive the Complete Master Settlement Agreement under Confidentiality Protections

If the purpose of the settlement-review process is to confirm informed decisions, counsel should have access to the complete Master Settlement Agreement under appropriate confidentiality protections. Counsel has received selected terms and provisions, but not the full agreement. Ex. B ¶ 8.

Clients made counseled decisions based on the information available. If further review is intended to confirm that decisions are informed, disclosure of the governing agreement to counsel is a sensible and proportional first step. Revisiting clients' decisions without giving counsel access to the complete agreement would not cure any asserted information gap.

The Court should therefore direct that the complete Master Settlement Agreement be made available to Movants' counsel under appropriate confidentiality restrictions in order to facilitate ongoing negotiations.

## VI. If Settlement Negotiations Fail, Nonsettling Plaintiffs need a Defined Litigation Path

CMO 25 imposes substantial obligations but does not identify a concrete path from compliance to adjudication. CMO 26 adds production dates without establishing trial selection, remand planning, dispositive-motion sequencing, or a defined post-compliance litigation track.

More than five years into the MDL, nonsettling plaintiffs need to know how satisfying these requirements will move their cases toward a merits determination.

Each plaintiff filed an individual action and retained counsel to pursue it. Coordinated pretrial proceedings should preserve a meaningful opportunity for individual adjudication, including a jury trial where triable issues remain. The ability to decline settlement loses practical force if litigating plaintiffs face accumulating obligations without an identified route to decision.

If settlement negotiations fail, the Court should establish a litigation track for nonsettling plaintiffs with defined milestones for case-specific discovery, expert sequencing, dispositive motions, case selection, trial preparation, and, where appropriate, suggestions of remand under 28 U.S.C. § 1407(a). Settlement can remain available alongside that track, but litigation should not be held indefinitely while settlement administration continues.

The Court should also consider supplemental leadership or an opt-out liaison structure for nonsettling plaintiffs. This request does not require a finding of misconduct by existing leadership. It recognizes a structural reality that settlement implementation and continued litigation now require different workstreams. Nonsettling plaintiffs need representation in discovery coordination, expert development, case selection, remand planning, and trial preparation.

## REQUESTED RELIEF

Movants respectfully request that the Court enter an order granting the following limited relief:

1. Stay the CMO 26 deadlines during active settlement negotiations, completion of the Special Master's settlement-review meeting process, and for at least sixty days after any declaration of impasse or completion of that process, unless the Court sets a different coordinated schedule.

2. Confirm that settlement is voluntary; that rejection of a settlement offer does not create an adverse merits inference, or presumption of deficient representation; and that CMO 25 and CMO 26 will be implemented to advance litigation needs, not to penalize nonacceptance.
3. Confirm October 30, 2026 as the deadline for the pre-meeting wet-ink statements being collected by the Firm, and direct a status report after that date regarding completion of that project and scheduling of any remaining Special Master meetings.
4. Clarify that any required statements or meetings do not create a blanket waiver of attorney-client privilege or protected work product, and permit particularized objections before disclosure of protected communications.
5. Defer individualized expert reports until the Court confirms the operative general-causation and Daubert framework that allows adequate time to obtain complete medical records; including resolution of any pending appeal, stay, or abeyance entered or maintained by agreement of MDL leadership and defendants, and affords plaintiffs a reasonable period thereafter to prepare case-specific reports.
6. Direct that the complete Master Settlement Agreement be made available to Movants' counsel under appropriate confidentiality protections.
7. If settlement negotiations do not resolve the claims, establish a defined litigation track for nonsettling plaintiffs, including case-specific discovery, expert sequencing, dispositive-motion timing, case selection, trial preparation, and consideration of remand where appropriate.
8. Consider supplemental leadership or an opt-out liaison structure charged with advancing the remaining litigation needs of nonsettling plaintiffs.

9. Preserve CMO 25's notice, cure, and opportunity-to-be-heard protections, and confirm that no dismissal, preclusion, or other case-dispositive consequence will arise solely from deadlines that are stayed, vacated, reset, or subject to good-faith clarification proceedings.

This relief would preserve the integrity of mediation, respect informed client choice, protect legitimate privilege and medical accommodations, and give the parties a clear path forward if settlement is not reached.

Dated: October 13, 2026

Respectfully submitted,

*/s/ R. Allen Smith, Jr.*

**THE SMITH LAW FIRM, PLLC**
R. ALLEN SMITH – Miss. Bar No. 99984
Email: asmith@smith-law.org
300 Concourse Blvd., Suite 104
Ridgeland, MS 39157
Telephone: 601-952-1422
Fax: 601-952-1426
*Counsel for Movants*

## CERTIFICATE OF SERVICE

I certify that on October 13, 2026, I electronically filed the above and foregoing with the Clerk of Court using CM/ECF, which will provide notice to counsel of record registered to receive electronic service.

Respectfully submitted,

*/s/ R. Allen Smith, Jr.*

**THE SMITH LAW FIRM, PLLC**
R. ALLEN SMITH – Miss. Bar No. 99984
Email: asmith@smith-law.org
300 Concourse Blvd., Suite 104
Ridgeland, MS 39157
Telephone: 601-952-1422
Fax: 601-952-1426
*Counsel for Movants*